UNITED STATES DISTRICT COURT DISTRICT
EASTERN DISTRICT OF PENNSYLVANIA

MARK RENFRO and GERALD LUSTIG,
as representatives of a class of
similarly situated persons,
and on behalf of the Plan,

                Plaintiffs;

v.

UNISYS CORPORATION,
UNISYS CORPORATION EMPLOYEE
BENEFITS ADMINISTRATIVE
COMMITTEE, UNISYS CORPORATION
SAVINGS PLAN MANAGER, PENSION
INVESTMENT REVIEW COMMITTEE,
FIDELITY MANAGEMENT TRUST
COMPANY, FIDELITY MANAGEMENT
& RESEARCH COMPANY and
FIDELITY INVESTMENTS INSTITUTIONAL
OPERATIONS COMPANY, INC.,

                Defendants.

Case No.:  07-2098


AMENDED COMPLAINT –
CLASS ACTION

JURY TRIAL DEMANDED ON
ALL CLAIMS SO TRIABLE

## FIRST AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1.      In this action, brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a),

Plaintiffs and Class Representatives Mark Renfro and Gerald Lustig, on behalf of the Unisys

Corporation Savings Plan, Plan 004, (the "Plan") and similarly situated participants and

beneficiaries in the Plan, seek to recover the financial losses suffered by the Plan and to obtain

injunctive and other equitable relief for the Plan.

2.      As set forth in detail below, the Defendants caused the Plan to include investment

options with fees and expenses – paid by the Plan, and thus borne by Plan participants – that

were and are unreasonable and excessive; not incurred solely for the benefit of the Plan and its

participants; and undisclosed to participants.  Further, as set forth below, Defendants' selection

of investment options for the Plan was imprudent and improper in light of the Plan's size and

enormous negotiating leverage in the investing marketplace.  By subjecting the Plan and its

participants to these investment options and the accompanying excessive fees and expenses, and

by other conduct set forth below, Defendants violated their fiduciary obligations under ERISA

and caused losses to the Plan.

## PARTIES, JURISIDCTION AND VENUE

### Plaintiffs

3.      Plaintiff and Class Representative Mark Renfro lives in Mission Viejo, California.

He is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

4.      Plaintiff and Class Representative Gerald Lustig lives in Bolingbrook, Illinois.

He is also a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

5.      Defendant Unisys Corporation ("Unisys") is one of the leaders in the information

technology (IT) consulting business, providing such services as systems integration, network

engineering, project management, and technical support.  Unisys is the sponsor of the Plan

within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) and is the employer and

principal of the Plans' other administrators.

6.      Unisys has delegated some of its authority for administration of the Plan to

several sets of people but still retains control and authority over the administration and

management of the Plan.  Acting through its Board of Directors, it is responsible for selecting,

retaining, and/or removing the members of the Committees described below, and for appointing,

retaining and/or removing the Plan Manager, defined below.  Further, Unisys Corporation, acting

through the Finance Committee of the Unisys Corporation Board of Directors, is responsible for issuing the investment guidelines to be used by the other Plan fiduciaries in the selection, retention and removal of investment options available in the Plan.

7.      The Unisys Corporation Employee Benefits Administrative Committee (the "Administrative Committee") and its members administer the Plan, along with the Unisys Corporation Savings Plan Manager (the "Plan Manager"), the Pension Investment Review Committee (the "Investment Committee"), and the Trustee, as defined below.

8.      Defendant Administrative Committee and its members are responsible for all matters relating to the administration of the Plan, including interpretation of the Plan documents, except for those duties delegated to the Plan Manager, the Investment Committee and/or the Trustee.  It is thus a plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1102(16)(A).  Further, the Administrative Committee and its members are "named fiduciaries" within the meaning of ERISA § 402, 29 U.S.C. § 1102, and are also fiduciaries with respect to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

9.      Defendant Unisys Corporation Savings Plan Manager is responsible for the day-to-day administration of the Plan and has the authority to adopt rules and guidelines for the administration and operation of the Plan.  The Plan Manager – who may be more than one person, despite the use of a singular noun as a title – is thus a plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1102(16)(A), and a fiduciary with respect to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

