**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| MARK RENFRO and GERALD LUSTIG, as representatives of a class of similarly situated persons, and on behalf of the Plan,<br><br>          Plaintiffs,<br><br>   vs.<br><br>UNISYS CORPORATION, UNISYS CORPORATION EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, UNISYS CORPORATION SAVINGS PLAN MANAGER, PENSION INVESTMENT REVIEW COMMITTEE, FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY MANAGEMENT & RESEARCH COMPANY, and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC.,<br><br>          Defendants. | Civil Action No.  07-2098<br><br>Honorable Bruce W. Kauffman<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>THE UNISYS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF UNDISPUTED FACTS .......................................................... 4

    A.    The Parties ................................................................................................. 4

    B.    Plan Information Provided To Participants ............................................... 7

III.    ARGUMENT ........................................................................................................ 8

    A.    Standard For Motion For Summary Judgment ......................................... 8

    B.    Plaintiffs' Breach Of Fiduciary Duty Claim Based On Failure To Disclose Revenue Sharing Payments Fails As A Matter Of Law Because ERISA Does Not Require Such Disclosures. ............................................................ 10

        1.    No ERISA Statutory Provision Mandates Disclosure Of Revenue Sharing ......................................................................................... 11

        2.    No ERISA Regulation Mandates Disclosure Of Revenue Sharing ........ 12

        3.    There Can Be No General Fiduciary Breach Liability For Failure To Disclose Revenue Sharing Where The Applicable ERISA Regulations Are Satisfied. ....................................................... 17

    C.    Because The Unisys Defendants Satisfied Both The Statutory And Regulatory Disclosure Requirements, ERISA Section 404(c) Compels Dismissal Of The Entire Lawsuit. ........................................................... 20

    D.    Plaintiffs' Failure to Plead Causation Compels Dismissal Of The Entire Lawsuit. ................................................................................................... 24

    E.    Because Plaintiffs Have Not Sufficiently Alleged Fraud Or Concealment, Their Claims Must Be Limited To Six Years Prior To The Filing Of Their Amended Complaint. .......................................................................... 28

IV.    CONCLUSION ................................................................................................... 31

# TABLE OF AUTHORITIES

**Page**

## CASES

Abrams v. Dean Witter Reynolds Inc.,
60 F. Supp. 2d 433 (E.D. Pa. 1999) ...........................................................................20

Ackerman v. Warnaco, Inc.,
55 F.3d 117 (3d Cir. 1995)...............................................................................17, 18

Adams v. Freedom Forge Corp.,
204 F.3d 475 (3d Cir. 2000)........................................................................................25

Allison v. Bank One-Denver,
289 F.3d 1223 (10th Cir. 2002) ..................................................................................25

Bash v. Firstmark Standard Life Ins. Co.,
861 F.2d 159 (7th Cir. 1988) ........................................................................................4

Brown v. Am. Life Holdings, Inc.,
190 F.3d 856 (8th Cir. 1999) ......................................................................................12

Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research
Found., 334 F.3d 365 (3d Cir. 2003) ..........................................................................25

Curtiss-Wright Corp. v. Schoonejongen,
514 U.S. 73 (1995)......................................................................................................18

Davis v. Grusemeyer,
996 F.2d 617 (3d Cir. 1993).........................................................................................29

Dura Pharm., Inc. v. Broudo,
544 U.S. 336 (2005).....................................................................................................25

Ehlmann v. Kaiser Found. Health Plan,
198 F.3d 552 (5th Cir. 2000) ......................................................................................17

Faircloth v. Lundy Packing Co.,
91 F.3d 648 (4th Cir. 1996) ...................................................................................12, 17

Ferdinand Drexel Inv. Co. v. Alibert,
723 F. Supp. 313 (E.D. Pa. 1989) ...............................................................................25

Forbes v. Eagleson,
228 F.3d 471 (3d Cir. 2000).........................................................................................29

# TABLE OF AUTHORITIES
## (continued)

Gashlin v. Prudential Ins. Co. of Am. Ret. Sys.,
286 F. Supp. 2d 407 (D.N.J. 2003) ....................................................................................12

Hardy v. United States, No. Civ.A. 03-CV-0042,
2003 WL 22425003 (E.D. Pa. Oct. 22, 2003)...................................................................19

Hecker v. Deere & Co., No. 06 C 719 S,
2007 WL 1874367 (W.D. Wis. Jun. 21, 2007) .......................................... 11, 12, 14, 17, 21-24, 26

Horvath v. Keystone Health Plan East, Inc.,
333 F.3d 450 (3d Cir. 2003)...............................................................................................19

Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan,
72 F.3d 686 (9th Cir. 1995) ...............................................................................................17

Hussey v. Chase Manhattan Bank,
418 F. Supp. 2d 702 (E.D. Pa. 2005) ........................................................................... 19-20

Jenkins v. Yager,
444 F.3d 916 (7th Cir. 2006) .............................................................................................23

Jensen v. SIPCO, Inc.,
38 F.3d 945 (8th Cir. 1994) ...............................................................................................19

Jordan v. Fed. Express Corp.,
116 F.3d 1005 (3d Cir. 1997)....................................................................................... 17-18

Kurz v. Phila. Elec. Co.,
96 F.3d 1544 (3d Cir. 1996)...................................................................................28, 29, 30

Langbecker v. Elec. Data Sys. Corp.,
476 F.3d 299 (5th Cir. 2007) .............................................................. 22, 24, 26, 27-28

Leckey v. Stefano, Nos. 06-2483, 06-3161, 06-3162,
2007 WL 2458540 (3d Cir. Aug. 31, 2007)......................................................................29

Lewis v. Casey,
518 U.S. 343 (1996).........................................................................................................27

Loomis v. Exelon Corp.,
No. 06 C 4900, slip op. at 2 (N.D. Ill. Feb. 21, 2007) ....................................................26

Lum v. Bank of Am.,
361 F.3d 217 (3d Cir. 2004).............................................................................................30

**TABLE OF AUTHORITIES**
**(continued)**

Lunderstadt v. Colafella,
885 F.2d 66 (3d Cir. 1989)..................................................................................9

In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,
434 F. Supp. 2d 233 (S.D.N.Y. 2006).................................................................26

In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.,
No. 03 Civ. 8208(RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)..............26

Nechis v. Oxford Health Plans, Inc.,
421 F.3d 96 (2d Cir. 2005).................................................................................17

Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse,
879 F.2d 1146 (3d Cir. 1989)..............................................................................19

Pension Benefit Guar. Corp. v. LTV Corp.,
496 U.S. 633 (1990)..............................................................................................4

Pelullo v. Nat'l Union Fire Ins. Co.,
131 F. App'x 864, 866 (3d Cir. 2005) ................................................................29

Radiology Ctr. v. Stifel, Nicolaus & Co.,
919 F.2d 1216 (7th Cir. 1990) ...........................................................................29

Ranke v. Sanofi-Synthelabo Inc.,
436 F.3d 197 (3d Cir. 2006)..........................................................................29, 30

Register v. PNC Fin. Servs. Group, Inc.,
477 F.3d 56 (3d Cir. 2007)..................................................................................18

Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,
742 F.2d 786 (3d Cir. 1984)................................................................................30

Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,
365 F.3d 353 (5th Cir. 2004) ................................................................................2

Sprague v. Gen. Motors Corp.,
133 F.3d 388 (6th Cir. 1998) ..............................................................................19

In re Unisys Corp. Retiree Med. Benefit ERISA Litig.,
242 F.3d 497 (3d Cir. 2001)................................................................................29

In re Unisys Corp. Retiree Med. Benefit ERISA Litig.,
57 F.3d 1255 (3d Cir. 1995).................................................................................18

# TABLE OF AUTHORITIES
### (continued)

In re Unisys Sav. Plan Litig.,
74 F.3d 420 (3d Cir. 1996)........................................................................ 14, 20-23, 26

Scott v. Graphic Commc'n Int'l Union, Local 97-B,
92 F. App'x 896, 900 (3d Cir. 2004) ...........................................................................9

United States v. Clark,
454 U.S. 555 (1982)..................................................................................................14

Volpacchio v. Budd-UAW Consol. Ret. Benefit Plan, No. Civ. A. 03-2161,
2004 WL 2677173, (E.D. Pa. Nov. 22, 2004) ...........................................................8, 9

W. Va. Univ. Hosps., Inc. v. Rendell, Civil No. 1:CV-06-0082,
2006 WL 3042971 (M.D. Pa. Oct. 20, 2006) ...........................................................9-10

Walker v. Pharm. Research & Mfrs. of Am.,
461 F. Supp. 2d 52 (D.D.C. 2006) ...........................................................................29

Wright v. Or. Metallurgical Corp.,
360 F.3d 1090 (9th Cir. 2004) ...................................................................................14

## STATUTES

Fed. R. Civ. P. 9(b) ..................................................................................................29

Fed. R. Civ. P. 12(b) ..................................................................................................9

Fed. R. Civ. P. 56(f) ..................................................................................................9

26 U.S.C. § 401(k) .....................................................................................................4

29 U.S.C. § 1002(34) ...............................................................................................4, 27

