**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARK RENFRO and GERALD LUSTIG, individually and on behalf of all of those similarly situated, | Case Number: 07-cv-02098-BWK Judge Bruce W. Kauffman |
| Plaintiffs, | |
| v. | |
| UNISYS CORPORATION, UNISYS CORPORATION EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, UNISYS CORPORATION SAVINGS PLAN MANAGER, PENSION INVESTMENT REVIEW COMMITTEE, FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY MANAGEMENT & RESEARCH COMPANY, and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC. | |
| Defendants. | |

## <u>ORDER</u>

   And now the _____ day of _____, 2007, upon consideration of the Motion to

Dismiss Plaintiffs' Amended Complaint of Defendants Fidelity Management Trust Company,

Fidelity Management & Research Company and Fidelity Investments Institutional Operations

Company, Inc., and the response thereto, it is hereby ORDERED that said Motion is granted and

Plaintiffs' Amended Complaint is Dismissed with prejudice.

_____

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK RENFRO and GERALD LUSTIG, individually and on behalf of all of those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNISYS CORPORATION, UNISYS CORPORATION EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, UNISYS CORPORATION SAVINGS PLAN MANAGER, PENSION INVESTMENT REVIEW COMMITTEE, FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY MANAGEMENT & RESEARCH COMPANY, and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC.<br><br>    Defendants. | Case Number: 07-cv-02098-BWK<br><br>Judge Bruce W. Kauffman |

## FIDELITY DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
## FOR BREACH OF FIDUCIARY DUTY

Defendants Fidelity Management Trust Company, Fidelity Management & Research Company and Fidelity Investments Institutional Operations Company, Inc. ("Fidelity Defendants"), hereby move this Court to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support of the Motion, Fidelity Defendants rely upon the attached Memorandum of Law and Exhibits, incorporated therein.

WHEREFORE, Fidelity Defendants respectfully request that this Motion be granted and that Plaintiffs' Amended Complaint be dismissed with prejudice.

HANGLEY ARONCHICK SEGAL & PUDLIN

Dated:  September 7, 2007

By: /s/_____
    John S. Summers (PA ID No. 41854)
    One Logan Square
    27th Floor
    Philadelphia, PA 19103-6933
    Telephone: (215) 568-6200
    Fax:  (215) 568-0300

*Counsel for Defendants Fidelity Management Trust Company, Fidelity Management & Research Company, and Fidelity Investments Institutional Operations Company, Inc.*

Of Counsel:
Robert N. Eccles
Brian D. Boyle
Shannon D. Barrett
Arthur W.S. Duff
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK RENFRO and GERALD LUSTIG, individually and on behalf of all of those similarly situated, | |
| Plaintiffs, | Case Number: 07-cv-02098-BWK |
| v. | Judge Bruce W. Kauffman |
| UNISYS CORPORATION, UNISYS CORPORATION EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, UNISYS CORPORATION SAVINGS PLAN MANAGER, PENSION INVESTMENT REVIEW COMMITTEE, FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY MANAGEMENT & RESEARCH COMPANY, and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC. | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF FIDELITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

ARGUMENT ..................................................................................................... 6

I.     STANDARD OF REVIEW. ..................................................................... 6

II.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT THEIR CONCLUSIONS THAT FEES WERE "EXCESSIVE" AND "UNREASONABLE." ........................................................................................ 7

III.   COUNT I SHOULD BE DISMISSED BECAUSE THE FIDELITY DEFENDANTS HAVE NO FIDUCIARY STATUS RELEVANT TO PLAINTIFFS' CLAIMS. ....................................................................... 11

     A.    FMRCo is Not a Fiduciary to the Unisys Plan. .................................. 11

     B.    FMTC is Not a Fiduciary as to the Challenged Conduct. .................................... 13

          1.    FMTC Is Not a Fiduciary With Respect to Investment Selection. .......... 15

          2.    FMTC Is Not a Fiduciary With Respect to Participant Disclosures and Has No Fiduciary Obligation to Provide the Information that Plaintiffs Allege Should Have Been Disclosed. ....................................... 16

     C.    The Claims Against FIIOC Should Be Dismissed Because It Is Not a Fiduciary as to the Challenged Conduct. ............................................................. 20

IV.   COUNT II IS SIMILARLY DEFECTIVE AND ALSO SEEKS RELIEF THAT IS UNAVAILABLE UNDER ERISA § 502(A)(3). ...................................... 23

     A.    Count II Should be Dismissed on the Same Grounds as Count I. ...................... 23

     B.    Count II Should be Dismissed Since it Does Not Seek "Appropriate Equitable Relief" Authorized by ERISA. ........................................................... 23

IV.   COUNT III SHOULD BE DISMISSED BECAUSE IT SEEKS RELIEF THAT IS UNAVAILABLE UNDER ERISA § 502(A)(3). ...................................... 27

V.     CONCLUSION ......................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Ronald Sirna, Jr., P.C. Profit Sharing Plan  v. Prudential Sec.*,
    964 F. Supp. 147 (S.D.N.Y. 1997) ................................................................................. 12, 13

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007) ............................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ............................................................................................... passim

*Brock v. Robbins*,
    830 F.2d 640 (7th Cir. 1987) ............................................................................................. 9

*Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*,
    334 F.3d 365 (3d Cir. 2003) ............................................................................................. 20

*Campo v. Oxford Health Plans, Inc.*,
    No. 06-4332, 2007 U.S. Dist. LEXIS 45804 (D.N.J. June 26, 2007) ........................................ 7

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*,
    474 F.3d 463 (7th Cir. 2007) .............................................................................. 15, 21, 22

*Corbett v. Marsh & McLennan Cos.*,
    No. MDL-15863, 2006 WL 734560 (D. Md. Feb. 27, 2006) .................................................. 13

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ..................................................................................................... 17, 24

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984) ......................................................................................................... 26

*Ehlmann v. Kaiser Found. Health Plan*,
    198 F.3d 552 (5th Cir. 2000) ........................................................................................... 17

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ......................................................................................................... 27

*Hecker v. Deere & Co.*, __ F. Supp. 2d __,
    No. 06-C-719, 2007 U.S. Dist. LEXIS 45275 (W.D. Wis. June 20, 2007) ...................... passim

*Horvath v. Keystone Health Plan E., Inc.*,
    333 F.3d 450 (3d Cir. 2003) .............................................................................. 17, 18, 19

*Hozier v. Midwest Fasteners, Inc.*,
    908 F.2d 1155 (3d Cir. 1990) ......................................................................................... 13

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
    434 F. Supp. 2d 233 (S.D.N.Y. 2006) ............................................................................ 26

*In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*,
    No. 03 Civ. 8208(RO), 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. Apr. 18, 2006) .................. 26

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Unisys Savs. Plan Litig.*,
   173 F.3d 145 (3d Cir. 1998) ............................................................... 8, 9

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) ............................................................... 9

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) ............................................................... 3, 7

*Maniace v. Commerce Bank*,
   40 F.3d 264 (8th Cir. 1994) ............................................................... 14

*Marks v. Independence Blue Cross*,
   71 F. Supp. 2d 432 (E.D. Pa. 1999) ............................................. 13, 15

*McLaughlin v. Bendersky*,
   705 F. Supp. 417 (N.D. Ill. 1989) .................................................. 10

*Mertens v. Hewitt*,
   508 U.S. 248 (1993)................................................................... 12, 23

*Miller v. Fortis Benefits Ins. Co.*,
   363 F. Supp. 2d 700 (D.N.J. 2005) .................................................. 7

*Moench v. Robertson*,
   62 F.3d. 553 (3d Cir. 1995) ............................................................... 14

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)......................................................................... 13

*Srein v. Frankford Trust Co.*,
   323 F.3d 214 (3d Cir. 2003) ............................................................... 14

*Stevenson v. Carroll*,
   No. 05-1088, 2007 U.S. App. LEXIS 18064 (3d Cir. July 30, 2007) ....................................... 7

*Taylor v. United Techs. Corp.*,
   No. 3:06cv1494, 2007 U.S. Dist. LEXIS 57807 (D. Conn. Aug. 9, 2007) ............................. 20

