## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MARK RENFRO and GERALD LUSTIG, individually and on behalf of all of those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>UNISYS CORPORATION, UNISYS CORPORATION EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, UNISYS CORPORATION SAVINGS PLAN MANAGER, PENSION INVESTMENT REVIEW COMMITTEE, FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY MANAGEMENT & RESEARCH COMPANY, and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC.<br><br>        Defendants. | Case Number: 07-cv-02098-BWK<br><br>Judge Bruce W. Kauffman |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF FIDELITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE
      PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO
      SUPPORT THEIR CONCLUSIONS THAT FEES WERE "EXCESSIVE" AND
      "UNREASONABLE." ................................................................................................... 2

II.   COUNT I SHOULD BE DISMISSED BECAUSE THE FIDELITY
      DEFENDANTS HAVE NO FIDUCIARY STATUS RELEVANT TO
      PLAINTIFFS' CLAIMS ............................................................................................ 6

      A.    FMRCo is Not a Fiduciary to the Unisys Plan ..................................... 6

      B.    FIIOC Is Not a Fiduciary as to the Challenged Conduct ...................... 7

            1.    FIIOC Does Not Exercise Control Over the Disposition or
                  Management of Plan Assets ......................................................... 7

            2.    FIIOC Does Not Exercise Fiduciary Control Over the Selection of
                  the Plans' Investments .............................................................. 11

            3.    FIIOC is Not a Fiduciary Under ERISA § 3(21)(A)(ii) ........................... 12

      C.    FMTC is Not a Fiduciary as to the Challenged Conduct ..................... 16

            1.    FMTC Does Not Exercise Fiduciary Control Over the Selection of
                  the Plans' Investments .............................................................. 16

            2.    The Complaint Fails to Allege that FMTC Exercised Fiduciary
                  Control Over "Float" ................................................................. 17

            3.    FMTC Is Not Liable As A Co-Fiduciary Under ERISA § 405 ............... 17

            4.    FMTC Is Not a Fiduciary With Respect to Participant Disclosures
                  and Has No Fiduciary Obligation to Provide the Information that
                  Plaintiffs Allege Should Have Been Disclosed ...................... 18

III.  COUNT II IS SIMILARLY DEFECTIVE AND ALSO SEEKS RELIEF THAT
      IS UNAVAILABLE UNDER ERISA § 502(A)(3) ...................................................... 21

IV.   COUNT III SHOULD BE DISMISSED BECAUSE IT SEEKS RELIEF THAT
      IS UNAVAILABLE UNDER ERISA § 502(A)(3) ...................................................... 24

V.    CONCLUSION ......................................................................................................... 27

## TABLE OF AUTHORITIES

**Page**

### Cases

*Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*,
  338 F.3d 680 (7th Cir. 2003) ................................................. 25

*Bell Atlantic Corp. v. Twombly*,
  __ U.S. __, 127 S. Ct. 1955, 1973 (2007) ............................... 2, 3

*Blatt v. Marshall & Lassman*,
  812 F.2d 810 (2d Cir. 1987) ................................................ 12

*Brandt v. Grounds*,
  687 F.2d 895 (7th Cir. 1982) ............................................... 18

*Brock v. Hendershott*,
  840 F.2d 339 (6th Cir. 1988) ............................................... 12

*Castillo v. Dean Witter Discover & Co.*,
  No. 97 Civ. 1272, 1998 WL 342050 (S.D.N.Y. June 25, 1998) .............. 23

*Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*,
  474 F.3d 463 (7th Cir. 2007) ............................................ 9, 10

*Corbett v. Marsh & McLennan Cos., Inc.*,
  No. MDL-15863, 2006 WL 734560 (D. Md. Feb. 27, 2006) ................... 10

*Difelice v. US Airways, Inc.*,
  397 F. Supp. 2d 735 (E.D. Va. 2005) ..................................... 18

*Eddy v. Colonial Life Ins. Co. of America*,
  919 F.2d 747 (D.C. Cir. 1990) ........................................... 23

*Ellis v. Rycenga Homes, Inc.*,
  484 F. Supp. 2d 694 (W.D. Mich. 2007) ................................... 14

*Erickson v. Pardus*,
  __ U.S. __, 127 S. Ct. 2197 (2007) ....................................... 3

*Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.*,
  884 F.2d 288 (7th Cir. 1989) ........................................ 13, 15

*Feret v. CoreStates Fin. Corp.*,
  No. 97-6759, 1998 WL 426560 (E.D. Pa. July 27, 1998) ................... 22

*Geiler v. Jones*,
  No. 8:05CV268, 2006 WL 407683 (D. Neb. Feb. 6, 2006) .................. 10

*Geller v. County Line Auto Sales, Inc.*,
  86 F.3d 18 (2d Cir. 1996) ............................................... 10

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) .............................................. 24, 25, 26

*Haddock v. Nationwide Financial Services*,
  419 F. Supp. 2d 156 (D. Conn. 2006) .................................. 8, 9, 12

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000).............................................................................................. 22, 26

*Hecker v. Deere & Co.*,
496 F. Supp. 2d 967 (W.D. Wis. 2007) .............................................................. 19

*Horvath v. Keystone Health Plan E., Inc.*,
333 F.3d 450 (3d Cir. 2003) ............................................................................ 19, 20

*In re AIG Advisor Group Securities Litigation*,
No. 06 CV 1625, 2007 WL 1213395 (E.D.N.Y. March 9, 2007)........................... 23

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
434 F. Supp. 2d 233 (S.D.N.Y. 2006) ................................................................ 23

*In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*,
No. 03 civ. 8208, 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. Apr. 14, 2006).......... 23

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................ 23

*In re Unisys Corp. Retiree Med. Benefits*,
MDL Docket No. 969, 2007 WL 2071876 (E.D. Pa. July 16, 2007) .............. 25, 26, 27

*In re Unisys Savs. Plan Litig.*,
173 F.3d 145 (3d Cir. 1998) .............................................................................. 3, 6

*Johnston v. Exelon Corp.*,
No. 04-4040, 2005 WL 696896 (E. D. Pa. March 23, 2005).............................. 14, 22

*Kuestner v. Health & Welfare Fund of the Phil. Bakery Emplrs. & Food Driver Salesmen's Union Local No. 463*,
972 F. Supp. 905 (E.D. Pa. 1997) ...................................................................... 22

*Marks v. Independence Blue Cross*,
71 F. Supp. 2d 432 (E.D. Pa. 1999) .................................................................... 16

*Mid-Atlantic Perfusion Assoc., Inc. v. Prof'l Ass'n Consulting Servs.*,
No. Civ. A. 93-3027, 1994 WL 418990 (E.D. Pa. Aug. 9, 1994) ........................ 13

*Pappas v. Buck Consultants, Inc.*,
923 F.2d 531 (7th Cir. 1991) ............................................................................ 11

*Pegram v. Herdrich*,
530 U.S. 211 (2000).......................................................................................... 18

*Pennsylvania Ex Rel Zimmerman v. PepsiCo*,
836 F.2d 173 (3d Cir. 1988) ............................................................................ 12, 20

*Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding Group*,
731 F. Supp. 161 (D.N.J. 1990)......................................................................... 18

*Procacci v. Drexel Burnham Lambert*,
Civ. A. No. 89-0555, 1989 WL 121984 (E.D. Pa. Oct. 16 1989)....................... 14

# TABLE OF AUTHORITIES
## (continued)

Page

*Reich v. Continental Casualty Co.*,
   33 F.3d 754 (7th Cir. 1994) .................................................................. 21

*Reilly v. Keystone Health Plan East, Inc.*,
   No. 98-CV-1648, 1998 WL 422037 (E.D. Pa. July 27, 1998) .................... 22

*Schloegel v. Boswell*,
   994 F.2d 266 (5th Cir. 1993) .................................................................. 11

*Schulist v. Blue Cross of Iowa*,
   717 F.2d 1127 (7th Cir. 1983) ................................................................ 16

*Sereboff v. Mid-Atlantic Medical Services, Inc.*,
   126 S.Ct. 1869 (2006) ...................................................................... 24, 25

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518, 2007 WL 1140660 (N.D. Cal. Apr. 17, 2007) ............ 5, 23

*Skretvedt v. E.I. Dupont De Nemours*,
   372 F.3d 193 (3d Cir. 2004) .................................................................. 26

*Taylor v. United Technologies Corp.*,
   No. 3:06cv1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007) ............. 5, 19

*Trigon Ins. Co. v. Columbia Naples Capital, L.L.C.*,
   235 F. Supp. 2d 495 (E.D. Va. 2002) ...................................................... 10

