# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  GLENN TIBBLE, WILLIAM BAUER,        )   Case No.: CV 07-5359 SVW(AGRx)
    WILLIAM IZRAL, HENRY RUNOWIECKI,    )
12  FREDERICK SUHADOLC, HUGH TINMAN,    )   ORDER GRANTING-IN-PART AND
    JR.,                                )   DENYING-IN-PART DEFENDANTS'
13                                      )   MOTION TO DISMISS
                    Plaintiffs,         )   [7]
14                                      )
                                        )
15            v.                        )
                                        )
16  EDISON INTERNATIONAL, THE EDISON    )
    INTERNATIONAL BENEFITS              )
17  COMMITTEE, EDISON INTERNATIONAL     )
    TRUST INVESTMENT COMMITTEE,         )
18  SECRETARY OF THE EDISON             )
    INTERNATIONAL BENEFITS              )
19  COMMITTEE, SOUTHERN CALIFORNIA      )
    EDISON'S VICE PRESIDENT OF HUMAN    )
20  RESOURCES, MANAGER OF SOUTHERN      )
    CALIFORNIA EDISON'S HR SERVICE      )
21  CENTER,                             )
                                        )
22                  Defendants.         )
    _____)
23

24  ///

25  ///

26

27

28

## I.    INTRODUCTION

Plaintiffs Glenn Tibble, William Bauer, William Izral, Henry Runowiecki, Frederick Suhadolc, and Hugh Tinman, Jr. ("Plaintiffs") bring this class action suit on behalf of the Edison 401(k) Savings Plan ("Plan") and all similarly situated participants and beneficiaries of the Plan, against Defendants Edison International ("Edison"), Southern California Edison Company ("SCE"), the Southern California Edison Company Benefits Committee ("Benefits Committee") (incorrectly named in the Complaint as the Edison International Benefits Committee), the Edison International Trust Investment Committee ("Investment Committee"), the Secretary of the Southern California Edison Company Benefits Committee (incorrectly named in the Complaint as the Secretary of the Edison International Benefits Committee), Southern California Edison Company's Vice President of Human Resources, and the Manager of Southern California Edison Company's HR Service Center, collectively referred to as "Defendants."[1]  Defendants now move to dismiss the class action Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, Defendants' Motion is granted-in-part and denied-in-part.

## II.    FACTUAL ALLEGATIONS

Plaintiffs are current or former employees of Midwest Generation, which is a subsidiary of the Edison Mission Group, a

---

[1] Class is not yet certified in this action.

division of Defendant Edison. (Comp., ¶ 10.) Plaintiffs are all
alleged members of the Edison 401(k) Plan, to which they contribute.[2]
In the instant action, Plaintiffs seek to recover damages pursuant to
the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §
1132(a) for alleged financial losses suffered by the Plan, in
addition to injunctive and other equitable relief based on alleged
breaches of Defendants' fiduciary duties. 29 U.S.C. §§ 1104(a)(1),
1106(a). Defendant Edison is the parent of Defendant SCE and serves
either directly or through SCE as sponsor of the Plan. (Id., ¶¶ 1,
12.)[3] Defendant Benefits Committee, which is comprised of persons
appointed by SCE's Chief Executive Officer, is allegedly a named
fiduciary and Plan Administrator. (Id., ¶ 15.) Defendant Investment
Committee, comprised of persons appointed by the Chief Executive
Officer of Defendant Edison, is also an alleged fiduciary of the
Plan. (Id., ¶ 16.) All remaining Defendants are also alleged to be
fiduciaries of the plan. (Id., ¶¶ 17-19.) SCE allegedly indemnifies
all fiduciaries of the Plan against liability for their conduct as
Plan fiduciaries. (Id., ¶ 20.)

As part of its compensation and benefits, Plaintiffs allege SCE
offers certain employees the opportunity to participate in the Plan,
which is a "defined contribution plan" as set fort in 29 U.S.C. §

---

[2] A 401(k) plan is an investment that allows employees to
contribute their wages automatically from their paychecks on a
pre-tax basis. These contributions are then often matched by the
employer and participants allocate their accounts among available
investments. See PBGC v. LTV Corp., 496 U.S. 633, 637 (1990)
(discussing 401(k) investment schemes).
[3] Although initially identified as separate entities, Plaintiffs
group together Edison and SCE in the allegations of their
Complaint, referring to the two collectively as "SCE".
(Complaint, ¶ 14.) Accordingly, when the Court references
Plaintiffs' use of SCE in the Complaint, it refers to both
Defendants.

1002(34); and also allegedly contains an "eligible individual account plan" under 29 U.S.C. § 1107(d)(3)(A). (Complaint, ¶ 27.) The Plan assets are allegedly held in a trust (the "Trust") established by SCE and the Plan's other trustees. (Id., ¶ 28.) The fees and expenses associated with the Plan are allegedly paid from the assets of the Trust, in which the Plan participants allegedly retain an undivided beneficial interest. (Id.) Participants may select from a variety of investment fund options, into which they may direct their contributions. (Id., ¶ 29.) Plaintiffs allege that SCE is obligated to pay the cost of administering the Plan, and repeatedly represented that it does so. (Id., ¶ 32.)[4]

Plaintiffs allege that Defendants engaged in a variety of activities in their management of the Plan which constitute breaches of fiduciary duties, including: (1) "surreptitiously caused [administrative] costs" of the Plan to be assessed against its participants' retirement savings; (2) impaired market returns by including actively managed retail mutual funds as plan investment options; (3) "subjected the Plan to excess and unreasonable fees and expenses collected by, and transferred among, Plan service providers as soft dollars to support undisclosed Revenue Sharing programs"; and (4) undermined returns to participants in the Edison International Stock Fund "by imprudent fund management." (Complaint, ¶ 2.) Plaintiffs allege that all of these actions reflect the Defendants' violations of their general fiduciary obligations imposed under §

---

[4] It is unclear to the Court whether the alleged obligation to pay the costs of administering the plan is premised on a statutory argument or on representations made in documents filed with the Department of Labor. The Court would request clarification of this issue in any amended complaint filed by Plaintiffs.

1104(a) and prohibited transactions under § 1106(a). (<u>Id.</u>) In addition to the general breaches alleged in the Complaint, Plaintiffs specifically allege that Defendants chose imprudent or unreasonably expensive investment options when compared to the alternatives available to 401(k) plans of the same or similar size and complexity. (Complaint, ¶¶ 68-81; 82-85; 86-87.) Furthermore, Plaintiffs allege that the fiduciaries of the Plan improperly used the participants' money to pay for the administrative expenses while simultaneously failing to disclose these details. (<u>Id.</u>, at ¶¶ 52-61.) Additionally, Plaintiffs allege that the fiduciaries used the funds for purposes other than the participants' sole benefit. (<u>Id.</u>, at ¶¶ 81-86.) The details of these allegations are further explicated in the discussion of Defendants' Motion.

