UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK RENFRO, *et al.*, ) | |
| ) | Case No.: 2:07-2098-BWK |
| ) | |
| **Plaintiffs;** ) | |
| ) | |
| v. ) | |
| ) | |
| UNISYS CORPORATION, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL
AUTHORITY REGARDING *HECKER v. DEERE & CO.***

Plaintiffs submit this response to both Unisys' Defendants and Fidelity Defendants' Notice of Supplemental Authority regarding *Hecker, v. Deere & Co.,* 2009 WL 331285 (7th Cir. Feb. 12, 2009)("*Hecker*").  Not only are the facts in this case different in several critical respects than those in *Hecker*, but the legal claims in this case against all Defendants go well beyond the holding in *Hecker*.  In any event, even assuming Defendants are correct about all the arguments they submit in their Notices of Supplemental Authority regarding *Hecker* (which they are not), *Hecker* alone does not completely dispose of this case.  For these reasons, as described in more detail below, this Court should deny Fidelity Defendants' Motion to Dismiss and the Plaintiffs' Motion for Relief Pursuant to Rule 56(f) should be granted.[1]

    **A.**    **Defendants' Notices of Supplemental Authority Exceed the Scope of Their Underlying Motions**

At the outset, it must be noted that Defendants are completely ignoring the admitted limited scope of their underlying motions in their most recent Notices of Supplemental

---

[1] On September 29, 2007, this Court ordered that it would rule on Plaintiffs' Motion for Relief Pursuant to Rule 56(f) prior to addressing Unisys Defendants' Motion for Summary Judgment.

1

Authority. For instance, in Unisys Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, they specifically state the following:

> **The Unisys Defendants also dispute any allegation that the funds selected were inappropriate and that fees and expenses incurred by the Plan are in fact unreasonable or excessive, <u>but do not address those issues in this Motion</u>**.

Dkt. No. 11-2, p. 3, FN4 (emphasis added). Now, with a stretched interpretation of *Hecker*, Unisys Defendants are extending their own Motion for Summary Judgment beyond the breaking-point. If Unisys Defendants believe they have a basis for disposing of this case based on the decision in *Hecker*, they should file an appropriate motion under the Federal Rules of Civil Procedure and not try to improperly cram their square Motion for Summary Judgment into the round and limited hole of a Notice of Supplemental Authority.

Counsel for Unisys Defendants certainly understand the procedural posture of this case compared to that of *Hecker* because they also represent Deere & Co. in *Hecker*. Specifically, the procedural difference in *Hecker* is that Deere challenged the complaint on the pleadings through a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In this case, Unisys Defendants made the conscious decision to move for summary judgment, <u>assumed for the purposes of their summary judgment motion that all allegations in Plaintiffs' Amended Complaint were true</u>, <u>including that their client, Unisys Defendants, breached their fiduciary duties</u>, yet claimed that the ERISA safe harbor provision under 404(c) entitled the Unisys Defendants to summary judgment.[2] <u>Practically speaking, Unisys Defendants are presently</u>

---

[2] Although Unisys Defendants vaguely refer to Rule 12(b) of the Federal Rules of Civil Procedure, Unisys Defendants specifically moved for summary judgment in this case pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 11-2 at p. 9. To date, Unisys Defendants have not filed an answer to Plaintiffs' Amended Complaint. Without an answer or other responsive pleading, Defendants have made it very difficult for the Plaintiffs or this Court to determine the pertinent factual and legal issues. For instance, Defendants claim that ERISA § 404(c) protects them, yet—technically—they have not even asserted it.

<u>operating from a position that they did in fact breach their fiduciary duties to the Plan</u> yet 404(c) absolves them of liability.

In any event, and as discussed below, the *Hecker* opinion does not save the day for Defendants under any available Federal Rule because this case is not the *Hecker* case.

### B. ERISA Section 404(c) Does Not Provide Defendants a Safe-Harbor Against Their Admitted Fiduciary Breaches

1. Even assuming Defendants' have established a defense under ERISA § 404(c), this defense only applies if participants could have avoided Defendants' breach.