10.     Defendant The Pension Investment Review Committee (the "Investment Committee") has the responsibility for control and management of all Plan assets, to the extent this role is not delegated to the Trustee.  The Investment Committee and its members are

responsible for the selection or elimination of the investment options made available to the participants and beneficiaries, and for the selection or elimination of the investment managers. The Investment Committee members are named by the Board of Directors. The Investment Committee is a named fiduciary within the meaning of ERISA § 402, 29 U.S.C. § 1102 and is also a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

11.   Defendant Fidelity Management Trust Company ("FMTC") is a Massachusetts corporation with its headquarters in Boston. FMTC is a trust company and manages assets for approximately 550 institutional clients worldwide with $113 billion in assets under management as of March 2006. FMTC is a subsidiary of FMR Corp., which does business as "Fidelity Investments" and is one of the world's largest money managers.

12.   Because ERISA requires that the assets of the Plan be held in trust, pursuant to a written trust agreement, ERISA, § 403, 29 U.S.C. § 1103(a), Defendant Unisys, as Plan sponsor designated FMTC the trustee of the "Unisys Savings Trust," which holds the assets of the Plan. FMTC is a Plan fiduciary in its role as Trustee.

13.   FMTC and its affiliate/successor, Pyramis Global Advisors Trust Company ("Pyramis") also directly manage a number of the investment options available to Plan participants, and exercise discretion, authority and control over Plan assets. In this capacity, they are fiduciaries to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

14.   FMTC is contractually obligated to serve as the Plan's record keeper, performing a variety of administrative tasks for the Plan. However, it has delegated the performance of those tasks to its affiliate, Fidelity Investments Institutional Operations Company, Inc. (FIIOC).

15.   Defendant FIIOC, a subsidiary of FMR Corp., serves as Plan record keeper and administrator. It is paid for performing these services through a revenue-sharing arrangement

with the Fidelity-branded mutual funds offered to the participants.  In this role, it exercises

discretionary control and authority over Plan assets.  Defendant FIIOC also played a role in the

selection of the investment options available to participants, in the selection of the services to be

provided to the Plan and in the management and administration of the Plan. For these reasons,

FIIOC is a fiduciary pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

16.     Defendant Fidelity Management & Research Company (FMRCo), also a

subsidiary of FMR Corp., is the investment adviser for the mutual fund investment options in the

Plan.  Plaintiffs allege that FMRCo, along with FMTC and FIIOC, was paid fees in excess of the

reasonable fees allowed by ERISA or which were paid as part of a prohibited transaction and

thus has monies which by right belong to the Plan.

### Jurisdiction and Venue

17.     Plaintiffs bring this action pursuant to ERISA §§ 502(a)(2) & (3), 29 U.S.C. §

1132(a)(2) & (3), which provide that participants may pursue civil actions on behalf of the Plan

for damages to remedy breaches of fiduciary duty as set forth in ERISA § 409, 29 U.S.C. § 1109,

and/or to obtain other appropriate equitable relief.  This Court has federal question subject matter

jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)(F).

18.     All Defendants are subject to service of process issued from this Court pursuant to

29 U.S.C. § 1132(e)(2).

19.     Venue is proper in this Court pursuant to 29 U.S.C. § 1132 (e)(2).

### CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, on behalf of the Plan, themselves and all similarly situated Plan participants and

beneficiaries. The Plan is comprised of a unitary trust corpus in which each Plaintiff, and each

Plan participant, has an interest. Plaintiffs seek to represent the following (the "Class"):

> All persons, *excluding the Defendants, and/or other individuals who are*
> *or may be liable for the conduct described in this Complaint,* who were or
> are participants or beneficiaries of the Plan, as well as those who will
> become participants or beneficiaries of the Plan in the future.

21.     Certification of this Class is proper under Rule 23(a) in that:

A.     **Numerosity.** The members of the Class are so numerous that joinder of

all members is impracticable. Although the Plaintiffs do not know the exact

number of Class members as of the date of filing, the Plan's public documents

state that, at the end of the 2005 Plan year, there were 34,651 participants with

account balances in the Plan.