29 U.S.C. §§ 1021-31 ................................................................................................11

29 U.S.C. § 1023(a) ..............................................................................................11, 15

29 U.S.C. § 1023(b)(3) ..............................................................................................11

29 U.S.C. § 1024(b)(1) and (3) .................................................................................11

29 U.S.C. § 1024(b)(4) ..............................................................................................12

29 U.S.C. § 1104(c)(1)...............................................................................................21

## TABLE OF AUTHORITIES
### (continued)

29 U.S.C. § 1104(c)(1)(B) ..................................................................................................21, 22

29 U.S.C. § 1109(a) ...................................................................................................................25

29 U.S.C. § 1113.........................................................................................................................28

29 U.S.C. § 1132(a)(2)................................................................................................................25

## REGULATIONS

29 C.F.R. § 2520.103-1(b)(2)(ii) ...............................................................................................13

29 C.F.R. § 2520.104b-10...........................................................................................................13

29 C.F.R. § 2520.104b-10(d)(3) .................................................................................................13

29 C.F.R. § 2550.404c-1(b)(2)(i)(B) ..........................................................................................22

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(*1*)(*v*) ............................................................................15, 22

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(*1*)(*vi*) ................................................................................15

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(*2*)(*i*) ............................................................................15, 23

57 Fed. Reg. 46,906, 46,924 .......................................................................................................22

71 Fed. Reg. 41,392, 41,394 .......................................................................................................14

**TABLE OF AUTHORITIES**
**(continued)**

**MISCELLANEOUS**

United States Government Accountability Office, <u>Private Pensions: Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better Information on Fees</u>, GAO-07-21 (Nov. 2006) ............................................................2, 5, 7, 10, 13, 23

Instructions for DOL Form 5500, Schedule H at 42, <u>available</u> <u>at</u> <u>http://www.dol.gov/ebsa/5500main.html</u> (last visited August 27, 2007) .........................13

Advisory Council on Employee Welfare and Pension Benefit Plans, <u>Report of the Working Group on Plan Fees and Reporting on Form 5500</u> (Nov. 11, 2004), <u>available</u> at <u>http://www.dol.gov/ebsa/pdf/ac_111804_report.pdf</u> (last visited August 30, 2007)....................................................................................................................15

United States Department of Labor Employee Benefits Security Administration, <u>A Look at 401(k) Plan Fees</u>, <u>available</u> <u>at</u> <u>http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf</u> (last visited August 30, 2007) ...................................................................................................................27

## I.   __INTRODUCTION__

Plaintiffs Mark Renfro and Gerald Lustig ("Plaintiffs"), participants in the Unisys

Corporation Savings Plan (the "Plan"), allege that Defendants Unisys Corporation, Unisys

Corporation Employee Benefits Administrative Committee, Unisys Corporation Savings Plan

Manager, and Pension Investment Review Committee (collectively, the "Unisys Defendants")

breached their fiduciary duties under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001-1461.  The Unisys Defendants hereby move for summary

judgment on both of Plaintiffs' claims on the ground that the undisputed facts, derived from the

applicable Plan documents, Summary Plan Descriptions ("SPDs"), prospectuses, and other

materials provided to Plan participants, establish a complete defense to Plaintiffs' claims.

Plaintiffs' claims stem from their individual decisions of how to allocate their 401(k)

retirement savings across a variety of mutual funds and other investments in the Plan (each with

its own varying fees and expenses charged to participants' accounts).  In essence, Plaintiffs

maintain that the fees and expenses charged against their individual 401(k) accounts to manage

their investments and administer those monies were excessive and not properly disclosed.  This,

they claim, gives rise to a breach of ERISA's fiduciary standards.

As is common with large retirement savings plans, the Plan's fiduciaries contracted with

a third party, Fidelity Management Trust Company ("FMTC"), to provide administrative and

recordkeeping services to the Plan.  (See Amended Complaint ("Am. Compl.") ¶¶ 14-15).[1]  At

bottom, although Plaintiffs acknowledge that the Unisys Defendants disclosed the total amount

of fees or expenses charged to the Plan and netted out of their investments (and are content, it

---

[1]    Plaintiffs list FMTC and Fidelity Investments Institutional Operations Company, Inc. ("FIIOC"), as well as Fidelity Management & Research Company ("FMRCo"), as additional defendants in this lawsuit (collectively, the "Fidelity Defendants").

appears, to quibble with the adequacy of the Department of Labor's ("DOL") disclosure format),

they maintain that the transfers of some portion of that money, so-called "revenue sharing" or

"soft dollar" payments to FMTC, were not disclosed to them.[2]  In other words, while Plaintiffs

were told the total amount of the expenses paid (albeit in a format they think inadequate), they

contend that the Unisys Defendants should have provided them with more detail about the

manner in which expenses were further distributed to the Plan's service providers, including the

amount each service provider received.  In that regard, their Amended Complaint contains a

variety of allegations regarding information Plaintiffs contend the fiduciaries should have told

them related to revenue sharing.

        The issues before the Court are much simpler than Plaintiffs' lengthy Amended

Complaint suggests.[3]  While Plaintiffs set forth a variety of allegations regarding information

that the Unisys Defendants should have provided them, they do not allege, and indeed cannot

prove, that the disclosures made to them were inadequate under ERISA or the DOL's regulations

construing the relevant statutory provisions.  In other words, the Unisys Defendants disclosed

everything that was required to be disclosed under the governing statute and regulations.  The

prospectuses relating to each of the Plan's investments set forth all of the information Plaintiffs

---

[2]     As explained by the General Accounting Office in its recent report to Congress ("GAO
        Report"), "revenue sharing" often constitutes compensation "out of the investment funds'
        operating expenses for [recordkeeping] services, such as maintaining individual account
        records for its retail investors and consolidating participant requests to buy or sell shares."
        United States Government Accountability Office, Private Pensions: Changes Needed to
        Provide 401(k) Plan Participants and the Department of Labor Better Information on Fees,
        GAO-07-21, at 14-15 (Nov. 2006), available at http://www.gao.gov/new.items/d0721.pdf
        (last visited August 30, 2007).

[3]     As is unfortunately all too common in such pleadings, "a garrulous style is not an
        uncommon mask for an absence of detail."  Southland Sec. Corp. v. INSpire Ins. Solutions
        Inc., 365 F.3d 353, 362 (5th Cir. 2004).

need to make informed investment decisions, and it is undisputed that Plaintiffs were given this information.  Accordingly, their disclosure claims fail as a matter of law.

The fundamental defects of Plaintiffs' disclosure claim are, in turn, fatal to their other breach of fiduciary duty claims.  Once the Court properly recognizes that Plaintiffs were told all that is necessary under the specific statutory and regulatory provisions they invoke, judgment should be entered in Unisys' favor pursuant to ERISA section 404(c), 29 U.S.C. § 1104(c).  Unisys provided participants all the information that ERISA and its accompanying regulations require so that participants could make informed decisions with regard to the Plans' investment alternatives.  With such autonomy, however, comes responsibility.  Where, as here, participants are given the opportunity to select among over 70 diverse investments options, and are given the information the DOL and ERISA requires related to these varied investments, the Third Circuit has held that ERISA section 404(c) expressly immunizes the fiduciaries from any claimed fiduciary breaches stemming from participants' individual elections regarding those investments.[4]

Alternatively, Plaintiffs' inability to prove causation compels dismissal of the entire lawsuit.  Plaintiffs make no allegations regarding the Plan's individual funds' performance net of fees and expenses; hence, there can be no finding that the supposed breaches caused harm.  Lastly, and at a minimum, the claims in this suit should be limited to the six-year period prior to the commencement of this action, because Plaintiffs failed to assert allegations that would toll the governing statute of limitations.

---

[4]   The Unisys Defendants also dispute any allegation that the funds selected were inappropriate and that fees and expenses incurred by the Plan are in fact unreasonable or excessive, but do not address those issues in this Motion.

## II.   STATEMENT OF UNDISPUTED FACTS[5]

### A.   The Parties

Defendant Unisys Corporation ("Unisys" or the "Company") is a Delaware corporation, with a principal place of business in Blue Bell, Pennsylvania, that is one of the leaders in the information technology ("IT") consulting business, providing such services as systems integration, network engineering, project management, and technical support.  (Am. Compl.¶ 5).

Unisys is the plan sponsor for the Unisys Corporation Savings Plan (the "Plan"), a defined contribution plan, commonly known as a 401(k) plan, which provides for an individual account for each Plan participant.[6]  The Amended Complaint alleges that the Unisys Defendants breached their fiduciary duties to the Plan in which each participant voluntarily contributes a portion of his/her earnings and choose how his/her contributions are invested.  (Am. Compl. ¶¶ 23, 34-35).  As the plan sponsor, Unisys provides matching contributions to the Plan in varying

_____

[5]   To the extent the Unisys Defendants rely on the allegations of Plaintiffs' Amended Complaint, these facts are "undisputed" only for purposes of this Motion.