*United States v. Lane Labs-USA Inc.*,
   427 F.3d 219 (3d Cir. 2005) ............................................................... 27

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)................................................................... 23

### Statutes

15 U.S.C. § 77a ................................................................................ 25

15 U.S.C. § 77aa .............................................................................. 25

15 U.S.C. § 78a ................................................................................ 25

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

15 U.S.C. § 80a-1 ........................................................................................... 25

15 U.S.C. § 80a-29(e) ..................................................................................... 26

15 U.S.C. § 80a-35(b) ..................................................................................... 26

15 U.S.C. § 80a-8(b)(5) ................................................................................... 25

15 U.S.C. § 80b-1 ........................................................................................... 25

26 U.S.C. § 401(k) ............................................................................................. 3

ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) ..................................................... 3

ERISA § 3(16), 29 U.S.C. § 1002(16) .............................................................. 17

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ............................................... 12, 13

ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B) ..................................................... 12

ERISA § 3(34), 29 U.S.C. § 1002(34) ................................................................. 2

ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1) ................................................ 12, 21

ERISA § 403(a), 29 U.S.C § 1103(a) ................................................................ 14

ERISA § 409(a), 29 U.S.C. § 1109(a) .......................................................... 11, 24

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ................................................... 2, 23

ERISA §§ 101-11, 29 U.S.C. §§ 1021-31 ........................................................ 17

## Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2

## Other Authorities

153 Cong. Rec. D270 (daily ed. Mar. 6, 2007) ................................................. 18

*2007 Investment Company Institute Fact Book,*
 *available at* www.icifactbook.org/fb_sec7.html (last visited Sept. 6, 2007) ............................ 9

29 C.F.R. §§ 2520.101-1 .................................................................................. 17

29 CFR § 2509.75-8(d)(2) ................................................................................ 20

Employee Benefits Security Admin.,
 Department of Labor, 401(k) Fiduciary Education Campaign, *available at*
 http://www.dol.gov/ebsa/pdf/401kfefm.pdf (last visited Sept. 6, 2007) ................................. 10

Fee and Expense Disclosures to Participants in Individual Account Plans,
 72 Fed. Reg. 20,457 (Apr. 25, 2007) ............................................................. 18

H.R. 3185, 110th Cong. (2007) ........................................................................ 18

Defendants Fidelity Management & Research Company ("FMRCo"), Fidelity

Management Trust Company ("FMTC"), and Fidelity Investments Institutional Operations

Company, Inc. ("FIIOC") (collectively the "Fidelity Defendants") respectfully submit this

memorandum in support of their Motion to Dismiss Plaintiffs' First Amended Complaint for

Breach of Fiduciary Duty, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This is one of fifteen nearly identical lawsuits brought within the past year by the same

law firm under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

All of the suits accuse large companies of breaching ERISA fiduciary duties in operating 401(k)

retirement savings plans for their employees.  This case, like two others involving different

plans, also names as defendants affiliates of Fidelity Investments ("Fidelity"), which provide

plan trustee and recordkeeping services and offer mutual funds that are investment options for

the Unisys Corporation Savings Plan, Plan No. 004 (the "Unisys Plan" or "Plan").

On June 20, 2007, the United States District Court for the Western District of Wisconsin

dismissed with prejudice the only case decided so far naming FMTC and FMRCo as defendants,

holding not only that plaintiffs had failed to state a substantive claim against any defendant but

also that plaintiffs could not maintain fiduciary duty claims against those Fidelity entities

because neither was a fiduciary with respect to the challenged conduct.  *Hecker v. Deere & Co.,*

__ F. Supp. 2d __, No. 06-C-719, 2007 U.S. Dist. LEXIS 45275 (W.D. Wis. June 20, 2007)

(attached as Exhibit A to Decl. of Arthur W.S. Duff ("Duff Decl.")).  In response, plaintiffs here

filed their First Amended Complaint for Breach of Fiduciary Duty ("Complaint" or "Compl.")

(attached as Exhibit B to Duff Decl.), apparently designed to create the impression that their

claims differ from those dismissed in *Hecker*.  The effort is devoid of merit.  Plaintiffs' amended allegations differ only superficially from the earlier set, and do not repair the multiple deficiencies of their claims against the Fidelity Defendants.

As developed below, plaintiffs' claims suffer from at least three fundamental defects.  First, while plaintiffs ground their claims in repeated assertions that the Plan paid "excessive" and "unreasonable" fees, they fail to support those conclusory assertions with factual allegations sufficient to meet their pleading obligations under the standard recently announced by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  Moreover, the suggestion that these "excessive" fees charged to the Plans are somehow caused by the alleged nondisclosure of the internal allocation of revenues among Fidelity entities does not rise above the "speculative level," as required after *Twombly*.  Second, as the district court recognized in *Hecker*, the Fidelity Defendants are not fiduciaries with respect to the conduct alleged in the Complaint and thus cannot be held to have breached fiduciary duties under ERISA.  2007 U.S. Dist. LEXIS 45275 at *21-22 (dismissing all claims with prejudice).  Finally, to the extent plaintiffs attempt to repackage their claims as seeking "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the relief sought is neither "appropriate" nor "equitable" as the Supreme Court has interpreted § 502(a)(3).  Therefore, under Fed. R. Civ. P. 12(b)(6), the Court should grant the Fidelity Defendants' motion to dismiss.

## BACKGROUND

***The Unisys Plan and its Relationship to the Fidelity Defendants.***  The plan at issue in this case, sponsored by Unisys Corporation ("Unisys"), is a "defined contribution" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  (*See* Compl. ¶¶ 5, 23.)  The Unisys Corporation Employee Benefits Administrative Committee (the "Administrative Committee")

and Unisys Corporation Savings Plan Manager (the "Plan Manager") are alleged to be the plan administrators within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  (*Id.* ¶¶ 8-9.) Eligible Unisys employees may—as permitted by § 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k)—contribute a portion of their pre-tax earnings to the Plan.  (*Id.* ¶ 24.)  Unisys matches those employee contributions up to a certain limit.  (*Id.*)  Participating employees can direct that contributions to their respective Plan accounts be invested in any of the investment options offered under the Plan.  (*Id.* ¶¶ 28-30.)

In 1993, Unisys entered into a trust agreement with FMTC under which FMTC agreed to provide certain services to the Plan, including trustee and recordkeeping services, pursuant to a fee schedule.  (Compl. ¶¶ 12, 45; Master Trust Agreement Between Unisys Corporation And Fidelity Management Trust Company: Unisys Savings Trust (the "Trust Agreement") at Schedule B (attached as Exhibit C to Duff Decl.)[1].)  Plaintiffs allege that FMTC delegated its responsibility for recordkeeping and other administrative services to FIIOC.  (Compl. ¶ 26.)

The Trust Agreement specifically states: "[t]he Trustee shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options."  (Trust Agreement § 5(a).)  Instead, the Trust Agreement grants Unisys, as the "Applicable Fiduciary," sole authority to direct FMTC as to which of the investment options are to be provided to participants.  (Trust Agreement §§ 5(b), 8(a), and Schedules C and J.)  Unisys has delegated that authority to the Plan Investment Review Committee (the "Investment Committee"), whose members are appointed by the Unisys Board. (Compl. ¶ 10.)

---

[1]      On a motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint." *Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004).

The Trust Agreement also specifies that Unisys must select investment options under the Plan from among the following: (1) mutual funds advised by FMRCo and its affiliates; (2) Unisys stock; (3) investment contracts chosen by FMTC; (4) investment contracts previously entered into on behalf of the Plan; and (5) collective investment funds maintained by FMTC for qualified ERISA plans.  (*See* Trust Agreement § 5(b).)  Schedule A to the Trust Agreement identifies "[t]he investment options initially selected by" Unisys in 1993.  (*Id*. § 5(b).)  As of 2006, the Plan offered participants over 70 investment options "selected by the Investment Committee subject to the limitations imposed" by the Trust Agreement.  (Compl. ¶¶ 28-30.)  Those investment options included mutual funds advised by FMRCo, collective trusts managed by FMTC or Pyramis Global Advisors Trust Company ("Pyramis") (a Fidelity affiliate), and the Unisys stock fund, which holds Unisys common stock.  (*Id*. ¶¶ 13, 28-30.)