*United States v. Glick*,
   142 F.3d 520 (2d Cir. 1998) .................................................................... 8

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)........................................................................ 22, 24

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090, 1102 (9th Cir. 2004) ...................................................... 10

**Statutes**

29 C.F.R. § 2510.3-21(B) ........................................................................ 13

29 U.S.C. § 1002(21)(A)(ii)..................................................................... 12

29 U.S.C. § 1002(21)(B)............................................................................ 6

29 U.S.C. § 1002(38) .............................................................................. 14

29 U.S.C. § 1101(b)(1) .............................................................................. 7

29 U.S.C. § 1103 .................................................................................... 18

29 U.S.C. § 1105 .................................................................................... 18

29 U.S.C. § 1132(a)(2) ............................................................................ 21

29 U.S.C. § 1132(a)(3) ............................................................................ 21

ERISA § 3(21)(A)(ii) ................................................................... 12, 13, 14

## TABLE OF AUTHORITIES
### (continued)

**Page**

ERISA § 3(21)(B) ......................................................................................................... 6

ERISA § 3(38) ............................................................................................................. 14

ERISA § 401(b) ........................................................................................................... 27

ERISA § 401(b)(1) .................................................................................................... 7, 8

ERISA § 403 ................................................................................................................ 18

ERISA § 404 ................................................................................................................ 19

ERISA § 405 ................................................................................................................ 18

ERISA § 502(a)(2) ...................................................................................................... 21

ERISA § 502(a)(3) .................................................................................... 21, 22, 24, 26

## Other Authorities

2007 Investment Company Institute Fact Book ............................................................. 3

Department of Labor's Advisory Opinion 97-15A, 1997 WL 277980 (May 22, 1997) .............. 12

DOL Adv. Op. 99-08A, 1999 WL 343509 (May 20, 1999) ........................................ 10

H.R. Rep. No. 93-1280 (1974),
    reprinted in  1974 U.S.C.C.A.N. 5038 ........................................................................ 8

Investment Company Institute Research Perspective, "401(k) Plan Asset Allocation, Account
    Balances, and Loan Activity in 2006" ........................................................................ 3

"Review of Current Investigations and Regulatory Actions Regarding the Mutual Fund Industry:
    Fund Operations and Governance" (Mar. 2, 2004) ................................................... 24

### INTRODUCTION

Plaintiffs' opposition to the Fidelity Defendants' Motion to Dismiss ("Opposition" or "Opp.") does nothing to salvage plaintiffs' flawed legal theories. Plaintiffs complain that the fees paid by the Unisys Plan, and the compensation obtained by the Fidelity Defendants, are "unreasonable," but their First Amended Complaint for Breach of Fiduciary Duty ("Complaint" or "Compl.") does not plead any facts that plausibly support this label. The few specific facts that the Complaint does identify—for instance, that the Plan includes retail mutual funds as investment options when cheaper investment vehicles may be available—simply do not distinguish the Plan from other prudently-managed 401(k) plans in the country, and fail to satisfy threshold pleading requirements clarified by the Supreme Court in *Bell Atlantic v. Twombly*. Moreover, plaintiffs' indiscriminate objection to the presence of *any* retail mutual funds in 401(k) plan lineups exposes their challenge as an industry-wide assault that, if accepted, would require the wholesale restructuring of defined contribution plans and ultimately constrain participant choice.

Nor does plaintiffs' Opposition remedy the Complaint's failure to allege facts establishing relevant fiduciary status on the part of the Fidelity Defendants, a key requirement of plaintiffs' fiduciary duty claims. Plaintiffs provide *no* affirmative grounds for deeming FMRCo a fiduciary, but instead merely argue that the only alleged connection between FMRCo and the Plan—FMRCo's role as investment adviser to mutual funds offered as Plan investment options—does not *prohibit* FMRCo from being a fiduciary. And while plaintiffs offer a grab bag of arguments as to the supposed fiduciary status of FIIOC and FMTC, such arguments are largely unattached to the Complaint's actual allegations and are, in any event, legally flawed.

Accordingly, for the reasons set forth below and in Fidelity's Memorandum in Support of Fidelity Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Breach of Fiduciary Duty ("Fidelity's Memorandum" or "Fid. Mem."), plaintiffs' claims against the Fidelity Defendants should be dismissed in their entirety.

## ARGUMENT

**I.     The Complaint Should Be Dismissed in its Entirety Because Plaintiffs Have Failed to Allege Sufficient Facts to Support Their Conclusions that Fees Were "Excessive" and "Unreasonable."**

In response to the Fidelity Defendants' argument that the Complaint should be dismissed because plaintiffs have failed to allege facts that, if true, would establish the unreasonableness of the fees borne by the Plan (Fid. Mem. at 7-11), plaintiffs contend that they have provided "fair notice" of the nature of their claims and that the Fidelity Defendants incorrectly seek a "heightened pleading standard" by suggesting that the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1973 (2007), requires more.  (Opp. at 6, 10.)  Plaintiffs misstate the Fidelity Defendants' argument and their own pleading obligations.

The Fidelity Defendants do not contend that *Twombly* rewrote pleading standards under the Federal Rules or imposed a heightened pleading standard.  Rather, the Supreme Court in *Twombly* clarified and reemphasized that the Federal Rules already require *both* that a plaintiff's allegations adequately notify defendants of the nature of plaintiffs' claims *and* that those allegations set forth sufficient grounds to show that the plaintiff is entitled to some form of relief. *Id.* at 1965 n. 3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also [the] 'grounds' on which the claim rests.").  The Supreme Court's subsequent

decision in *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007), did not relax this requirement, but instead merely restated the general rule that a complaint must provide both notice of the claim and its factual basis.[1]  Here, when stripped of "labels and conclusions"[2] that the Court need not and should not accept, the remaining facts alleged in the Complaint are insufficient to establish a valid claim for relief under the applicable standards of liability.

Plaintiffs' Opposition only confirms this fatal deficiency.  Plaintiffs argue that the Complaint "describes at least four ways" in which the defendants breached fiduciary duties "to allow the Plan to pay only reasonable costs and caused losses to the Plan."  (Opp. at 7.)  Two of those "ways" relate directly to allegations that defendants caused the Plan to invest in retail mutual funds and actively-managed funds.  (Opp. at 7 (citing Compl. ¶¶ 28, 31, 38-39, 42, 61-62).)  However, although plaintiffs allege that there are cheaper investment vehicles available in the marketplace, nothing in the law requires fiduciaries to select the cheapest investment options. (*See* Fidelity Mem. at 10.)  Certainly, plaintiffs fail to allege any facts demonstrating that a "hypothetical prudent fiduciary" would have restricted the Plan's investment options solely to those allegedly cheaper investments, as is required to demonstrate a breach of fiduciary duty under Third Circuit law.  *In re Unisys Savs. Plan Litig.*, 173 F.3d 145, 154 (3d Cir. 1998) (holding that investment decision was not imprudent where "a hypothetical prudent fiduciary would have made the same investments").  And, as discussed in Fidelity's Memorandum (p. 9), plaintiffs cannot do so given the prevalence of retail mutual funds in 401(k) plans in general.[3]

---

[1]      Notably, the plaintiff in *Erickson* was proceeding *pro se*, and his complaint was thus "liberally construed." 127 S. Ct. at 2200 (citation omitted).  That especially forgiving standard does not apply here.

[2]      *Twombly*, 127 S. Ct. at 1965.

[3]      Despite plaintiffs' argument that, given its size, the Plan cannot be properly compared to smaller 401(k) plans, public reports suggest that large 401(k) plans, too, include retail mutual fund options.  Most 401(k) plan assets are in mutual funds, and the very largest plans contain the vast majority of 401(k) assets.  *See 2007 Investment Company Institute Fact Book* at 76, *available at* www.icifactbook.org/fb_sec7.html (last visited Oct. 19, 2007) (at year-end 2006, 55% of 401(k) assets were held in mutual funds)); *Investment Company Institute Research Perspective*, "401(k) Plan Asset Allocation, Account Balances, and Loan Activity in 2006," at 4, *available at*

Moreover, as reflected in the Trust Agreement, the broad range of investment options offered to participants under the Plan allows participants to invest their accounts in a manner that avoids retail mutual funds (by investing in collective trusts such as the Fidelity Short Duration Commingled Pool and Fidelity Broad Market Duration Commingled Pool), actively-managed investment options (by investing in index funds such as the Spartan International Index Fund, and Spartan Total Market Index Fund), or both (by investing in Fidelity U.S. Equity Index Commingled Pool). (Trust Agreement, Schedule C and Tenth and Fifteenth Amendments.) Perhaps plaintiffs mean to contend that the Plan fiduciaries acted imprudently merely by offering Plan participants the choice of investing in non-retail mutual funds and passively-managed investment options, rather than requiring them to do so. But there is no basis in ERISA for denying participants such a choice simply because of the size of their plan.