Count I seeks money damages and appropriate equitable relief under ERISA § 502(a)(2), 19 U.S.C. § 1132(a)(2). (Complaint, ¶¶ 98-103.) Count II seeks equitable relief, including an accounting of transfers and payments involving the Plan mutual funds investments, a surcharge in the amount of any improper transfers or payments, and disgorgement of improper profits under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (<u>Id.</u> at ¶¶ 104-122.)

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a claim where the complaint fails to state a claim upon which relief can be granted. Such a motion is meant to test the legal sufficiency of a complaint. <u>Ieto v. Glock, Inc.</u>, 349 F.3d

1191, 1199-1200 (9th Cir. 2003). The Supreme Court recently revised the standard used to review motions to dismiss in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007). In <u>Twombly</u>, the Supreme Court stated that "[f]actual allegations [of the Complaint] must be enough to raise a right to relief above a speculative level." 127 S. Ct. at 1965. A plaintiff may not obtain relief simply by attaching "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> The newly adopted standard for a motion to dismiss requires the plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974. Consequently, a Rule 12(b)(6) motion should be granted where the plaintiffs have failed to "nudge[] their claims across the line from conceivable to plausible." <u>Id.</u> Similarly, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

In analyzing a motion to dismiss, a court must accept the veracity of the well-pleaded facts as presented in the complaint, and will construe the allegations in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). The court is not required, however, to accept any conclusory legal allegations or unwarranted inferences set forth in the complaint. <u>Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000). <u>See also</u> <u>Mitan v. Feeney</u>, 497 F. Supp. 2d 1113, 1126 (C.D. Cal. 2007) (stating that "conclusory, boilerplate" language will not suffice). The <u>Twombly</u> standard must also be read in light of Fed. R. Civ. P.

8(a)(2), which merely requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Subsequent cases have demonstrated that the Supreme Court did not wish to drastically raise the pleading standards under Rule 8. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (stating that "the statement need only give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." (internal citations omitted)). With these guiding principles in mind, the Court now turns to the claims set forth in the present Complaint.

**IV.  ANALYSIS**

**A.  Alleged Fiduciary Status of Edison and SCE**

Defendants first move to dismiss all claims against Edison and SCE because, they claim, Plaintiffs do not allege in the complaint that either acted as a "fiduciary in any capacity with respect to the conduct alleged." (Mot., at 6.)  Instead, Defendants argue, Plaintiffs in this case merely alleg that Edison and SCE are sponsors of the Plan.  (Id.)  Accordingly, Defendants maintain that neither of these two parties can be a proper defendant for breach of fiduciary duty under ERISA § 502(a)(2) or § 502(a)(3).

It is well understood that Plaintiffs may bring suits under ERISA for breach of fiduciary duty only against a fiduciary.  See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324-25 (9th Cir. 1985) (citing 29 U.S.C. §§ 1109(a); 1105(a)); Batchelor v. Oak Hill Med. Group, 870 F.2d 1446, 1448 (9th Cir. 1989) ("Suits for breach of

ERISA fiduciary duty . . . may be brought only against persons
definable as fiduciaries under ERISA.  A non-fiduciary does not
subject itself to liability simply by participating in a breach of
trust by fiduciaries."); <u>Thorton v. Evans</u>, 692 F.2d 1064, 1077 (7th
Cir. 1982)).  ERISA defines a fiduciary as:

> [A] person is a fiduciary with respect to a plan to the extent
> (i) he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any
> authority or control respecting management or disposition of its
> assets, (ii) he renders investment advice for a fee or other
> compensation, direct or indirect, with respect to any moneys or
> other property of such plan, or has any authority or
> responsibility to do so, or (iii) he has any discretionary
> authority or discretionary responsibility in the administration
> of such plan.

29 U.S.C. § 1002(21)(A).[5]  Under Ninth Circuit precedent, "[f]iduciary
status under ERISA is to be construed liberally, consistent with
ERISA's policies and objectives."  <u>Arizona State Carpenters Pension
Trust Fund v. Citibank</u>, 125 F.3d 715, 720 (9th Cir. 1997).  A
plaintiff attempting to confer fiduciary status upon a defendant must
make affirmative allegations concerning that defendant's fiduciary
status.  <u>See Carpenters Health and Welfare Trust Fund for California
v. Tri Capital Corp.</u>, 25 F.3d 849, 857 (9th Cir. 1994) (noting
dismissal was proper where plaintiff failed to exercise any of the
control necessary for fiduciary status), *overruled on other grounds
in* <u>Southern California IBEW-NECA Trust Funds v. Standard Indus. Elec.</u>

[5] There is no dispute that Defendants, as corporations, qualify as
"persons" under the statute.

8

Co., 247 F.3d 920, (9th Cir. 2001). However, a party is not a fiduciary under ERISA when it performs mere ministerial duties or processes claims. See, e.g., Kyle Rys., Inc. v. Pac. Admin. Servs. Inc., 990 F.2d 513, 516 (9th Cir. 1993). ERISA regulations set forth the distinction between those duties that are substantive and those that are simply ministerial:

Q: Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:

(1) Application of rules determining eligibility for participation or benefits;

(2) Calculation of services and compensation credits for benefits;

(3) Preparation of employee communications material;

(4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

1            (10) Processing of claims; and

2            (11) Making recommendations to others for decisions with

3            respect to plan administration?

4        A: No. Only persons who perform one or more of the functions

5        described in section 3(21)(A) of [ERISA] with respect to an

6        employee benefit plan are fiduciaries. Therefore, a person who

7        performs purely ministerial functions such as the types

8        described above for an employee benefit plan within a framework

9        of policies, interpretations, rules, practices and procedures

10       made by other persons is not a fiduciary because such person

11       does not have discretionary authority or discretionary control

12       respecting management of the plan, does not exercise any

13       authority or control respecting management or disposition of the

14       assets of the plan, and does not render investment advice with

15       respect to any money or other property of the plan and has no

16       authority or responsibility to do so.

17  29 C.F.R. § 2509.75-8, D-2. Accordingly, although a party may have

18  some role in the administration of a plan, such duties do not

19  necessarily fall within the ambit of fiduciary roles under the ERISA

20  statute.

21     Plaintiffs' Complaint contains a number of allegations relevant

22  to this analysis. First, Paragraph 12 of the Complaint states that

23  "[u]pon information and belief, pursuant to ERISA § 3(16)(B), Edison

24  International serves as sponsor of the Plan either directly or

25  through Southern California Edison Company." (Complaint, ¶ 12.)