Plaintiffs allege that Unisys failed to properly leverage the size of the Plan assets to secure appropriate service—investment services and recordkeeping and administrative services. Am. Compl ¶¶ 21.B.iii; 38-39; 41, 70.A.  By offering almost exclusively retail mutual funds to Plan participants and excessively pricing the remaining offerings, Unisys did not act in the best interests of participants or "with the care, skill, prudence, or diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); Am. Compl. Pars 45, 48, 49 and 54.  In particular, a prudent expert acting in like capacity of a fiduciary for a multi-billion dollar plan would *not* utilize retail investments options. *Reich v. Lancaster*, 55 F.3d 1034, 1042 (3d Cir. 1995).  Instead, the prudent investment vehicle for investors with assets in the amounts similar to the Plan are collective funds and separate accounts.  These vehicles, only, allow the investor to leverage the size of their investment to negotiate fees that are proportional.  One need look no further for support of this proposition that counsel for Unisys Defendants' (and Deere & Co. for that matter) own admonishments to their clients regarding how to practice procedural prudence when administering a large defined contribution plan.  Indeed, they preach the following:

3

> Best Practices: Procedural Prudence
> - Amend Investment Policies if necessary to
>   • Consider performance net of fees
>   • Monitor fees and expenses
>   • **Require the least expensive way to provide an investment option, unless other factors favoring participants lead to a different conclusion**
>     • **Separate accounts**
>     • **Commingled trusts**
>     • **Flat fee arrangements for record keeping and custody**

*See* "401(k) Fees Issues: what Plan Sponsors Need to Know," Morgan Lewis, April 24 & 26, 2007, http://www.morganlewis.com/pubs/401kFeesIssuesWebcastPresentation1.pdf (last visited March 13, 2007)(emphasis added).

It was precisely this breach of fiduciary duty and failure to act as a prudent expert would in similar circumstances that Plaintiffs' allege Defendants' failed.

Directly on point, the Third Circuit's decision, *In re Unisys Savings Plan*, holds:

> [A] fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated.
>
> * * *
>
> [W]e also look to see whether the evidence establishes that a participant could remove his or her assets from [the challenged fund] and place them in a *comparable investment vehicle*. In our view, if the Plans did not offer an acceptable alternative to the [challenged fund], *a participant did not have the freedom, and in turn, the control to decide how his or her assets were ultimately invested*.

74 F.3d 420, 445, 446-47 (3d Cir. 1996)(emphasis added). In overturning the district court's grant of summary judgment in favor of the defendants, the Court of Appeals found it critical to their holding that fiduciaries to the plan provided information to participants that was sufficient "for the average participant to understand and assess" a large number of items, including the "financial consequences" of the participant's exercise of control and "developments, which materially affected the financial status of the investments." *In re Unisys*, 74 F.3d at 447.

Defendants' fail completely to demonstrate that any alleged loss from Defendants' breach *resulted from* Plaintiffs' choices. *E.E.O.C. v. V. & J. Foods, Inc.*, 507 F.3d 575, 580 (7th Cir. 2007)(defendant has the burden of proving an affirmative defense). In fact, it would be impossible to do so on a motion for summary judgment. Plaintiffs allege that all options available to participants are excessively priced and that Defendants failed to act in the best interests of participants in failing to prudently leverage and secure services properly priced for a multi-billion dollar plan. Am. Compl. 45-54. Assuming this breach, Defendants have not and cannot show that participants' loss *resulted* from their choice; rather it is undisputed that participants were locked into paying excessive fees.

### C. The Facts In This Case Differ From *Hecker* Such that Plaintiffs State a Claim for Excessive and Unreasonable Fees in this Case

In this case, Plaintiffs allege that the Defendants breached their fiduciary duties when the Unisys Defendants entered into an agreement with the Fidelity Defendants that served to lock Plan participants into excessive fees from which Plan participants could avoid. Amended Complaint ("Am. Compl.") ¶¶ 26 and 27. It is in this critical distinction that makes the decision in *Hecker* inapposite to this case and Defendants' characterization that *Hecker* is factually "indistinguishable" from this case erroneous.

Defendants concede that the Unisys Plan is "primarily invested in Fidelity investment funds." Doc. 61 at p. 7. Practically speaking, the vast majority of the investment options in the Unisys Plan were available to retail investors "with as little as $2500 to invest." Am. Compl. ¶ 28. Significantly, and a point not mentioned by Defendants, even though the expense ratios may vary between these funds, Plaintiffs nonetheless, allege that the fees paid by the Plan in each of the available options were excessive. In essence, the only means available to the Plan participants to avoid the excessive fees charged by Fidelity was to not participate in the Plan. In

short, unlike in *Hecker*, the Unisys Plan participants could not escape the excessive Fidelity fees that are at issue in this case. Although the Unisys Plan participants did not have access to the thousands upon thousands of non-Fidelity mutual fund investment options through a brokerage window from which to choose that the Court in *Hecker* found to be critical, this difference in plan structure is not relevant to the Plaintiffs' claims in this case. Rather, the Unisys Plan participants were limited to almost exclusively Fidelity retail mutual funds all of which contained excessive fees per the Defendants' agreement. Therefore, even under the reasoning provided in *Hecker*, Unisys Plan participants had no way of avoiding the excessive fees. Am. Compl. 45-54. Plaintiffs do not complain about the limitations to exclusively use Fidelity funds. Rather, Plaintiffs claim that the deal Unisys struck with Fidelity on the manner and amount of fees paid by the Plan prohibited participants from choosing a way to avoid these excessive fees.