B.     **Commonality.** Common issues of fact and law predominate over any

issues unique to individual Class members. Issues that are common to all Class

Members include, but are not limited to:

i.     Whether the Defendants caused and/or allowed fees and expenses

to be paid by the Plan for purposes other than those allowed by

ERISA;

ii.     Whether the Defendants so failed to exercise the care, skill,

prudence, and diligence that a prudent person would when acting

in like capacity and familiar with such matters by including

imprudent investment options in the Plan;

iii.     Whether the Defendants failed to exercise the care, skill, prudence,

and diligence that a prudent person would when acting in like

capacity and familiar with such matters by subjecting the Plan to

fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants;

iv.   Whether the Defendants failed to understand the methods by which the Plan service providers collected payments and other revenues from 401(k) plans and thus failed to monitor the fees and expenses paid by the Plan and ensure that they were reasonable and prudent;

v.   Whether the Defendants' conduct is a breach of fiduciary duty; and;

vi.   Whether the Defendants are liable to the Plan and the Class for losses suffered as a result of the above-breaches and are responsible to account for and/or be surcharged for the assets and transactions of the Plan or otherwise return money to the Plan.

C.   **Typicality.** The Plan is comprised of a unitary trust corpus in which each Plaintiff, and each Plan participant, has an interest.  The claims brought by the Plaintiffs are typical of those of the absent Class members, in that:

vii.   The Defendants owed the exact same fiduciary and other ERISA-based obligations to each Plan participant and beneficiary, and each member of the Class;

viii.   The Defendants' breach of those obligations constitutes a breach to each participant and beneficiary, and each member of the Class;

ix.   To the extent that there are any differences in Class members' damages, such differences would be a product of simple mathematics based upon account balances in the Plan.  Such

minimal and formulaic differences are no impediment to class certification.

D.   **Adequacy of Representation.** The Plaintiffs are adequate representatives of the absent Class members and will protect such absent Class members' interests in this litigation. The Plaintiffs do not have any interests antagonistic to the other class members nor do they have any unique claims or defenses that might undermine the efficient resolution of the Class' claims. Plaintiffs have retained competent counsel, versed in ERISA, class actions, and complex litigation.

22.   Class certification is also appropriate under Rule 23(b) and each subpart in that:

A.   Pursuant to Rule 23(b)(1), in the absence of certification, there is a risk of inconsistent adjudications with respect to individual class members and/or an adjudication with respect to individual class members would as a practical matter dispose of the interests of others not party to the adjudications;

B.   Pursuant to Rule 23(b)(2), as set forth above, the Defendants have acted on grounds generally applicable to the Class as a whole; and

C.   Pursuant to Rule 23(b)(3), as set forth above, common issues of law and fact predominate over any purely individual issues and thus a class action is superior to any other method for adjudicating these claims.

## FACTS

### The Plan

23.    Unisys offers certain of its employees the opportunity to participate in the Plan, as part of their compensation and benefits.  The Plan is a "defined contribution plan," as defined in ERISA § 3(34), 29 U.S.C. § 1002(34) and contains an employee stock ownership plan provision. It is also a tax-qualified plan of the type popularly known as a "401(k) plan."

24.    Under the terms of the Plan, qualified employees may contribute a portion of their before-tax earnings to the Plan up to 20% and a portion of their after-tax earnings as well. Unisys will match those contributions up to 4 % of the employee's compensation. All participants are 100 percent vested in their accounts.

25.    Each participant's account is credited with the participant's contributions, the participant's share of matching contributions, and the Plan's earnings and losses allocated daily based on the ratio of the participants' respective account balances.  FIIOC, in its role as Plan record keeper, has the responsibility for keeping track of the individual accounts.

26.    The assets of the Plan are held in the "Unisys Savings Trust."  In 1993, the Unisys Defendants and FMTC entered into a trust agreement in which FMTC agreed to provide trustee and recordkeeping services to the Plan, and to be a fiduciary with respect to certain investments. Through a separate arrangement, FMTC delegated the duty of performing the record-keeping and administrative tasks for the Plan to its affiliate FIIOC, and possibly another affiliate, Fidelity Investments Institutional Service Company (FIISC).