[6]   Such plans are commonly referred to as "401(k) plans" because of the favorable tax treatment given participants' investments under section 401(k) of the Internal Revenue Code.  26 U.S.C. § 401(k).  Moreover, under the parlance of ERISA, the Plans are "individual account plans" or "defined contribution plans."  As the latter terms suggest, only the amounts contributed to the Plan are specified or defined, with the money available at retirement determined by the performance of the investments, net of fees and expenses.  29 U.S.C. § 1002(34) ("The term 'individual account plan' or 'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.").  Unlike traditional defined benefit plans, the investment risk in a defined contribution plan is borne solely by employee-participants, not the employer.  E.g., Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 637 n.1 (1990) (in a defined contribution plan (such as the Unisys Savings Plan) "employees are not promised any particular level of benefits; instead, they are promised only that they will receive the balances in their individual accounts"); Bash v. Firstmark Standard Life Ins. Co., 861 F.2d 159, 163 (7th Cir. 1988) (to impose open employer/plan sponsor investment risk in a defined contribution plan "is an inequity of the heads I win, tails you lose variety that neither the ERISA statute nor the [defendant's] pension plan documents perpetrate").

percentages.  (Id. ¶ 24).  The Plan is set forth in a Plan document, the Unisys Corporation

Savings Plan, which is periodically amended and restated, most recently as effective January 1,

2005.  (See Unisys Corporation Savings Plan, Declaration of Michael F. Lapetina in Support of

the Motion for Summary Judgment of the Unisys Defendants ("Lapetina Decl.") Ex. A).  Plan

benefits are based solely on the amounts contributed to a participant's account and any income,

gains and losses that may be allocated to such participant's account as a result of his/her

investments.  (See Plan Summary Plan Description ("SPD"), Lapetina Decl. Ex. B at 15-16).

　　　The Plan allows participants to choose among over 70 diverse investment options.  (Am.

Compl. ¶ 28).  These investment options provide participants with a broad range of alternatives,

so that participants can structure an investment portfolio consistent with their individual

objectives and risk tolerances.  For example, participants can invest in a relatively low risk

option like the Fidelity U.S. Bond Index, or can assume a higher level of risk by investing their

money in the Fidelity Latin America Fund.  (See SPD, Lapetina Decl. Ex. B at A-14, A-21;

Prospectus for Fidelity U.S. Bond Index Fund, Lapetina Decl. Ex. C; Prospectus for Fidelity

Targeted International Equity Funds, including the Fidelity Latin America Fund, Lapetina Decl.

Ex. D).  A variety of passively-invested index funds are also available to Plan participants.  (See

SPD, Lapetina Decl. Ex. B at A-22, A-23; Prospectus for Fidelity Spartan Total Market Index-

Investor Class and Fidelity Spartan Extended Market Index- Investor Class Funds, Lapetina

Decl. Ex. E).[7]

---

[7]　The type of investment option a participant selects impacts the associated fees and expenses.
See, e.g., GAO Report, at 11, supra n.2 at 2 (noting that index funds "have lower
management fees than actively managed funds" because the index funds "closely track a
market performance indicator, such as the Standard & Poor's 500, which largely eliminates
expenditures associated with research, investment selection, and buying and selling").

Plaintiffs contend that Defendant Unisys Corporation Employee Benefits Administrative Committee ("EBAC") and its members administer the Plan, along with Defendant Unisys Corporation Savings Plan Manager (the "Plan Manager"), Defendant Pension Investment Review Committee ("PIRC"), and Defendant Trustee, as they are described below.  (Am. Compl. ¶ 7).  The EBAC and its members are responsible for all matters relating to the administration of the Plan, including interpretation of the Plan documents, except for those duties delegated to the Plan Manager, the Investment Committee and/or the Trustee.  (Id. ¶ 8).  The Plan Manager is responsible for the day-to-day administration of the Plan and has the authority to adopt rules and guidelines for the administration and operation of the Plan.  (Id. ¶ 9).  The current (and first) Plan Manager, who has served in this role since 2005, is Michael Lapetina, who works at Unisys' headquarters in Blue Bell, Pennsylvania.  (Lapetina Decl. ¶¶ 1-2).  The PIRC is responsible for all matters relating to the control and management of the Plan assets, which includes the selection of the Plan's investment options, the selection of an investment manager and Trustees, and the monitoring of the performance of the investment manager and Trustees.  (Id. ¶ 4).

FMTC is the Plan's trustee and recordkeeper, and has, in turn, delegated the record-keeping and plan administration functions to Fidelity Investments Institutional Operations Company, Inc. ("FIIOC").  (Am. Compl. ¶¶ 12, 14-15).  FMTC and its affiliate/successor, Pyramis Global Advisors Trust Company ("Pyramis") directly manage a number of the investment options available to Plan participants.  (Id. ¶ 13).  Some or all of the Fidelity Defendants receive compensation from the Plan for these services in the form of "hard dollar" payments — cash payments made directly by the Plan to FMTC.  (Id. ¶¶ 44, 48).  Plaintiffs allege that FMTC also has "revenue sharing" arrangements with brokers or providers of certain investment options (e.g., mutual funds) to transfer Plan-asset-based compensation from such

brokers or providers to FMTC in its role as trustee, recordkeeper and administrator for the Plan.
(Id. ¶¶ 45, 48).[8]

## B.   Plan Information Provided To Participants

The Unisys Defendants provide to all Plan participants information about key aspects of

the Plan in an SPD that is updated periodically.  The SPD provides participants with a list of the

funds available and their performance history, and an Investment Performance Chart listing the

total investment return per share, based on the annual return of the net asset value of each share.

(See SPD, Lapetina Decl. ¶ 8, Ex. B, Appendices A and B).  The SPD also informs participants

that they may obtain the prospectuses, financial statements and reports and other information

regarding the various funds by calling the Unisys Savings Plan 1-800 Information Line or

visiting the Fidelity NetBenefits website.  (Id. ¶ 9; SPD, Ex. B at 12-13).  The SPD alerts

participants that they are entitled to receive upon request a copy of Unisys' Annual Report and

required public securities filings, which were incorporated by reference into the SPD, and may

obtain other Plan information upon request.  (Id. ¶ 10; SPD, Ex. B at 29-30).

---

[8]   It is odd, if not entirely inaccurate, for Plaintiffs to speak of supposed revenue sharing in these circumstances where as here, Fidelity – as mutual fund adviser and retirement plan service provider – "bundles" investment options, plan recordkeeping and other plan services. Cf. GAO Report, at 7, supra n.2 at 2 (noting that in bundled arrangements, a single business enterprise provides the full range of products and services necessary to a 401(k) plan). Plaintiffs refer to the "Fidelity Defendants'" revenue-sharing arrangements and concede that "the Fidelity entities keep the revenue-sharing payments within the Fidelity Investments umbrella."  (Am. Compl. ¶¶ 45, 49).  Plaintiffs' sleight of hand has material consequences for this Motion.  If the services are provided by constituents of one business enterprise, then internal allocations among the constituents of that single business enterprise are not "revenue sharing" that effect the total compensation paid to that enterprise.  If there is no "revenue sharing," it follows that the Unisys Defendants cannot be held liable for the supposed failure to apprise participants of the practice.  In any event, the prospectuses (see supra at 5-6) necessarily tell participants all they need to know about the funds' operating expenses.

Indeed, prior to the filing of the original Complaint in this matter, on October 25, 2006, counsel for Plaintiffs sent the Plan Manager a letter requesting information concerning the Plan on behalf of Plaintiff Mark Renfro.  (Lapetina Decl. ¶ 12, Ex. H).  Unisys' in-house counsel responded to this request on November 21, 2006, and provided information responses and various Plan-related documents, including Unisys' most recent quarterly report, the Plan document, the Plan's SPD, the 2005 Annual Report Form 5500, the Master Trust Agreement with Fidelity, the Trust Agreement with CORESTATES Bank (now Wachovia), the Participation Agreement for the Pyramis Group Trust for Employee Benefit Plans, the PIRC Guideline Policy, as well as documents relating to the specific investments into which Mr. Renfro had chosen to invest his money.  Also enclosed with the letter were copies of the most recent periodic Performance Update and quarterly report from Fidelity, which describes mutual fund performance, expense ratios and the underlying portfolio composition for each fund.  The letter also described that the prospectuses for all funds in the Plan were available to the public through the Fidelity website.  (Id. ¶ 13, Ex. I).

## III.   ARGUMENT

### A.   Standard For Motion For Summary Judgment

In deciding a motion for summary judgment, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Volpacchio v. Budd-UAW Consol. Ret. Benefit Plan, No. Civ. A. 03-2161, 2004 WL 2677173, at *2 (E.D. Pa. Nov. 22, 2004) (Kauffman, J.) (citations omitted); Fed. R. Civ. P. 56.  A court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor.  Volpacchio, 2004 WL 2677173, at *2 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  However, "there can be 'no genuine issue as to any material fact' . . . [if the non-moving party's] complete failure

of proof concerning an essential element . . . necessarily renders all other facts immaterial."

Volpacchio, 2004 WL 2677173, at *2 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986)).