***Plaintiffs' Complaint.***  In their Complaint, purportedly brought on behalf of current, former, and future participants and beneficiaries in the Unisys Plan (Compl. ¶ 20), plaintiffs Mark Renfro and Gerald Lustig allege that the defendants breached their fiduciary duties under ERISA because the investment options included in the Plan are subject to "excessive" fees.  The Complaint alleges the Plan's investment options consist primarily of Fidelity-brand retail mutual funds, and that these mutual funds carry higher expense ratios than other investment products available in the marketplace.  (*Id.* ¶ 40.)  Plaintiffs also attack the "actively managed" mutual funds among the Plan's investment options, contending that they charge high investment management fees without producing any compensating returns to participants.  (*Id.* ¶¶ 61-62.)  Plaintiffs allege that all defendants should have "use[d] the Plan's bargaining power to require that investment managers provide institutional shares, separate investment accounts, collective

investment trusts or common collective funds as Plan investment options instead of … retail mutual funds." (*Id.* ¶ 39.)

According to plaintiffs, the "excessive" fees and expenses associated with the Plan's investment options financed an undisclosed program of "revenue sharing" among the Fidelity Defendants. (*Id.* ¶¶ 45, 63-4, 67.) In particular, the Complaint alleges that portions of investment management fees, and other fees, collected from mutual fund assets were shared with other Fidelity entities providing services to the Plan, including FMTC and FIIOC, and that these payments resulted in "unreasonable" compensation for the "record-keeping and administrative services" provided by those entities. (*Id.* ¶ 49.) While the Complaint acknowledges that the total fees and expenses collected from the Fidelity-brand mutual funds are disclosed to participants (*id.* ¶ 46 (citing participants' beliefs concerning "ostensible reasons for which the expense ratios are imposed")), plaintiffs complain that participants have no way of knowing that some portion of those revenues may be shared with other Fidelity entities providing services to the Plan. (*Id.* ¶¶ 45, 46, 48.) Plaintiffs suggest that information concerning the internal allocation of revenues among Fidelity entities is necessary for them "to understand and protect their interests in the Plan." (*Id.* ¶ 64; *see also id.* ¶¶ 66, 70(I), 79.)

In addition to charging the Unisys entities with fiduciary responsibility for the Plan's allegedly excessive fee structure, the Complaint concludes that the Fidelity Defendants breached fiduciary duties to the Plan as well. In ostensible support of this fiduciary theory, the Complaint makes varying allegations against each of the three Fidelity Defendants, as follows:

- **FMRCo**. The Complaint does not expressly allege that FMRCo is a fiduciary, but rather simply alleges that the company serves as "the investment advisor for the [Plan's] mutual fund investment options." (*Id.* ¶ 16.)

- **FMTC**. The Complaint contains two categories of fiduciary allegations as to FMTC. *First*, the Complaint notes that FMTC, as "Trustee" for the Plan and in its role in directly

managing certain Plan investment options, is a fiduciary for those purposes.  (*Id.* ¶¶ 12, 13.)  *Second*, the Complaint alleges that "FMTC or a delegate exercises control over the fund selection process so that the Unisys Defendants are able to select only investment options that are also managed within the Fidelity Investments group."  (*Id.* ¶ 49.)

- *FIIOC*.  According to the Complaint, FMTC delegated to FIIOC the recordkeeping and administrative tasks that FMTC agreed to provide under the Trust Agreement.  (*Id.* ¶¶ 14-15; 26.)  The Complaint identifies FIIOC as a fiduciary on two alleged grounds: *first*, that in receiving "revenue sharing" it exercises "discretionary control and authority" over "Plan assets" (*id.* ¶ 15); and, *second*, that it played an unspecified "role" in the selection of Plan investment options, and "in the selection of services to be provided to the Plan and in the management and administration of the Plan."  (*Id.*).

Based on these allegations, plaintiffs bring three ERISA claims.  Count I is asserted against all defendants under ERISA § 502(a)(2) and alleges that defendants breached their fiduciary duties to the Plan and Plan participants by, *inter alia*, causing the Plan to pay unreasonable and excessive fees and failing to disclose alleged "revenue sharing" arrangements. (*Id.* ¶¶ 41, 49, 62-63.)  Count II is asserted against all defendants under ERISA § 502(a)(3) and similarly alleges that all defendants breached their fiduciaries duties by causing the Plan to pay excessive and unreasonable fees, and seeks an accounting.  (*Id.* ¶¶ 81-86.)  Count III asserts an alternative theory against FMTC, FMRCo, and FIIOC alone, seeking the equitable restitution under ERISA § 502(a)(3) of allegedly "excessive" fees retained by the Fidelity Defendants "to the extent that the Defendants are found not to be fiduciaries."  (*Id.* ¶ 90.)

## ARGUMENT

## I.     Standard of Review.

Dismissal is proper under Rule 12(b)(6) if plaintiffs cannot prove a set of facts that would entitle them to their requested relief.  *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). While the Court accepts plaintiffs' well-pleaded facts as true, the Court is not compelled to accept "unsupported conclusions and unwarranted inferences" or "legal conclusions couched as factual allegations."  *Id.*  Further, a motion to dismiss should be granted if the facts set forth in

the complaint undermine plaintiffs' own claims.  *Id*.  Indeed, as the Supreme Court recently held, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S. Ct. at 1964-65 (citation omitted).  To survive a motion to dismiss after *Twombly*, the complaint must present "factual allegations sufficient to raise [plaintiff's] right to relief above a speculative level."  *Stevenson v. Carroll*, No. 05-1088, 2007 U.S. App. LEXIS 18064, at *6 (3d Cir. July 30, 2007) (applying *Twombly*).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider the allegations in the complaint and documents that form the basis of the claims.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *Miller v. Fortis Benefits Ins. Co.*, 363 F. Supp. 2d 700, 704-05 & n.4 (D.N.J. 2005) (dismissing claims based on plain meaning of plan terms, where plan document was attached to the motion to dismiss).  A document forms "the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'"  *See Lum*, 361 F.3d at 222 n. 3; *see also Campo v. Oxford Health Plans, Inc.*, No. 06-4332, 2007 U.S. Dist. LEXIS 45804, at *10-13 (D.N.J. June 26, 2007) (holding that governing plan document was "integral" to claims where the Court needed it to determine "who among the parties is responsible for which portions of the plan").  Without such a rule, plaintiffs with legally insufficient claims could escape dismissal by failing to attach key documents to their pleadings.  *Lum,* 361 F.3d at 222 n.3.

**II.     The Complaint Should Be Dismissed in its Entirety Because Plaintiffs Have Failed to Allege Sufficient Facts to Support Their Conclusions that Fees Were "Excessive" and "Unreasonable."**

As a threshold matter, the Complaint fails the requirement, recently announced by the Supreme Court in *Twombly*, that a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  127 S.Ct. at 1974.  The core claims asserted by plaintiffs are all

grounded in the contention that fees borne by the Plan are excessive, due to the inclusion of

actively-managed investment products and retail mutual funds in the Plan's investment lineup

and allegedly undisclosed "revenue sharing payments" to Plan service providers generated from

those investment products.  (Compl. ¶¶ 37-62.)  These allegations of excessiveness and

nondisclosure are just the type of mere "labels and conclusions," *Twombly*, 127 S. Ct. at 1965,

that are plainly insufficient.