A third purported breach listed in the Opposition refers to the alleged compensation of "Plan service providers" through so-called "Additional Compensation Streams" such as "float." (Opp. at 7; Compl. ¶¶ 55-58.) Those allegations, however, merely address the *manner* in which service providers are compensated. They do not, except through plaintiffs' unsupported, conclusory assertion, address the *amounts* paid to service providers and thus do not support a claim that the Plan paid unreasonable or excessive fees. Likewise, the final purported reference in the Opposition–that the Plan's asset-based fees increased over time along with the Plan's assets (Opp. at 7; Compl. ¶¶ 51-54)–does not support an inference that the Plan paid objectively unreasonable fees. It simply means that the expenses borne by the Plan in earlier years were less than those borne in later years, not that the compensation borne by the Plan overall, or in any

---

http://www.ici.org/stats/res/per13-01.pdf (last visited Oct. 19, 2007) (at year-end, the largest 401(k) plan segment, defined to include plans with assets in excess of $250 million, held approximately 68% of all 401(k) plan assets.)

given year, was greater than that a "hypothetical prudent fiduciary" would have caused the Plan to pay for comparable products and services.

Although plaintiffs suggest that allegations similar to those set forth in the Complaint were held to be sufficient in *Siemers v. Wells Fargo & Co.*, No. C 05-04518, 2007 WL 1140660 (N.D. Cal. Apr. 17, 2007), the decision provides no basis for such an assertion. In *Siemers*, which did not involve ERISA but instead addressed claims under the federal securities laws, the district court held that several allegations could establish that the fees charged through defendants' investment products were excessive. *Id.* at *7. But the court did not in any way describe the contents of those allegations, and thus it is impossible to compare the sufficiency of the allegations in *Siemers* to those asserted by plaintiffs. Moreover, the key holding in *Siemers*— that plaintiff was not required to allege the *extent* to which fees were excessive—is not germane to the Complaint in this case, which fails to allege grounds establishing that the fees paid by the Plans were excessive *at all* under ERISA's governing standards.[4]

While the other decision plaintiffs emphasize, *Taylor v. United Technologies Corp.*, No. 3:06cv1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007), involves claims and allegations that are more closely related to those in this case, the defendants in that case raised a *Twombly* challenge not to the plaintiffs' contention that the plan paid "unreasonable" fees, but rather to the separate allegations that the fiduciaries' conduct fell short of procedural prudence standards. *See id.* at *3-4. Moreover, even if the *Taylor* court had been called upon to analyze whether the plaintiff had pleaded sufficient facts to support his contention on the reasonableness of fees, it

---

[4]     Plaintiffs construct a strawman by claiming that the Fidelity Defendant have demanded that plaintiffs "quantify the amount of the unreasonable fees" or "plead an exact figure of damages." (Opp. at 5-6.) Fidelity's Memorandum makes no such argument. Rather, the Fidelity Defendants have argued under ERISA that, in order to establish a claim for excessive fees, plaintiffs must allege facts that plausibly suggest that the fees paid by the Plan, whatever they are, fall outside the range of fees that a hypothetical prudent fiduciary would have paid for comparable products and services. (Fid. Mem. at 8-9.)

would not have been guided by the fiduciary standards established by the Third Circuit in *In re Unisys Savs. Plan Litig.*  That Third Circuit opinion makes clear that the imprudence of a fiduciary decision, and thus the existence of a breach, cannot be established under ERISA absent proof that a "hypothetical prudent fiduciary" would not have made the same decision.  173 F.3d at 153-54.  Plaintiffs have simply alleged no facts which, if true, would meet that burden.[5]  Accordingly, even before addressing the fatal defects in plaintiffs' attempt to assign fiduciary liability to the Fidelity Defendants discussed below (*i.e.*, plaintiffs' failure to allege that any Fidelity Defendant had relevant fiduciary status), the Court should dismiss Count I for failure to state a claim against *any* defendant.

## II.     Count I Should Be Dismissed Because the Fidelity Defendants Have No Fiduciary Status Relevant to Plaintiffs' Claims.

### A.      FMRCo is Not a Fiduciary to the Unisys Plan.

As addressed in Fidelity's Memorandum (pp. 11-13), plaintiffs have failed to allege facts supporting their legal assertion that FMRCo, the investment adviser to some of the Fidelity mutual funds offered as Plan investment options, was a fiduciary to the Unisys Plan.  Indeed, ERISA expressly provides that serving as mutual fund investment adviser, FMRCo's only alleged connection plaintiffs to the Plan, is not a basis for fiduciary status.  ERISA § 3(21)(B), 29 U.S.C. § 1002(21)(B).

Plaintiffs respond by arguing that FMRCo's status as investment adviser to the Fidelity mutual funds does not *preclude* FMRCo from being a fiduciary if it performs other functions with respect to the Plan.  (Opp. at 30.)  This response does nothing to preserve plaintiffs' claims,

---

[5]      In an effort to counter that conclusion, plaintiffs argue that the Complaint "allege[s] that prudent fiduciaries in other large plans paid less money for the same thing." (Opp. at 8.)  But the allegations plaintiffs cite do not actually support that contention.  For example, paragraph 21.B.iii—which states that the defendants "failed to exercise the care, skill, prudence, and diligence that a prudent person would when acting in like capacity and familiar with such matters"—does nothing more than parrot the statutory language of ERISA § 404(a)(1).

however, because plaintiffs do not allege that FMRCo performed any other Plan-related functions, let alone any fiduciary functions.  Plaintiffs thus have not alleged facts sufficient to establish fiduciary status, and Count I should therefore be dismissed against FMRCo.[6]

**B.      FIIOC Is Not a Fiduciary as to the Challenged Conduct.**

In contrast to their cursory treatment of FMRCo's supposed fiduciary status, plaintiffs devote almost a third of their brief to arguing the fiduciary status of FIIOC, an entity not named as a defendant in plaintiffs' original Complaint.  Despite this effort, plaintiffs' attempts to establish FIIOC as a Plan fiduciary are likewise without merit.

**1.      FIIOC Does Not Exercise Control Over the Disposition or Management of Plan Assets.**

Plaintiffs first contend that FIIOC is a fiduciary because it allegedly exercised control over plan assets "by agreeing to accept payment for its services primarily in the form of monies that have first been swept through a mutual fund ('revenue-sharing payments')."  (Opp. at 15.) Merely *receiving* payment for services, of course, does not constitute *control* over the assets being paid.  And, even if it did, the receipt of payments from a mutual fund would not constitute exercise of control over plan assets because ERISA § 401(b)(1) provides that assets of a mutual fund in which an ERISA plan invest do not become plan assets.  (*See* Fid. Mem. at 21-22.)[7]

In response, plaintiffs grasp onto the fact that § 401(b)(1) provides only that a mutual fund's assets shall not be deemed the assets of an investing plan "solely by reason of such investment."  (Opp. at 16.)  Once again, however, plaintiffs' technical quibble has no practical

---

[6]      The bulk of plaintiffs' discussion under the heading "FMRCo is a Functional Fiduciary" actually addresses the nature and scope of a fiduciary's duty to disclose information to participants.  That discussion, which appears to be intended to respond to an argument in Fidelity's Memorandum regarding *FMTC*, does not respond to any argument relating to *FMRCo* and has nothing to do with *FMRCo's* supposed fiduciary status.

[7]      *See* 29 U.S.C. § 1101(b)(1) ("In the case of a plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940 [i.e., a mutual fund], the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company.").

import in this case.  The plain intent of § 401(b)(1) is to prevemt a Plan's investment in a mutual

fund from being used as the basis for conferring ERISA fiduciary status on those who interact

with the mutual fund or its assets, precisely what plaintiffs attempt to do here.[8]  The qualifier

"solely by reason of such investment" merely recognizes that § 401(b)(1) was not intended to

contemplate every conceivable relationship a plan could have with a mutual fund or its servicing

entities beyond being a mutual fund investor.  Plaintiffs do not suggest any basis for treating the

Fidelity mutual funds' assets as the Plan's assets *other than* the fact that the Plan invested in

those funds.  Thus, their reference to the qualifier is irrelevant.