26  Furthermore, Plaintiffs allege that "[u]pon information and belief,

27  Southern California Edison Company is the Sponsor of the Plan

28

pursuant to § 3(16)(B)." (Id. at ¶ 13.) In addition, Plaintiffs
point to Paragraphs 15 and 16 of their Complaint. Paragraph 15
states:

> Defendants Edison International Benefits Committee f/k/a
> Southern California Edison Benefits Committee (the "Committee")
> is a named fiduciary and Plan Administrator. The Committee is
> comprised of persons appointed by Southern California Edison's
> Chief Executive Officer, and serve at his pleasure. Each member
> of the Committee is also named fiduciary of the Plan.

(Complaint, ¶ 15.) Similarly, Paragraph 16 of the Complaint states
"Defendant the Edison International Trust Investment Committee (the
"TIC") is a named fiduciary of the Plan. The TIC is comprised of
persons appointed by the Chief Executive Officer of Edison
International. Each Member of the TIC is also a named fiduciary of
the Plan." (Complaint, ¶ 16.)

Defendants contend that there are insufficient allegations to
connect their actions to any fiduciary duty. (Mot., at 6-7.)
Defendants point the Court to the Ninth Circuit's decision in Gelardi
v. Pertec Computer Corp. to support its assertion that an employer
cannot simply be tagged with liability for the fiduciary acts of its
employees. 761 F.2d at 1325 ("ERISA anticipates that employees will
serve on fiduciary committees but the statute imposes liability on
the employer only when and to the extent that the employer himself
exercises the fiduciary duty allegedly breached."). Defendants are
correct that the fiduciary duty does not merely attach vicariously to
the employer. The Ninth Circuit in Gelardi went on to say, however,
that the company itself could be liable as fiduciaries "with respect

to the selection of the Administrator." <u>Id.</u>   In <u>Gerlardi</u>, the Ninth
Circuit found that no such allegations were present, and, therefore,
dismissal was proper.   <u>Id.</u>   This concept concerning governance over
selection is supported in other Ninth Circuit cases as well.   <u>See,</u>
<u>e.g.</u>, <u>Batchelor</u>, 870 F.2d at 1449 (noting that parties with authority
to select and retain fiduciaries may be fiduciaries themselves with
respect to selection and retention).   Effectively, such reasoning
merely stands for the proposition that an employer can only be liable
for the role that it plays as a fiduciary.

      In the present action, Plaintiffs allege that Edison is involved
because its CEO appoints the members of the TIC.  (Opp., at 3.)
Similarly, Plaintiffs claim that SCE is involved because its CEO
appoints those members of the Committee.  (<u>Id.</u> at 3-4.)  Accordingly,
Plaintiffs argue that since the individuals who appoint the members
of these committees are officers of the overarching companies, they
are fiduciaries.  Specifically, Plaintiffs argue that it is in the
selection of the individuals to these committees that Edison and SCE
violated their fiduciary duties.  (<u>Id.</u> at 3.)  As presented in the
Complaint, and argued in Plaintiffs' Opposition, this selection and
monitoring is the alleged basis of SCE and Edison's role as a
fiduciary.

      Defendants respond with two arguments.  First, they contend that
there are no cases imputing the actions of the individual officer on
the actions of the companies Edison and SCE as a whole.  (Reply, at
2.)  Second, Defendants argue that even if the governing corporations
may be held liable for the appointing those in charge, there are no
allegations relating to a breach of fiduciary duty in appointment.

On the first point, it would seem contradictory to allow for the breach of fiduciary duties by a corporation under principles espoused in <u>Gerladi</u> and <u>Batchelor</u>, but to hold that the officers are legally distinct from the corporation involved in the selection process. It is well recognized that a corporation can only act through the individuals who comprise its operation. <u>See, e.g.</u>, <u>New York Cent. & H.R.R. Co. v. United States</u>, 212 U.S. 481, 492-93 (1989) ("Since a corporation acts by its officers and agents, their purposes, motives, and intent are just as much those of the corporation as are the things done.") (quoting Bishop's New Criminal Law, § 417). Insofar as Plaintiffs bring a claim alleging the breach of the fiduciary duty on the basis of appointment and selection, Defendants' first argument lacks merit.

The second argument Defendants raise, that there are no allegations relating to the breach of any fiduciary duties on the part of these officers even if their actions could be imputed to the corporation, has more merit. Plaintiffs do not point to any allegations concerning the actual <u>breach</u> of any fiduciary duties by the individuals. Instead, Plaintiffs rely on Paragraphs 15 and 16, which do allege that they have power over the selection and appointment of the members of the committees, but do not inform the parties of any alleged wrongful actions the officers took in appointing the individuals that they did. Even given the liberality of pleading requirements under Rule 8, the allegations set forth in the Complaint do not manage to put Defendants on notice of the wrongful conduct in which these officers allegedly engaged.

Plaintiffs maintain that a number of the allegations in its Complaint relate to the wrongful conduct of Edison International and Southern California Edison. (Opp. to Mot., at 5-6.) (citing Comp., ¶¶ 44, 57-58, 80-81, 60.) These allegations all relate to the wrongful actions undertaken by the committees or Defendants in their administration of the plan. However, they do not relate to the wrongful appointment or the fiduciary breach on the part of the corporations themselves. If the Court accepts the theory that the individual CEOs in charge of the appointment of the committees may be fiduciaries and therefore impugn the corporations as fiduciaries, then the allegations would have to relate to the duties and discretion those fiduciaries possess. The only duty of SCE and Edison, as currently alleged in the Complaint and argued in Plaintiffs' Opposition, relates to the appointment process. Plaintiffs' allegations concerning the divergence of funds, however, relate to the actions taken by the committee as violations of ERISA.[6]

Plaintiffs cite to the district court's holding in Spano v. Boeing Co., 2007 WL 1149192 (S.D. Ill. April 18, 2007), as support for the proposition that fiduciary status is typically not appropriate to determine at a motion to dismiss stage. The court in Spano declined to dismiss allegations of fiduciary status with respect to Boeing where the plaintiffs alleged that Boeing was the plan sponsor and a fiduciary of the plan. Id., at *2. Plaintiffs

---

[6] Plaintiffs, as alleged in the Complaint, fail to state a connection between the status of Defendants SCE and Edison as fiduciaries and any breach. Plaintiffs allege that SCE and Edison are fiduciaries due to their selection and status as a plan sponsor. The Complaint, however, does not state any breach of fiduciary duty in the appointment of plan administrators, nor any role in monitoring the actions of those involved in administering the plan.