Had the Unisys Plan fiduciaries made use of its bargaining power "as a reasonable and prudent fiduciary would do" and that is afforded to an investor similar to a large defined contribution plan, like the Unisys Plan, the Plan fees would have been priced at an appropriate rate (i.e. the rate for an institutional investor). Am. Compl. 38 and 39. This point alone is a critical distinction between the defined contribution plan at issue in *Hecker* and the Unisys Plan.

Although comparing the *Hecker* funds to what may be available to the "general public" was relevant to the Court in *Hecker*, the *Hecker* court did not address the issue of the appropriate market to compare plan sponsors for billion dollar retirement plans. In this case, Plaintiffs specifically allege that the Defendants failed to use their bargaining power to essentially make investment options available at wholesale prices rather than retail. Am. Compl. 39, 41, 63A, and 70A. This issue of bargaining power was not addressed in *Hecker* and must be addressed in this case.

**D. Fidelity Defendants are Proper Defendants.**

It is worth repeating that a party can become a fiduciary under ERISA: (1) by being named as a fiduciary in the instrument that establishes the plan, (2) by being named as a fiduciary pursuant to a procedure specified in the plan instrument, including, for example, appointment as a plan investment manager or plan trustee; or (3) by performing one of the functions described in the subsections of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A). *See Glaziers and Glassworkers Local Unions No. 252 Annuity Fund v. Newbridge Secs, Inc*., 93 F.3d 1171, 1179 (3d Cir. 1996);[3] and Dkt. No. 13 at pp. 12-13. Fiduciary status does not turn on strict job titles, but rather in "functional terms of control and authority over the plan." *Mertens v Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *Srein v. Frankford Trust Co*., 323 F.3d 214, 220 (3rd Cir. 2003). It is not an "all or nothing concept," *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir.1994), and a party does not need have to have authority over all aspects of a plan before it can be deemed a fiduciary. *Arber v. Equitable Beneficial Life Ins. Co.*, 889 F. Supp. 194, 198-99 (E.D. Pa. 1995). Instead, the "court must ask whether a person is a fiduciary with respect to the particular activity in question." *Maniace*, 40 F.3d at 267.

Functional fiduciary status is therefore a "fact sensitive inquiry and courts generally do not dismiss claims at this early stage where the complaint sufficiently pleads defendants' ERISA fiduciary status." *In re Schering-Plough Corp. ERISA Litig.*, No. 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007).

---

[3]   Section 3(21) of ERISA provides that a fiduciary is anyone who performs the following functions in connection with an employee-benefit plan governed by ERISA:
    (1) exercises any discretionary authority or control respecting management of such plan,
    (2) has any discretionary authority or responsibility in the administration of such plan,
    (3) exercises any authority or control respecting management of [the plan's] assets,
    (4) exercises any authority or control respecting disposition of [the plan's] assets,

29 U.S.C. § 1002(21)(A)(i), (iii).

Fidelity Defendants gloss over the fact that Fidelity is a <u>named fiduciary</u> to the Unisys Plan. Am. Compl. ¶13. Indeed, Fidelity admits it is a fiduciary to the Plan. Dkt. No. 13 at pp. 13-14. Fidelity attempts to side-step this fatal admission by simply stating that it is not a fiduciary as to Plaintiffs' "challenged conduct." As stated above, Plaintiffs' claims of excessive administrative and recordkeeping fees span the entire relationship and all the Fidelity funds in the Plan. Fidelity is a named fiduciary to several of these funds and is therefore directly implicated in the challenged conduct. Further, Plaintiffs directly place at issue the handling of float interest earned on "monies awaiting investment or redemption" that is "used for the benefit of Plan services providers…" Am. Compl. 55. Fidelity is the admitted trustee of the Plan and unarguably has sole discretion over these undeniable assets of the Plan. *See* Section 3(21)(3) & (4) of ERISA.