27.    In the Trust Agreement, which has been amended at least 16 times without substantially changing this provision, the parties agreed that only mutual funds advised by FMRCo would be offered to participants.  Since that time, only funds managed by a Fidelity

Investments subsidiary have been added to the Plan. No funds have been deleted, except that certain funds managed by FMTC are now managed by Pyramis.

28.     As of 2006, participating employees could invest Plan contributions in any of approximately 66 retail mutual funds advised by FMRCo – the same mutual funds that are made available to investors with as little as $2500 to invest.

29.     Six of the remaining funds are not mutual funds, but are collective trusts. These collective trusts are managed by FMTC and/or by its affiliate/successor, Pyramis.

30.     The Plan also offers participants the option of investing in the Unisys Stock Fund, a fund that holds Unisys Corporation common stock. Unisys and FMTC agreed that FMTC would use Fidelity Brokerage Services, Inc., an affiliate of FMTC, in order to execute purchases and sales of Unisys stock within the company stock fund.

31.     By the end of 2005, the Plan had more than $2.3 billion in assets, placing it in the largest 1% of all 401(k) plans in the United States. Nearly $1.9 billion of those Plan assets were held in Fidelity-branded retail mutual funds. All of the assets were held in vehicles managed or operated to some extent by a Fidelity Investments affiliate.

## DEFENDANTS' FIDUCIARY DUTIES

32.     Defendants are bound by ERISA's imposition of a fiduciary duty that has been characterized as "the highest known to law." Defendants' fiduciary obligations require that, at all times, they conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self-interest, duplicity and deceit; and fully disclose to, and inform participants and beneficiaries of, all material information.

33.     Defendants' fiduciary obligations under ERISA require that they exercise the care, skill and diligence which a prudent expert would in the operation of a Plan with like character and aims.

34.     Defendants' fiduciary obligations under ERISA require that they discharge their duties with the exclusive purpose of providing benefits to Plan participants and beneficiaries and defraying the reasonable cost of administering the Plan.

35.     Defendants' fiduciary obligations under ERISA require that it ensure, at all times, that Plan assets are *never* used for the benefit of the employer.

36.     Defendants' fiduciary obligations under ERISA require them to scrupulously avoid any transaction in which Plan assets would by used by, or inure to the benefit of, a party in interest in connection with the Plan.

## DEFENDANTS' MULTIPLE BREACHES OF FIDUCIARY DUTY

### Defendants' Inclusion of Retail Mutual Funds Among The Plan's Investment Options

37.     The prudent and proper selection of investment options for the Plan is one of Defendants' core fiduciary obligations.

38.     In the financial and investments industry, a large institutional investor with billions of dollars, like the Plan, routinely can obtain lower prices for investment management services than can a retail investor with only thousands, or even a few million, dollars.

39.     As fiduciaries, Defendants were obligated to use the Plan's bargaining power to require that investment managers provide institutional shares, separate investment accounts, collective investment trusts or common collective funds as Plan investment options instead of the retail mutual funds which make up the bulk of the Plan's investment options.

40.     The operating expenses for separate investment accounts and common or collective trusts are substantially lower than those of mutual funds because they do not have to pay for advertising, marketing and distribution, nor do they have to maintain the liquidity required for trading in publicly traded mutual funds.

41.     The Plan's fiduciaries, however, failed to make use of the Plan's bargaining power as a reasonable and prudent fiduciary would do, failed to compare the rates paid by the Plan and the participant to those available from other entities providing services to Plans of like character and like aims, and instead allowed the participants to be charged the same rates that an individual investor with only $2500 to invest would incur.

42.     As a result of this unreasonable and imprudent behavior by the fiduciaries, the Plan and the participants paid unreasonable and excessive fees and experienced losses.

### Payment of Unreasonable Fees and Expenses

43.     In addition to investment management, the operation of a 401(k) plan requires a number of services, including record-keeping, trading/brokerage costs, and custodial/trustee services.

44.     Each service provider charges a fee for the services provided. In some cases, the fees may be paid by the Plan Sponsor.  In other cases, the fees may be paid directly by the Plan itself.  These direct payments are referred to as hard-dollar payments.