Where, as here, the parties have not initiated formal discovery, a court nevertheless

should grant summary judgment where the dispositive material facts are undisputed and

judgment as a matter of law is warranted.[9]  If a party opposing summary judgment can show that

depositions are required to discover "facts essential to justify" its opposition to the motion, the

court may delay granting summary judgment and order specific limited discovery to address

such facts.  See Fed. R. Civ. P. 56(f).  However, "where a party seeks to avoid the entry of

summary judgment under Rule 56(f), he/she must move beyond mere generalities and specify

what particular information is sought [and] how, if uncovered, it would preclude summary

judgment.  . ."  Scott v. Graphic Commc'n Int'l Union, Local 97-B, 92 F. App'x 896, 900 (3d

Cir. 2004) (emphasis added) (citing Pastore v. Bell Tel. Co., 24 F.3d 508, 511 (3d Cir. 1994)

(affirming summary judgment for defendants where the plaintiffs' Rule 56(f) motion was

insufficiently specific)); see also Lunderstadt v. Colafella, 885 F.2d 66, 71 (3d Cir. 1989)

(affirming summary judgment for defendants where the plaintiffs' Rule 56(f) motion did not

specify what discovery was needed and why); W. Va. Univ. Hosps., Inc. v. Rendell, Civil No.

1:CV-06-0082, 2006 WL 3042971, at *5 (M.D. Pa. Oct. 20, 2006) (despite no discovery,

granting summary judgment and denying a Rule 56(f) motion where defendants "have not

sufficiently explained how the information sought would preclude summary judgment.").  Given

the undisputed nature of the materials upon which the Unisys Defendants rely in support of this

---

[9]     For this reason, Rule 12(b) specifically provides that a court may treat a motion to dismiss
        for failure to state a claim upon which relief may be granted as a motion for summary
        judgment under Rule 56.  See Fed. R. Civ. P. 12(b).

Motion, Plaintiffs cannot make the necessary showing under Rule 56(f).  The Court should

therefore decline to order any discovery and should now grant judgment as a matter of law in

favor of the Unisys Defendants.

**B.      Plaintiffs' Breach Of Fiduciary Duty Claim Based On Failure To Disclose Revenue Sharing Payments Fails As A Matter Of Law Because ERISA Does Not Require Such Disclosures.**

Because the Unisys Defendants satisfied their disclosure duties under ERISA and its

related regulations, Plaintiffs cannot establish that the Unisys Defendants failed to adequately

disclose the total fees and expenses for each investment option.  Nevertheless, Plaintiffs allege

that the Unisys Defendants failed to disclose revenue sharing paid by the various mutual funds to

FMTC.  (See Am. Compl. ¶ 70).  While Plaintiffs acknowledge, as they must, that the aggregate

of the mutual funds' charges are disclosed, their disclosure claims are grounded upon the

statute's general prudence standards and the premise that the Unisys Defendants failed to

disclose the "sharing" of money by the mutual funds to the recordkeeper—at best, a portion of

that aggregate amount (again, presupposing the correctness of the assumption that sharing takes

place between indistinguishable Fidelity entities).[10]  In Plaintiffs' words:  "Defendants have not

disclosed, and/or have affirmatively concealed" the revenue-sharing arrangements in place and

the excessive fees and expenses assessed against participants' accounts.  (Id. ¶ 63).

Because neither ERISA's specific disclosure requirements nor ERISA's general

standards of fiduciary responsibility require fiduciaries to disclose revenue sharing payments to

participants (assuming such payments in fact take place), the disclosure claim fails as a matter of

---

[10]   As described in the Complaint and as discussed above, Fidelity provides all of the Plan's services; in 401(k) parlance, Fidelity is a "bundled" provider.  Cf. GAO Report, at 7, supra n.2 at 2 (in a bundled arrangement, "sponsor hires one company that provides the full range of services directly or through subcontracts") (emphasis added).  Again, it makes no sense to speak of "revenue sharing" where, as here, the services to the Plan are provided by one entity.

law.  Recently, the court in <u>Hecker v. Deere & Co.</u>, No. 06 C 719 S, 2007 WL 1874367 (W.D.

Wis. Jun. 21, 2007), examining precisely the same claims in the context of a Rule 12(b)(6)

motion, found that ERISA's statutory and regulatory requirements did not mandate such

disclosure, and that general fiduciary standards therefore cannot not be used to require such

disclosure.  <u>Deere</u>, 2007 WL 1874367, at *4-5.  This Court should similarly reject Plaintiffs'

claim that the Unisys Defendants failed to satisfy their disclosure requirements.

        **1.**      **No ERISA Statutory Provision Mandates Disclosure Of Revenue Sharing**

Although ERISA sets forth certain specific reporting and disclosure obligations, <u>see</u>, <u>e.g.</u>,

29 U.S.C. §§ 1021-31, none of these provisions specifically require disclosure of revenue sharing

payments.  In their Amended Complaint, Plaintiffs assert that Plan participants should be

informed not only of each fund's expense ratios, but also provided a breakdown of the revenue-

sharing arrangement reflecting the fees allocated to record-keeping, versus trading/brokerage

costs or custodial/trustee services.  (Am. Compl. ¶¶ 43-48).  However, Plaintiffs point to no legal

provision specifically compelling such an accounting to Plan participants.

ERISA section 103 only requires a plan administrator to publish and file with the DOL an

annual report describing a plan's assets and liabilities, as well as its receipts and disbursements.

29 U.S.C. § 1023(a) and (b)(3).  Each year, such an annual report is published and filed with the

DOL, and Plaintiffs do not contend that the Unisys Defendants failed to abide by this

requirement.  (Lapetina Decl. ¶ 6).  Moreover, ERISA section 104 only requires that a plan

administrator periodically provide participants an SPD and speaks further to the timing of the

filing of the aforementioned annual report.  <u>See</u> 29 U.S.C. § 1024(b)(1) and (3).  Once again, the

Unisys Defendants met these statutory disclosure requirements.[11]  (See Lapetina Decl. ¶¶ 7-10).

ERISA section 104 further entitles participants to receive certain additional documents from the

plan administrator "upon written request."  29 U.S.C. § 1024(b)(4).[12]

Despite its superficial complexity and bluster, nowhere does the Amended Complaint

specifically allege that the Unisys Defendants failed to comply with any specific statutory

requirement.  Thus, not surprisingly, in considering claims for fiduciary breach based on the

failure to disclose revenue sharing, the district court in Deere recently held that ERISA's

statutory disclosure requirements did not mandate disclosure of revenue sharing arrangements.

Deere, 2007 WL 1874367, at *5.

## 2.    No ERISA Regulation Mandates Disclosure Of Revenue Sharing

The related DOL regulations similarly do not require the disclosure of the information

Plaintiffs allege was unlawfully withheld.  Indeed, these very regulations compel the conclusion

that there can be no finding of a fiduciary breach on the basis of a misrepresentation or omission.

Although ERISA section 103(b)(2), 29 U.S.C. § 1023(b)(2), requires plan expenses to be

included in a plan's annual report, DOL regulations further explain that the report must include

only the expense categories required to be reported on the Form 5500, the annual financial report

---

[11]   The Amended Complaint essentially concedes that the Unisys Defendants complied with
ERISA section 104, since it admits Plaintiffs were provided the Plan's disbursements, i.e.,
the "hard dollar" amounts itemized in the annual report.  (See Am. Compl. ¶¶ 44, 48, 63).

[12]   To the extent that Plaintiffs' demand for revenue sharing information can be construed as a
demand for "other instruments" under ERISA section 104(b)(4), 29 U.S.C. § 1024(b)(4),
such a demand fails, given the Third Circuit's narrow construction of the relevant statutory
language.  See Gashlin v. Prudential Ins. Co. of Am. Ret. Sys., 286 F. Supp. 2d 407, 423-24
(D.N.J. 2003) (ERISA section 104(b)(4) requires the disclosure of only the documents
described with particularity in the statute and "documents that govern the pension plan").
See also Faircloth v. Lundy Packing Co., 91 F.3d 648, 653 (4th Cir. 1996) ("[O]ther
instruments under which the plan is established or operated" encompasses only "formal or
legal documents under which a plan is set up or managed"); Brown v. Am. Life Holdings,
Inc., 190 F.3d 856, 861 (8th Cir. 1999) ("other instruments" means not simply any document
relating to a plan, but only formal documents that establish or govern the plan).

for the Plan, and its schedules.  <u>See</u> 29 C.F.R. § 2520.103-1(b)(2)(ii).  One of those schedules requires a plan administrator to "[r]eport all administrative expenses (by specified category) paid or charged by the plan."[13]  Those "administrative expenses" include professional fees, contract administrator fees, and investment advisory and management fees.  <u>Id.</u>  Similarly, the DOL regulation regarding the summary annual report that must be distributed to plan participants only requires certain expenses to be reported in the aggregate; the plan is not required to disclose any individual fees or expenses charged to a participant's account, and certainly not revenue sharing payments.  <u>See</u> 29 C.F.R. §§ 2520.104b-10; 2520.104b-10(d)(3).[14]  Here, the Plan's annual Form 5500 reports included this information, proper SPDs were distributed, and Plaintiffs do not contend that the Plan administrator breached its duties under any of these regulatory provisions. (<u>See</u> Lapetina Decl. ¶ 6).

  Careful examination of the existing (statutory and) regulatory disclosure requirements readily demonstrates that "<u>ERISA does not explicitly require plan sponsors to disclose comprehensive information on fees to participants</u>," such as revenue sharing arrangements.[15] The General Accounting Office's recent report on 401(k) plan fees further demonstrates the

---

[13] <u>See</u> Instructions for DOL Form 5500, Schedule H at 42, <u>available</u> <u>at</u> http://www.dol.gov/ebsa/5500main.html (last visited August 27, 2007).