Under Third Circuit law, the imprudence of an investment decision cannot be established

under ERISA without proof that a "hypothetical prudent fiduciary" would not have made the

same decision.  *In re Unisys Savs. Plan Litig.*, 173 F.3d 145, 153-54 (3d Cir. 1998).  In *In re*

*Unisys*, the Third Circuit examined the decision by the Plan's fiduciaries to invest in certain

guaranteed investment contracts (GICs).  *Id.*  After affirming the district court's determination

that the Unisys fiduciaries "undertook adequate and reasonable steps" before purchasing the

GICs, the Third Circuit held "in the alternative" that the fiduciaries were not imprudent because

"a hypothetical prudent fiduciary would have made the same investments[.]"  *Id.*  In reaching

that conclusion, the Third Circuit relied in significant part on the fact that the GICs were

purchased from an insurance company that was qualified under applicable regulations to offer

them, that other judicial decisions had "endorsed" investment in the GICs, and that "other well-

known pension plans" made the same investments.  *Id.*

Against this legal standard, the Complaint's conclusory assertion that the Plan's fiduciaries

caused the payment of "excessive" and "unreasonable" fees, (Compl. ¶¶ 2, 42, 54), does not state

a claim of imprudence.  Under *Twombly* and Third Circuit ERISA standards, merely pinning the

"labels and conclusions" of excessiveness and unreasonableness on the fees charged under the

Plan is insufficient to survive dismissal.  Rather, plaintiffs must allege facts that plausibly suggest

that the fees paid by the Plan fall outside the range of fees that a hypothetical prudent fiduciary would pay as consideration for the array of services and products Fidelity provides. *See, e.g., Brock v. Robbins*, 830 F.2d 640, 645 (7th Cir. 1987) (no breach of fiduciary duty where the fees charged in connection with claims processing services provided to the plan fell within a reasonable range). Plaintiffs here have failed to do so. The Complaint alleges only that there are cheaper investment options available in the marketplace (such as non-mutual fund investments that are passively managed), and that, because of its size, the Plan should be able to use its "bargaining power" to obtain such lower-cost investment options. (*Id.* ¶ 39.) Plaintiffs do not allege that prudent fiduciaries at other 401(k) plans of like size *have not* obtained investment options with the same or similar fees, or that such fiduciaries have *systematically avoided* retail mutual funds and actively managed investment products. They do not make such allegations because they cannot, as it is common knowledge that retail mutual funds represent the predominant investment options in 401(k) plans today. (*See 2007 Investment Company Institute Fact Book* at 76, *available at* www.icifactbook.org/fb_sec7.html (last visited Sept. 6, 2007) (at year-end 2006, 55% of 401(k) assets were held in mutual funds).)[2] In light of the pleading standard recognized by the Supreme Court in *Twombly*, plaintiffs' allegations do not state a claim.

Moreover, plaintiffs' conclusory assertions of "excessive" and "unreasonable" fees are not linked to any assessment of the quality or nature of the products and services that the Plan's received in return for the fees paid. As the Department of Labor ("DOL") has recognized, the

---

[2]    Indeed, just as courts have "endorsed" investment in the GICs at issue in *In re Unisys Savings Plan Litigation*, courts have likewise recognized the prudence of offering mutual funds as 401(k) plan investments. For example, in *Jenkins v. Yager*, 444 F.3d 916 (7th Cir. 2006), the Seventh Circuit held that a 401(k) plan fiduciary had not violated ERISA by offering a plan investment lineup that consisted of four mutual funds marketed by a single mutual fund company, noting that the fiduciary's strategy "to pick solid funds and to stay with them long-term" cannot be said to be "unreasonable or imprudent." *Id.* at 925.

quality and nature of the services and products provided are as important, if not more important,

than price in selecting Plan services and service providers:

> Selecting a service provider requires that you evaluate and differentiate services offered by competing companies.  Cost is one of the criteria, but not the only criterion, for making this evaluation.  Other factors of equal or greater importance to consider include the quality and type of services provided, the anticipated performance of competing providers and their investment products and other factors specific to your plan's needs. *The service provider offering the lowest cost services is not necessarily the best choice for your plan.*  (emphasis in original).

Employee Benefits Security Admin., Department of Labor, 401(k) Fiduciary Education

Campaign, *available at* http://www.dol.gov/ebsa/pdf/401kfefm.pdf (last visited Sept. 6, 2007);

*see also McLaughlin v. Bendersky,* 705 F. Supp. 417, 420 (N.D. Ill. 1989) ("what is relevant in

determining the reasonableness of [a service contract] is the amount [the service provider]

charges the fund, and the quality of the services it provides . . .").

Similarly insufficient are plaintiffs' allegations about allegedly undisclosed "revenue

sharing payments."  Even crediting those allegations fully, they fail *Twombly*'s requirement that

allegations be "factually suggestive" of illegal activity or, in this case, of a breach of duty under

ERISA.  *See Twombly*, 127 S.Ct. 1971-73 (noting that allegations are insufficient under Rule

12(b)(6) when they could be equally suggestive of a lawful purpose).  These allegations do not

address the *amounts* that the Unisys Plan paid and thus do not support plaintiffs' wholly

conclusory allegations that those amounts are "excessive."  Rather, these allegations merely

describe the *manner* in which plan service providers are compensated, something that is entirely

irrelevant to the ERISA fiduciary duties challenged here.  Accordingly, the mere allegation that

there are "revenue sharing payments" among the Fidelity Defendants does nothing to show that

the total fees paid by the Plans (or the total compensation received by the Fidelity entities) are

unreasonable in light of the nature and quality of the services provided, much less suggest that a

similarly situated hypothetical prudent fiduciary would not have decided to offer the investment options to which these fees relate.

Thus, the Complaint should be dismissed as against all defendants because the central premise underlying each claim—the supposed "excessiveness" of fees—is unsupported by sufficient factual allegations to meet basic pleading standards.

## III. Count I Should Be Dismissed Because the Fidelity Defendants Have No Fiduciary Status Relevant to Plaintiffs' Claims.

Count I is asserted against all defendants under ERISA § 502(a)(2), which authorizes suits to obtain broad remedies provided by ERISA § 409(a), 29 U.S.C. § 1109(a), for breaches of fiduciary duty.  In dismissing a comparable claim by the same plaintiffs' counsel against two of the same Fidelity entities, the *Hecker* court held that FMRCo and FMTC[3] could not be liable for fiduciary breaches because they were not fiduciaries with respect to the challenged conduct. 2007 U.S. Dist. LEXIS 45275, at *21-22.  Plaintiffs here have similarly failed to allege relevant fiduciary authority by the Fidelity Defendants, and Count I should therefore be dismissed.[4]

### A. FMRCo is Not a Fiduciary to the Unisys Plan.

Section 502(a)(2) authorizes actions for "appropriate relief under § 409[,]" which, in turn, provides:

> Any person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to the plan any profits *of such fiduciary* which have been made through use of assets of the plan *by the fiduciary*, and

---

[3]     FIIOC, which was added to this case through the Amended Complaint, was not a defendant in *Hecker.*

[4]     On its face, the Complaint must be dismissed as to FMRCo because it contains no allegations that FMRCo is a fiduciary.  To the extent that the Complaint intends to name FMRCo as a fiduciary with respect to the Plans, FMRCo addresses those claims here.

> shall be subject to such other equitable or remedial relief as the court may deem
> appropriate, including removal of such fiduciary. . . . (Emphasis added.)

A claim under § 502(a)(2) may only be asserted against a fiduciary to an ERISA plan. *See*

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53 (1993).  In turn, ERISA § 3(21)(A), 29 U.S.C. §

1002(21)(A), provides that a person is a plan fiduciary:

> to the extent (i) he exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or control
> respecting management or disposition of its assets, (ii) he renders investment
> advice for a fee or other compensation, direct or indirect, with respect to any
> moneys or other property of such plan, or has any authority or responsibility to do
> so, or (iii) he has any discretionary authority or discretionary responsibility in the
> administration of such plan.

Plaintiffs do not allege conduct meeting any of these tests, and thus FMRCo is not a fiduciary

subject to suit under § 502(a)(2).

Indeed, the only connection that plaintiffs draw between FMRCo and the Plan is

FMRCo's role as investment adviser to the Fidelity mutual funds offered as Plan investment

options.  (Compl. ¶¶ 16, 28.)  As a matter of law, an investment adviser to a mutual fund is not a

fiduciary to an ERISA plan that invests in that fund.  *See* ERISA § 3(21)(B), 29 U.S.C. §

1002(21)(B) ("If any money or other property of an employee benefit plan is invested in

securities issued by an investment company registered under the Investment Company Act of

1940, such investment shall not by itself cause such investment company or such investment

company's investment adviser or principal underwriter to be deemed to be a fiduciary . . .").