Nor do the cases on which plaintiffs rely support their position that FIIOC is a fiduciary

by virtue of receiving assets from Fidelity mutual funds.  *United States v. Glick*, 142 F.3d 520

(2d Cir. 1998), did not involve assets paid out of mutual funds and thus did not require the court

to apply § 401(b)(1) or any similar statutory provision.  And while *Haddock v. Nationwide

Financial Services*, 419 F. Supp. 2d 156 (D. Conn. 2006), did involve alleged revenue sharing

payments made from mutual fund assets, *id.* at 162, the opinion actually refutes plaintiffs'

position.  Rather than generally holding such payments to be plan assets, the court crafted a more

narrow test, under which revenue sharing payments received by a defendant are plan assets only

if the defendant receives the assets "(1) as *a result of its status as a fiduciary* or its exercise of

fiduciary discretion or authority, and (2) at the expense of plan participants or beneficiaries."  *Id.*

at 170 (emphasis added.)  In other words, under the *Haddock* test, the status of revenue sharing

payments as plan assets is predicated on the defendant *already* having or exercising fiduciary

---

[8]       This legislative intent is reflected in the House Conference Report, which explains, "Since mutual funds are
regulated by the Investment Company Act of 1940 and, since (under the Internal Revenue Code) mutual funds must
be broadly held, it is not considered necessary to apply the fiduciary rules to mutual funds merely because plans
invest in their shares.  Therefore, the substitute provides that the mere investment by a plan in the shares of a mutual
fund is not to be sufficient to cause the assets of the fund to the considered the assets of the plan."  H.R. Rep. No.
93-1280, at 280 (1974), *reprinted in*  1974 U.S.C.C.A.N. 5038, 5077.

authority.  Thus, under *Haddock,* FIIOC's alleged receipt of "revenue-sharing payments" cannot be the basis for FIIOC's supposed fiduciary status.

The case that is most analogous is the Seventh Circuit's decision in *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007), which held that revenues collected by a plan service provider for its own account in the form of rebates from drug manufacturers were not "plan assets" and, accordingly, that control over those revenues did not render the service provider a fiduciary.  Plaintiffs try to limit the effect of *Caremark* by contending that the court's holding turned on the fact (not at play here, they say) that the service provider had separately negotiated with the plans to provide its own rebates to the plans at a specified rate.  Plaintiffs misread the decision, however.  The plaintiff in *Caremark* contended that the service provider's obligation to provide rebates to the plans rendered some portion of the rebates the service provider received from drug manufacturers plan assets.  *Id.* at 476 n.6.  The Seventh Circuit rejected that argument, reasoning that although the service provider had agreed to pay its own fixed rate rebates to the plans, nothing in the service provider's contract with the plans required the service provider to pay those rebates out of the revenues it received from drug manufacturers.  *Id.*  In other words, although the service provider had created a payment obligation to the plans, it had not given the plans an interest in the particular funds the service provider received from the drug makers.  Thus, the *Caremark* decision, affirming the dismissal

of plaintiff's claims,[9] supports the proposition that the revenues a service provider receives for its own use do not become plan assets unless the service provider has agreed to transmit a specific portion of *those* revenues to a plan.

The approach set forth in *Caremark* is also consistent with the Department of Labor's guidance that the status of assets as plan assets should be based on "ordinary notions of property rights." DOL Adv. Op. 99-08A, 1999 WL 343509, at *2 (May 20, 1999). Following that guidance, courts have held in other contexts that assets do not become plan assets unless sufficient steps are taken "to cause the plan to gain a beneficial interest in particular assets . . . such as the transfer to a separate trust account." *Trigon Ins. Co. v. Columbia Naples Capital, L.L.C.*, 235 F. Supp. 2d 495, 505 n.7 (E.D. Va. 2002). Here, FIIOC has not agreed, and is not alleged to have agreed, to earmark or otherwise direct any portion of its fees from the Fidelity mutual funds to the Unisys Plan. Therefore, under the principles set forth in *Caremark* and echoed in other authority, those fees are solely Fidelity revenues, and not Plan assets.

---

[9]      In light of plaintiffs' extensive efforts to argue that fiduciary status cannot be decided on a motion to dismiss (Opp. at 12-15), it is worth noting that the Seventh Circuit affirmed the district court's dismissal order for the specific reason that the service provider was, as a matter of law, not an ERISA fiduciary with respect to "any of the relevant actions detailed in the complaint." *Caremark*, 474 F.3d at 477. In fact, courts often grant motions to dismiss for failure to adequately plead fiduciary status, even where plaintiffs assert a question of fact regarding whether the defendant was a "functional" fiduciary. *See, e.g.*, *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004) (affirming dismissal for lack of fiduciary status, despite allegations that the defendant was a *de facto* fiduciary, and concluding that "any suggestion by Plaintiffs that further discovery is necessary to determine whether the defendant acted as a fiduciary is contrary to three leading Supreme Court decisions-- *Lockheed*, *Hughes Aircraft*, and *Pegram v. Herdrich* …--all of which affirmed Rule 12(b)(6) dismissals . . . on the ground[s] that the conduct of the defendant was not that of a 'fiduciary'"); *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996) (affirming dismissal "[b]ecause the complaint fails to allege facts sufficient to support an inference that any of the defendants is a plan fiduciary"); *Corbett v. Marsh & McLennan Cos.*, No. MDL-15863, 2006 WL 734560, at *2-3 (D. Md. Feb. 27, 2006) (dismissing claims against one of several defendants because plaintiff failed to "plead specific facts that show the defendant performed specified discretionary functions . . . such that it was a *de facto* fiduciary" with respect to those functions and requiring that such "factual allegations must amount to more than a mere recitation of the statutory language defining a fiduciary's roles."); *Geiler v. Jones*, No. 8:05CV268, 2006 WL 407683, at *4 (D. Neb. Feb. 6, 2006) (dismissing for failure to establish fiduciary status).

**2.      FIIOC Does Not Exercise Fiduciary Control Over the Selection of the Plans' Investments.**

Plaintiffs next contend that they have adequately pled fiduciary status because they have alleged that FIIOC "plays a role in the selection of investment options."  (Opp. at 21.)  As argued in Fidelity's Memorandum (p. 22), however, it is not enough to allege that FIIOC "plays a role" in investment selection.   Rather, plaintiffs must allege sufficient facts to show that FIIOC played a *fiduciary* role by exercising discretionary control over such selection.

Having failed to plead such facts in their Complaint, plaintiffs attempt to remedy that inadequacy by asserting for the first time in their Opposition that "FIIOC's role, either alone or in conjunction with another Fidelity Investments entity, was to create a short list of funds, out of all of the funds allowed under the Plan, for the Unisys Defendants' consideration."  (Opp. at 22.) This new theory is neither expressly stated nor implied anywhere in any version of plaintiffs' Complaint.[10]  Moreover, even if actually pled in the Complaint, an allegation that FIIOC "create[d] a short list of funds" would not establish fiduciary status under ERISA.  Rather, because the Trust Agreement makes clear that neither FIIOC nor any other Fidelity entity had the authority to dictate what funds are selected for the Plans, any creation of a purported list of funds could serve as nothing more than providing information to the Unisys Pension Investment Review Committee, which the Complaint alleges is "responsible for the selection or elimination of the investment options made available to the participants and beneficiaries[.]"  (Compl. ¶ 10.) One does not become a fiduciary merely by providing information on which the plan's existing fiduciaries act.  *See, e.g., Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir. 1993) ("Mere influence over the trustee's investment decisions, however, is not effective control over plan assets."); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (noting that courts

have read "the terms 'discretionary authority,' 'discretionary control' and 'discretionary responsibility' . . . as speaking to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises.").[11]

This conclusion is unaltered by the legal authorities cited by plaintiffs.  In both *Haddock*, 419 F. Supp. 2d at 156 and the Department of Labor's Advisory Opinion 97-15A, 1997 WL 277980 (May 22, 1997), the entities at issue did not merely suggest possible mutual funds to the plan's fiduciaries.  Rather, those entities held the right to *unilaterally* add and delete mutual funds from the menu of investment options available under the respective plans.  419 F. Supp. 2d at 161; 1997 WL 277980 at *3.  Plaintiffs have not alleged such circumstances here and cannot do so given the plain language of the Trust Agreements providing Unisys, as "Applicable Fiduciary", authority over the selection of investment options.

### 3.   FIIOC is Not a Fiduciary Under ERISA § 3(21)(A)(ii).

In a final effort to attach fiduciary status to FIIOC, plaintiffs contend that FIIOC is a fiduciary under ERISA § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii), because it purportedly provides "investment advice" to Unisys regarding the selection of investment funds.  Once again, neither this theory nor its factual predicate appear in the Complaint.  Rather, as referenced above, the Complaint merely provides the conclusory assertion that FIIOC "plays a role in the selection of funds" without any factual support or detail as to what that role supposedly is.