additionally cite to an unpublished decision from the Northern
District of California in which the district court declined to
dismiss certain defendants as fiduciaries.  Kawani v. Bechtel Corp.,
Case No. CV 06-5566 CRB, May 15 2007, Slip Op. at 7.  The court in
Kawani stated that it could not determine the roles of the respective
parties at the motion to dismiss stage.  In their Reply, Defendants
distinguish Plaintiffs' citation to Kanawi by stating that the
plaintiffs in that case relied on express language in the plan
document granting the plan sponsor appointment authority.  Kanawi, at
6.  Additionally, Defendants cite to Tool v. Nat'l Employee Ben.
Servs., Inc., 957 F. Supp. 1114 (N.D. Cal. 1996), for the proposition
that fiduciary status may be determined at the motion to dismiss
stage.  In Tool, however, the Court concluded that defendant
MassMutual could not be subject to ERISA liability as a fiduciary
because such a finding was precluded by the Small Business Protection
Act. 957 F. Supp. at 1119.  Such a statutory preclusion is not argued
by Defendants and does not appear to apply on face of the Complaint.

    The Court agrees with Plaintiffs and other courts in this
district that the fiduciary status of a party is typically not a
matter fit for resolution at the motion to dismiss stage.  The Court
does find however, without conclusively addressing the fiduciary
status of defendants Edison and SCE, that there is a dearth of
allegations in the present Complaint that impugn any breach of
fiduciary duty based on the role alleged.  As the allegations fail to
relate to the fiduciary duties that are presented in the Complaint,
the Court will grant the motion to dismiss as to Count I for Breach
of Fiduciary Duty against Edison and SCE but will also grant

Plaintiffs leave to amend the complaint in accordance with the
general practice under Rule 12(b)(6).[7]

## B. Allegations Regarding Imprudent Transactions and Conduct

Defendants next present a general attack on the sufficiency of
the allegations regarding imprudent transactions, arguing that
Plaintiffs fail to allege adequate facts to meet requisite pleading
standards.  Plaintiffs contend that they have met the pleading
requirements under Rule 8 by placing the Defendants on notice of the
claims against them.

ERISA provides that a plan fiduciary shall act solely in the
interests of the plan's participants and beneficiaries and in doing
so must act "with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting in a like
capacity and familiar with such matters would use in the conduct of
an enterprise of a like character with like aims."  ERISA §
404(a)(1)(C); 29 U.S.C. § 1104(a)(1)(C).  Accordingly, ERISA is
"designed to promote the interests of employees and their
beneficiaries in employee benefit plans."  Shaw v. Delta Air Lines,
Inc., 463 U.S. 85, 90 (1983).  As the Ninth Circuit has stated,
"[t]he explicit language of this section indicates that the prudent

---

[7] Plaintiffs argue in their Opposition that Defendants Edison and
SCE can be liable for the improper shifting of expenses whether
they did so as fiduciaries, or as non-fiduciary parties-in-
interest.  (Opp., at 6.) (citing Rutledge v. Seyfarth, Shaw,
Fairweather & Geraldson, 201 F.3d 1212, 1220-21 (9th Cir. 2000)).
This claim is asserted as part of the equitable relief that
Plaintiffs seek under Count II of the Complaint.  A discussion of
recovery under this theory against all Defendants is contained in
Part VI, Sections C and E.

person test applies to fiduciary obligations under ERISA." <u>Donavan v. Mazzola</u>, 716 F.2d 1226, 1231 (9th Cir. 1983). In determining the existence of a breach of fiduciary duties, courts will examine whether the individuals who are identified as fiduciaries engaged in an appropriate investigation before the challenged transaction and will inquire into the merits of the transaction itself. <u>Howard v. Shay</u>, 100 F.3d 1484, 1488 (9th Cir. 1996).

Plaintiffs present a number of allegations relating to imprudent transactions that they believe demonstrate the Defendants' breach of their fiduciary duty. Plaintiffs argue that their Complaint alleges at least four challenges to the validity of the transactions. (Opp., at 9). Specifically, they allege that: (1) the Plan fiduciaries agreed to pay the "same retail prices for investment management as the smallest investors," claiming that a prudent investor would have obtained a lower rate given the Plan's size; (2) Plan assets were used to "generate monies . . . that were not captured for the benefit of the Plan and participants," instead of using those funds exclusively for the benefit of the Plan; (3) the Plan invested in mutual funds that both cost more than index funds and also failed to "outperform index funds over the long term," while a prudent fiduciary would have limited investment in the actively managed mutual funds; and (4) the Plan fiduciaries were using money for the benefit of the Plan sponsor, "instead of solely for the benefit of the participants." (<u>Id.</u> at 9) (citations omitted).

In rebuttal, Defendants assert that that Plaintiffs have failed to "allege facts that demonstrate that a hypothetical prudent fiduciary would have restricted the Plan's investment options solely

to those allegedly cheaper investments . . . ." (Reply, at 5.)
Defendants maintain that a breach of fiduciary duty cannot be found
given the "prevalence of retail mutual funds in 401(k) plans in
general." (Id.) Additionally, they claim that, as to the third and
fourth violation, Plaintiffs have only set forth the manner of the
violation but not the amounts of these violations. (Id. at 5.)

Although nothing in the law requires that Defendants select the
cheapest Plan options possible — as Defendants note in their briefing
— the law does require that they prudently invest funds, as stated in
Howard. 100 F.3d at 1484-89. Plaintiffs allege that the form of
management that Defendants selected was not a prudent investment
given the other options. Specifically, they allege that the use of
these "retail" mutual funds and the actively managed funds violated
their duty to act prudently. (See Comp., at ¶¶ 68, 71, 82-85.) This
is more than a blanket statement that Defendants acted imprudently;
instead, Plaintiffs have alleged the manner in which they believe
that Defendants have acted imprudently. There are further
allegations presented in the Complaint that outline what Plaintiffs
allege constitute imprudent transactions. First, with regard to the
claim that Defendants breached their fiduciary duty by obtaining
merely retail rates, Plaintiffs present a number of specific
allegations concerning the retail nature of the funds:

> 70. Defendants – as fiduciaries of a multi-billion dollar
> retirement savings plan – had enormous bargaining leverage in
> the investment marketplace. They squandered this leverage by
> subjecting the Plan and its participants to the high costs of

retail/publicly-traded mutual funds and failing to provide

investment options with significantly lower costs.

71. As fiduciaries, Defendants were obligated to use the Plans'

bargaining power to require that investment managers consider

and provide separate low cost investment accounts, collective

investment trusts, or common collective funds ("Separate

Accounts") as Plan investment options.