In addition, Fidelity concedes that it is contractually obligated to provide services—investment management of separate accounts and recordkeeping and administrative services—to the Unisys Plan. Fidelity further concedes that certain of these duties were delegated or shared between Fidelity entities. It is precisely these fees and services that Plaintiffs allege are at issue in this case. Fidelity cannot credibly say otherwise. However, Fidelity contends that Plaintiffs "do not tie any claim of fiduciary liability to those functions." Dkt. No. 13 at pp. 13-14. Plaintiffs' allegations clearly set forth Fidelity's function in exercising discretion over the management of the Plan. Am. Compl. 45-54. Under both Section 3(21)(2) of ERISA and settled law in this Circuit, such an allegation at this stage of the litigation is sufficient. *In re Schering-Plough Corp. ERISA Litig.*, No. 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007). Nothing in *Hecker* changes this well-settled law.

### E. Plaintiffs State a Claim for Relief Against All Fidelity Defendants Even if they are not Deemed Fiduciaries to the Unisys Plan.

While Plaintiffs allege that Fidelity acted as a functional fiduciary to the Unisys Plans, such fiduciary status is not necessary for the Court to find that they are a proper party defendant when Plaintiffs allege prohibited transactions and equitable relief under ERISA § 502(a)(3). *See* e.g. Am. Compl. 73-96.

The Supreme Court settled this issue in *Harris Trust and Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000). In *Harris*, the Court specifically found that ERISA § 502(a)(3) "imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Id.* at 245. Thus, Fidelity is liable independent of whether or not it is a fiduciary. Third Circuit case law on this issue is in agreement. *Reich v. Lancaster*, 55 F.3d 1034, 1043 (3d Cir. 1995)(party may be liable to the extent it knowingly participated in a breach by a fiduciary) citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993). The Court held that the non-fiduciary defendant could be liable under ERISA § 502(a)(3) and plaintiffs may properly seek "appropriate equitable relief" from this defendant. *See also Lowen v. Tower Asset Management,* 829 F.2d 1209, 1220 (2d Cir. 1987) ("holding that parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciaries" and finding "all defendants jointly and severally liable for violations of Section 406(b).").

Plaintiffs specifically allege (1) that Fidelity participated in a prohibited transaction and (2) a claim for injunctive and equitable relief against Fidelity Defendants as non-fiduciaries. *See* Am. Compl. ¶¶73-96. For instance, Plaintiffs allege the following:

> By charging the Plan for and retaining the excessive fees and other monies, including monies earned through Alternative Compensation Streams, Defendants FMTC, FMRCo, and FIIOC obtained funds that should have been used solely for

>the benefit of Plans' participants and beneficiaries for the exclusive purposes of providing benefits to participants in the Plans and their beneficiaries and defraying reasonable expenses of administering the Plans.

Am. Compl. 92.

These claims were not addressed by the Court in *Hecker* and should not be disposed of in this case on the proceedings. Moreover, as stated earlier, because §502(a)(3) will provide Plaintiffs' their only avenue for relief under ERISA if the Fidelity Defendants ultimately prove they are *not* fiduciaries, relief under (a)(3) will not be duplicative. "The time to determine whether the relief Plaintiffs seek under § 502(a)(3) is 'appropriate' is therefore only after discovery and full development of the case, not at the pleading stage." *See, e.g., DeGuiseppe v. Vertis, Inc.,* No. 04-4348, 2005 WL 2271865, *4 (E.D. Pa. Sept. 15, 2005)(plaintiffs can pursue legal claims under § 502(a)(2) and equitable claims under §502(a)(3) at the same time at the motion-to-dismiss stage). *See also* Plaintiffs' Opposition to Fidelity Defendants' Motion to Dismiss at pp. 34-35. Because *Hecker* did not address Fidelity Defendants as non-fiduciaries, Plaintiffs claims should proceed.

### F. Even The Broadest and Most Favorable Interpretation of *Hecker* Does Not Completely Dispose of this Case

Plaintiffs allege relief against Defendants pursuant to ERISA §502(a)(3). *See* Am. Compl. ¶¶73-96. Specifically, Plaintiffs request, among other things in Count II of the Amended Complaint a request injunctive, appropriate equitable relief, and an accounting to redress the wrongs committed by the Defendants. By Unisys Defendants' own admissions in filing their Motion for Summary Judgment, this equitable relief must be granted. In particular, Unisys Defendants assumed that the fiduciaries, both Unisys and Fidelity presumably, breached their duties in all respects that Plaintiffs allege. However, and the basis of their Motion for Summary

Judgment, Unisys Defendants maintain that these presumed breaches of fiduciary duties are insulated because of ERISA's safe-harbor provision under 404(c).