45.     However, in entering into the Trust Agreement, the Defendants chose to have the Fidelity Defendants' fees for operating and administering the Plan paid through a revenue-sharing arrangement.  In a revenue-sharing arrangement, the Plan's investment options – here the 68 mutual funds and the 6 collective trusts – assess asset-based charges ("expense ratios") against Plan assets for the ostensible purpose of operating and managing the investment fund.

But in truth, such expense ratios include *both* fees collected for these ostensible purposes *and*

excess fees included in the expense ratio for the purpose of providing monies for the investment

fund's revenue-sharing arrangement.

46.     Based upon the ostensible reasons for which the expense ratios are imposed, Plan

participants investing in one of the investment funds are led to expect and believe that the fees

collected from their savings will benefit them by paying the costs of operating the investment

option and managing the investments.

47.     This, however, is false.  The Plan's investment funds divert the revenue-sharing

payments from the investment fund to other Fidelity affiliates, to other Plan service providers

and/or others with some connection with the investment fund or the Plan.

48.     Thus, in this case, the Plan contributions, which include the fees for operating and

administering the Plan, are divided up among the Fidelity companies, some fees being allocated

to FMRCo, FMTC and Pyramis for managing the investments, some fees being allocated to

FMTC for custodial services, some fees being allocated to FIISC for selling and distributing the

funds and the Plan services, and some fees being allocated to FIIOC for record-keeping and

administration services.  In addition to the expense ratio, fees are also paid to Fidelity Brokerage

Services or other brokers for trading the securities in the funds. The participants are not parties to

any of these agreements and do not know their terms.

49.     Because the Fidelity entities keep the revenue-sharing payments within the

Fidelity Investments umbrella, the total amounts that the Fidelity affiliates receive are in excess

of the fees that they would retain if the Plan included service providers that were not affiliated

with Fidelity.  The Fidelity affiliates are able to retain these additional payments because the

Unisys Defendants: (A) employ Fidelity affiliates as both the Plan's record keeper and trustee;

and (B) FMTC or a delegate exercises control over the fund selection process so that the Unisys Defendants are able to select only investment options that are also managed within the Fidelity Investments group; (c) FMTC or a delegate exercises control over the management and administration of the Plan so that the administrative and record

50.     All investment returns in any of the funds are reported net of fees, so that the participants do not see the fees being deducted from their accounts. Participants are not told how much they pay to operate and administer their Plan.

51.     It is the duty of the Plan's fiduciaries to compare the fees being paid by the Plan with those available to similarly situated plans in the large plan retirement services market and with the services provided to the Plan, and thus to ensure that only reasonable fees are paid by the Plan and the participants out of their assets.

52.     It costs the same to administer a participant account holding $100,000.00 as it does an account holding $10,000.00 or only $1,000.00.  For this reason, administrative fees are usually calculated on a per participant basis.

53.     However, when a revenue-sharing arrangement is used, the fees for these services are charged as a percentage of the money invested in the funds, so that as the amount of money rises with new Plan contributions and/or investment gains, the raw amount of fees collected rises as well.  As the raw amount of fees collected from the funds rises each year, the amount of money available for Plan administration also rises each year, even though the amount and type of services provided to the Plan does not.

54.     The Defendants here failed to fulfill their fiduciary duty to track and account for fees, and as a result, the amount paid by the Plan for record-keeping and administrative services is unreasonable and excessive, causing losses to the Plan.

**Failure To Capture Additional Compensation Streams For the Benefit of the Plan**

55.     Beyond collecting fees from the Plan through revenue sharing payments, the Plan service providers receive additional, undisclosed compensation from their dealings with the Plan and Plan assets ("Additional Compensation Streams").  For example:

- consultants receive finders' fees from investment managers for the consultants' placement of Plan assets with a certain investment manager or mutual fund company;

- monies awaiting investment or redemption earn interest and generate fees which are used for the benefit of Plan service providers instead of the Plan;

- investment managers and mutual funds receive payments for lending securities, owned by the Plan, to third parties; and

- in connection with foreign investments, investment managers and mutual funds reap additional compensation from profiting on foreign currency exchange.