[14] 29 C.F.R. § 2520.104b-10 sets forth the plan administrator's duty to provide a "summary annual report" and specifically describes the format within which certain narrow enumerated categories of fees and expenses are to be stated to participants:

> Benefits under the plan are provided by (indicate funding arrangements).  Plan expenses were ($  ).  These expenses included ($  ) in administrative expenses and ($  ) in benefits paid to participants and beneficiaries, and ($  ) in other expenses.  A total of (  ) persons were participants in or beneficiaries of the plan at the end of the plan year, although not all of these persons had yet earned the right to receive benefits.

29 C.F.R. § 2520.104b-10(d)(3).  Once again, there is no allegation, nor could there be, that the Unisys Defendants failed to timely disclose this information to Plan participants.

[15] GAO Report, at 28, <u>supra</u> n.2 at 2 (emphasis added).

limited disclosure duty fiduciaries shoulder in these circumstances.  As <u>Deere</u> specifically holds, recent regulatory initiatives confirm the limited nature of the disclosure duty.  <u>See</u> <u>Deere</u>, 2007 WL 1874367, at *4-5, 7.  The DOL only last year <u>proposed</u> an amendment to its existing reporting regime to require disclosure of revenue sharing payments received by a plan's service providers.  <u>See</u> Annual Reporting and Disclosure, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. part 2520).  This proposal conclusively demonstrates that current statutory law and regulations do <u>not</u> require disclosure of the amounts paid to service providers pursuant to revenue sharing arrangements.  <u>Deere</u>, 2007 WL 1874367, at *4 ("recent proposals to amend the regulations, to require revenue sharing disclosures in annual reports make it apparent that present regulations do not required it.").  Plan fiduciaries need not guess at possible new statutory interpretations; the DOL's construction of ERISA as described in its regulations controls unless and until the new regulations are adopted.  <u>See, e.g.</u>, <u>In re Unisys Sav. Plan Litig.</u>, 74 F.3d 420, 434 (3d Cir. 1996) (ERISA examines a fiduciary's conduct at the time of an investment decision).[16]

        The DOL's <u>proposed</u> regulation would require disclosure of "<u>the source and nature of compensation in excess of $1,000 received from parties other than the plan or the plan sponsor</u>."  Annual Reporting and Disclosure, 71 Fed. Reg. 41,392, 41,394 (proposed July 21, 2006) (to be codified at 29 C.F.R. part 2520) (emphasis added).  The proposal stems from a recommendation by the DOL ERISA Advisory Council Working Group ("Working Group Report") that the Form 5500, the so-called "Annual Report" under 29 U.S.C. § 1023, should be revised to require

---

[16]   <u>See also</u> <u>United States v. Clark</u>, 454 U.S. 555, 562-63 (1982) (holding that where Congress notes in committee report that proposed revisions are intended to rectify shortcoming in current statute, current statute should be understood to include shortcoming.); <u>Wright v. Or. Metallurgical Corp.</u>, 360 F.3d 1090, 1099 (9th Cir. 2004) (ERISA does not require fiduciaries "to act in an extraordinarily prescient manner").

disclosure of revenue sharing payments paid to plan service providers.[17]  The Working Group

Report stated that, although the DOL currently provides a worksheet for analyzing fees of 401(k)

plan service providers, "it does not attempt to capture [ ] revenue sharing streams."  Id. at 8

(emphasis added).

Moreover, the DOL regulations promulgated under ERISA section 404(c) only require

the disclosure of "transaction fees and expenses" such as "commissions, sales load, deferred

sales charges [and] redemption or exchange fees."  29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(*1*)(*v*).

Again, there is no further requirement that revenue sharing be disclosed, as the DOL's recent

initiative conclusively demonstrates.  Moreover, "upon request," a participant may seek "a

description of the annual operating expenses of each designated investment alternative . . . which

reduce the rate of return to participants and beneficiaries, and the aggregate amount of such

expenses expressed as a percentage of average net assets of the designated investment

alternative."  29 C.F.R. §§ 2550.404c-1(b)(2)(i)(B)(*1*)(*vi*), 2550.404c-1(b)(2)(i)(B)(*2*)(*i*).  The

DOL's recent initiative demonstrates that revenue sharing need not be disclosed, even "upon

request."

Here, the SPD points participants to the investment options' prospectuses, which, in turn,

each include an "expense ratio" describing the information to be disclosed under 29 C.F.R. §

2550.404c-1(b)(2)(i)(B)(*1*)(*v*).  (See SPD, Lapetina Decl. Ex. B at 5, 12-13).  Those expense

ratios demonstrate that the fees and expenses charged vary significantly by the types of funds

and investment options available for selection by the participants.  For example, Plan participants

can invest in the Fidelity Magellan Fund which seeks capital appreciation by investing primarily

---

[17]    See Advisory Council on Employee Welfare and Pension Benefit Plans, Report of the Working Group on Plan Fees and Reporting on Form 5500 (Nov. 11, 2004), available at http://www.dol.gov/ebsa/pdf/ac_111804_report.pdf (last visited August 30, 2007).

in domestic and foreign common stock.  (See id. at A-15).  The annual fund operating expenses, paid from participants' investments, total .59%.  (See Prospectus for Fidelity Magellan Fund, Lapetina Decl. Ex. F at 5).  By way of further example, participants can direct their money into the Fidelity Southeast Asia Fund, which seeks capital appreciation by "normally investing at least 80% of assets in securities of Southeast Asian issuers and other investments that are tied economically to Southeast Asia."  (See SPD, Lapetina Decl. Ex. B at A-19).  The Southeast Asia Fund's total annual operating expenses are 1.21%.  (See Prospectus for Fidelity Targeted International Equity Funds, including the Fidelity Southeast Asia Fund, attached at Lapetina Decl. Ex. G at 14).

Taken together, the proposed amendment to the DOL regulations and the Working Group Report demonstrate that ERISA's reporting and disclosure standards do not currently require disclosure of amounts paid to service providers pursuant to revenue sharing arrangements.  Here, it is undisputed that the Unisys Defendants filed all necessary reports with the DOL and disclosed to Plan participants all of the information required to be disclosed under the current statutory and regulatory regime.  The Unisys Defendants annually published and filed with the DOL an Annual Report Form 5500 with the required information concerning aggregate Plan administrative expenses.  (See Lapetina Decl. ¶¶ 6-7).  An SPD for the Plan, including a list of the funds available and their performance history, was periodically updated and distributed to all Plan participants.  (See id. Ex. B).  Moreover, Plaintiffs admit they received the "hard dollar" information.  (See supra n.11 at 12).  Additionally, to assist participants in understanding the operation of fund expenses and to compare the costs of investing in various funds, each prospectus provides a hypothetical example showing the effect of fees and expenses over varying investment periods.  (See, e.g., Fidelity Magellan Fund Prospectus, Lapetina Decl. Ex. F at 5).

Thus, Plaintiffs cannot prove that the Unisys Defendants failed to satisfy any applicable regulatory disclosure requirements.

> **3.      There Can Be No General Fiduciary Breach Liability For Failure To Disclose Revenue Sharing Where The Applicable ERISA Regulations Are Satisfied.**

In a tacit acknowledgement that the Unisys Defendants satisfied all applicable statutory and regulatory requirements, Plaintiffs urge the court to find liability for failure to disclose revenue sharing based on general fiduciary standards.  This Court should decline Plaintiffs' invitation to expand the scope of ERISA's requirements beyond the specifications already in place by the detailed regulatory scheme that are owed deference by this Court.

The Deere court recently rejected the argument "that [revenue sharing] disclosure not required by the statutory disclosure requirements is separately required by the general ERISA fiduciary obligations."  Deere, 2007 WL 1874367, at *5; see also Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3d Cir. 1995) ("the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in [the statute].");[18] Jordan v. Fed. Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997) (absent "extraordinary circumstances,"

---

[18]   See also Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 102 (2d Cir. 2005) ("[Defendant] has no duty to disclose to plan participants information additional to that required by ERISA."); Ehlmann v. Kaiser Found. Health Plan, 198 F.3d 552, 555 (5th Cir. 2000) ("Today we heed the Supreme Court's warning that where ERISA provides a section specifically dealing with a particular information scheme, courts should not supplement that scheme by reference to a far away provision in another part of the statute"); Faircloth, 91 F.3d at 657 ("We likewise decline to use § 404(a)(1)(A) to expand the duties imposed under § 104(b)(4), the ERISA section that specifically governs the situation at issue here – a request for documents related to the ESOP."); Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan, 72 F.3d 686, 695 (9th Cir. 1995) (ERISA's disclosure standards are "best left to Congress – particularly when the conflicting concerns and interests arise in an area of the law Congress has chosen to regulate with painstaking detail.").

reporting and disclosure violations do not give rise to remedies beyond those offered explicitly in ERISA's disclosure statute).[19]

While ERISA statutory compliance alone is not always sufficient to foreclose liability for a breach of fiduciary duty, see In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 57 F.3d 1255, 1264 (3d Cir. 1995), here the relevant statutory provision, ERISA section 404(c), specifically states that its boundaries should be defined by the regulations promulgated thereunder:

> In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations by the Secretary)—

29 U.S.C. § 1104(c)(1)(A) (emphasis added).  This Congressionally-mandated deference to the DOL's regulations precludes invocation of general fiduciary standards to expand the scope of liability where, as here, a pension plan offers a 401(k) account with participant control over the fund selection.  As the Supreme Court has held, ERISA's reporting and disclosure scheme "may not be a foolproof informational scheme, although it is quite thorough.  Either way, it is the scheme that Congress devised.  And [the Court] do[es] not think Congress intended it to be supplemented by a far away provision in another part of the statute, . . ."   Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 84 (1995).