That conclusion derives from ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1), which provides that

when a plan invests in a security issued by a mutual fund, or "investment company," "the assets

of such plan shall be deemed to include such security but shall not, solely by reason of such

investment, be deemed to include any assets of such investment company."  Based on that clear

statutory language, courts have dismissed claims seeking to impose ERISA fiduciary liability on

mutual fund advisers. *See, e.g., A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec.*, 964 F. Supp. 147, 149 (S.D.N.Y. 1997); *Corbett v. Marsh & McLennan Cos.*, No. MDL-15863, 2006 WL 734560, at *2 (D. Md. Feb. 27, 2006).

As a matter of law, therefore, Count I should likewise be dismissed against FMRCo.

**B.      FMTC is Not a Fiduciary as to the Challenged Conduct.**

Unlike FMRCo, FMTC does have limited fiduciary functions under its Trust Agreement with Unisys, but those functions do not involve the conduct challenged in the Complaint.  It is well-settled that ERISA makes a person a fiduciary only "to the extent" that person performs fiduciary functions.  ERISA § 3(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *Hecker,* 2007 U.S. Dist. LEXIS 45275, at *21-22.  As such, someone who becomes a plan fiduciary as to one function is not a fiduciary with respect to other plan functions.  *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990) ("Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions. Thus, when employers themselves serve as plan administrators, 'they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators'") (citation omitted).  Thus, to hold FMTC liable as a fiduciary, the Court would have to conclude—which it cannot—that FMTC was acting as a fiduciary to the Plan in undertaking the conduct at issue in the Complaint.[5]

Paragraphs 12 and 14 of the Complaint allege that FMTC is the trustee of the Unisys Plan and "is contractually obligated to serve as the Plan's record keeper" but do not tie any claim of

---

[5]      *See Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432, 436 (E.D. Pa. 1999) ("Even assuming that IBC exercised discretion over certain of the plan's administrative functions, it does not

fiduciary liability to those functions.  FMTC's recordkeeping role is not a fiduciary function

because it does not involve any exercise of discretion, which is a "prerequisite to fiduciary status

for a person managing an ERISA plan."  *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d

Cir. 2003).[6]  FMTC's trustee role, in turn, imposes only the "limited" duty of a directed trustee

which, under the Trust Agreement, acts only pursuant to proper directions from Unisys and the

various Unisys entities in their roles as fiduciaries of the Plan.[7]  ERISA § 403(a), 29 U.S.C. §

1103; *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995) (describing directed trustees as

"essentially" "immune from judicial inquiry"); *Maniace v. Commerce Bank*, 40 F.3d 264, 268

(8th Cir. 1994) (holding that obligation of a directed trustee is "something less than that owed by

typical fiduciaries").  Nothing in the Complaint alleges that FMTC improperly took direction

from the Unisys entities or otherwise implicates FMTC's role as directed trustee.

Paragraph 13 of the Complaint also asserts that FMTC "directly manage[s] a number of

the investment options available to Plan participants" under the Plan and thus is a "fiduciar[y] to

the Plan[.]"  (Compl. ¶ 13.)  While FMTC is a fiduciary with respect to management of those

investment options, the Complaint does not attack FMTC's management.  Rather, plaintiffs'

breach of fiduciary duty claims focus on two general kinds of conduct: (1) imprudent investment

selection, specifically, causing the Plan to include as investment options retail mutual funds and

actively-managed funds, and to pay excessive fees to Plan service providers; and (2) non-

---

become liable as an ERISA fiduciary unless there is a nexus between the alleged breach and the discretionary
authority exercised.").

[6]      The recordkeeping and related services that FMTC was contracted to perform under the Trust Agreement
are listed in Schedule A to that agreement.

[7]      FMTC's status as directed trustee is reflected throughout the Trust Agreement.  *See, e.g.,* Trust Agreement
§§ 4(b) (direction as to disbursement of plan assets); 5(b) (direction as to "the investment options in which Plan
participants may invest . . ."); 5(e)(iii) (direction as to the purchase and sale of Unisys stock); 8(b) ("Directions from
Sponsor or Administrator"); 8(c) ("Directions from Applicable Fiduciary").

disclosure of information relating to the internal allocation among Fidelity entities of revenues associated with the Plan and Plan investment options.  (Compl. ¶¶ 37-67.)  For the reasons discussed below, neither of these contentions has merit.

**1.      FMTC Is Not a Fiduciary With Respect to Investment Selection.**

Plaintiffs apparently seek to establish FMTC's fiduciary status with respect to both the Plan's inclusion of allegedly imprudent investment options and payment of allegedly excessive fees.  (Compl. ¶ 49 ("FMTC or a delegate exercises control over the fund selection process so that the Unisys Defendants are able to select only investment options that are also managed within the Fidelity Investments group.").)  Plaintiffs suggest that by influencing the Plan's selection of investment options, FMTC could affect the amount of so-called "revenue sharing payments" Fidelity received from the investment options selected.  What plaintiffs try to characterize as "control," however, is merely FMTC's negotiation of the terms of its own retention.  According to the Trust Agreement, FMTC was "willing to hold and invest the  . . . plan assets in trust . . . pursuant to the provisions of [the] Trust Agreement," and consented to serve as Trustee "in consideration of … the mutual covenants and agreements set forth" by the Agreement.  (Trust Agreement Preamble.)  As the Complaint concedes, it is the Trust Agreement under which FMTC was retained that limits the range of investment vehicles from which the "Unisys Defendants" can select the Plan's investment options.  (Compl. ¶¶ 26-27; Trust Agreement § 5(b).)  That limitation was thus one of the "provisions" and "covenants and agreements" FMTC required as a condition of its engagement.

It is well-settled that a party does not act as an ERISA fiduciary in setting the terms of its own retention, even if it is being retained to serve in a fiduciary capacity.  *See Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) (holding that

pharmaceutical benefits manager did not act as a fiduciary in negotiating and adhering to an

arrangement under which it received payments from the plan that exceeded its actual costs);

*Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432, 436 (E.D. Pa. 1999) (agreeing with other

circuits that "a person negotiating a contract with a . . . plan . . . . is not an ERISA fiduciary with

respect to the terms of the agreement for his compensation."). Thus, any role that FMTC played

in negotiating the terms of the Trust Agreements—the only role FMTC is alleged to have played

in investment selection—was not a fiduciary role and is not the basis for fiduciary liability.

Moreover, to the extent the Complaint alleges that the Trust Agreement gives FMTC, rather than

Unisys, control over the Plan's investment choices, it overlooks the fact that Unisys retained the

option not to engage FMTC on its terms. At all times, Unisys could have negotiated a different

lineup of Plan investments, or renegotiated or terminated the Trust Agreement. (Trust

Agreement § 11.) Thus, plaintiffs cannot assert that the Trust Agreement gave FMTC discretion

over Plan investments when Unisys had unfettered discretion to reject or terminate the Trust

Agreement. As such, plaintiffs cannot establish that FMTC has any fiduciary status relating to

their claims for either the Plan's investment in allegedly imprudent options or the alleged

payment of excessive fees. *See Hecker*, 2007 U.S. Dist. LEXIS 45275, at *21-22 ("Had the

Fidelity defendants been fiduciaries for some purposes, they were not fiduciaries for the purposes

of making plan investment decisions and accordingly could not be liable for breach of fiduciary

duty on the claims.").

> **2.    FMTC Is Not a Fiduciary With Respect to Participant Disclosures and Has No Fiduciary Obligation to Provide the Information that Plaintiffs Allege Should Have Been Disclosed.**

Likewise, FMTC cannot be held liable under § 502(a)(2) for failing to disclose

information to participants regarding the Plan's fees and expenses because it has no fiduciary

responsibility for participant communications.  Notably absent from the Complaint is any

allegation that FMTC has discretionary authority or responsibility with respect to participant

communications.  This is not surprising:  FMTC does not occupy any of the defined roles that are

charged by statute and regulation with the obligation to make disclosures to participants.

Instead, responsibility for such disclosures is placed squarely in the hands of the plan

"administrator" as that term is used in ERISA § 3(16), 29 U.S.C. § 1002(16), whom the

Complaint alleges to be the Benefits Committee and the Plan Manager, and *not* FMTC.  Compl.