---

[10]      *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . .") (quotation omitted).
[11]      Although plaintiffs argue that "influence" or "attenuated actions" are enough to confer fiduciary status (Opp. at 21-22), the cases they rely upon do not support their position.  While some of those cases use terminology such as "influence," the finding of fiduciary status in each case was ultimately premised on the defendants' exercise of actual control over decisions affecting the plans.  *See, e.g., Blatt v. Marshall & Lassman*, 812 F.2d 810, 813 (2d Cir. 1987) (holding that by intentionally preventing plan's retirement committee from returning plaintiff's contributions, defendants "exercised actual control respecting disposition of plan assets."); *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988) (defendant "actually took over" to cause plan to select his dental program).

While plaintiffs cite the Department of Labor regulations implementing § 3(21)(A)(ii), they fail to contend with a key requirement for fiduciary status under those regulations.  The relevant regulation, 29 C.F.R. § 2510.3-21(B), provides that, unless a person has discretionary authority or control "with respect to purchasing or selling securities or other property for the plan," that person is deemed to be rendering investment advice to a plan "only if" such person:

> renders any advice [regarding the value of or the advisability of investing in, purchasing or selling, property] on a regular basis to the plan *pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary* with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

(emphasis added.)

As discussed in Section II.B.1 above, plaintiffs have failed to allege any facts showing that FIIOC exercised discretion or authority over the Plan.  Accordingly, in order to adequately plead that FIIOC rendered "investment advice" under § 3(21)(A)(ii), plaintiffs must allege facts sufficient to show that FIIOC and Unisys mutually *agreed* or *understood* that information provided by FIIOC would serve as a primary basis for investment decisions with respect to plan assets.  *See Mid-Atlantic Perfusion Assoc., Inc. v. Prof'l Ass'n Consulting Servs.*, No. Civ. A. 93-3027, 1994 WL 418990 at *5 (E.D. Pa. Aug. 9, 1994) ("Thus, the regulations require, and courts have echoed the need for, a specific understanding that a person or entity will truly serve as an advisor to the plan for investment advice pursuant to a mutual agreement.").[12]

---

[12]     *See also Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 293 (7th Cir. 1989) (holding that defendant broker was not a fiduciary where there was nothing to indicate agreement that defendant would provide investment advice to the plan and that the "only 'agreement' between the parties was that the trustees would listen to [defendant's] sales pitch and if the trustees liked the pitch, the Plan would purchase from among the suggested investments").

The Complaint, however, does not allege the existence of any such agreement or understanding between FIIOC and Unisys, and any attempt by plaintiffs to suggest such an agreement in their Opposition is flatly contradicted by the terms of the Trust Agreement.  Section 5(a) of the Trust Agreement expressly states, "The Trustee [FMTC] shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options."  Because plaintiffs allege that FIIOC acts as FMTC's delegate (Compl. ¶ 14), this limitation on FMTC's responsibilities applies to FIIOC as well.  Thus, far from mutually agreeing that information supplied by Fidelity would serve as a primary basis for Plan-related investment decisions, FMTC and Unisys expressly agreed that no such advisory relationship would exist.  Accordingly, FIIOC cannot be said to be a fiduciary within the meaning of § 3(21)(A)(ii).

Plaintiffs' reliance on the district court opinion in *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694 (W.D. Mich. 2007) does nothing to affect that conclusion.[13]  In *Ellis*, the court concluded a mutual understanding existed that defendant's advice would serve as a primary basis of investment decisions where (1) the defendant itself identified investment recommendations as a service it provided to the plan; (2) the defendant was the only source of investment advice for most of the plan's 20-year history; and (3) the plan's trustee never failed to accept defendant's recommendations regarding plan investments.  *Id.* at 700-01, 709.

---

[13]     The other cases plaintiffs cite are likewise unhelpful to plaintiffs' argument.  The decision in *Johnston v. Exelon Corp.*, No. Civ. A. 04-4040, 2005 WL 696896 (E.D. Pa. Mar. 23, 2005) does not address the meaning of "investment advice" under § 3(21)(A)(ii) or, for that matter, even involve an investment decision.  Rather, the district court merely held that where executives of a subsidiary allegedly "exercised discretionary authority" in denying benefits, the subsidiary could be considered a fiduciary.  *Id.* at *4.  While *Procacci v. Drexel Burnham Lambert*, Civ. A. No. 89-0555, 1989 WL 121984 (E.D. Pa. Oct. 16 1989), does mention investment advice under § 3(21)(A)(ii), the narrow issue before the court was whether a separate provision of ERISA, § 3(38), 29 U.S.C. § 1002(38), requires that an investment manager acknowledge its fiduciary status in writing in order to be deemed an ERISA fiduciary.  Although the court held that § 3(38) does not require such written acknowledgement for fiduciary status to obtain, the court did not address the express regulatory requirement that some mutual understanding or agreement exist for a party to be deemed to be providing "investment advice" under § 3(21)(A)(ii).

The Complaint here does not allege any comparable facts; indeed, the Complaint does not even allege that FIIOC ever provided investment recommendations to the Plan or its fiduciaries. While plaintiffs' attempt to draw a comparison in their Opposition by asserting that "the Unisys Defendants never chose any investments other than those offered by the Fidelity Defendants' affiliates" (Opp. at 27), the assertion merely underscores the weakness of their argument.  The Trust Agreement *requires* that Unisys select as investment options only those mutual funds that are advised by FMRCo or its affiliates and, prior to October 2006, *required* that the Plan only invest in collective trusts maintained by FMTC.  (Trust Agreement, § 1(j), 5(b) and Amendment dated Oct. 1, 2006.)  FIIOC was not a party to the Trust Agreement, FMTC was; and, as addressed in Fidelity's Memorandum (pp. 15-16), FMTC was not acting as a fiduciary in negotiating the Trust Agreement's terms.  Thus, the mere fact that the Plan's investments have consisted largely of Fidelity investment products in no way implies the existence of a mutual understanding or agreement that FIIOC would provide investment advice to the Plan.[14]  *See Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 290 (7th Cir. 1989) (holding defendant not to be ERISA fiduciary despite fact that 99% of the plan's assets were invested in investment options recommended by, and purchased through, that defendant).  Accordingly, Count I should be dismissed against FIIOC.

---

[14]    Plaintiffs' assertion that the Unisys Defendants "never bought any services of any kind, other than those provided by the Fidelity Investments companies" (Opp. at 27) is equally unavailing.  As an initial matter, the assertion actually contradicts the Complaint which alleges the existence of service providers other than Fidelity affiliates.  (Compl. ¶ 47 ("The Plan's investment funds divert the revenue-sharing payments from the investment fund to other Fidelity affiliates, to other Plan service providers and /or  others with some connection with the investment fund or the Plan.").)  Further, even if true, the suggestion that Unisys has selected only Fidelity entities to provide the Plan's administrative services has no bearing on whether FIIOC provides investment advice.

### C.   FMTC is Not a Fiduciary as to the Challenged Conduct.

As discussed at pages 13-20 of Fidelity's Memorandum, Count I should also be
dismissed against FMTC because, although FMTC has some limited fiduciary functions under
the Trust Agreement, those functions do not involve the conduct challenged in the Complaint.

### 1.   FMTC Does Not Exercise Fiduciary Control Over the Selection of the Plans' Investments.

Plaintiffs respond by first arguing that, as directed trustee, FMTC "played a role in the
selection of investment options" because "FMTC's consent was required before any new
investment option could be added to the Plan." (Opp. at 28.) However, § 5(b) of the Trust
Agreement, the very provision on which plaintiff's argument is based, refutes any suggestion
that FMTC had fiduciary responsibility over investment selection. After stating that the initial
investment options selected by Unisys would be listed in schedules to the Trust Agreement, §
5(b) provides that, "[t]he Applicable Fiduciary may add additional investment options with the
consent of the Trustee and upon mutual amendment of this Trust Agreement and the Schedules
thereto to reflect such additions." Far from suggesting a fiduciary role on the part of FMTC, this
sentence instead recognizes that the Unisys' fiduciary decision (as the "Applicable Fiduciary") to
have the Plan offer different investment options alters the Plan's business arrangement with
FMTC. Thus, FMTC's consent is required to formally amend that Trust Agreement to reflect the
new terms of FMTC's retention. As previously discussed in Fidelity's Memorandum (pp. 15-
16), FMTC does not, as a matter of law, act as an ERISA fiduciary in negotiating, and
renegotiating, the terms of its retention by the Plan. *See Schulist v. Blue Cross of Iowa*, 717 F.2d
1127, 1131-32 (7th Cir. 1983) (holding that even after defendant was appointed a fiduciary for
some plan purposes, it remained a non-fiduciary with respect to the terms of its retention
including renewals of that retention); *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432,

436 (E.D. Pa. 1999) (agreeing with other circuits that "a person negotiating a contract with a . . .

plan . . . . is not an ERISA fiduciary with respect to the terms of the agreement for his

compensation.").