(Id. at ¶¶ 70-71.) At this stage in the litigation it is reasonable

that Plaintiffs cannot state with specificity the amount lost given

the acts of the Defendants. Instead, Plaintiffs have alleged what

they contend are imprudent transactions given the ability of the

Defendants relative bargaining power and ability to obtain lower

rates. They have also alleged the time period during which they

believe that these imprudent transactions occurred. (Id. at ¶¶ 67-

68.) In opposition Defendants point to no case law, and the Court is

not aware of any, that would prohibit such a claim as set forth by

Plaintiffs. As discussed previously, the mere fact that Defendants

do not need to obtain the lowest rates does not mean that they may

invest in any manner they see fit. Accordingly, the retail

management allegations suffice to meet the pleading requirements of

Rule 8, Twombly, and Erickson.[8]

Second, there are specific allegations relating to the violation

of a fiduciary duty from the alleged failure to capture compensation

---

[8] In comparison to the example given by the Supreme Court in
Twombly, Plaintiffs in this case appear to have pled more than
sufficient allegations. Analogizing this case to a negligence
action, Plaintiffs have not only pled negligence, but have also
stated the manner in which they believe that negligence occurred,
the actions undertaken by the Defendants and the given time
period of the alleged breach of duty. See 127 S. Ct. at 1970
n.10.

streams for the benefit of the Plan. In Paragraphs 62-65, for instance:

62. Beyond collecting excessive fees from the Plan through Revenue Sharing programs, Plan service providers received additional, undisclosed compensation from their dealings with the Plan and Plan assets ("Additional Compensation Streams"). For example:

A. consultants receive finders' fees from investment managers for the consultants' placement of Plan assets with a certain investment manager or mutual fund company;

B. trustees or custodial banks perform cash sweeps of Plan accounts to capture cash before it is transferred to investment options, and earn interest on those cash holdings.

C. investment managers, custodial banks, prime brokers, and/or mutual funds receive payments for lending securities, owned by the Plan, to third parties; and

D. In connection with foreign investments, investment managers and mutual funds reap additional compensation from profiting on foreign currency exchange.

. . .

64. Plan fiduciaries must understand and consider these Additional Compensation Streams in fulfilling their fiduciary obligations to ensure that the proceeds of Plan assets are captured to defray Plan expenses and are applied solely for the benefit of the Plan and its participants and beneficiaries.

(Comp., ¶¶ 62-64.)  Plaintiffs claim that by taking these actions Defendants' have obtained streams of revenue that they have failed to disclose and capture for the benefit of the Plan, and therefore Defendants violated their fiduciary duties.  These allegations put Defendants on notice of the claims brought by Plaintiffs and the nature of the transactions that are the subject of the litigation.

Third, Plaintiffs present allegations relating to the "active management expenses."  These allegations concern Plan investments in actively-managed mutual funds, which Plaintiffs assert is far more costly than passive management system where holdings are set to "a particular benchmark, such as an index . . . ."  (Comp.,¶ 82.) Plaintiffs contend that by having these actively-managed funds in the Plan, Defendants require additional Plan funds to be spent without accruing any long-term gain in Plan assets.  Specifically, Plaintiffs allege:

83.  the inclusion of such actively managed funds in a plan of this size is detrimental to the interest of the Plan and its participants and beneficiaries. It repeatedly has been established that actively-managed funds rarely outperform such indexes on a risk adjusted basis when held as long-term investments, and that the average actively managed retail mutual fund underperforms the market after expenses.  The Plan's Funds here, after fees for active management, consistently underperformed the market.

84.  Defendants' inclusion in the Plan of these actively-managed mutual funds provided, and provides, no added value to participants while forcing them to bear substantial and

1    unnecessary fees.  Over time and on a risk-adjusted basis, the

2    Plan's actively-managed Funds have under-performed, and are

3    known to perform, market returns by at least the level of such

4    fee

5    (Id. at ¶¶ 83-84.)  Additionally, Plaintiffs allege that the

6    inclusion of these funds as an investment option "virtually

7    guaranteed" that the participants would not receive a market return

8    on their savings and, accordingly, Defendants' breached their

9    fiduciary duty to the Plan and its beneficiaries. (Id. at ¶ 85.)

10       Defendants contend that the allegations relating to the

11   additional compensation streams do not specify the "*amounts* paid to

12   service providers and thus do not support a claim that the Plan paid

13   unreasonable or excessive fees."  (Reply, at 5.)  Defendants also

14   argue that it is industry practice to invest in mutual funds, a point

15   which Plaintiffs contest.  This Court need not decide at this stage

16   whether the investment in mutual funds of the nature surrounding the

17   Complaint here are sufficient to meet the duty.  Plaintiffs have set

18   forth allegations sufficient to raise an inference that the actions

19   undertaken by Defendants in the present action state a claim for

20   breach a fiduciary duty.  While the claim as presented above appears

21   rather tenuous, and it may well be that at the point of summary

22   judgment there are not sufficient facts to support the allegations as

23   set forth in the Complaint, given the deferential nature of review

24   given to complaints in a motion to dismiss this Court does not find

25   that Plaintiffs failed to state a claim for breach of fiduciary duty

26   on this theory.

27

28

1       Finally, Plaintiffs generally allege that the Defendants

2 breached their fiduciary duties because they used Plan funds in a

3 manner not beneficial the Plan participants and beneficiaries.  In

4 support of their claim, Plaintiffs point to a number of allegations

5 in the Complaint.  Plaintiffs assert that allegations of revenue

6 sharing could demonstrate a breach of fiduciary duty.  (Comp., ¶ 58.)

7 Plaintiffs further maintain that this revenue sharing system

8 demonstrates the "flagrant self-dealing and self-interested" nature

9 of the transactions, in breach of the duty.  (Id. at ¶ 61.)

10 Plaintiffs then attempt to tie the revenue sharing and self-

11 interested nature of transactions to the use of mutual funds as a way

12 to benefit Plan administrators by using Plan assets to pay fees and

13 thereby reducing or eliminating "SCE's obligation to pay the

14 administrative costs of the Plan."  (Id. at ¶ 81.)

15       These allegations are sufficient to set forth a claim for breach

16 of fiduciary duty on the basis of the self-interested nature of

17 transactions and systems created by Defendants.  In response,

18 Defendants argue that the allegations concerning revenue sharing

19 payments do not create any inference of "objectively unreasonable

20 fees." (Id. at 5-6.)  The allegations contend that by taking these

21 actions Defendants have breached their fiduciary duties.  Whether or

22 not there were resulting unreasonable fees is difficult to ascertain

23 at this point in the litigation, though, again, the allegations may

24 prove unsubstantiated at the summary judgment phase.