Even assuming Unisys Defendants are correct about their interpretation of this case and 404(c), which they are not, nowhere do Defendants contend that 404(c) insulates a fiduciary from equitable and injunctive relief. That is because they cannot. Section 404(c) does not defeat claims for equitable relief. *See Langbecker*, 476 F.3d at 312 ("Moreover, section 404(c) in no way limits the recovery of equitable relief"). Defendants will not find any statement in *Hecker* to contradict this simple principle. Given Defendants' presumption of breach, ERISA will not and does not allow that presumption to continue in the future. These assumed breaches must be fully vetted and corrected.

### G. Plaintiffs Allege Claims Against Fidelity Defendants that Extend Beyond the Holding in *Hecker*

In addition to stating a claim for excessive fees, Plaintiffs state claims against all Defendants that were not even addressed in *Hecker*. For instance, Plaintiffs claim that Defendants engaged in prohibited transactions. Am. Compl. 70(E). For instance, given the long-standing relationship between Unisys and Fidelity, coupled with the fact that the Fidelity parent company, FMR, Corp. and FMR Corp. Chairman, Edward C. Johnson 3rd had, as recently as 2007, stock ownership interest in Unisys Corporation in the amount of 33+ million Unisys shares constituting more than 10% ownership in Unisys Corporation, and combined with the excessive compensation Fidelity Defendants received from the Unisys Plan, Plaintiffs allegations of prohibited transactions must be fully discovered and handled on the merits.

### H. Disclosure of Excessive Recordkeeping and Administrative Fees

Regardless of *Hecker's* holding regarding the general duty of a fiduciary or other party in

interest to disclose revenue sharing to plan participants, it is also well-settled law that when a fiduciary speaks, it must speak the truth. *In re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 57 F.3d 1255 (3rd Cir. 1995). In this case, and as set forth above regarding the recordkeeping and administrative fees charged against the Plan participants, Defendants specifically told Plaintiff Renfro an untruth. Specifically, Mr. Renfro did ask for the information and was not given it. *See* Ct. Doc. 12-11 at 3. In fact, he was told that "Fidelity does not receive any compensation for performing the record keeping function. It receives its compensation for providing the mutual funds etc." (Letter from Michael Lapetina, dated November 21, 2006, submitted by the Unisys Defendants in support of their Motion for Summary Judgment). *See* Plaintiffs' Memorandum in Opposition to Fidelity Defendants' Motion to Dismiss at p. 31, FN 26. The *Hecker* Court was not presented with this type of direct untruth given to a participant and nothing in *Hecker* condones this action. To the extent these untruths are a plan-wide effort by the Defendants in this case or other providers, it is too early to tell. Accordingly, this Court should allow these claims against Defendants stand and provide the Plaintiffs an opportunity to discover the depth of this conduct so that it may be corrected.

For reasons stated in Plaintiffs' prior briefings Fidelity Defendants' Motion to Dismiss should be denied. Further, Plaintiffs' Motion for Relief Pursuant to Rule 56 (f) should be granted.

Respectfully Submitted,

SCHLICHTER, BOGARD & DENTON

  s/Troy A. Doles
Jerome J. Schlichter
Troy A. Doles (admitted *pro hac vice*)
100 South Fourth Street
Suite 900
St. Louis, MO 63102
Tel:   314-621-6115
Fax:   314-621-7151
Lead Counsel for Plaintiffs

Theodore H. Jobes
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
Tel:   215-299-2786
Fax:   215-299-2150
Local Counsel for Plaintiffs


**CERTIFICATE OF SERVICE**

       This is to certify that on March 13, 2009, a copy of the above was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Joseph J. Costello
jcostello@morganlewis.com
Brian T. Ortelere
boretelere@morganlewis.com
Jamie M. Kohen
jkohen@morganlewis.com
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5295/5150/5472
Fax: 215.963.5001
Counsel for the Unisys Defendants

Stephen Harburg
Shannon Barrett
Stephen Brody
O'Melveny & Myers
1625 Eye Street, NW
Washington, DC 20006
Tel: 202.383.5300
Fax: 202.383.5414
Counsel for FMTC, FMRCo and FIIOC

John S. Summers (PA ID No. 41854)
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square
27th Floor
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
Fax: (215) 568-0300
Counsel for FMTC, FMRCo and FIIOC

                                                          ____s/Troy A. Doles_____
                                                              Counsel of Record