56.     In a multi-billion dollar plan, like the Plan here, such Additional Compensation Streams result in the Plan paying, and service providers receiving, millions of dollars in excess compensation.

57.     Accordingly, the Plan's fiduciaries must also understand and consider these Additional Compensation Streams in fulfilling their fiduciary obligations to ensure that the Plan's fees and expenses are reasonable for the services provided, incurred solely for the benefit of the Plan and its participants and beneficiaries, and free of conflicts of interest and prohibited transactions.

58.     Here, the Defendants failed to do so.

### Defendants' Payments for Active Investment Management

59.     Sixty-seven (67) of the Plan's funds, holding approximately $2 billion in 2005, are actively managed, and this has been true for years.  In actively managed funds, the investment managers seek to outperform the fund's benchmark, to "beat the market."  Active management is more expensive than passive management, in which investment managers conform their holdings to those of a particular benchmark.  Passive managers provide market returns for low fees.

60.     The inclusion of actively managed mutual funds is detrimental to the interests of the Plan and its participants and beneficiaries.  It repeatedly has been established that actively managed mutual funds rarely outperform market indexes on a risk-adjusted basis when held as long-term investments.   However, actively managed mutual funds generate significantly higher management fees and revenue sharing fees than do passively managed funds.

61.     Defendants' inclusion in the Plan of actively managed funds provided (and provides) no added value to participants while forcing them to bear substantial and unnecessary fees.  Over time and on a risk-adjusted basis, the Plan's actively managed funds have under-performed, and are known to under-perform, comparable market indexes by at least as the level of such fees.

62.     Including actively managed mutual funds as investment options in the Plan virtually guaranteed that participants and beneficiaries would receive less than a market return on their long-term retirement savings, when they could have received market returns.  In doing so, Defendants breached their core fiduciary duties to the Plan.

## Defendants' Campaign of Misrepresentation and Non-Disclsoure

63.    As set forth above, Defendants have not disclosed, and/or have affirmatively concealed, a litany of material information including:

A.    That the Plan's size and asset value should have enabled Defendants to provide lower-priced investment options but the Defendants squandered the Plan's enormous bargaining power and left participants of a nearly $ 3 billion plan in the same circumstances as small, retail investors;

B.    That the Defendants agreed to structure the payment of the Plan's administrative expenses through a revenue-sharing arrangement, that the participants and the Plan are the ones who pay these administrative expenses, and the amount of the administrative expenses that were paid to each Plan service provider for administrative expenses;

C.    The identities of all of the parties receiving Plan assets, how much each received, and what services they provided to the Plan or the participants in exchange for such fees;

D.    That the expense ratios charged in Plan investment options were and are inflated to include amounts with which to make revenue sharing payments;

E.    That the excessive fees and expenses assessed against their accounts substantially would undermine the value of participants' retirement savings over time;

F.    That Plan service providers were and/or are receiving excess payments via Additional Compensation Streams, and that such monies were available for the benefit of the Plan;

G.    Whether hidden payments of Plan assets, derived from participants'

accounts, are masking prohibited transactions and/or conflicts of interests

between or among Plan fiduciaries and service providers;

64.    Because the Defendants failed and refused to provide them with this information,

and concealed this information from them, Plan participants have lacked the information

necessary for them: (a) to understand and protect their interests in the Plan; (b) to have

knowledge regarding the Defendants' breaches of fiduciary duty; and (3) to have reason to

believe they should make inquiry about those breaches and the facts underlying them.

65.    Defendants know that Plan participants lack such information and knowledge.

66.    In their fiduciary roles, Defendants are the parties with the information necessary

to know and understand whether the participants' rights and protections under ERISA are being,

or have been, violated.  ERISA fiduciaries, such as Defendants here, have an affirmative

obligation to provide full and accurate information to the Plan participants regarding the

administration of the Plan.

67.    As a result of all of the foregoing, including Defendants' campaign of non-

disclosure, concealment and misrepresentation, Plaintiffs and all Plan participants and

beneficiaries have been forced to pay excessive fees and expenses from their 401(k) accounts,

have suffered financial losses and damages, and have been deprived of the opportunity to receive

market returns.