---

[19]   Plaintiffs cannot show any extraordinary circumstances that would enable them to seek equitable relief under ERISA section 502(a)(3).  Ackerman, 55 F.3d at 125 (extraordinary circumstances arise "where the employer has acted in bad faith, or has actively concealed a change in the benefit plan, and the covered employees have been substantially harmed by virtue of the employer's actions."); Register v. PNC Fin. Servs. Group, Inc., 477 F.3d 56, 74 (3d Cir. 2007) (affirming dismissal of fiduciary breach claim where complaint "does not assert that PNC acted in bad faith, nor does it allege that PNC attempted to 'actively conceal' the termination of the early retirement subsidy or that PNC committed fraud").

Moreover, where, as here, the DOL has provided detailed formal guidance, satisfaction of those regulations is sufficient and courts may not rely on general fiduciary standards to further expand the requirements under ERISA.  In other words, the general deference due to agency regulatory promulgation likewise instructs that courts preclude liability based on a generalized fiduciary breach where applicable regulations have been fulfilled.[20]

Case law from the Third Circuit and district courts in the Circuit confirms that when agency regulations outlining detailed requirements are satisfied, regulatory compliance is sufficient to preclude liability based on general prudence standards.[21]  For example, in Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450 (3d Cir. 2003), a health maintenance organization ("HMO") participant argued that ERISA's general fiduciary prudence standards (specifically, ERISA section 404(a)) required the HMO to disclose physician incentives to HMO participants.  Horvath, 333 F.3d at 461.  The court ruled that no liability could be found because the DOL promulgated detailed regulations limiting the HMO's required disclosures, which did not specifically mandate disclosure of physician incentives.  Id. at 461-63.[22]

---

[20]  See generally Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1151 (3d Cir. 1989) (court owes "substantial deference" to the DOL's views in interpreting the definition of a fiduciary under ERISA); Hardy v. United States, No. Civ.A. 03-CV-0042, 2003 WL 22425003, at *2 (E.D. Pa. Oct. 22, 2003) (Kauffman, J.) ("The agency regulations promulgated to enforce [the statute] also are strictly construed.").

[21]  Other Circuits similarly demonstrate a judicial reluctance to expand ERISA's disclosure requirements in light of the existence of specific DOL implementing regulations. See, e.g., Sprague v. Gen. Motors Corp., 133 F.3d 388, 406 n.15 (6th Cir. 1998) ("[W]hen Congress and the Department of Labor have carefully prescribed a detailed list of matters that must be disclosed to plan participants and beneficiaries, it ill-behooves federal judges to add to that list."); Jensen v. SIPCO, Inc., 38 F.3d 945, 952 (8th Cir. 1994) (noting that the Department of Labor's regulations represent a "thorough approach to questions of disclosure" and that its failure to require certain disclosures "cannot be an inadvertent omission").

[22]  Similarly, in Hussey v. Chase Manhattan Bank, 418 F. Supp. 2d 702 (E.D. Pa. 2005), a participant alleged a breach of general ERISA fiduciary disclosure obligations, claiming that his employer failed to adequately inform him of his eligibility for participation in an excess long-term disability program.  Hussey, 418 F. Supp. 2d at 716.  The employer contended

Here, deference owed to the DOL's detailed regulatory scheme implementing ERISA's disclosure requirements precludes this Court from accepting Plaintiffs' invitation to augment the precise disclosure regime now in place and ground liability upon ERISA's general prudence standards.  The Unisys Defendants' incontrovertible satisfaction of the statutory and regulatory disclosure requirements requires dismissal of Plaintiff's disclosure claims as well as any residual imprudence claims, as next explained.

C. **Because The Unisys Defendants Satisfied Both The Statutory And Regulatory Disclosure Requirements, ERISA Section 404(c) Compels Dismissal Of The Entire Lawsuit.**

As Plaintiff's original Complaint conceded, "ERISA § 404(c) provides to Plan fiduciaries a 'Safe Harbor' from liability for losses that a participant suffers in his or her 401(k) accounts to the extent that the participant exercises control over the assets in his or her 401(k) accounts." (Compl. ¶ 55) (emphasis added).[23]  Because the Unisys Defendants satisfied section 404(c)'s

_____

that it had provided the participant with the information required by the applicable DOL regulations, but it only could prove that it <u>sent</u> such materials — not that the participant actually <u>received</u> them. <u>Id.</u>  Relying on the detailed DOL regulations stating that delivery "by means reasonably calculated to ensure receipt" such as "hand delivery, interoffice mail, intranet access, and upon request via telephone system" was sufficient, the court found that the employer demonstrated that it complied with the relevant DOL regulation. <u>Id.</u>  Given this regulatory compliance, the court refused to hold the employer to a higher standard requiring proof of actual receipt by the participant, and found that the employer did not breach its fiduciary duty. <u>Id.</u> at 717.  Additionally, in <u>Abrams v. Dean Witter Reynolds Inc.</u>, 60 F. Supp. 2d 433, 435-36 (E.D. Pa. 1999), the plaintiff claimed that the defendants breached their fiduciary duty to him under ERISA by providing erroneous "investment advice" as to the permissibility of a particular loan. <u>Abrams</u>, 60 F. Supp. 2d at 435-36. Citing DOL regulations which defined "investment advice," the court held that because "the language of [the relevant DOL regulations] is precise," there could be no fiduciary breach because the defendants' advice did not fall under the DOL's definition. <u>Id.</u> at 436. Although the court held that the defendants would otherwise be bound by ERISA's fiduciary duties, given the detailed regulation in place, the court therefore refused to read into ERISA a heightened disclosure requirement.

23  Although Plaintiffs' Amended Complaint eliminated all references to ERISA section 404(c), 29 U.S.C. § 1104(c), the applicability in the Third Circuit of this "safe harbor" in

disclosure obligations as set forth in the DOL regulations, Plaintiffs' breach of fiduciary duty

claim fails as a matter of law.

More specifically, under ERISA section 404(c), where, as here, a pension plan

> provides for individual accounts and permits a participant or
> beneficiary to exercise control over the assets in his account, if a
> participant or beneficiary exercises control over the assets in his
> account (as determined under regulations of the [DOL]) [then] no
> person who is otherwise a fiduciary shall be liable . . . for <u>any</u> loss,
> or by reason of <u>any</u> breach, which results from such participant's
> or beneficiary's exercise of control.

29 U.S.C. § 1104(c)(1), (c)(1)(B) (emphasis added).  Given the statute's direct reference to the

DOL regulations, and the indisputable fact that the Unisys Defendants satisfied the section

404(c) disclosure duties set forth in the DOL regulations, it necessarily follows that the

fiduciaries cannot be held liable for the claimed fiduciary breaches, as a matter of law.

Following this reasoning, the district court in <u>Deere</u> recently held that section 404(c) bars

liability for a plan sponsor in these precise circumstances.  <u>See Deere</u>, 2007 WL 1874367, at *6.

This court should similarly find that section 404(c) bars Plaintiffs' claims and grant summary

judgment in favor of the Unisys Defendants.

The Third Circuit has held that section 404(c) "is akin to an exemption from or a defense

to ERISA's general rule" which "reliev[es] fiduciaries in the appropriate circumstances of the

liability to which they would otherwise be exposed."  <u>In re Unisys Sav. Plan Litig.</u>, 74 F.3d at

446.  As the Court reasoned:

> [T]he first question we must answer regarding section [404(c)] is
> whether the statute allows a fiduciary, <u>who is shown to have
> committed a breach of duty in making an investment decision</u>, to
> argue that despite the breach, it may not be held liable because the
> alleged loss resulted from a participant's exercise of control.  In

---

circumstances like the instant one cannot seriously be disputed.  <u>See In re Unisys Sav. Plan
Litig.</u>, 74 F.3d 420, 446 (3d Cir. 1996).

> light of section [404(c)'s] plain language, we believe that it does.
> There is nothing in section [404(c)] which suggests that a breach
> on the part of a fiduciary bars it from asserting section [404(c)'s]
> application.

In re Unisys Sav. Plan Litig., 74 F.3d at 445 (emphasis added); accord Langbecker v. Elec. Data

Sys. Corp., 476 F.3d 299, 312 (5th Cir. 2007); Deere, 2007 WL 1874367, at *6.[24]  Thus, section

404(c) compels immediate dismissal of a lawsuit where, as here, the disclosure standards are

satisfied.