¶¶ 8-9, ERISA §§ 101-11; 29 C.F.R. §§ 2520.101-1, *et seq.*  For that reason alone, the disclosure

claims as to FMTC must fail.

  The claim against FMTC must also fail because plaintiffs have not stated a claim that the

alleged omissions constitute violations of ERISA.  ERISA itself mandates the specific

disclosures and details that must be provided to plan participants.  ERISA §§ 101-11, 29 U.S.C.

§§ 1021-31; *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995) ("ERISA already

*has* an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations . .

."). The DOL, in turn, has promulgated detailed regulations further delineating those disclosure

requirements.  29 C.F.R. §§ 2520.101-1, *et seq.*  Recognizing the existence of this express

statutory and regulatory disclosure regime, the federal courts have refused to create an implied

general fiduciary duty of disclosure under ERISA.[8]  The Complaint provides no reason for this

---

[8]  *See, e.g.*, *Curtiss-Wright,* 514 U.S. at 84 (reasoning that Congress did not intend statutory disclosure scheme "to be supplemented by a far-away provision in another part of the statute . . ."); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 462 (3d Cir. 2003) (no duty to disclose information concerning physicians' incentives programs because such disclosure were not already mandated by Congress under ERISA); *Ehlmann v. Kaiser Found. Health Plan*, 198 F.3d 552, 554-56 (5th Cir. 2000) (rejecting claim that HMO had duty to disclose its physician compensation scheme on grounds "[t]hat Congress and DOL were so capable of enumerating disclosure requirements when they wanted to means that the absence of one regarding physician compensation plans was probably intentional"); *Hecker,* 2007 U.S. Dist. LEXIS 45275, at *14 ("Where as here Congress has by statute and related regulation, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary obligations.").

Court to depart from that settled approach. Congress and the DOL plainly could have mandated the types of disclosures regarding 401(k) plan fees that plaintiffs urge the Court to find here.[9] Indeed, both have actively considered, and continue to consider, whether it is advisable to mandate the very type of 401(k) plan fee disclosure sought by plaintiffs in this private litigation.[10] In light of the vigorous policy debate surrounding that issue, it would be particularly inappropriate for the courts to create from whole cloth their own disclosure regimes based on ERISA's general fiduciary requirements.

It is true that, in individualized circumstances, courts have held that fiduciaries have a duty to disclose information that those fiduciaries knew to be material to participants. Here, however, while plaintiffs make the conclusory assertion that the undisclosed information was "material" (Compl. ¶ 63), they fail to provide factual allegations necessary to support that assertion. Materiality does not exist in the abstract. For information to be "material" to participants, the Complaint must allege sufficient facts from which the Court can conclude that the information has some effect, or potential effect, on a legally significant decision that participants could make. *See Horvath*, 333 F.3d at 461 (nondisclosure is material for purposes of

---

[9]  As discussed, Count I of the Complaint challenges the alleged non-disclosure of certain "Revenue Sharing" payments—that is, the internal allocation of revenue among Fidelity entities. The Complaint does not allege that the Fidelity Defendants failed to disclose any fees paid by Plan participants or the expense ratios charged in connection with the individual retail mutual funds offered as investment options in the Plan.

[10]  Earlier this year, the DOL issued a request for information seeking suggestions and comments from plan participants, sponsors, service providers and others regarding the rules applicable to the disclosure of plan administrative and investment related expense information to participants in certain plans, including 401(k) plans. *See* Fee and Expense Disclosures to Participants in Individual Account Plans, 72 Fed. Reg. 20,457 (Apr. 25, 2007). Several dozen individuals and entities formally responded, providing a wide variety of competing views on the issue. *See* http://www.dol.gov/ebsa/regs/cmt-feedisclosures.html (last viewed Aug. 1, 2007) (linking responses to DOL's request for information). In addition, the House Committee on Education and Labor has held hearings in recent months regarding the possibility of legislation to require further disclosure of 401(k) plan fees and expenses. 153 Cong. Rec. D270 (daily ed. Mar. 6, 2007) (list of committee meetings). On July 26, 2007, Rep. George Miller (D-CA-7) introduced the 401(k) Fair Disclosure for Retirement Security Act of 2007, which would amend ERISA by requiring 401(k) service providers to provide plan sponsors with a statement detailing the "expected total annual

ERISA § 404 "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision") (citation and quotation omitted).

The Third Circuit's decision in *Horvath* illustrates this point.  In *Horvath*, the plaintiff alleged that the defendant HMO breached fiduciary duties by failing to disclose information regarding financial incentives that the HMO provided physicians to ration care in a cost-effective manner.  *Id.* at 452-53.  The Third Circuit rejected plaintiff's claim on multiple grounds, including the fact that plaintiff "failed to explain how the information at issue was material in light of the fact that her employer offers no other options" with respect to her decisions regarding healthcare coverage.  *Id.* at 462.  As in *Horvath*, plaintiffs' assertion here that defendants failed to disclose "material" information (Compl. ¶ 63) is unfounded in any factual allegation tying the allegedly undisclosed information to any participant decision.  Plaintiffs' mere assertion of materiality, absent factual detail demonstrating how participants could have meaningfully acted on the purportedly withheld information, is not sufficient to impose fiduciary disclosure obligations.  *Twombly,* 127 S.Ct. at 1965 (holding that a plaintiff must allege "more than labels and conclusions").

The recent decision in *Hecker,* 2007 U.S. Dist. LEXIS 45275, further illustrates the fatal shortcomings in plaintiffs' argument.  Plaintiffs do not (and cannot) allege that participants, in choosing among the investment options, were deprived of information concerning the expense ratios of each investment option or the investment returns of each such option.  Plaintiffs do not (and cannot) allege that the mechanism by which service providers were compensated was relevant to participants' selection of the Plan's service providers.  For all these reasons, the

---

cost of such services" and itemizing the "relevant components of the total cost, including any amounts to be paid to affiliated or other third-party service providers under the contract."  H.R. 3185, 110th Cong. (2007).

*Hecker* court's conclusion is equally applicable here: "In the context of the disclosure of information on investment options the additional information suggested by plaintiffs including revenue sharing is neither required by the regulations nor material to participant investors assessing the investment opportunity."  2007 U.S. Dist. LEXIS 45275, at *18; *see also, Taylor v. United Techs. Corp.,* No. 3:06cv1494, 2007 U.S. Dist. LEXIS 57807, at *13 (D. Conn. Aug. 9, 2007) (dismissing ERISA "breach of fiduciary [duty] claim based on non-disclosure of revenue sharing fees").[11]  Accordingly, the nondisclosure claims against FMTC in Count I should be dismissed.

### C.     The Claims Against FIIOC Should Be Dismissed Because It Is  Not a Fiduciary as to the Challenged Conduct.

Count I should also be dismissed against FIIOC because, like the other two Fidelity Defendants, FIIOC is not a fiduciary with respect to the asserted claims.  Indeed, plaintiffs' primary description of FIIOC's alleged relationship to the Plan is that FMTC "delegated" to FIIOC the recordkeeping function and other administrative tasks that FMTC agreed to provide the Plan under the Trust Agreement.[12] (Compl. ¶¶ 14-15, 26.)  But the Trust Agreement makes clear that these services are "ministerial in nature."  *See* Trust Agreement Preamble ("WHEREAS, the Trustee is willing to perform recordkeeping and administrative services for

---

[11]     The district court in *Taylor* allowed the complaint to proceed under the theory that the defendants in that case made affirmative misrepresentations to plan participants regarding the sharing of revenue among service providers.  2007 U.S. Dist. LEXIS 57807 at *13-15.  Here, although the Complaint asserts that "Defendants" engaged in a "campaign" of "misrepresentation" (Compl. ¶ 67), it fails to identify any specific misrepresentations by FMTC or any other Fidelity Defendant.  Moreover, any misrepresentation claim would be fatally deficient because plaintiffs have failed to identify how they supposedly detrimentally relied on a misrepresentation by any defendant, a necessary element of an ERISA misrepresentation claim under Third Circuit law.  *See Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 387 (3d Cir. 2003) ("[I]n order to state a claim for misrepresentation by an ERISA fiduciary, Burstein must allege . . . that *Burstein relied on the misrepresentations to his detriment*") (emphasis in original).