>### 2.    The Complaint Fails to Allege that FMTC Exercised Fiduciary Control Over "Float."

Plaintiffs next contend that FMTC is a fiduciary because it supposedly uses interest

accrued on "monies awaiting investment or redemption" for its own purposes.  (Opp. at 28.)  The

allegations that plaintiffs cite, however, make no mention whatsoever of FMTC or any other

Fidelity entity.  Rather, the paragraphs of the Complaint at issue, speak in terms of compensation

being paid to "service providers" in general, including, "consultants", "investment managers"

and "mutual funds"—none of which describe FMTC.  (Compl. ¶¶ 55-58.)  Moreover, those

paragraphs do not allege that the unidentified "service providers" exercised authority or control

of the Plan or its assets, and the Complaint does not purport to assert any breach of fiduciary

duty claim against the service providers themselves but instead asserts a theory against the Plan

fiduciaries who allegedly failed to "understand and consider" such compensation in assessing the

reasonableness of fees.  (*Id.* ¶¶ 57-58.)  Plaintiffs' *post hoc* attempt to recharacterize their generic

allegation regarding "service providers" as an allegation establishing FMTC's fiduciary control

over so-called "float" income is thus wholly without merit.[15]

>### 3.    FMTC Is Not Liable As A Co-Fiduciary Under ERISA § 405.

Plaintiffs further assert that because FMTC has some fiduciary responsibilities (*e.g.*, it is

the directed trustee of the Plans), it may be held liable for alleged breaches by the Plans' other

---

[15]    Of course, even if plaintiffs' allegations could be read to allege the FMTC had discretionary authority or control over interest on "monies awaiting investment and redemption," they would still only establish fiduciary status as to a claim regarding the interest income FMTC allegedly controlled and would not establish fiduciary status relevant to the Complaint's core claims regarding so-called "revenue-sharing" and the allegedly improper investment by the Plan in retail mutual funds and actively-managed investment options.

fiduciaries under ERISA § 405, 29 U.S.C. § 1105, ERISA's co-fiduciary liability provision.

Section 405, however, does not circumvent the rule that a person who performs limited fiduciary

functions does not become a fiduciary for all purposes. *Pegram v. Herdrich*, 530 U.S. 211, 226

(2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . .

whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function)

when taking the action subject to complaint."); *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir.

1982) (investment advisor's "fiduciary status was limited to its function as an investment

advisor"); *Difelice v. US Airways, Inc*., 397 F. Supp. 2d 735, 757 (E.D. Va. 2005) ("[C]o-

fiduciary liability, like the general fiduciary liability from which it derives, is not an all or

nothing proposition.").  Consistent with this rule, courts have refused to impose § 405 liability

absent a meaningful connection between a defendant's fiduciary role and the alleged breach of a

co-fiduciary.  *See, e.g., Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding

Group*, 731 F. Supp. 161, 176 (D.N.J. 1990) ("ERISA does not contemplate that every plan

fiduciary become an insurer of the entire plan."); *Difelice,* 397 F. Supp. 2d at 757 (recognizing,

in dismissing claims against FMTC, that the limitation on a directed trustee's duties under

ERISA § 403, 29 U.S.C. § 1103, would have little effect if the directed trustee's co-fiduciary

liability under § 405 was not similarly limited).  Because the Complaint does not establish any

nexus between FMTC's limited fiduciary roles and the challenged conduct, plaintiffs have failed

to state a claim against FMTC under § 405.

> **4.      FMTC Is Not a Fiduciary With Respect to Participant Disclosures
> and Has No Fiduciary Obligation to Provide the Information that
> Plaintiffs Allege Should Have Been Disclosed.**

Finally, plaintiffs attempt, in a separate part of their Opposition, to respond to the argument

in Fidelity's Memorandum that FMTC has no fiduciary responsibility to disclose the information

plaintiffs contend was wrongfully withheld.  (Opp. at 30-32.)[16]  The Fidelity Defendants explained in their Memorandum (p. 16) that (1) the Complaint is devoid of any allegation that FMTC has discretionary authority or control with respect to participant communications and (2) while courts have held in individualized circumstances that fiduciaries have a duty to disclose information that those fiduciaries knew to be material to participants, plaintiffs have failed to allege facts showing that the purportedly undisclosed information would have had some effect, or potential effect, on a legally significant decision that participants could actually make.  *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 461 (3d Cir. 2003) (holding that nondisclosure is material for purposes of ERISA § 404 only "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision") (citation and quotation omitted). Indeed, courts addressing similar ERISA claims have specifically held that much of the information plaintiffs claim was wrongfully withheld, including information regarding so-called "revenue sharing" is immaterial as a matter of law.  *See Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 973 (W.D. Wis. 2007)[17]; *Taylor*, 2007 WL 2302284 at *13.

In response, plaintiffs do not cite any factual allegations in the Complaint supporting the Complaint's conclusory assertion of materiality, nor do they offer any explanation as to how the allegedly undisclosed information is material.  Instead, plaintiffs try to distinguish *Horvath* by asserting that in this case, plaintiff Mark Renfro "did ask for the information and was not given it."  (Opp. at 31 & n.26.)  Plaintiffs suggest that Renfro's request "triggered a duty to disclose." (*Id.*)  That request, however, cannot be said to have triggered a duty on the part of *FMTC*

---

[16]    As previously noted, plaintiffs inexplicably include this discussion under the heading "FMRCo is Functional Fiduciary."

[17]    Plaintiffs' point out that the plaintiffs in *Hecker* filed a Rule 59 motion challenging the district court's dismissal order.  (Opp. at 15 n. 11.)  However, on October 19, 2007, the district court issued a memorandum and order denying that motion, and, among other things, reaffirming its prior holding that disclosure of "revenue sharing" amounts is not required by ERISA.  (*See Hecker v. Deere & Co.*, No. 06-C-719-S (W.D. Wis. Oct. 19, 2007) (memorandum and order) (attached as Ex. 1.)

because the November 21, 2006 letter cited by plaintiff is on its face a response *by Unisys* to a

request for information made *to Unisys*, not to FMTC or any other Fidelity entity.[18]

Plaintiffs then assert:

> although the [*Horvath*] court found that in the plaintiff's case such information
> was immaterial, the court concluded that a plaintiff who was injured because a
> doctor provided inadequate care as a result of the insurer's compensation methods
> *could* bring suit, including a suit for medical malpractice . . . *It is that second type
> of action which is similar to Plaintiffs' claims here*; Plaintiffs allege that the Plan
> paid unreasonable and excessive expenses, which were in part a consequence of
> the revenue-sharing scheme, *whether or not Plaintiffs were ever told about its
> existence.*

(Opp. at 31-32) (emphasis added.)  This assertion of course does nothing to preserve plaintiffs'

non-disclosure claims but instead effectively denies their existence.  Nor does it have any

bearing on plaintiffs' ability to assert other breach of fiduciary duty claims against FMTC.

While a state court medical malpractice claim (the type of claim that the *Horvath* indicated could

be asserted)[19] does not require the existence of a fiduciary duty under ERISA, an ERISA breach

of fiduciary duty claim, by definition, does.

Because plaintiffs have not alleged any relevant fiduciary status on the part of FMTC,

Count I should be dismissed against it.[20]

---

[18]     In responding to plaintiffs' citation of the November 21, 2006 letter, the Fidelity Defendants do not consent
to consideration of that letter, which was not attached to or referenced in plaintiffs' Complaint and is not subject to
judicial notice, in connection with Fidelity's Motion.  Rather, the Fidelity Defendants intend merely to point out
that, even if considered, the November 21, 2006 letter would not support plaintiffs' claims against FMTC.

[19]     *Horvath*, 333 F.3d at 463 n.11.

[20]     Plaintiffs also argue that FMTC is a fiduciary "[f]or the same reasons that FIIOC is a fiduciary" because it
is possible that their assertions regarding FIIOC instead apply to FMTC.  (Opp. at 29.)  Such conjecture in plaintiffs'
brief, of course, falls far short of their obligation to allege sufficient facts in the Complaint.  *See Pennsylvania ex rel
Zimmerman*, 836 F.2d at 181 ("It is one thing to set forth theories in a brief; it is quite another to make proper
allegations in a complaint.").  In any event, even if plaintiffs could redirect all of their allegations regarding FIIOC
to FMTC instead, they would still fail to establish fiduciary status for the reasons described in Sections II.B above.