25       Given the nature of the allegations as set forth in the

26 Complaint and as discussed above, the Court finds that Plaintiffs

27 have sufficiently alleged a breach of fiduciary duties by Defendants.

28

Whether or not these claims are substantiated on the merits, Plaintiffs have put the Defendants on notice of at least four ways in which they allege that Defendants have breached their fiduciary duty to the Plan participants and its beneficiaries.

## C.   Prohibited Transaction Claim

Defendants also seek dismissal on a separate basis of Plaintiffs' allegation claim alleging that Defendants "caused the transfer of Plan assets to, or the use of Plan assets by, [or] for the benefit of, parties in interest" in violation of 29 U.S.C. § 1106. (Comp., ¶ 60.) Section 1106 prohibits a fiduciary from causing a plan "to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."  29 U.S.C. § 1106(a)(1)(A). This claim specifically arises from Plaintiffs' allegation that Defendants caused to be paid the Plan's administrative costs and expenses out of Plan assets via revenue sharing arrangements. These arrangements, Plaintiffs allege, involve Plan fiduciaries selecting investment options for the Plan, which in turn assess charges from Plan participants ostensibly to operate and manage these investment options. (Comp., ¶¶ 51-52.) Plaintiffs allege, however, that these investment options, as part of a scheme with Defendants, actually over-assess charges and direct some portion of the revenues assessed to pay the administrative costs and expenses of the Plan, which Edison and SCE themselves are required to pay. (Comp., ¶¶ 48-57.)  Hence, though SCE and Edison do

not receive any Plan assets directly via this process, Plan assets
were directed via these Revenue Sharing arrangements by Defendants to
fulfill obligations owed by SCE and Edison. Therefore, Plaintiffs
argue, these payments using Plan assets indirectly enriched SCE and
Edison, who as employers constitute "parties in interest", in
violation of Section 1106. 29 U.S.C. § 1002(14). (Opp., at 20.)

Defendants argue Plaintiffs' Section 1106 claim should be
partially dismissed on the narrow ground that "once the Plan makes an
investment in a mutual fund on behalf of a participant, the invested
assets lose their status as Plan assets and become assets of the
mutual fund itself." (Mot. at 23). Therefore, Defendants argue, as
some of the payments at issue in this claim were paid out from mutual
funds invested in by the Plan, they did not involve Plan assets and
cannot create a claim. Defendants' sole basis for this conclusion is
the language of 29 U.S.C. Section 1101(b)(1), which provides:

> In the case of the a plan which invests in any security issue by
> [a mutual fund], the assets of such plan shall be deemed to
> include such security, but shall not, solely by reason of such
> investment, be deemed to include any assets of such [mutual
> fund].

29 U.S.C. § 1101(b)(1).[9] Defendants argue this language indicates
that the shares of the mutual funds purchased by the Plan become Plan
assets, while all the Plan assets invested in mutual funds
necessarily ceased to be Plan assets. However, the above language
only indicates that the assets of a mutual fund do not become plan

---

[9] Defendants also cite the Conference Committee Report detailing
the legislative history of ERISA, but it merely echoes, in
somewhat different terms, the cited language of Section
1101(b)(1). (Rep., at 11-12.)

assets "solely" by reason of a plan's investment in such mutual funds.  (Reply, at 11.)  The language does not state that the assets of a mutual fund cannot in any way become the assets of a plan.

In this case, Plaintiffs are asserting a scheme in which Plan assets were, unbeknownst to Plan participants, funneled through mutual funds, in addition to other investments options, for the purpose of paying Plan administrative expenses and costs. Hence, Plaintiffs assert that the mutual fund assets at issue were Plan assets not solely on the basis that Plan assets were invested in the mutual funds, but instead on the basis that such assets were invested in the mutual funds pursuant to an illegitimate scheme whereby the assets were intended to be subsequently directed to pay SCE and Edison's obligations.  Section 1106 specifically prohibits both "indirect and direct" transfers "to . . . or for the benefit of a party in interest."  29 U.S.C. § 1106(a)(1)(A).  This language strongly indicates that Section 1106 is intended to pierce concealed indirect transfer arrangements such as are alleged by Plaintiff. This conclusion is further supported in some measure by the Ninth Circuit's general admonishment, albeit in deciding a conceptually different issue, that the term "plan asset" is not specifically defined by ERISA and should be construed broadly in a functional manner to include any assets that "may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries."  Acosta, 950 F.2d at 620; see also, Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1467 (9th Cir. 1994). Additionally, two District of Connecticut decisions cited by Plaintiffs have already recognized that revenue sharing payments,

1   such as are at issue here made to fiduciaries may potentially be

2   considered prohibited transfers of plan assets. See Haddock v.

3   Nationwide Fin. Servs., Inc., 419 F. Supp. 2d 156 (D. Conn. 2006);

4   Phones Plus, Inc. v. The Hartford Fin. Servs. Group, Inc., 2007 WL

5   3124733, at *6 (D. Conn. Oct. 23, 2007). Defendants argue these cases

6   should be distinguished because in both cases the assets at issue

7   were being paid directly to fiduciaries. (Reply, at 12.) Plaintiffs

8   by contrast have not alleged that the service providers receiving the

9   assets are themselves the parties in interest, but that instead the

10  payments to the service providers indirectly benefit SCE and Edison

11  International as parties in interest. However, the indirect nature in

12  which SCE and Edison are alleged to have benefitted from the payments

13  is not relevant to the issue of whether the payments were Plan

14  assets. Regardless, the holdings of Haddock and Phones Plus that

15  indirect transfers of plan assets made through revenue sharing

16  agreements with mutual funds are not outside the scope of Section

17  1106 remain applicable.  Defendants, in contrast, cite to no case

18  supporting their view that plan assets invested in a mutual fund can

19  never be regarded as plan assets. Defendants instead rely on two

20  inapposite district court cases, neither of which involves revenue

21  sharing agreements such as are at issue here and neither of which

22  holds that plan assets invested in a mutual fund can in no

23  circumstance remain plan assets. (Mot., at 23.)  See A. Ronald Sirna,

24  Jr., P.C. Profit Sharing Plan v. Prudential Sec., 964 F. Supp. 147,

25  149 (S.D.N.Y. 1997); Corbett v. Marsh & McLenna Cos., 2006 WL 734560,

26  at *2 (D. Md. Feb. 27, 2006). Therefore, the Court concludes that

27

28

Plaintiff has adequately alleged a prohibited transaction pursuant to Section 1106.