## COUNT I:

### Breach of Fiduciary Duty – ERISA §502(a)(2)

68.    Plaintiffs restate and incorporate the allegations contained in ¶¶ 1 through 67

as though fully set forth here.

69.  As set forth above, Defendants owe to the Plan, its participants and beneficiaries, and the Class extensive fiduciary duties.

70.  As set forth above, Defendants breached their fiduciary obligations to the Plan, Plan participants and beneficiaries and the Class by, among other conduct to be proven at trial:

A.  Failing to act as a reasonable and prudent fiduciary to a similarly situated plan and use the Plan's enormous bargaining power to obtain low-cost investment options appropriate for a multi-billion dollar 401(k) plan so that the Plan and the participants paid unreasonable and excessive fees and costs;

B.  Failing to properly and prudently select Plan investment options and Plan service providers, making selections for self-interested reasons, and/or abdicating their responsibilities to make such selections;

C.  Causing, or allowing the Plan to pay – directly or indirectly -- fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

D.  Failing to monitor the fees and expenses paid by the Plan and/or failing to monitor the Plan service providers and, by such failure, causing and/or allowing the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

E.  Engaging in, and causing the Plan to engage in, prohibited transactions;

F.  Failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

G.  Failing to appoint prudent and loyal Plan fiduciaries and/or monitor the performance of the fiduciaries appointed;

H.  Allowing Plan service providers, at the Plan's expense, to receive Additional Compensation Streams and failing to capture Additional Compensation Streams for the benefit of the Plan and its participants;

I.  Failing to inform and/or disclose to Plan participants in proper detail and clarity the transaction fees, and other fees and expenses which affect participants' accounts balances, including those incurred through a purchase or sale;

J.  Failing to exercise the loyalty, care, skill, prudence and diligence that a prudent person would when acting in like capacity and familiar with such matters.

71.    As set forth in detail above, as a result of these breaches, the Plan, Plaintiffs, the Class, and the Plan's participants and beneficiaries have suffered financial losses and damages.

72.    Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), Defendants are personally liable to make good to the Plan for the losses it experienced as a result of Defendants' breaches of fiduciary duty and  are personally liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

## COUNT II:

### Other Remedies for Breach of Fiduciary Duty – ERISA §502(a)(3)

73.     Plaintiffs restate and incorporate the allegations contained in ¶¶ 1 through 72 as though fully set forth here.

74.     In addition to, and as an alternative to, the causes of action stated in Count I, Plaintiffs seek further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3).

75.     Under ERISA §502(a)(3), a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

76.     Defendants are the primary fiduciaries of the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

77.     Defendants have exclusive discretion and control over the Plan's assets and are strictly obligated to exercise that control "for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan."

78.     By accepting possession and control over Plan participants' assets, Defendants necessarily have also accepted the obligation to explain and account for every transaction, expenditure, application and distribution of such assets.

79.     Although *only* Plan participants and beneficiaries are entitled to Plan assets and to the benefit of Plan assets, in the absence of full and candid disclosure from Defendants, Plan participants and beneficiaries do not know, and have no means of knowing, how their assets have been managed and disbursed.

80.     Accordingly, Defendants occupy the position of a common law trustee in connection with the Plan, its assets, and its participants and beneficiaries.

81.     As set forth in detail above, Defendants have caused and/or allowed the Plan to pay – directly and indirectly – excessive and unreasonable fees and expenses to Plan service providers.  Litigating and resolving these issues will involve identifying and reconciling multiple transfers, payments, and flows of Plan assets that occurred while such Plan assets were within Defendants' possession and control.

82.     Defendants, and not the Plaintiffs, are the entities which have and/or should have specific and detailed information regarding how Plan assets have been treated and disbursed in this regard.

83.     An accounting is a particularly appropriate equitable remedy in circumstances where, as here, the underlying action and accounts are so complicated that a normal action for a fixed sum may not be practical.

84.     In such an accounting, in light of their possession and control of Plan assets and information about how Plan assets have been applied and distributed, Defendants must bear the burden of proving all Plan transactions and their propriety.

85.     Accordingly, the Court should order that Defendants render an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of, the Plan and its assets.