Here, Plaintiffs were told all that is required under the statute and the DOL's section

404(c) regulations.  As noted, the section 404(c) absolves fiduciaries from "any loss . . . by

reason of any breach," upon a finding of participant "control."  29 U.S.C. § 1104(c)(1)(B).  To

exercise such control, Plan participants must be given the "opportunity to obtain sufficient

information to make informed decisions with regard to investment alternatives available under

the Plan."  29 C.F.R. § 2550.404c-1(b)(2)(i)(B).  This information includes "[a] description of

any transaction fees and expenses which affect the participant's or beneficiary's account balance

. . . ."  29 C.F.R. 2550.404c-1(b)(2)(i)(B)(1)(v).  Finally, "at least upon request," participants

must be provided with "[a] description of the annual operating expenses of each designated

---

[24]  Plaintiffs may argue against section 404(c)'s applicability based on a footnote to the
preamble to 29 C.F.R. § 2550.404c-1, in which the DOL opined that the "act of limiting or
designating investment options . . . is not a direct or necessary result of any participant's
direction of such plan."  57 Fed. Reg. 46,906, 46,924 n.27.  However, this informal guidance
that section 404(c) should not apply to the selection of plan investment options is misguided
and should be accorded no deference, since it runs directly contrary to the Third Circuit's
opinion in In re Unisys Sav. Plan Litig., and the only other circuit court opinion to have
considered section 404(c)'s applicability to these types of activities.  74 F.3d 420;
Langbecker, 476 F.3d at 311 ("Unisys predated the DOL regulations but embodies a
common sense interpretation of the statute.").  Moreover, the footnote is not part of the
DOL's formal regulations, nor may it even be considered agency interpretation of an
"ambiguous" statute, which would be entitled to this Court's deference.  Langbecker, 476
F.3d at 311.  As noted, section 404(c) states that the question of control is to be determined
only by reference to DOL regulations and not the agency's informal musings on the topic.

investment alternative . . . which reduce the rate of return to participants and beneficiaries . . . ." 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(*2*)(*i*). Here, it is undisputed that Plaintiffs received all of this specific information.  (Lapetina Decl. ¶¶ 6-10).[25]

Because the participants were apprised of all of the necessary information required under the section 404(c) regulations, it necessarily follows that they exercised control over their investments, and, as such, the fiduciaries cannot be held liable for the alleged breaches.[26]  As the Third Circuit in In re Unisys Sav. Plan Litig. explained:

> [Section 1104(c)'s] unqualified instruction that a fiduciary is excused from liability for 'any loss' which 'results from [a] participant's or [a] beneficiary's exercise of control' clearly indicates that a fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated.

74 F.3d at 445 (emphasis added).[27]  Thus, where a participant's decision to invest "was a cause-in-fact, as well as a substantial contributing factor in bringing about the loss incurred," section 404(c) shifts the burden of loss to the participant.  Id. (emphasis added).  The Fifth Circuit likewise held recently:

---

[25]  Indeed, and as noted above, the hard dollar payments, albeit de minumus, were disclosed to Plaintiffs.  There is no allegation, nor could there be, that Plaintiffs did not have available to them the prospectuses, setting forth the operating expenses charged against their investments.  (See supra n.11 at 12).

[26]  To the extent that Plaintiffs premise their claims on any allegation that the Plan included what they maintain are more expensive "retail mutual funds," (Am. Compl. ¶¶ 37-42), Plaintiffs' claims likewise must fail pursuant to section 404(c), because Plaintiffs had the opportunity to direct their investments.  Deere, 2007 WL 1874367, at *7-8.  A discussion of retail and institutional mutual funds can be found in the GAO Report.  GAO Report, at 12, supra n.2 at 2.

[27]  See also Jenkins v. Yager, 444 F.3d 916, 924 (7th Cir. 2006) ("Therefore, we agree with the district court and believe that the statute, when read as a whole along with the accompanying regulations, permits a plan trustee to delegate decisions regarding the investment of funds to plan participants even if the plan does not meet the requirements for the section 404(c) safe harbor.").

> A plan fiduciary may have violated the duties of selection and monitoring of a plan investment, but § 404(c) recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options.

Langbecker, 476 F.3d at 312; see also Deere, 2007 WL 1874367, at *8 (concluding that the participants exercised control over their expenses through their selection of funds amongst various options with reasonable expense ratios).

Likewise here, participants controlled their investments through their selection of funds from over 70 options, which had expense ratios ranging from 0.10% to 1.19%. (See SPD, Lapetina Decl. Ex. B at Appendix B, Plan Expense Ratios).[28]  While Plaintiffs assert that some of the funds had unreasonable fees, the participants themselves chose to invest in these allegedly "bad" funds, despite having complete access to the fees they charged. Indeed, participation in the Plan is voluntary, further compelling immediate dismissal of the lawsuit. To suggest that section 404(c) somehow does not immunize the Unisys Defendants from liability for the conduct complained of "would render the § 404(c) defense applicable only where plan managers breached no fiduciary duty, and thus only where it is unnecessary." Langbecker, 476 F.3d at 311.  At the end of the day, ERISA section 404(c) compels dismissal of the lawsuit.

### D.  Plaintiffs' Failure to Plead Causation Compels Dismissal Of The Entire Lawsuit.

Alternatively, summary judgment is required because the Amended Complaint is entirely silent on the returns enjoyed by the discrete investment options in the Plan. Thus, Plaintiffs have not made sufficient allegations related to causation, i.e., that the claimed wrongdoing yielded

---

[28]  Moreover, as noted, participants were provided further information in each prospectus, such as a hypothetical example showing the effect of fees and expenses over varying investment periods. (See, e.g., Fidelity Magellan Fund Prospectus, Lapetina Decl. Ex. F at 5).

actionable losses to the Plan, as ERISA sections 502(a)(2) and 409(a) require.  See 29 U.S.C. §§

1132(a)(2), 1109(a) (participant may seek relief from breaching fiduciaries for "any losses to the

plan resulting from each such breach").[29]  See Burstein v. Ret. Account Plan For Employees of

Allegheny Health Educ. & Research Found., 334 F.3d 365, 386 (3d Cir. 2003) (confirming

district court conclusion that an ERISA breach of fiduciary duty claim requires "causation" or

"resulting harm"); see also Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005) (reversing the

appellate court's reinstatement of securities fraud claim that had been dismissed by the district

court for failure to adequately plead "loss causation" and stating that "[i]t should not prove

burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some

indication of the loss and the causal connection"); Adams v. Freedom Forge Corp., 204 F.3d 475,

492 (3d Cir. 2000) (holding that to recover on a fiduciary breach claim, an employee must prove

not only a materially misleading misrepresentation by her employer fiduciary, but that she "acted

thereupon to [her] detriment"); Ferdinand Drexel Inv. Co. v. Alibert, 723 F. Supp. 313, 326, 334

(E.D. Pa. 1989) (dismissing with prejudice the plaintiff's fiduciary breach claims because, inter

alia, plaintiffs could not show "any nexus between the alleged fraudulent acts of the defendants

and the harm to plaintiffs").

Plaintiffs allege that the Unisys Defendants inappropriately offered mostly mutual funds,

and only a few collective trusts, and should have included fewer retail mutual funds amongst the

options for Plan participants.  (Am. Compl. ¶¶ 28-29, 38-39).  Nevertheless, Plaintiffs fail to

allege that the offering of more than 70 investment funds from which participants could chose to

allocate their investments caused any losses.  (See SPD, Lapetina Decl. Ex. B at A-1 – A-24, B-1

---

[29]    See also Allison v. Bank One-Denver, 289 F.3d 1223, 1239 (10th Cir. 2002) ("The phrase
'resulting from' indicates that there must be a showing of 'some causal link between the
alleged breach . . . and the loss plaintiff seeks to recover.'") (quoting Silverman v. Mut.
Benefit Life Ins. Co., 138 F.3d 98, 104 (2d Cir. 1998)).

– B-2).  Each investment option:  has widely varying expense ratios associated with it (again, the

source of the so-called "revenue sharing" payments); pursues different investment strategies

while assuming the risks unique to those strategies; employs different managers and, most

importantly, realizes varying returns.  (See id. Exs. C-F, Prospectuses).  The fact that Plaintiffs

neither allege – nor can they prove – causation, i.e., that each of the 73 investments

underperformed a benchmark appropriate to each fund, compels the immediate dismissal of the

lawsuit.[30]  Rather, Plaintiffs only allege that alternative funds may have had less operating

expenses; however, such information is not relevant to the causation analysis.  (Am. Compl. ¶¶

40-41).  As the court in Deere further held, "there is nothing to suggest that receiving [revenue

sharing] information would effectively enhance investment decisions.  In assessing the likely

return on an investment the fees netted against the return are certainly relevant, but knowing the

subsequent distribution of those fees has no impact on the investment's return."  Deere, 2007

WL 1874367, at *7.[31]

     More specifically, the prudence of a particular investment option in a defined

contribution savings plan must be scrutinized on an individual basis.  Langbecker, 476 F.3d at

309 n.18 ("Under ERISA, the prudence of investments or classes of investments offered by a

plan must be judged individually.") (citing In re Unisys Sav. Plan Litig., 74 F.3d at 438-41).