[12]     As described above, the functions that FMTC agreed to perform under the Trust Agreement are either non-fiduciary in nature (such as the recordkeeping function) or unrelated to the conduct challenged in the Complaint.  Accordingly, to whatever extent FMTC may have delegated those functions to FIIOC, such delegation did not make FIIOC a fiduciary with respect to the conduct at issue in this litigation.

the Plan if the services are *purely ministerial in nature* and provided within a framework of plan

provisions, guidelines and interpretations") (emphasis added).  And ERISA regulations establish

that such ministerial tasks are not fiduciary.  29 CFR § 2509.75-8(D-2) ("a person who performs

purely ministerial functions . . . within a framework of policies, interpretations, rules, practices

and procedures made by other persons is not a fiduciary").

Plaintiffs make various conclusory assertions in Paragraph 15 of the Complaint

apparently aimed at establishing FIIOC's fiduciary status.  For instance, with respect to their

"revenue sharing" claims, plaintiffs allege that FIIOC "exercises discretionary control and

authority over Plan assets" because "[i]t is paid for performing . . . services through a revenue-

sharing arrangement with the Fidelity-branded mutual funds offered to the participants."

(Compl. ¶ 15.)  The allegation makes no sense.  Even if *receiving* payment for services could be

considered the exercise of discretionary control over the assets being paid, it would still not

constitute exercise of control over Plan assets because ERISA expressly provides that the assets

of a mutual fund in which an ERISA plan invests are not plan assets.  ERISA § 401(b)(1).  *A*

*fortiori*, any payments that FIIOC receives as fees from the Fidelity mutual fund assets are also

not plan assets but are instead FIIOC's own revenues.

Recently, the Seventh Circuit recognized this critical distinction in *Chicago District*

*Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007).  *Caremark*

involved an ERISA plan that contracted with a pharmaceutical benefit management company

(PBM) to run its prescription drug program.  *Id.* at 466.  The contract required the PBM to pay

the plan rebates, pursuant to a fixed schedule, on prescription drugs obtained from drug

manufacturers.  *Id.* at 468-69.  The plaintiff alleged that the PBM breached fiduciary duties to the

plan by retaining rebates from drug manufacturers that were greater than the rebates that the

PBM had contracted to remit to the plan.  *Id.*  In holding that the PBM was not a plan fiduciary, the Seventh Circuit rejected an argument that the PBM controlled "plan assets" when it received and applied for corporate purposes rebates based on the purchase of drugs for plan participants. *Id*. at 476 n.6.  The Seventh Circuit explained that because the defendant was collecting the rebates for itself rather than on behalf of the plan, it was controlling its "own assets," not "plan assets."  *Id.*  Likewise, when FIIOC collects fees from the various mutual funds and uses those monies for its own purposes, it is controlling its own assets, not plan assets, and is not acting as an ERISA fiduciary.

Plaintiffs also allege that FIIOC is a fiduciary because it purportedly "played a role in the selection of the investment options available to participants, in the selection of the services to be provided to the Plan and in the management and administration of the Plan."  (Compl. ¶ 15.)  But the Complaint contains no allegations regarding what "role" FIIOC supposedly played with respect to the selection of investment options, and it is impossible to discern any role from the Complaint.  Indeed, the Complaint itself undercuts any notion of FIIOC's role by alleging that the Investment Committee, *not* FIIOC, is "responsible for the selection or elimination of the investment options made available to the participants and beneficiaries, and for the selection or elimination of the investment managers" (*Id*. ¶ 10.)  It is not enough to assert vaguely that FIIOC "played a role" in Plan-related activities; plaintiffs must allege *facts* showing that FIIOC played a *fiduciary* role by exercising discretionary control over those activities.  Absent such factual allegations, those terms are nothing more than the type of "labels and conclusions" that the Supreme Court rejected as insufficient in *Twombly*.  127 S. Ct. at 1965.  Accordingly, the claims in Count I against FIIOC should be dismissed.

IV.     **Count II Is Similarly Defective and Also Seeks Relief That is Unavailable Under ERISA § 502(a)(3).**

While Count I seeks relief for breach of fiduciary duty under § 502(a)(2) of ERISA, Count II purports to seek equitable relief under the separate cause of action provided by ERISA § 502(a)(3).  Count II should be dismissed for multiple reasons.

A.      **Count II Should be Dismissed on the Same Grounds as Count I.**

Plaintiffs' claims against the Fidelity Defendants under Count II are expressly premised on the assertion that the Fidelity Defendants are Plan fiduciaries.  (*See* Compl. ¶ 76 ("Defendants are the primary fiduciaries of the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.").)  However, as discussed in Section III, none of the Fidelity Defendants is an ERISA fiduciary with respect to the conduct challenged in the Complaint.  Thus, like the claims in Count I, the Count II claims against the Fidelity Defendants should be dismissed.

B.      **Count II Should be Dismissed Since it Does Not Seek "Appropriate Equitable Relief" Authorized by ERISA.**

Count II should also be dismissed because it does not seek relief that is available under § 502(a)(3).  Section 502(a)(3) authorizes a court to remedy violations of statutory or plan provisions by granting an injunction or "other appropriate equitable relief."  As the Supreme Court has noted, such relief "must mean *something* less than *all* relief."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259 n.8 (1993).

While plaintiffs attempt to invoke equitable terminology by seeking "injunctive" relief and an "accounting" (Compl. ¶¶ 85, 88), the Complaint shows that any such relief would not be "appropriate" as required under § 502(a)(3).  In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court noted, "We should expect that courts, in fashioning 'appropriate' equitable relief

23

. . . will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others . . . we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515 (internal citation omitted).

Not only does the Complaint not allege the inadequacy of other remedies, Count II demands the same relief as Count I.  Assuming, *arguendo*, that plaintiffs are correct that the Fidelity Defendants have acted as fiduciaries to the Plan with respect to the challenged conduct, plaintiffs already have a full and adequate remedy for any breaches of fiduciary duty under § 502(a)(2) which, by its incorporation of § 409(a), authorizes full monetary remedies plus "such other equitable or remedial relief as the court may deem appropriate."  Thus, the claims in Count II are wholly duplicative of those in Count I, and no additional equitable relief would be "appropriate."

To the extent plaintiffs seek through their request for "injunctive" relief or an "accounting" to compel the Fidelity Defendants to make disclosures relating to their fees, equitable relief would also be inappropriate because those disclosures are already the subject of express statutory regimes.  As discussed in Section II.B.2 above, ERISA and related regulations set forth in detail the form and types of information that must be provided to plan participants, and plaintiffs do not allege that the Fidelity Defendants have violated any of those statutory or regulatory provisions.  ERISA §§ 101-11; *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995) ("ERISA already *has* an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations . . .").  Accordingly, the federal courts have expressed great reluctance to expand on that scheme by imposing implied fiduciary duties of disclosure.  *See, e.g., Curtiss-Wright,* 514 U.S. at 84.  Given that Congress and the DOL could require additional

financial disclosure—and are actively deciding whether to do so—the invitation to this Court to undertake the same task as "equitable relief" is surely inappropriate. *See Hecker*, 2007 U.S. Dist. LEXIS 45275, at *14 ("Where as here Congress has by statute and related regulation, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary obligations.").

Such relief would be particularly inappropriate in the context of the mutual funds advised by FMRCo, since disclosures regarding such funds and their expenses are already governed by a robust set of securities laws including the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.*, the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, *et seq.*, the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.,* and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*[13] Those statutory requirements are further augmented by Securities and Exchange Commission regulations and rules that specifically address the disclosure of fees. *See In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208(RO), 2006 U.S. Dist. LEXIS 20758, at *30 (S.D.N.Y. Apr. 18, 2006) ("SEC Form [N-1A] sets forth the requirements for information that must be contained in offering prospectuses and statements of additional information . . . Form N-1A requires the disclosure of the total fees paid by the investor in connection with a securities purchase, as well as total commissions paid by the fund, but it does not require disclosure of how differential compensation is allocated.").