**III.    Count II Is Similarly Defective And Also Seeks Relief That Is Unavailable Under ERISA § 502(a)(3).**

Count II should be dismissed against each of the Fidelity Defendants for the independent reasons that (1) as was true regarding Count I, the Fidelity Defendants are not fiduciaries with respect to the conduct challenged in the Complaint; and (2) Count II does not seek "appropriate equitable relief," authorized under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

Plaintiffs' initial reaction to these challenges is to try to recharacterize Count II as, in part, a claim for *non-fiduciary* liability.  (Opp. at 32-33.)  Plaintiffs contend that because ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), does not authorize relief against non-fiduciaries, their claim for such relief under ERISA § 502(a)(3) is non-duplicative and thus "appropriate."  The problem, yet again, is that plaintiffs' argument cannot be reconciled with the allegations in their Complaint.  Count II is replete with conclusory allegations of the Fidelity Defendants' fiduciary status, including allegations that they "are the primary fiduciaries of the Plan" (¶ 76 ), that they "have exclusive discretion and control over the Plan's assets" (¶ 77 ), and that they "occupy the position of a common law trustee" (¶ 80).  In addition, the central form of relief sought under Count II—"an accounting of all transactions, disbursements and dispositions" (*id*. ¶ 85)—is not available against non-fiduciaries under ERISA.  Indeed, in *Reich v. Continental Casualty Co.*, 33 F.3d 754 (7th Cir. 1994), the Seventh Circuit upheld the dismissal of a § 502(a)(3) claim seeking an accounting precisely because it was asserted against a non-fiduciary.  *Id.* at 756-57.[21]

Beyond their attempt to recast Count II as a claim for non-fiduciary liability, plaintiffs are unable to point to any reason why the relief they seek under Count II is not wholly duplicative of that already sought under Count I.  Instead, plaintiffs rationalize that the Supreme Court in *Varity*

*Corp. v. Howe*, 516 U.S. 489 (1996) only stated that duplicative relief under § 502(a)(3) is "normally" inappropriate.  (Opp. at 34.)  Plaintiffs argue, therefore, that the question of what circumstances are sufficiently *abnormal* to justify duplicative relief is a factual issue that cannot be decided on a motion to dismiss.  (*Id*. at 34-35.)  This Court, however, has repeatedly applied *Varity* to dismiss § 502(a)(3) claims where plaintiffs assert claims under other parts of § 502, which, if successful, would provide adequate relief.  *See, e.g., Johnston v. Exelon Corp.*, No. 04-4040, 2005 WL 696896, at *13-15 (E. D. Pa. March 23, 2005) (dismissing claim asserted under "safety net" provisions of § 502(a)(3) where plaintiff had asserted a comparable claim under a different provisions of § 502).[22]  Further, even if some exception to the bar against claims for duplicative relief could theoretically exist, plaintiffs do not even provide a theory as to why an exception would apply in this case.

Plaintiffs also challenge the Fidelity Defendants' argument that plaintiffs' request for injunctive relief or an accounting is inappropriate to the extent that it seeks to compel fee-related disclosures on grounds that such disclosures are already subject to express statutory regimes.  Plaintiffs' argument appears to be that the existence of enumerated statutory disclosure requirements does not strictly preclude a court from ever requiring additional disclosures.  The Fidelity Defendants, however, do not contend that the Court could *never* require disclosures beyond those expressly mandated by statute or regulation.  In the administration of an ERISA plan, unique circumstances can arise in which a fiduciary's disclosure of information may

---

[21]    Although the Supreme Court later held in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), that ERISA liability may exist against a non-fiduciary in limited circumstances, it only authorized a restitutionary remedy against such a non-fiduciary where the non-fiduciary is the "transferee of ill-gotten trust assets." *Id.* at 251. Plaintiffs' request for an accounting plainly does not fall within that limited scope of relief.

[22]    *See also Kuestner v. Health & Welfare Fund of the Phil. Bakery Emplrs. & Food Driver Salesmen's Union Local No. 463*, 972 F. Supp. 905, 911 (E.D. Pa. 1997) (granting defendants' motion to dismiss plaintiff's § 502(a)(3) claim because plaintiff had available equitable relief under § 502(a)(1)(B)); *Feret v. CoreStates Fin. Corp.*, No. 97-6759, 1998 WL 426560, at *15-16 (E.D. Pa. July 27, 1998) (same); *Reilly v. Keystone Health Plan East, Inc.*, No. 98-CV-1648, 1998 WL 422037, *15-16 (E.D. Pa. July 27, 1998) (same).

become inherent in the fiduciary's duty of loyalty. *See Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 751 (D.C. Cir. 1990) (where plaintiff asked his insurer whether he could continue his policy after termination from employment, insurer was obligated to inform him of the options for continued coverage other than technical continuation).

Plaintiffs have not pled such particularized circumstances here, however. To the contrary, plaintiffs challenge practices that are common in the 401(k) industry, as reflected in the legislative attention paid to the issue of 401(k) fees as well as plaintiffs' counsel's filing of over a dozen similar suits. Thus, a judicial determination that plaintiffs are entitled to the detailed information sought in the Complaint would, in effect, impose a sweeping disclosure regime that extends far beyond the disclosure that Congress and regulatory bodies have determined necessary both to plan participants and mutual fund investors in general.[23]  The Fidelity Defendants submit that equitable relief that would retroactively impose such a judicially-created disclosure scheme would be inappropriate, particularly where, as here, Congress and regulatory agencies have addressed, and continue to consider, the issue through legislative and regulatory

---

[23]  Plaintiffs cite *Siemers v. Wells Fargo & Co.*, No. C 05-04518, 2007 WL 1140660 (N.D. Cal. Apr. 17, 2007) and *In re AIG Advisor Group Securities Litigation*, No. 06 CV 1625, 2007 WL 1213395 (E.D.N.Y. March 9, 2007), for the proposition that the details of "revenue sharing" are material to mutual fund investors.  (Opp. at 37.) These decisions interpret a different statutory regime (the securities laws) which imposes distinct duties and obligations.  Nevertheless, to the extent that the reasoning of these decisions may be applied by analogy to a fiduciary's disclosure obligations under ERISA, they represent a decidedly minority view and stand against legions of securities law cases holding that information regarding "revenue sharing" is immaterial to mutual fund investors. *See, e.g.*, *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 602 (S.D.N.Y. 2006) (holding that specific allocation of fees immaterial because "the great weight of authority in this District has found that the fees' disproportionality to services must be shown with regard to the *total* amount of fees charged") (emphasis in original); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) ("Defendants disclosed the fees and commissions charged to shareholders.  The precise allocation of those fees is not material information under the securities laws."); *In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*, No. 03 Civ. 8208, 2006 U.S. Dist. LEXIS 20758, at *37-38 (S.D.N.Y. Apr. 14, 2006) ("All fees charged to the shareholder were disclosed in the offering prospectuses . . . . The allocation of the fees is immaterial, because it could have no effect on share price."); *Castillo v. Dean Witter Discover & Co.*, No. 97 Civ. 1272, 1998 WL 342050, at *5 (S.D.N.Y. June 25, 1998) ("Plaintiffs complain that they were not informed of the precise allocation of fees . . . but the allocation of fees would not affect the damages for the losses claimed by plaintiffs. It is the total fees charged that would affect the asset value of a mutual fund and the decision to invest.").

processes.[24]   Moreover, this Court's consideration of such factors is wholly consistent with the

Supreme Court's expectation that "courts, in fashioning 'appropriate' equitable relief . . . will

respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of

others.'"   *Varity Corp.*, 516 U.S. at 515 (internal citation omitted).

## IV.   Count III Should Be Dismissed Because It Seeks Relief That Is Unavailable Under ERISA § 502(a)(3).

Count III largely duplicates Count II and should be dismissed on similar grounds, namely

that it does not seek either "appropriate" or "equitable" relief, as required under § 502(a)(3).   In

particular, although plaintiffs have cast Count III as a claim for "equitable" restitution, they have

not pled, and cannot plead, the elements of a claim for such relief because the assets they seek to

recover—the proceeds of "revenue sharing" payments—are not traceable as to Plan assets.   *See*

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (restitution exists in

equity "where money or property identified as belonging in good conscience to the plaintiff

could clearly be traced to particular funds or property in the defendant's possession").