**D.    Non-Disclosure Claims**

Defendants assert that Plaintiffs have failed to adequately allege their claims concerning nondisclosures by Defendants. Defendants allege a large variety of nondisclosures by Defendants in the Complaint. (Comp., ¶¶  93-97.) However, both parties appear to concede that Plaintiffs' multitude of nondisclosure allegations can be summarized as alleging that Defendants violated ERISA's general fiduciary duties of prudence and loyalty by not disclosing certain information regarding the nature, extent, and impact of the revenue sharing payments and additional compensation streams. (Mot. at 13; Plaintiff Opp., at 14-15.) Plaintiffs allege this information was material because it was "necessary for them: (a) to understand and protect their interests in the Plan; (b) to have knowledge regarding the Defendants' breaches of fiduciary duty; and (3) [sic] to have reason to believe they should make inquiry about those breaches and the facts underlying them." (Comp., ¶94.) Plaintiffs further allege that, as a result of Defendants nondisclosures, "Plaintiffs and all Plan participants and beneficiaries have been forced to pay excessive fees and expenses from their 401(k) accounts and have suffered financial losses and damages." (Comp., ¶ 97).

Plaintiffs do not allege that Defendants have failed to make any disclosures explicitly required by ERISA's detailed disclosure scheme or the Department of Labor regulations promulgated under that scheme.

See 29 U.S.C. Section 1021-31; 29 C.F.R. 2520.101-1, *et seq.*
Instead, Plaintiffs only assert that Defendants' disclosures were
mandated by ERISA's general fiduciary duties of prudence and loyalty.
(Comp., at 26-27.) Defendants assert such a claim is insufficient as
the Supreme Court has expressed reluctance to expand on the
disclosure requirements created by ERISA through reliance on a
different portion of the statute. Curtiss-Wright Corp. v.
Schoonejongen, 514 U.S. 73, 83-84 (1995). However, subsequent to its
holding in Curtiss-Wright Corp., the Supreme Court has indicated that
the general fiduciary duty imposed by ERISA can be used in certain
circumstances to supplement legal duties specifically created by
ERISA. Varity Corp. v. Howe, 516 U.S. 489, 504, 506 (1996). Applying
common-law trust standards, while "bearing in mind the special nature
and purpose of employee benefit plans," the Court found intentional
misrepresentations made to beneficiaries to constitute violations of
ERISA-imposed fiduciary obligations. Id. at 506 (quoting H.R. Conf.
Rep. No. 93-1280, pp. 295, 302 (1974), 3 Leg. Hist. 4562, 4569.) In
the same decision, the Court specifically declined to "reach the
question whether ERISA fiduciaries have any fiduciary duty to
disclose truthful information on their own initiative, or in response
to employee inquiries." Id. However, the Ninth Circuit has
subsequently determined that "ERISA imposes upon fiduciaries a
general duty to disclose facts material to investment issues" even
when such information is not specifically requested. California
Ironworkers Field Pension Trust v. Loomis Sayles & Co., 259 F.3d 1036
(9th Cir. 2001); see also Washington v. Bert Bell/Pete Rozelle NFL
Retirement Plan, 504 F.3d 818, 823 (9th Cir. 2007) ("[A] Plan

fiduciary must disclose information that would be material to a reasonable participant."); <u>Barker v. American Mobil Power Corp.</u>, 64 F.3d 1397, 1404 (9th Cir. 1995) ("A fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information.").[10]  The test for materiality is objective. <u>Washington</u>, 504 F.3d at 824. Hence, a fact is material if a reasonable participant would regard the fact as significant to their choices with regard to a plan. <u>Id.</u>

Defendants assert that Plaintiffs make only a conclusory allegation of materiality with regard to the alleged nondisclosures, which they view as insuffcient. (Mot., at 15-17.) However, as discussed above, Plaintiffs go beyond their initial general allegations of materiality and assert the specific basis for that conclusion. As the Court understands the allegations in the Complaint, Plaintiffs are essentially alleging that the Revenue Sharing payments and Additional Compensations Streams were in and of themselves violations of Defendants' fiduciary duties and hence

---

[10] There is some authority indicating "the general duty of disclosure is limited to information relating to the provision of benefits or the defrayment of expenses" and cannot be used to supplant an explicit disclosure requirement in ERISA. <u>California Ironworkers</u>, 259 F.3d at 1045; <u>see also</u> <u>Bins v. Exxon Co. U.S.A.</u>, 189 F.3d 929, 938 n.5 (9th Cir. 1999); <u>Hughes Salaried Retirees Action Comm. v. Adm. of Hughes Non-Bargaining Retirement Plan</u>, 72 F.3d 686, 693 (9th Cir. 1995) (en banc). However, recent rulings have not applied these limitations. <u>See</u> <u>Peralta v. Hispanic Bus., Inc.</u>, 419 F.3d 1064, 1070 (9th Cir. 2005); <u>Washington</u>, 504 F.3d at 818. In any case, whether these limitations are applicable is irrelevant in this case as the alleged nondisclosures all appear to fall within the proscribed area and Defendants do not assert that ERISA at this time possesses any explicit disclosure requirements that would be supplanted by the imposition of the general duty of disclosure in this case.

1    knowledge of them was necessary for Plaintiffs to protect their
2    interests in the Plan. In any case, Plaintiffs have alleged the
3    materiality of the nondisclosures and the Court will not undertake a
4    final determination of that materiality until both parties have had
5    opportunity to present all the relevant facts.[11]

6

7    **E.  Appropriate Equitable Relief**

8

9        Defendants also seek dismissal of Count II of the Complaint
10   brought under ERISA Section 502(a)(3). (Comp., at 33.) Though
11   Defendants air a number of arguments for dismissal of this claim,
12   their central argument is that Count II seeks relief wholly

13

---

14   [11] Defendants cite two out-of-circuit district court opinions
     that have dismissed similar claims at the motion to dismiss
15   stage. (Mot., at 16-17.) However, in each, the primary reason for
     dismissal was the court's view that ERISA's explicit disclosure
16   scheme cannot be expanded by reference to its imposition of
     general fiduciary duties. Hecker v. Deere, 496 F. Supp. 2d 967,
17   973 (W.D. Wis. 2007); Taylor v. United Techs. Corp., 2007 U.S.
     LEXIS 57807, at *13 (D. Conn. Aug. 9, 2007.). The Ninth Circuit,
18   as already noted, has implicitly rejected this view. The court in
     Hecker does go on to note in dicta that it did not view
19   information about revenue sharing payments as material to
     participants. 496 F. Supp. 2d. at 975-76. The court stated: "In
20   assessing the likely return on an investment the fees netted
     against the return are certainly relevant, but knowing the
21   subsequent distribution of those fees has no impact on the
     investment's value." Id. at 975 (citing In re Merrill Lynch Inv.
22   Mgmt. Funds Secs. Liti., 434 F. Supp. 2d 233, 238 (S.D.N.Y.
     2006); see also In re Morgan Stanley & Van Kampen Mut. Fund. Sec.
23   Litig., 2006 U.S. Dist. LEXIS 20758, at *37-38 (S.D.N.Y. Apr. 18,
     2006). Though, as already noted, the Court defers any
24   determination of materiality to a later stage of the litigation,
     it does not view this reasoning as persuasive at this time.
25   Though the subsequent distribution of the assessed fees may not
     as a general matter be material to participants, where, as
26   alleged, that distribution diverges from that represented to or
     understood by participants, it would appear relevant to
27   determining whether the assessed charges are appropriate.
28

duplicative of Count I. (Mot., at 18). Section 502(a)(3)) authorizes "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  In Varity Corp. v. Howe, the Supreme Court described Section 502(a)(3) as a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996). The Supreme Court therefore explained:

> We should expect that courts, in fashioning "appropriate"
> equitable relief, will keep in mind the "special nature and
> purpose of employee benefit plans," and will respect the "policy
> choices reflected in the inclusion of certain remedies and the
> exclusion of others." Thus, we should expect that where Congress
> elsewhere provided adequate relief for a beneficiary's injury,
> there will likely be no need for further equitable relief, in
> which case such relief normally would not be "appropriate."

Id. at 515 (internal citations omitted). The Ninth Circuit has since repeatedly recognized that Section 502(a)(3) claims may not be brought where ERISA otherwise provides a remedy. See Bowles v. Reade, 198 F.3d 752, 760 (9th Cir. 1999); Ford v. MCI Comm'ns Corp. Health & Welfare Plan, 399 F.3d 1076, 1083 (9th Cir. 2005); Forsyth v. Humana, Inc., 114 F.3d 1467, 1475 (9th Cir. 1997); Egashira v. Boeing Co., 16 Fed. Appx. 808, 809 (9th Cir. 2001) (unpublished decision). Defendants argue that, as Plaintiffs have sought the same relief for

the same alleged violations of ERISA under Section 502(a)(2) in Count One that they seek under Section 502(a)(3) in Count Two, Count Two should therefore be dismissed. (Mot., at 19.)

Plaintiffs do not contest the "catch-all" nature of 502(a)(3). Plaintiffs instead first argue that they should not be prohibited from *pleading* a Section 502(a)(3) claim as an alternative to its Section 502(a)(2) claim even if they cannot get relief under both claims. See Ehrman v. Standard Ins. Co., 2007 WL 1288465, at *4 (N.D. Cal. May 2, 2007) (allowing a party to plead a claim under an ERISA "catch-all" provision in the alternative because it was not certain that such a provision would not be necessary to provide all the relief sought). (Opp., at 16) However, alternative pleading is only warranted if there is some possibility that Plaintiffs will be unable to receive all the relief they seek under Section 502(a)(2). Section 502(a)(2) provides for the making good to the Plan any losses resulting from the alleged violations of fiduciary duty, as well as "any equitable or remedial relief the court may deem appropriate." 29 U.S.C. §§ 1109, 1132. This is precisely the relief sought under Count I. (Comp., ¶ 103.) Furthermore, upon review of the Complaint, the Court sees no relief requested under Count II that is not also requested under Count I. The only request for relief appearing in Count II that is not specifically requested in Count I is Plaintiffs' request for "an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of, the Plan and its assets." (Comp., ¶ 118.) As Plaintiffs argue that the granting of such relief for Defendants' alleged violations of ERISA is equitable and necessary to grant the other relief requested,

such relief is necessarily included in Plaintiffs' general assertion in Count I that "Defendants are personally liable for any other available and equitable relief." (Comp., at 32, 34.)[12] Such relief should therefore also be available under Section 502(a)(2) to the same extent it is available under Section 502(a)(3).

Plaintiffs' note, however, that all the relief they seek may not be available under Section 502(a)(2) because certain defendants, most probably SCE and Edison, may ultimately be found to not be fiduciaries of the Plan, therefore leaving Plaintiffs with no remedy against them under Section 502(a)(2).[13] (Opp., at 17) In such a case, Plaintiffs would generally have no remedy against those defendants under Section 502(a)(3), as well. See Ford, 399 F.3d at 1082 ("To establish an action for equitable relief under . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations [.]" (quoting Mathews v. Chevron Corp., 362 F.3d 1172, 1178 (9th Cir. 2004)). However, it has been repeatedly recognized that a beneficiary may bring a prohibited transaction claim against non-fiduciary parties-in-interest, such as potentially SCE and

---

[12] Defendants, in fact, concede that the requested accounting "would be a necessary element of any damage award under Count One." (Rep., at 20.)

[13] Plaintiffs additionally argue that, since the language of Varity does not categorically prohibit relief under Section 502(a)(3) where other relief is available, the Court should allow its Section 502(a)(3) claim to proceed past the pleading stage so that further facts can be developed, potentially creating circumstances where Section 502(a)(3) relief is appropriate. (Opp., at 17-18.) However, as already noted, the Ninth Circuit has subsequently applied Varity in a categorical fashion on multiple occasions. Furthermore, Plaintiffs do not even speculate as to what facts upon further development will create circumstances making equitable relief appropriate or as to what those circumstances might be.

Edison, for equitable relief under Section 502(a)(3). <u>See, e.g.</u>,
<u>Everhart v. Allmerica Financial Life Ins. Co.</u>, 275 F.3d 751, 753-54
(9th Cir. 2001) (citing <u>Harris Trust & Savings Bank v. Salomon Smith
Barney, Inc.</u>, 530 U.S. 238, 247 (2000)); <u>Landwehr v. DuPree</u>, 72 F.3d
726, 734 (9th Cir. 1995). Therefore, it would appear that alternate
pleading is warranted in this action at minimum with regard to
Plaintiffs' prohibited transaction claims against SCE and Edison. As
such, dismissal of Count II is inappropriate at least until such time
as all Defendants are determined to be fiduciaries of the Plan.[14]

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is
GRANTED-IN-PART and DENIED-IN-PART.  Plaintiffs have twenty (20) days
from the date of this Order to file an amended complaint providing
appropriate allegations regarding Defendants Edison and SCE.


IT SO ORDERED.

DATED:    July 15, 2008

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

---

[14] Defendants additionally raise several arguments contesting
whether certain aspects of the relief sought by Plaintiffs under
Count II would be equitable. (Mot., 20-22.) Whatever the
persuasiveness of these arguments, it would be premature to
consider them at this point in the litigation. Plaintiffs have
established that their request for equitable relief under Count
II as a whole is not subject to dismissal. The Court will
determine what parts of the specific relief Plaintiffs seek under
Count II are equitable at such time as the Complaint's
allegations of liability are proven.