86.     Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties.

87.     Plaintiffs respectfully request that the Court charge/surcharge against the Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA.

88.     Plaintiffs further seek injunctive and other appropriate equitable relief to redress the wrongs described above and to cause them to cease so that the Plan's participants and beneficiaries to receive the full benefit of their retirement savings in the future.

## COUNT III:

### Other Remedies Against FMTC, FMRCo, and FIIOC
### ERISA §502(a)(3)

89.     Plaintiffs restate and incorporate the allegations contained in ¶¶ 1 through 88 as though fully set forth here.

90.     As a further alternative to the causes of action stated in Count I and to the extent that the Defendants are found not to be fiduciaries, Plaintiffs seek further relief against Defendants FMTC, FMRCo, and FIIOC pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

91.     One form of equitable relief available under section 503(a)(3) is equitable restitution.

92.     By charging the Plan for and retaining the excessive fees and other monies, including monies earned through Alternative Compensation Streams, Defendants FMTC, FMRCo, and FIIOC obtained funds that should have been used solely for the benefit of Plans' participants and beneficiaries for the exclusive purposes of providing benefits to participants in the Plans and their beneficiaries and defraying reasonable expenses of administering the Plans.

93.     FMTC, FMRCo, and FIIOC knew or should have known that those monies were the Plans' assets and that they should have been used solely for the benefit of the Plans'

participants and beneficiaries for the exclusive purposes of providing benefits to participants in the Plans and their beneficiaries and defraying reasonable expenses of administering the Plan.

94.     Because these payments were used for purposes not permitted by ERISA, these monies rightfully and in good conscience belong to the Plan, and the participants and beneficiaries of the Plan.

95.     The payments are specifically identifiable funds and are in the possession, control, and/or custody of FMTC, FMRCo, and/or FIIOC.

96.     Plaintiffs, on behalf of the Plans, seek equitable restitution of the payments, along with any profit, from FMTC, FMRCo and FIIOC.

WHEREFORE Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

- find and declare that the Defendants have breached their fiduciary duties as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

- award actual damages to the Plan in the amount of its monetary losses;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and cause the Defendants to disgorge such monies and return them to the Plan;

- reform the Plan documents so that they conform with the provisions of ERISA and order relief to the Plan flowing from such reformation;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- require Defendants to render an accounting as set forth above;

- surcharge against Defendants and in favor of the Plan all amounts involved in transaction which such accounting reveals were or are improper, excessive and/or in violation of ERISA;

- permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

- award to the Plaintiffs and the Class their attorneys fees and costs pursuant to ERISA § 502(g);

- order costs and attorneys fees pursuant to ERISA § 502(g) and the common fund doctrine;

- order equitable restitution or other available equitable relief against the Defendants;

- order the payment of interest to the extent it is allowed by law; and

- grant any other and further relief the Court deems appropriate.

**JURY DEMAND**

Plaintiffs demand a jury trial on all counts and issues so triable.

Respectfully Submitted,

SCHLICHTER, BOGARD & DENTON

Jerome J. Schlichter
Elizabeth J. Hubertz (motion for *pro hac vice*
admission pending)
Troy A. Doles
100 South Fourth Street
Suite 900
St. Louis, MO 63102
Tel:    314-621-6115
Fax:    314-621-7151
Lead Counsel for Plaintiffs


Theodore H. Jobes
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
Tel:    215-299-2786
Fax:    215-299-2150
Local Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that on July 16, 2007, a copy of Plaintiffs' First Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Joseph J. Costello
jcostello@morganlewis.com
Brian T. Ortelere
boretelere@morganlewis.com
Jamie M. Kohen
jkohen@morganlewis.com
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5295/5150/5472
Fax: 215.963.5001
Counsel for the Unisys Defendants

Stephen Harburg
Shannon Barrett
Stephen Brody
O'Melveny & Myers
1625 Eye Street, NW
Washington, DC 20006
Tel: 202.383.5300
Fax: 202.383.5414
Counsel for FMTC and FMRCo

Fidelity Investments Institutional Operations Company, Inc.
82 Devonshire Street
Boston, MA  02109

Defendant


_____
Theodore H. Jobes