---

[30]   See, e.g., Loomis v. Exelon Corp., No. 06 C 4900, slip op. at 2 (N.D. Ill. Feb. 21, 2007) (in a
challenge to the reasonableness and disclosure of a 401(k) plan's fees and expenses, striking
plaintiffs' demand for investment losses because "ERISA claimants must plead that there is
some causal connection between their claim and the alleged losses") (attached hereto as
Exhibit 1).

[31]   See also, e.g., In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig., 434 F. Supp. 2d 233, 238
(S.D.N.Y. 2006) ("Defendants disclosed the fees and commissions charged to shareholders.
The precise allocation of those fees is not material information . . . ."); In re Morgan Stanley
& Van Kampen Mut. Fund Sec. Litig., No. 03 Civ. 8208(RO), 2006 WL 1008138, at *9
(S.D.N.Y. Apr. 18, 2006) ("All fees charged to the shareholder were disclosed in the
offering prospectuses. . . . The allocation of the fees is immaterial, because it could have no
effect on share price.") (emphasis added).

Moreover, the returns on a particular investment as reflected in a participant's account balance is only determined <u>after</u> fees and expenses are netted out of or from the investments he or she has selected.  <u>Cf</u>. 29 U.S.C. § 1002(34) ("benefits" in a defined contribution plan are "based solely upon the amount contributed to a participant's account, and any income, expenses, gains and losses").

That said, the prudence inquiry cannot take place in isolation as Plaintiffs allege, and the Amended Complaint's silence regarding the performance of the controverted investments compels dismissal.  As the DOL has explained, consistent with the operation of the statute, fees and expenses must be considered as part of a much broader inquiry including the risk an investment presents along with the returns it enjoys.  <u>See</u> United States Department of Labor Employee Benefits Security Administration, <u>A Look at 401(k) Plan Fees</u>, at *17-18, <u>available</u> <u>at</u> <u>http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf</u> (last visited August 30, 2007) (<u>advising</u> <u>401(k) participants to "[c]ompare the net returns relative to the risks among available investment</u> <u>options."  Moreover—"don't consider fees in a vacuum.  They are only one part of the bigger</u> <u>picture including investment risk and returns and the extent and quality of services provided</u>.") (emphasis added).  Plaintiffs' wholesale failure to allege that the performance of these investment options was somehow wanting, on a fund-by-fund basis, now requires dismissal of the lawsuit.[32]

---

[32]  Summary judgment may be granted for an additional yet related reason:  the Complaint fails to allege into which of the 73 investments the two putative class representatives directed their savings.  Simply stated, Plaintiffs have standing to pursue claims limited to the Plan's options or funds within which they invested their money, and nothing more.  <u>E.g.</u>, <u>Lewis v.</u> <u>Casey</u>, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class</u> to which they belong and which they purport to represent.'") (quoting <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 40 n.20 (1976))

**E.      Because Plaintiffs Have Not Sufficiently Alleged Fraud Or Concealment, Their Claims Must Be Limited To Six Years Prior To The Filing Of Their Amended Complaint.**

Should the Court for some reason decline to grant summary judgment to the Unisys Defendants, the claims should be limited to the six-year period prior to the filing of the Complaint, consistent with ERISA's statute of limitations governing fiduciary breach claims like those pressed in this lawsuit, as construed by the Third Circuit.

ERISA section 413 provides that no action for breach of fiduciary duty may be commenced after the earlier of:  three years from the earliest date the plaintiff gained actual knowledge of the breach, or six years from the date of the last action that constituted the breach. 29 U.S.C. § 1113.[33]  Section 413 further states that in those circumstances where the fiduciary fraudulently conceals his or her breach, the six-year limitations period will not begin to run until after the earlier of the date the plaintiff discovered the breach, or the date he should have done so with reasonable diligence.  See Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1551-52 (3d Cir. 1996).

The "fraudulent concealment" doctrine requires a plaintiff to plead with particularity and to prove the following elements:  "(1) active misleading by the defendant; (2) which prevents the

---

(emphasis added).  In other words, "[t]he Plan 'as a whole' is not entitled to recover money damages for breach where an individual participant, suing on his own behalf, could not recover."  Langbecker, 476 F.3d at 312.

[33]    Section 413 states:

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part after the earlier of - -

(1)  six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2)   three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (citations omitted) (emphasis added).

plaintiff from recognizing the validity of her claim within the limitations period; (3) where the

plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to

uncover the relevant facts." <u>Pelullo v. Nat'l Union Fire Ins. Co.</u>, 131 F. App'x 864, 866 (3d Cir.

2005) (internal citation and quotations omitted).   In the case of fiduciary breach claims alleging

failure to disclose, for example, plaintiffs must allege facts in addition to those supporting the

underlying claimed fiduciary breach.  <u>Id</u>.  In other words, the relevant question is therefore <u>not</u>

whether the claims sound in concealment, but rather whether there is evidence that "the

defendant itself has taken steps to hide its breach of fiduciary duty."  <u>Kurz</u>, 96 F.3d at 1552

(citation omitted); <u>see also</u> <u>Leckey v. Stefano</u>, Nos. 06-2483, 06-3161, 06-3162, 2007 WL

2458540, at *15 (3d Cir. Aug. 31, 2007) (<u>citing</u> <u>Ranke v. Sanofi-Synthelabo Inc.</u>, 436 F.3d 197,

204 (3d Cir. 2006) (noting that the failure to warn beneficiaries regarding misconceptions about

benefits is not an "affirmative step[ ]" that would implicate the fraudulent concealment

exception)).[34]

Rule 9(b) further requires Plaintiffs to plead the necessary fraudulent concealment with

particularity.[35]  <u>See</u> <u>Davis v. Grusemeyer</u>, 996 F.2d 617, 624 (3d Cir. 1993) (Rule 9(b) requires

particular pleading of fraudulent concealment and allegations that "the defendant concealed from

---

[34]   <u>See</u> <u>also</u> <u>In re Unisys Corp. Retiree Med. Benefit ERISA Litig.</u>, 242 F.3d 497, 502 (3d Cir.
2001) ("The issue raised by this provision is not simply whether the alleged breach involved
some kind of fraud but rather whether the fiduciary took steps to hide its breach so that the
statute should not begin to run until the breach is discovered."); <u>Forbes v. Eagleson</u>, 228
F.3d 471, 487 (3d Cir. 2000) (plaintiff must allege facts suggesting that "[defendants]
engaged in affirmative acts of concealment designed to mislead the plaintiffs about a fact
supporting their [ ] claim."); <u>Walker v. Pharm. Research & Mfrs. of Am.</u>, 461 F. Supp. 2d
52, 60 (D.D.C. 2006) ("Failure to disclose or 'mere silence' does not constitute fraudulent
concealment.") (<u>quoting</u> <u>Larson v. Northrop Corp.</u>, 21 F.3d 1164, 1174 (D.C. 1994));
<u>Radiology Ctr. v. Stifel, Nicolaus & Co.</u>, 919 F.2d 1216, 1220 (7th Cir. 1990) (explaining
that the phrase "fraud or concealment" refers to steps taken by a defendant to hide the fact of
a breach of fiduciary duty rather than to the underlying nature of the plaintiff's claim).

[35]   The Rule states that "[i]n all averments of fraud or mistake, the circumstances constituting
fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).

plaintiff the existence of his cause of action, and that plaintiff's continuing ignorance was not attributable to lack of diligence on his part.") (internal citation and quotations omitted).  A pleading is sufficient under Rule 9(b) only if it identifies "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  This requires either statements of the time, place and nature of the alleged fraudulent activities, or factual allegations with "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (citation omitted).  Plaintiffs' claims are not sufficiently pled under this standard.

Here, Plaintiffs cannot demonstrate any facts reflecting that "the defendant itself has taken steps to hide its breach of fiduciary duty," in addition to the underlying failure to disclose. Kurz, 96 F.3d at 1552.  Indeed, Plaintiffs failed to even allege fraudulent concealment with sufficient particularity to meet the pleading requirements of Rule 9(b).  While the Amended Complaint states that Defendants "refused to provide them with this [revenue-sharing] information, and concealed this information from them," (Am. Compl. ¶ 64), Plaintiffs allege that this "concealment" itself is a violation of ERISA fiduciary standards.  Thus, this allegation is insufficient to establish tolling because it is limited to Plaintiffs' underlying claims of a fiduciary breach, not any active concealment by the Plan's fiduciaries to obscure such supposedly illicit conduct.  Ranke, 436 F.3d at 204.  Accordingly, because Plaintiffs have no claim for fraudulent concealment sufficient to toll ERISA's statute of limitations for breach of fiduciary duty, should the Court find that summary judgment is not appropriate, it should limit this action to the six-year period prior to the filing of the Complaint.

IV.     **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant

judgment in favor of the Unisys Defendants on Plaintiffs' Amended Complaint.


Dated:      September 7, 2007                    Respectfully submitted,

                                                /s/ Jamie M. Kohen    (jmk 0273)

                                                MORGAN, LEWIS & BOCKIUS LLP
                                                Joseph J. Costello (I.D. No. 44327)
                                                Brian T. Ortelere (I.D. No. 46464)
                                                Jamie M. Kohen (I.D. No. 92514 )
                                                1701 Market Street
                                                Philadelphia, PA 19103-2921
                                                (215) 963-5295/5150/5472

                                                *Attorneys for the Unisys Defendants*