Notably, in applying this securities law regime, the vast majority of federal court decisions have held that the type of information similar to what plaintiffs suggest in Count II

---

[13]     *See, e.g.*, 15 U.S.C. § 77aa (requiring disclosure of extensive financial information and operational information for any transaction registering the offer or sale of securities under the Securities Act of 1933); 15 U.S.C. § 80a-8(b)(5) (requiring that mutual fund registration statements contain all information required under the Securities Act of 1933 and the Exchange Act of 1934); and 15 U.S.C. § 80a-29(e) (requiring investment companies to transmit semi-annual reports to shareholders).

should be disclosed here—i.e., the manner in which fees paid by mutual funds are shared among service providers—is not material to an investor's decision to purchase mutual fund shares. *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,* 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) ("Defendants disclosed the fees and commissions charged to shareholders. The precise allocation of those fees is not material information under the securities laws."); *In re Morgan Stanley*, 2006 U.S. Dist. LEXIS 20758, at *37-38 ("All fees charged to the shareholder were disclosed in the offering prospectuses . . . The allocation of the fees is immaterial, because it could have no effect on share price."). There is no basis to conclude that the fee allocation information held to be immaterial to mutual fund investors under the securities laws is somehow material when that investment is made through a 401(k) plan. How Fidelity entities choose to share or allocate among themselves revenues obtained from managing Fidelity-brand mutual funds is of no logical importance to an investor, however he or she happens to invest in those mutual funds. *See Hecker*, 2007 U.S. Dist. LEXIS 45275, at *18 ("In the context of the disclosure of information on investment options the additional information suggested by plaintiffs including revenue sharing is neither required by the regulations nor material to participant investors assessing the investment opportunity."). [14]

Finally, to the extent that plaintiffs are seeking monetary relief via Count II, that relief is plainly not "equitable" for purposes of § 502(a)(3). The Supreme Court has recognized that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to

---

[14]     Likewise, the reasonableness of mutual fund fees is specifically governed by § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b), which authorizes private actions against mutual fund advisers and their affiliates to challenge the receipt of excessive fees. Unlike actions under ERISA, actions under § 36(b) can only be brought by investors in the particular mutual fund whose fees are challenged and is subject to additional restrictions such as a one-year statute of limitations. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535-36 (1984); 15 U.S.C. § 80a-35(b)(3). The fact that Congress has already specifically created a separate mechanism to challenge the amount of mutual fund fees further demonstrates that the use of § 502(a)(3) to create a new avenue for that same challenge is unnecessary and inappropriate.

compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . .
And 'money damages are, of course, the classic form of *legal* relief.'" (citations omitted)
(emphasis in original). *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210
(2002). While plaintiffs cast their request in the equitable terms of "surcharge" (Compl. ¶ 87),
their Complaint makes clear that plaintiffs are not seeking recovery of specific funds in the
Fidelity Defendants' possession that properly belong to the Plan. Rather, they are seeking broad
recovery of "all fees and expenses incurred by the Plan and/or paid to third parties, whether paid
directly by the Plan or indirectly transferred among Plan service providers or other third parties."
(*Id*. ¶ 86.) Recovery of such fees and expenses falls well outside the realm of equitable relief and
thus outside the scope of § 502(a)(3). Accordingly, because Count II seeks relief that is neither
"appropriate" nor "equitable" under § 502(a)(3), it should be dismissed.

**IV.    Count III Should Be Dismissed Because It Seeks Relief That Is Unavailable Under ERISA § 502(a)(3).**

Like Count II, Count III is styled as a claim for "Other Remedies" under § 502(a)(3).
Although Count III differs from Count II in that it is asserted solely against the Fidelity
Defendants "to the extent that [they] are found not to be fiduciaries," (Compl. ¶ 90), and relabels
the remedies sought, Count III is largely duplicative of the prior count and should be dismissed
on similar grounds, including that it does not seek either "appropriate" or "equitable" relief.

That conclusion is unaltered by plaintiffs' demand in Count III for "equitable restitution"
(Compl. ¶ 91) received by the Fidelity Defendants. As the Supreme Court explained in *Great-West,* restitution exists in equity, as opposed to law, "where money or property identified as
belonging in good conscience to the plaintiff could clearly be traced to particular funds or
property in the defendant's possession." 534 U.S. at 213; *see also United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 231 (3d Cir. 2005) (quoting *Great-West*).

The Complaint fails to identify any specific funds that are improperly held by the Fidelity Defendants and traceable to the Plan's assets.  As an initial matter, any fees received by the Fidelity entities have become part of Fidelity's general revenues and thus cannot be considered traceable.  In addition, the Complaint does not identify any fees as being paid directly by the Plan to the Fidelity Defendants.  Rather, ¶ 45 states that "Defendants chose to have the Fidelity Defendants' fees for operating and administering the Plan paid through a revenue-sharing arrangement."  The Complaint alleges that under that "revenue-sharing arrangement," the Plan's investment options (i.e., the mutual funds and collective trusts) assess asset-based charges against the Plan, and fees are then paid from the investment funds to the Fidelity Defendants.  (Compl. ¶¶ 45, 53.)  Once the Plan's assets are invested in the Funds, the amounts invested cease to be specifically identifiable assets but instead become part of a commingled pool and in the case of mutual funds, cease to be plan assets as a matter of law (*See* Section III.C. above).  Thus, any fees paid out of the funds to the Fidelity Defendants are not traceable to the Plan's assets and are not subject to equitable restitution.

The Complaint also alleges that, in addition to "revenue sharing payments," the "Plan service providers" receive compensation through "Additional Compensation Streams."  (Compl. ¶ 55.)  However, plaintiffs' grossly generalized allegations fail to indicate which, if any, of those Alternative Compensation Streams apply to the individual Fidelity Defendants.  For example, the Complaint alleges that "consultants receive finders' fees from investment managers" but does not allege that any of the Fidelity Defendants are consultants.  Moreover, the Complaint does not

allege that any of the Additional Compensation Streams involve amounts paid out of, and thus at least conceivably traceable to, Plan assets. [15]   Accordingly, Count III should be dismissed.

## V.      CONCLUSION

For the foregoing reasons, Fidelity respectfully requests that that this Court enter an Order granting the Fidelity Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Breach of Fiduciary Duty and dismiss plaintiffs' claims against Fidelity Management & Research Company, Fidelity Management Trust Company, and Fidelity Investments Institutional Operations Company, Inc. with prejudice.

---

[15]      The very nature of plaintiffs' claims is inconsistent with the existence of specifically identifiable and traceable ill-gotten funds.  Plaintiffs do not allege that any discrete fee was in and of itself improper.  Instead, plaintiffs' essential contention is that the fees, as a whole, were "excessive."  (Compl. ¶ 92.)  Thus, even if plaintiffs could identify a set of fees in one of the Fidelity Defendant's possession that could be traced back to Plan assets, plaintiffs would have no basis for contending that those assets, as opposed to fees acquired through other channels, constitute the supposedly "excess" portion of the Fidelity Defendants' fees.

Dated:  September 7, 2007          Respectfully submitted,

By: /s/ _____

John S. Summers (PA ID No. 41854)
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square
27th Floor
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
Fax:  (215) 568-0300

*Counsel for Defendants Fidelity Management
Trust Company, Fidelity Management &
Research Company, and Fidelity Investments
Institutional Operations Company, Inc.*

***Of Counsel***:
Robert N. Eccles
Brian D. Boyle
Shannon D. Barrett
Arthur W.S. Duff
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Fax:  (202) 383-5414

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2007, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to the following attorneys of record:

Jerome J. Schlichter
Elizabeth J. Hubertz
Schlicter, Bogard & Denton
100 South 4th Street, Suite 900
St. Louis, MO  63102

*Counsel for Plaintiffs*

Joseph J. Costello
Brian T. Ortelere
Jamie Kohen
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19101-2921

*Counsel for the Unisys Defendants*

Theodore H. Jobes
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103

*Counsel for Plaintiffs*

Stephen Harburg
O'Melveny & Meyers LLP
1625 Eye Street, NW
Washington, DC 20006

*Counsel for Defendants Fidelity Management
Trust Company, Fidelity Management &
Research Company, and Fidelity Investments
Institutional Operations Company, Inc.*

/s/
John S. Summers