Plaintiffs attempt to cabin the effect of *Great-West* by pointing to the opinion in *Sereboff v.*

*Mid-Atlantic Medical Services, Inc.*, 126 S.Ct. 1869 (2006), which plaintiffs contend stands for the

proposition that the tracing of assets is not required to establish equitable restitution.   (Opp. 37-38.)

*Sereboff*, however, did not involve a claim for equitable restitution but instead involved a claim for

equitable lien "by agreement," a remedy that the Supreme Court in *Sereboff* explicitly contrasted to

---

[24]      Indeed, plaintiffs themselves highlight Congress' longstanding attention to this issue by citing Marvin Mann's testimony to a Senate committee.  (Opp. at 37 n. 29 (citing Statement of Marvin Mann, Chairman of the Independent Trustees of The Fidelity Funds, Before the Senate Committee on Banking, Housing and Urban Affairs on "Review of Current Investigations and Regulatory Actions Regarding the Mutual Fund Industry: Fund Operations and Governance" (Mar. 2, 2004), *available at* http://banking.senate.gov/_files/mann.pdf).)  After clarifying that he was speaking in his personal capacity and not as a trustee of the Fidelity mutual funds, Mr. Mann outlined his suggestions for industry-wide changes to existing law.  *Id.* at 16.  Notably, Mr. Mann acknowledged that all of his proposals were contained in bills that had been introduced in Congress and were thus already the subject of legislative deliberation.  *Id.*

equitable restitution. *Id.* at 1875. [25]  The *Sereboff* Court recognized, and did not purport to alter or

limit, the *Great-West* Court's application of a tracing requirement to claims for equitable

restitution. *Id.* at 1876.  Count III does not assert a claim for equitable *lien*, much less for equitable

lien by agreement; instead, it asserts a claim for equitable *restitution*, and thus requires the

traceability of assets. *Great-West,* 534 U.S. at 213; *see also Admin. Comm. of the Wal-Mart*

*Stores, Inc. v. Varco*, 338 F.3d 680, 686-87 (7th Cir. 2003).

Plaintiffs next contend that a "disputed factual issue" exists as to traceability because

while plaintiffs "allege that the fees in question were sent through a mutual fund before reaching

their ultimate holder," they have alleged that the *amount* of fees "existed before, during, and after

the fees went into and out of the mutual fund." (Opp. at 39.)  Under *Great-West*, however,

equitable restitution requires more than the mere existence of a determinate amount; it requires

that plaintiffs be able to identify "'*particular* funds or property in the defendants' possession'

that are *'clearly'* traced to the plaintiff." *In re Unisys Corp. Retiree Med. Benefits*, MDL Docket

No. 969, 2007 WL 2071876, at *13 (E.D. Pa. July 16, 2007) (emphasis in original) (quoting

*Great West*, 534 U.S. at 213).  As this Court explained in *In re Unisys Corp. Retiree Medical*

*Benefits*, "[s]imply designating some portion of [defendant's] general funds is not enough.

Indeed, since they cannot identify the particular property that belongs to them, [plaintiffs] are

seeking the same relief as every claimant who seeks monetary damages: money that they believe

belongs to them."  2007 WL 2071876, at *14.

---

[25]  *Sereboff* involved a claim by a plan administrator seeking reimbursement of medical benefits provided to plan beneficiaries based on the beneficiaries' monetary recovery in a lawsuit against third parties.  126 S.Ct. at 1872-73.  The Supreme Court reasoned that because the plan document specifically provided a right to reimbursement from a particular fund (defined in the plan document as "[a]ll recoveries from a third party (whether by lawsuit, settlement or otherwise)") and such fund was in the hands of the beneficiaries, the plan administrator had established the necessary conditions for an equitable lien "by agreement." *Id.* at 1874-75.  In contrast, plaintiffs here have not identified any language in the Trust Agreements or elsewhere that purports to give the Plans or their participants an interest in the fees and expenses received by Fidelity.

Finally, plaintiffs suggest that even if they are unable to maintain an action for equitable restitution, they should still be entitled to pursue a claim under Count III for "disgorgement of profits." (Opp. at 39.) As the cases cited by plaintiff make clear, however, disgorgement is itself subject to the same tracing requirement as equitable restitution, at least in those cases where the defendant is a non-fiduciary.[26] As the Supreme Court explained in *Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 250 (2000):

> it has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers *trust property* to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee and beneficiaries may *then* maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of) and disgorgement of the third person's profits derived therefrom.

*Id.* at 250 (emphasis added); *see also Great-West*, 534 U.S. at 215-16 (quoting *Harris Trust* in describing limits on "appropriate equitable relief" under § 502(a)(3)); *Skretvedt v. E.I. Dupont De Nemours*, 372 F.3d 193, 214 (3d Cir. 2004) (quoting *Harris Trust*). Thus, while disgorgement may provide a remedy where a transferee of trust property later disposes of its ill-gotten property, it does not obviate the need to trace the property from the transferee back to the trust.[27]

Indeed, plaintiffs themselves acknowledge the existence of a tracing requirement by their statement that disgorgement may be sought against an "immediate transferee" of plan assets. (Opp. at 39.) Plaintiffs also make clear the Fidelity Defendants were *not* immediate transferees of the Plan's assets through their admission that the "fees in question were sent

---

[26]    In contrast to Count II, which as discussed above is premised on fiduciary status, Count III expressly seeks relief "to the extent that the Defendants are found not to be fiduciaries[.]" (Compl. ¶ 90.)

[27]    This is similar to the limitations on an accounting for profits addressed by this Court in *In re Unisys Corp. Retiree Medical Benefits*. In that case, the Court explained that, "[b]efore a plaintiff may account for profits, however, he must, as with a constructive trust, first identify '*particular* funds or property in the defendant's possession' that belongs in good conscience to him. . . . Thus, for example, if a plaintiff can identify a specific tract of land that has been held wrongfully and rented out by the defendant to a third party, he may seek equitable control over the property, as well as an accounting for the profits (i.e., the rent) that the defendant earned off the land."

through a mutual fund" and thus, as a matter of law, ceased to be plan assets under ERISA §

401(b).  (*See* Section II.B.1 above.)  Accordingly, because the assets sought by plaintiffs are not

traceable for the reasons discussed in Fidelity's Memorandum, Count III should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Fidelity Defendants respectfully request that that this Court

enter an Order granting the Fidelity Defendants' Motion to Dismiss Plaintiffs' First Amended

Complaint for Breach of Fiduciary Duty and dismiss plaintiffs' claims against Fidelity

Management & Research Company, Fidelity Management Trust Company, and Fidelity

Investments Institutional Operations Company, Inc. with prejudice.

---

2007 WL 2071876, at *13.  The Court accordingly denied plaintiffs an accounting of profits because "[p]laintiffs have failed to identify a specific fund or property from which they are entitled to the profits."  *Id.* at 14.

Dated:  October 30, 2007                    Respectfully submitted,


                                            By: /s/_____
                                            John S. Summers (PA ID No. 41854)
                                            HANGLEY ARONCHICK SEGAL & PUDLIN
                                            One Logan Square
                                            27th Floor
                                            Philadelphia, PA 19103-6933
                                            Telephone: (215) 568-6200
                                            Fax:  (215) 568-0300

                                            *Counsel for Defendants Fidelity Management
                                            Trust Company, Fidelity Management &
                                            Research Company, and Fidelity Investments
                                            Institutional Operations Company, Inc.*

***Of Counsel***:
Robert N. Eccles
Brian D. Boyle
Shannon D. Barrett
Arthur W.S. Duff
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Fax:  (202) 383-5414

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of October, 2007, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following attorneys of record:

Jerome J. Schlichter
Elizabeth J. Hubertz
Schlicter, Bogard & Denton
100 South 4th Street, Suite 900
St. Louis, MO  63102

*Counsel for Plaintiffs*

Theodore H. Jobes
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103

*Counsel for Plaintiffs*

Joseph J. Costello
Brian T. Ortelere
Jamie Kohen
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19101-2921

*Counsel for the Unisys Defendants*

Stephen Harburg
O'Melveny & Meyers LLP
1625 Eye Street, NW
Washington, DC 20006

*Counsel for Defendants Fidelity Management
Trust Company, Fidelity Management &
Research Company, and Fidelity Investments
Institutional Operations Company, Inc.*

I have also sent a copy of the foregoing to the following attorney of record via first class

mail:

William A. White
Hill Farrer & Burrill
One California Plaza, 37th Floor
300 S. Grand Ave
Los Angeles, CA  90071-3147

*Counsel for Plaintiffs*

/s/_____
John S. Summers