UNITED STATES DISTRICT COURT DISTRICT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK RENFRO and GERALD LUSTIG, as representatives of a class of similarly situated persons, and on behalf of the Plan,<br><br><br><br>Plaintiffs;<br><br><br>v.<br><br><br>UNISYS CORPORATION, UNISYS CORPORATION EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, UNISYS CORPORATION SAVINGS PLAN MANAGER, PENSION INVESTMENT REVIEW COMMITTEE, J.P. BOLDUC, MATTHEW J. ESPE, GAIL D. FOSLER, RANDALL J. HOGAN, CLAYTON M. JONES, CLAY B. LIFFLANDER, THEODORE E. MARTIN, CHARLES B. MCQUADE, LAWRENCE W. WEINBACH, FMR, LLC, FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY MANAGEMENT& RESEARCH COMPANY and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 07-2098 - BMS<br><br><br>SECOND AMENDED COMPLAINT – CLASS ACTION<br><br>JURY TRIAL DEMANDED ON ALL CLAIMS SO TRIABLE |

SEP 3 – 2009
FILED

## SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY

1.      In this action, brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a),

Plaintiffs and Class Representatives Mark Renfro and Gerald Lustig, on behalf of the Unisys

Corporation Savings Plan, Plan 004, (the "Plan") and/or similarly situated participants and

beneficiaries in the Plan, seek to recover the financial losses suffered by the Plan and to obtain injunctive and other equitable relief for the Plan.

2.       As set forth in detail below, the fees and expenses paid by the Plan, and thus borne by Plan participants, were and are unreasonable and excessive in light of the services received, and not incurred solely for the benefit of the Plan and its participants.  By subjecting the Plan and its participants to these excessive fees and expenses, and by other conduct set forth below, the Defendants violated ERISA.

## PARTIES, JURISIDCTION AND VENUE

### Plaintiffs

3.       Plaintiff and Class Representative Mark Renfro lives in Mission Viejo, California. He is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

4.       Plaintiff and Class Representative Gerald Lustig lives in Bolingbrook, Illinois. He is also a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

5.       Defendant Unisys Corporation ("Unisys") is one of the leaders in the information technology (IT) consulting business, providing such services as systems integration, network engineering, project management, and technical support.  Unisys is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) and is the employer and principal of the Plans' other administrators.

6.       Unisys has delegated some of its authority for administration of the Plan to several sets of people but still retains control and authority over the administration and management of the Plan.  Acting through its Board of Directors, it is responsible for selecting, retaining, and/or removing the members of the Committees described below, and for appointing,

retaining and/or removing the Plan Manager, defined below.  Further, Unisys Corporation, acting

through the Finance Committee of the Unisys Corporation Board of Directors, is responsible for

issuing the investment guidelines to be used by the other Plan fiduciaries in the selection,

retention and removal of investment options available in the Plan, and monitoring them to

determine whether they are complying with their fiduciary obligations.

7.     From at least 2000 to the present, Defendants J.P. Buldoc, Matthew J. Espe, Gail

D. Fosler, Randal J. Hogan, Clayton M. Jones, Clay B. Lifflander, Theodore E. Martin, Charles

B. McQuade, and Lawrence W. Weinbach served on the Finance Committee and were and are

individually responsible for issuing the investment guidelines to be used by the other Plan

fiduciaries in the selection, retention and removal of investment options available in the Plan,

and monitoring them to determine whether they are complying with their fiduciary obligations.

8.     The Unisys Corporation Employee Benefits Administrative Committee (the

"Administrative Committee") and its members administer the Plan, along with the Unisys

Corporation Savings Plan Manager (the "Plan Manager"), the Pension Investment Review

Committee (the "Investment Committee"), and the Trustee, as defined below.

9.     Defendant Administrative Committee and its members are responsible for all

matters relating to the administration of the Plan, including interpretation of the Plan documents,

except for those duties delegated to the Plan Manager, the Investment Committee and/or the

Trustee.  It is thus a plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. §

1102(16)(A).  Further, the Administrative Committee and its members are "named fiduciaries"

within the meaning of ERISA § 402, 29 U.S.C. § 1102, and are also fiduciaries with respect to

the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

3

10.     Defendant Unisys Corporation Savings Plan Manager is responsible for the day-to-day administration of the Plan and has the authority to adopt rules and guidelines for the administration and operation of the Plan. The Plan Manager – who may be more than one person, despite the use of a singular noun as a title – is thus a plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1102(16)(A), and a fiduciary with respect to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

11.     Defendant The Pension Investment Review Committee (the "Investment Committee") has the responsibility for control and management of all Plan assets, to the extent this role is not delegated to the Trustee. The Investment Committee and its members are responsible for the selection or elimination of the investment options made available to the participants and beneficiaries, and for the selection or elimination of the investment managers, and monitoring them to determine whether they are complying with their fiduciary obligations. The Investment Committee members are named by the Board of Directors. The Investment Committee is a named fiduciary within the meaning of ERISA § 402, 29 U.S.C. § 1102 and is also a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

12.     Unisys, J.P. Buldoc, Matthew J. Espe, Gail D. Fosler, Randal J. Hogan, Clayton M. Jones, Clay B. Lifflander, Theodore E. Martin, Charles B. McQuade, Lawrence W. Weinbach, the Administrative Committee, the Unisys Corporation Savings Plan Manager, and the Investment Committee, unless individually indentified, are collectively referred to herein as "Unisys Defendants."

13.     Defendant Fidelity Management Trust Company ("FMTC") is a Massachusetts corporation with its headquarters in Boston. FMTC is a trust company and manages assets for approximately 550 institutional clients worldwide with $113 billion in assets under management

as of March 2006. FMTC is a subsidiary of FMR LLC, which does business as Fidelity Investments and is one of the world's largest money managers.

14.     Because ERISA requires that the assets of the Plan be held in trust, pursuant to a written trust agreement, ERISA, § 403, 29 U.S.C. § 1103(a), Defendant Unisys, as Plan sponsor designated FMTC the trustee of the "Unisys Savings Trust," which holds the assets of the Plan. As a trustee, FMTC is a fiduciary to the Plan.

15.     FMTC and its affiliate/successor, Pyramis Global Advisors Trust Company ("Pyramis") also directly manage a number of the investment options available to Plan participants, and exercise discretion, authority and control over Plan assets. In addition, pursuant to the Trust Agreement, investment options could only be added to the Plan with the express written consent and agreement of FMTC. By exercising discretionary authority and/or control over the management and administration of the Plan, and/or by exercising discretion over the disposition of the Plan's assets, including float interest earned on Plan contributions and distributions, they are fiduciaries to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

16.     FMTC is contractually obligated to serve as the Plan's record keeper, performing various administrative tasks for the Plan including record keeping of participant account balances/activity, participant education and communication, reviews with plan sponsors, and trustee services such as facilitating the monetary inflows and out flows of the Plan (herein "administrative services"). By exercising discretionary authority and/or control over the management and administration of the Plan, and exercising discretion over the disposition of the Plan's assets, FMTC is a fiduciary to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

17.    FMTC delegated the performance of certain of these administrative services to its affiliate, Fidelity Investments Institutional Operations Company, Inc. (FIIOC).

18.    Defendant FIIOC, a subsidiary of FMR LLC, provides various administrative services to the Plan, including recordkeeping services.  By exercising discretionary control and/or authority over management of the Plan and by exercising discretionary control and/or authority over the administration of the Plan, FIIOC is a fiduciary pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

19.    Defendant Fidelity Management & Research Company (FMRCo), also a subsidiary of FMR LLC, is the investment adviser for the mutual fund investment options in the Plan. FMRCo, along with FMTC and FIIOC, knowingly received fees from and/or as a result of the Plan in excess of the reasonable fees allowed by ERISA, and thus has monies which by right belong to the Plan.

20.    FMR LLC ("FMR") is the parent company of FMTC, FIIOC, and FMRCo.  FMR, along with FMRCo, FMTC and FIIOC, knowingly received fees from and/or as a result of the Plan in excess of the reasonable fees allowed by ERISA, and thus has monies which by right belong to the Plan.

21.    FMR, FMRCo, FMTC, and FIIOC, unless individually indentified, are collectively referred to herein as "Fidelity" or "Fidelity Defendants."

### Jurisdiction and Venue

22.    Plaintiffs bring this action pursuant to ERISA §§ 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3), which provide that participants may pursue civil actions on behalf of the Plan for damages to remedy breaches of fiduciary duty as set forth in ERISA § 409, 29 U.S.C. § 1109,

and/or to obtain other appropriate equitable relief. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)(F).

23.    All Defendants are subject to service of process issued from this Court pursuant to 29 U.S.C. § 1132(e)(2).

24.    Venue is proper in this Court pursuant to 29 U.S.C. § 1132 (e)(2).

### CLASS ACTION ALLEGATIONS

25.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the Plan, themselves and all similarly situated Plan participants and beneficiaries. The Plan is comprised of a unitary trust corpus in which each Plaintiff, and each Plan participant, has an interest. Plaintiffs seek to represent the following (the "Class"):

> All persons, *excluding the Defendants, and/or other individuals who are or may be liable for the conduct described in this Complaint,* who were or are participants or beneficiaries of the Plan, as well as those who will become participants or beneficiaries of the Plan in the future.

26.    Certification of this Class is proper under Rule 23(a) in that:

A.    **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. Although the Plaintiffs do not know the exact number of Class members as of the date of filing, the Plan's public documents state that, at the end of the 2005 Plan year, there were 34,651 participants with account balances in the Plan.

B.    **Commonality.** Common issues of fact and law predominate over any issues unique to individual Class members. Issues that are common to all Class Members include, but are not limited to, whether the Defendants, as set forth in more detail below:

i.     Conducted themselves with the utmost good faith, loyalty and fidelity; acted with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; and, scrupulously avoided all self interest, duplicity and deceit;

ii.     Acted "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

iii.     Acted "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

iv.     Ensured that other fiduciaries did not breach their duties. 29 U.S.C. §1105(a);

v.     Ensured that reasonable steps were taken to remedy breaches of fiduciary duties of which they were and/or should have been aware. 29 U.S.C. §1105(a);

vi.     Allowed fiduciaries to breach their duties to the Plan;

vii.     Obligated the Plan to pay fees and expenses for investment management and administrative services that were unreasonable and excessive in light of the services actually provided to the Plan and when compared to lower fees which were available to a plan of such a large size receiving the same or similar services, given the economies of scale that should have been leveraged for the Plan's benefit;

viii.     Failed to periodically and adequately monitor the fees and expenses for investment management and administrative services;

ix.     Failed to inform themselves of, and understand, the various methods by which service providers in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

x.     Allowed investment management and administrative fees assessed against the Plan to increase as the assets in the Plan increased with no commensurate increase in the level of services being provided;

xi.     Obligated the Plan, although it is an institutional investor, to pay for investment management and administrative services at an

xii. Appointed unqualified fiduciaries and failed to monitor and oversee them; allowed them to breach their fiduciary duties, and failed to terminate the fiduciaries' appointment after breaches occurred;

xiii. By the conduct above and/or by other conduct set forth in this Complaint, revealed in discovery and/or proven at trial, breached their fiduciary and other ERISA-imposed obligations to the Plan, Plan participants, and members of the Class;

xiv. Are liable to the Plan and the Class for losses suffered as a result of the breaches of their fiduciary and other ERISA-imposed obligations; and

xv. Are responsible to account for the assets and transactions of the Plan and should be charged for any transactions and payments for which they cannot account.

C.     **Typicality.** The Plan is comprised of a unitary trust corpus in which each Plaintiff, and each Plan participant, has an interest.  The claims brought by the Plaintiffs are typical of those of the absent Class members, in that:

i.     The Defendants owed the exact same fiduciary and other ERISA-based obligations to each Plan participant and beneficiary, and each member of the Class;

ii.    The Defendants' breach of those obligations constitutes a breach to each participant and beneficiary, and each member of the Class;

iii.   To the extent that there are any differences in Class members' damages, such differences would be a product of simple mathematics based upon account balances in the Plan.  Such

minimal and formulaic differences are no impediment to class

certification.

D.    **Adequacy of Representation.** The Plaintiffs are adequate representatives

of the absent Class members and will protect such absent Class members'

interests in this litigation. The Plaintiffs do not have any interests antagonistic to

the other class members nor do they have any unique claims or defenses that

might undermine the efficient resolution of the Class' claims. Plaintiffs have

retained competent counsel, versed in ERISA, class actions, and complex

litigation.

27.    Class certification is also appropriate under Rule 23(b) and each subpart in that:

A.    Pursuant to Rule 23(b)(1), in the absence of certification, there is a risk of

inconsistent adjudications with respect to individual class members and/or an

adjudication with respect to individual class members would as a practical

matter dispose of the interests of others not party to the adjudications;

B.    Pursuant to Rule 23(b)(2), as set forth above, the Defendants have acted on

grounds generally applicable to the Class as a whole; and

C.    Pursuant to Rule 23(b)(3), as set forth above, common issues of law and fact

predominate over any purely individual issues and thus a class action is

superior to any other method for adjudicating these claims.

## DIRECT ACTION

28.    Under ERISA § 409(a), 29 U.S.C. § 1109(a), fiduciaries who are liable for a

breach of fiduciary duty must restore and make good all losses that resulted from such breach.

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to bring a direct action for relief under ERISA § 409.

## DUTIES UNDER ERISA

29.     As fiduciaries, Defendants have, at all times, owed Plaintiffs and the Plan a duty act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A). Defendants have also, at all times, been obligated to discharge their duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B).

30.     Further, as fiduciaries, Defendants have, at all times, owed Plaintiffs and the Plan a duty to ensure that other fiduciaries did not breach their duties.  29 U.S.C. §1105(a).

31.     Also, Defendants have, at all times, owed Plaintiffs and the Plan a duty to ensure that reasonable steps were taken to remedy breaches of fiduciary duties of which they were and/or should have been aware.  29 U.S.C. §1105(a).

32.     Alternatively, Defendants, as non-fiduciaries, were and/or are obligated to avoid participation in breaches of fiduciary duties to the Plan and/or allow Plan fiduciaries to breach their duties to the Plan.

## FACTS

### The Plan

33.     Unisys offers certain of its employees the opportunity to participate in the Plan, as part of their compensation and benefits.  The Plan is a "defined contribution plan," as defined in

ERISA § 3(34), 29 U.S.C. § 1002(34) and contains an employee stock ownership plan provision. It is also a tax-qualified plan of the type popularly known as a "401(k) plan."

34.     Under the terms of the Plan, qualified employees may contribute a portion of their before-tax earnings to the Plan up to 20% and a portion of their after-tax earnings as well. Unisys will match those contributions up to 4 % of the employee's compensation. All participants are 100 percent vested in their accounts.

35.     Each participant's account is credited with the participant's contributions, the participant's share of matching contributions, and the Plan's earnings and losses allocated daily based on the ratio of the participants' respective account balances.

36.     Defendants are responsible for selecting, monitoring, retaining, and changing the Plan's investment funds. Participants' ability to direct their earnings into the Plan has, at all times, been limited to selection from among the menu of funds provided by Defendants.

## Investment Management and Administrative Services to the Plan

37.     In 1993, the Unisys Defendants and FMTC entered into a trust agreement ("Trust Agreement") in which FMTC agreed to provide administrative services to the Plan, and to be a fiduciary with respect to certain investments.

38.     Through a separate arrangement, FMTC delegated the duty of performing certain administrative services for the Plan to its affiliate FIIOC, and on information and belief, to Fidelity Investments Institutional Service Company (FIISC).  FMTC did not consider any non Fidelity entities for these services.

39.     Administrative services include record keeping of participant account balances/activity, participant education and communication, service reviews, and trustee services

such as facilitating the monetary inflows and out flows of the Plan (herein "administrative services").

40.    Also, per the Trust Agreement, the parties agreed that Fidelity would provide investment management services to the Plan. Investment management services include but were not limited to selection, review, and trading of investments within the Plan's funds and investment reviews. These investment management services were provided by FMRCo.

41.    Per the Trust Agreement, the Plan was obligated, through its participant accounts, to pay Fidelity for these investment management and administrative services.

42.    Rather than prudently limiting the payment by the Plan for these services based on an agreed fixed amount or an amount based on the numbers of participants in the Plan, the amount of payment by the Plan to Fidelity for these services was based on a percentage of the total assets in the Plan.

43.    However, many of the services provided by Fidelity to the Plan, including administrative services, did not and do not vary with the amount of assets in the Plan. That is, it costs the same to administer a participant account holding $100,000.00 as it does an account holding $10,000.00 or only $1,000.00.

44.    From 2000 to 2007, the total assets in the Plan exceeded $ 2 billion with total participants in the Plan exceeding 30,000, placing it in the largest 1% of all 401(k) plans in the United States. Nearly $1.9 billion of those Plan assets were held in Fidelity-branded retail mutual funds. All of the assets were held in vehicles managed or operated to some extent by a Fidelity affiliate.

45.    In the Trust Agreement, which has been amended at least 16 times without substantially changing this provision, the parties agreed that only mutual funds advised by

FMRCo would be offered to participants. Since that time, only funds managed by a Fidelity subsidiary have been added to the Plan. No funds have been deleted, except that certain funds managed by FMTC are now managed by Pyramis.

46.     During this time period, the Plan has never included a brokerage window of any sort by which participants could select investment options outside of the plan's menu of funds.

47.     As of 2006, participating employees could invest Plan contributions in any of approximately 66 retail mutual funds advised by FMRCo – the same mutual funds that are made available to investors with as little as $2,500 to invest.

## COUNT I
### Breach of Fiduciary Duty – ERISA §404(a)(1), §405(a), and §502(a)(2)
### Against Unisys Defendants for Excessive Investment Management Fees

48.     Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 47 as though fully set forth here.

49.     Unisys Defendants have, at all times, owed Plaintiffs and the Plan and its participants the following duties:

A.     to conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self interest, duplicity and deceit;

B.     to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

C.     to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

D.  to ensure, at all times, that Plan assets are *never* used for the benefit of the employer;

E.  to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plan;

F.  to assess, screen, and monitor the prudence of each and every investment option made available in the Plan; and

G.  to properly monitor, benchmark and/or compare the costs for investment management services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features.

H.  to ensure that other fiduciaries do not breach their duties.  29 U.S.C. §1105(a); and,

I.  to ensure that reasonable steps are taken to remedy breaches of fiduciary duties of which they were and/or should have been aware.  29 U.S.C. §1105(a).

50.   Unisys Defendants breached these aforementioned duties in that they failed:

A.  to appoint qualified, prudent and loyal Plan fiduciaries and/or failed to monitor their performance and terminate their appointment after the breaches occurred;

B.  to properly monitor, benchmark and/or compare the costs for the same or similar investment management services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets,

and features, which would have caused them to recognize that, given the size of the Plan, these costs were excessive in light of the services provided;

C.  to consider offering far less expensive investment options than those identified below that provided the same or similar services;

D.  to establish, implement, and follow procedures to properly and prudently determine whether investment management fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

E.  to ensure that the Plan, an institutional-sized investor, did not pay for investment management services at individual investor/retail rates without receiving any additional services beyond those received by non-institutional investors;

F.  to inform themselves of, and understand, the various methods by which service providers in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

G.  to ensure that investment management fees assessed against the Plan decreased or did not increase as the assets in the Plan increased without a commensurate increase in the level of these services being provided;

H.  to enter into agreements with third parties which did not obligate the Plan to pay unreasonable and excessive fees and expenses for investment management services that were available at the same level of service yet at significantly reduced costs for plans of similar size;

l.  to limit investment management fees to a reasonable amount and caused the

plan to pay excessive fees, when they included high priced retail mutual funds

and/or other funds as Plan investment options, including the following:

1.  Fidelity Aggressive Growth Fund;
2.  Fidelity Aggressive International Fund;
3.  Fidelity Asset Manager Fund;
4.  Fidelity Asset Manager Growth Fund;
5.  Fidelity Asset Manager Income Fund;
6.  Fidelity Asset Manager Aggressive;
7.  Fidelity Balanced Fund;
8.  Fidelity Blue Chip Growth Fund;
9.  Fidelity Canada Fund;
10. Fidelity Capital & Income Fund;
11. Fidelity Capital Appreciation Fund;
12. Fidelity Contrafund;
13. Fidelity Convertible Securities Fund;
14. Fidelity Disciplined Equity Fund;
15. Fidelity Discovery Fund;
16. Fidelity Dividend Growth Fund;
17. Fidelity Diversified International Fund;
18. Fidelity Emerging Markets Fund;
19. Fidelity Equity Income Fund;
20. Fidelity Equity Income II Fund;
21. Fidelity Europe Capital Appreciation Fund;
22. Fidelity Europe Fund;
23. Fidelity Export and Multinational Fund;
24. Fidelity Fifty Fund;
25. Fidelity Freedom 2000 Fund;
26. Fidelity Freedom 2010 Fund;
27. Fidelity Freedom 2020 Fund;
28. Fidelity Freedom 2030 Fund;
29. Fidelity Freedom 2040 Fund;
30. Fidelity Freedom Income Fund;
31. Fidelity Fund;
32. Fidelity Global Balanced Fund;
33. Fidelity Ginnie Mae Fund;
34. Fidelity Government Income Fund;
35. Fidelity Growth & Income Fund;
36. Fidelity Growth Company Fund;
37. Fidelity Independence Fund;
38. Fidelity Inflation-Protected Bond Fund;
39. Fidelity Institutional Money Market Fund;
40. Fidelity Institutional Short-Intermediate Government Fund;

41. Fidelity International Discovery Fund;
42. Fidelity Japan Fund;
43. Fidelity Large Capital Stock Fund;
44. Fidelity Latin American Fund;
45. Fidelity Low-Priced Fund;
46. Fidelity Magellan;
47. Fidelity Mid-Cap Stock Fund;
48. Fidelity Mortgage Securities Fund;
49. Fidelity New Markets Income Fund;
50. Fidelity OTC Portfolio Fund;
51. Fidelity Overseas Fund;
52. Fidelity Pacific Basin Fund;
53. Fidelity Puritan Fund;
54. Fidelity Real Estate Investment Portfolio;
55. Fidelity Retirement Government Money Market Portfolio;
56. Fidelity Southeast Asia Fund;
57. Fidelity Small Capital Independence Fund;
58. Fidelity Spartan Extended Market Index Fund;
59. Fidelity Spartan International Market Index Fund;
60. Fidelity Spartan Total Market Index Fund;
61. Fidelity Stock Selector Fund;
62. Fidelity Strategic Income Fund;
63. Fidelity Trend Fund;
64. Fidelity U.S. Equity Index Commingled Pool;
65. Fidelity U.S. Bond Index Portfolio Fund;
66. Fidelity Utilities Fund;
67. Fidelity Value Fund;
68. Fidelity Worldwide Fund;
69. Fidelity/Pyramis FMTC Short Duration Pool;
70. Fidelity/Pyramis Broad Market Duration Pool;
71. Fidelity/Pyramis Intermediate Duration Pool;

as opposed to less expensive institutional share classes of the same or similar

mutual funds, or other investment structures with lower fees, including

separate accounts and/or commingled funds, which are available to provide

the same or substantially similar investment management services to large

institutional investors like the Plan at a substantially lower cost than the

above-referenced funds in the Plan;

J.   to consider the size and growth of the Plan over time in terms of both assets and number of participants relative to the cost of the investment management services provided to the Plan;

K.   to leverage the size of the Plan, utilizing economies of scale, and, instead, obligated the Plan to pay for a level of investment management and administrative services that were generally no better than the level of services provided to small, non-institutional investors;

L.   to consider the expected performance of the actively managed retail mutual funds in the Plan, net of fees, compared to available alternatives;

M.   to review the prior decisions of other and/or predecessor fiduciaries and take reasonable steps to remedy the breaches of which they were and/or should have been aware, including seeking damages caused by such breaches;

N.   to prevent other fiduciaries from breaching their duties; and,

O.   to take reasonable steps to remedy breaches of fiduciary duties of which they were and/or should have been aware.

51.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Unisys Defendants are liable to make good to the Plan for the losses it experienced as a direct result of the Unisys Defendants' breaches of fiduciary duty and are personally liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

52.     As a result of Unisys Defendants' breaches, the Plan and Plaintiffs' class have suffered financial losses and damages, including not only the payment of excessive investment management fees, but also in the underperformance of these imprudent excessively priced funds.

The underperformance was not based merely on the daily fluctuations of the market - but as a result of Unisys Defendants' failure to exercise prudence in selecting appropriate investment funds suitable for a large retirement plan.  Had prudent options been selected and/or monitored, this underperformance would not have occurred.

**COUNT II**
**Breach of Fiduciary Duty – ERISA §404(a)(1), §405(a), and §502(a)(2)**
**Against Unisys Defendants for Excessive Administrative Fees**

53.       Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 52 as though fully set forth here.

54.   Unisys Defendants have, at all times, owed Plaintiffs and the Plan and its participants the following duties:

A. to conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self interest, duplicity and deceit;

B. to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

C. to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

D. to ensure, at all times, that Plan assets are *never* used for the benefit of the employer;

20

E. to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plan;

F. to properly monitor, benchmark and/or compare the costs for administrative services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features;

G. to ensure that other fiduciaries do not breach their duties.  29 U.S.C. §1105(a); and,

H. to ensure that reasonable steps are taken to remedy breaches of fiduciary duties of which they were and/or should have been aware.  29 U.S.C. §1105(a).

55. Unisys Defendants breached the aforementioned duties in that they failed:

A. to appoint qualified, prudent and loyal Plan fiduciaries and/or failed to monitor their performance and terminate their appointment after the breaches occurred;

B. to properly monitor, benchmark and/or compare the costs for the same or similar administrative services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features, which would have caused them to recognize that, given the size of the Plan, these costs were excessive in light of the services provided;

C. to establish, implement, and follow procedures to properly and prudently determine whether administrative fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

D. to inform themselves of, and understand, the various methods by which service providers in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

E. to ensure that the Plan, an institutional-sized investor, did not pay for administrative services at individual investor/retail rates without receiving any additional services beyond that received by non-institutional investors;

F. ensure that administrative fees assessed against the Plan decreased or did not increase as the assets in the Plan increased without a commensurate increase in the level of these services being provided;

G. to avoid entering into agreements with third parties which obligated the Plan to pay unreasonable and excessive fees and expenses for administrative services that were available at the same level of service yet at significantly reduced costs for plans of similar size;

H. to limit the Plan's obligation to pay no more than reasonable fees and expenses for administrative services because the Unisys Defendants allowed the fees for administrative services to be based on the amount of assets in the Plan, which was excessive and unreasonable when compared to what was and is available to plans of similar size;

I. to consider the size and growth of the Plan over time in terms of both assets and number of participants relative to the cost of the administrative services provided to the Plan;

J. to leverage the size of the Plan, utilizing economies of scale, and, instead, obligated the Plan to pay for a level of administrative services that were

generally no better than the level of services provided to small, non-institutional investors;

K. to have an adequate understanding of how float interest was earned on Plan contributions and distributions and how that float interest, including the reasonableness of same, attributed to Fidelity's income;

L. to review the prior decisions of other and/or predecessor fiduciaries and take reasonable steps to remedy the breaches of which they were and/or should have been aware, including seeking damages caused by such breaches;

M. to prevent other fiduciaries from breaching their duties; and,

N. to take reasonable steps to remedy breaches of fiduciary duties of which they were and/or should have been aware.

56.     As a result of the above, the Plan paid for administrative services that were unreasonable when compared to the charges for similar packages of administrative services and products that were and/or are available to similar sized plans.

57.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Unisys Defendants are liable to make good to the Plan for the losses it experienced as a direct result of their breaches of fiduciary duty and are personally liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

58.     As a result of Unisys Defendants' breaches, the Plan, Plaintiffs, the Class, and the Plan's participants and beneficiaries have suffered financial losses and damages, including the payment of excessive administrative fees, attorneys' fees, interest and expenses.

## COUNT III
### Other Remedies for Breach of Fiduciary Duty – ERISA §502(a)(3)
### Against Unisys Defendants

59.        Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 58 as though fully set forth here.

60.        As an alternative and/or in addition to relief sought in Counts I and II, Plaintiffs seek further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3), under which a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

61.        Unisys Defendants are fiduciaries of the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

62.        Unisys Defendants have discretion and control over the Plan's assets, plan administration, and plan management, and are strictly obligated to exercise that control for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering and operating the Plan.

63.        In the alternative, Unisys Defendants, as non-fiduciaries, were aware of the acts and conduct of the fiduciaries to the Plan, and participated in the breaches of duties by the fiduciaries to the Plan as set forth above.

64.        As set forth in detail above, the Unisys Defendants have caused and/or allowed the Plan to pay – directly and indirectly – excessive fees and expenses to Plan service providers. Litigating and resolving these issues will involve identifying and reconciling multiple transfers, payments, and flows of Plan assets that occurred while such Plan assets were within the Unisys Defendants' possession and control.

24

65.     Unisys Defendants, and not the Plaintiffs, are the entities which have and/or should have in their possession specific and detailed information regarding how Plan assets have been managed and disbursed in this regard.

66.     An accounting is a particularly appropriate remedy in circumstances where, as here, the underlying action and accounts are so complicated that a normal action for a fixed sum may not be practical.

67.     In such an accounting, in light of their possession and control of Plan assets and information about how Plan assets have been applied and distributed, Unisys Defendants should bear the burden of identifying/disclosing all Plan transactions and demonstrate their propriety.

68.     Accordingly, the Court should order that the Unisys Defendants, at their cost, render an accounting of all transactions, disbursements and dispositions occurring in connection with, and/or in respect of, the Plan and its assets.

69.     Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties.

70.     Plaintiffs respectfully request that the Court charge/surcharge against the Unisys Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA.

71.     Plaintiffs further seek injunctive and other appropriate equitable relief, including disgorgement and/or restitution, to redress the wrongs described above, and to cause

them to cease so that the Plan's participants and beneficiaries receive the full benefit of their retirement savings in the future.

72.     To the extent that it finds that any of the terms of the Plan are in violation of ERISA, Plaintiffs request that the Court reform the terms of the Plan so that it is consistent with the law and order any relief that may flow to the Plan from such reformation.

### COUNT IV
**Breach of Fiduciary Duty – ERISA §404(a)(1), §405(a), and §502(a)(2)**
**Against Fidelity Defendants for Excessive Investment Management Fees**

73.     Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 72 as though fully set forth here.

74.     Fidelity Defendants have, at all times, owed Plaintiffs and the Plan and its participants the following duties:

A.  to conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self interest, duplicity and deceit;

B.  to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

C.  to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

D. to ensure, at all times, that Plan assets are *never* used for the benefit of the employer;

E. to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plan;

F. to assess, screen, and monitor the prudence of each and every investment option made available in the Plan; and

G. to properly monitor, benchmark and/or compare the costs for investment management services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features;

H. to ensure that other fiduciaries do not breach their duties. 29 U.S.C. §1105(a);

I. to ensure that reasonable steps are taken to remedy breaches of fiduciary duties of which they were and/or should have been aware. 29 U.S.C. §1105(a).

75.   Fidelity Defendants breached the aforementioned duties in that they failed:

A. to appoint qualified, prudent and loyal Plan fiduciaries and/or failed to monitor their performance and terminate their appointment after the breaches occurred;

B. to properly monitor, benchmark and/or compare the costs for the same or similar investment management services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features, which would have caused them to recognize that, given the size of the Plan, these costs were excessive in light of the services provided;

C. to consider offering far less expensive investment options than those identified below that provided the same or similar services;

D. to establish, implement, and follow procedures to properly and prudently determine whether investment management fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

E. to ensure that the Plan, an institutional-sized investor, did not pay for investment management services at individual investor/retail rates without receiving any additional services beyond that received by non-institutional investors;

F. to ensure that investment management fees assessed against the Plan decreased or did not increase as the assets in the Plan increased without a commensurate increase in the level of these services being provided;

G. to enter into agreements with third parties which did not obligate the Plan to pay unreasonable and excessive fees and expenses for investment management services that were available at the same level of service yet at significantly reduced costs for plans of similar size;

H. to limit investment management fees to a reasonable amount and caused the plan to pay excessive fees, when they included high priced retail mutual funds and/or other funds as Plan investment options, including the following:

1. Fidelity Aggressive Growth Fund;
2. Fidelity Aggressive International Fund;
3. Fidelity Asset Manager Fund;
4. Fidelity Asset Manager Growth Fund;
5. Fidelity Asset Manager Income Fund;
6. Fidelity Asset Manager Aggressive;
7. Fidelity Balanced Fund;
8. Fidelity Blue Chip Growth Fund;

9. Fidelity Canada Fund;
10. Fidelity Capital & Income Fund;
11. Fidelity Capital Appreciation Fund;
12. Fidelity Contrafund;
13. Fidelity Convertible Securities Fund;
14. Fidelity Disciplined Equity Fund;
15. Fidelity Discovery Fund;
16. Fidelity Dividend Growth Fund;
17. Fidelity Diversified International Fund;
18. Fidelity Emerging Markets Fund;
19. Fidelity Equity Income Fund;
20. Fidelity Equity Income II Fund;
21. Fidelity Europe Capital Appreciation Fund;
22. Fidelity Europe Fund;
23. Fidelity Export and Multinational Fund;
24. Fidelity Fifty Fund;
25. Fidelity Freedom 2000 Fund;
26. Fidelity Freedom 2010 Fund;
27. Fidelity Freedom 2020 Fund;
28. Fidelity Freedom 2030 Fund;
29. Fidelity Freedom 2040 Fund;
30. Fidelity Freedom Income Fund;
31. Fidelity Fund;
32. Fidelity Global Balanced Fund;
33. Fidelity Ginnie Mae Fund;
34. Fidelity Government Income Fund;
35. Fidelity Growth & Income Fund;
36. Fidelity Growth Company Fund;
37. Fidelity Independence Fund;
38. Fidelity Inflation-Protected Bond Fund;
39. Fidelity Institutional Money Market Fund;
40. Fidelity Institutional Short-Intermediate Government Fund;
41. Fidelity International Discovery Fund;
42. Fidelity Japan Fund;
43. Fidelity Large Capital Stock Fund;
44. Fidelity Latin American Fund;
45. Fidelity Low-Priced Fund;
46. Fidelity Magellan;
47. Fidelity Mid-Cap Stock Fund;
48. Fidelity Mortgage Securities Fund;
49. Fidelity New Markets Income Fund;
50. Fidelity OTC Portfolio Fund;
51. Fidelity Overseas Fund;
52. Fidelity Pacific Basin Fund;
53. Fidelity Puritan Fund;
54. Fidelity Real Estate Investment Portfolio;

55. Fidelity Retirement Government Money Market Portfolio;
56. Fidelity Southeast Asia Fund;
57. Fidelity Small Capital Independence Fund;
58. Fidelity Spartan Extended Market Index Fund;
59. Fidelity Spartan International Market Index Fund;
60. Fidelity Spartan Total Market Index Fund;
61. Fidelity Stock Selector Fund;
62. Fidelity Strategic Income Fund;
63. Fidelity Trend Fund;
64. Fidelity U.S. Equity Index Commingled Pool;
65. Fidelity U.S. Bond Index Portfolio Fund;
66. Fidelity Utilities Fund;
67. Fidelity Value Fund;
68. Fidelity Worldwide Fund;
69. Fidelity/Pyramis FMTC Short Duration Pool;
70. Fidelity/Pyramis Broad Market Duration Pool;
71. Fidelity/Pyramis Intermediate Duration Pool;

as opposed to less expensive institutional share classes of the same or similar

mutual funds, or other investment structures with lower fees, including

separate accounts and/or commingled funds, which are available to provide

the same or substantially similar investment management services to large

institutional investors like the Plan at a substantially lower cost than the

above-referenced funds in the Plan;

I.  to consider the size and growth of the Plan over time in terms of both assets

and number of participants relative to the cost of the investment management

services provided to the Plan;

J.  to leverage the size of the Plan, utilizing economies of scale, and, instead,

obligated the Plan to pay for a level of investment management and

administrative services that were generally no better than the level of services

provided to small, non-institutional investors;

    K.  to consider the expected performance of the actively managed retail mutual funds in the Plan. net of fees. compared to available alternatives;

    L.  to review the prior decisions of other and/or predecessor fiduciaries and take reasonable steps to remedy the breaches of which they were and/or should have been aware, including seeking damages caused by such breaches;

    M.  to prevent other fiduciaries from breaching their duties; and,

    N.  to take reasonable steps to remedy breaches of fiduciary duties of which they were and/or should have been aware.

76.    Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Fidelity Defendants are liable to make good to the Plan for the losses it experienced as a direct result of the Defendants' breaches of fiduciary duty and are personally liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

77.    As a result of Fidelity Defendants' breaches, the Plan and Plaintiffs' class have suffered financial losses and damages, including not only the payment of excessive investment management fees, but also in the underperformance of these imprudent excessively priced funds. The underperformance was not based merely on the daily fluctuations of the market - but as a result of Fidelity Defendants' failure to exercise prudence in selecting appropriate investment funds suitable for a large retirement plan. Had prudent options been selected, this underperformance would not have occurred.

## COUNT V

**Breach of Fiduciary Duty – ERISA §404(a)(1) and §502(a)(2) – Against Fidelity Defendants**
**Excessive Administrative Fees**

78.     Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 77 as though fully set forth here.

79.     Fidelity Defendants have, at all times, owed Plaintiffs and the Plan and its participants the following duties:

A. to conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries; scrupulously avoid all self interest, duplicity and deceit;

B. to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A);

C. to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1)(B);

D. to ensure, at all times, that Plan assets are *never* used for the benefit of the employer;

E. to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plan;

F. to properly monitor, benchmark and/or compare the costs for administrative services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features;

G. to ensure that other fiduciaries do not breach their duties. 29 U.S.C. §1105(a); and,

H. to ensure that reasonable steps are taken to remedy breaches of fiduciary duties of which they were and/or should have been aware. 29 U.S.C. §1105(a).

80.    Fidelity Defendants breached the aforementioned fiduciary duties in that they failed:

A. to appoint qualified, prudent and loyal Plan fiduciaries and/or failed to monitor their performance and terminate their appointment after the breaches occurred;

B. to properly monitor, benchmark and/or compare the costs for the same or similar administrative services that were paid and/or made available to other 401(k) plans of similar size in terms of participant numbers, assets, and features, which would have caused them to recognize that, given the size of the Plan, these costs were excessive in light of the services provided;

C. to establish, implement, and follow procedures to properly and prudently determine whether administrative fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

D.  to inform themselves of, and understand, the various methods by which service providers in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

E.  to ensure that the Plan, an institutional-sized investor, did not pay for administrative services at individual investor/retail rates without receiving any additional services beyond that received by non-institutional investors;

F.  ensure that administrative fees assessed against the Plan decreased or did not increase as the assets in the Plan increased without a commensurate increase in the level of these services being provided;

G.  to avoid entering into agreements with third parties which obligated the Plan to pay unreasonable and excessive fees and expenses for administrative services that were available at the same level of service yet at significantly reduced costs for plans of similar size;

H.  to limit the Plan's obligation to pay no more than reasonable fees and expenses for administrative services because the Fidelity Defendants allowed the fees for administrative services to be based on the amount of assets in the Plan, which was excessive and unreasonable when compared to what was and is available to plans of similar size;

I.  to consider the size and growth of the Plan over time in terms of both assets and number of participants relative to the cost of the administrative services provided to the Plan;

J.  to leverage the size of the Plan, utilizing economies of scale, and, instead, obligated the Plan to pay for a level of administrative services that were

generally no better than the level of services provided to small, non-institutional investors;

K. to review the prior decisions of other and/or predecessor fiduciaries and take reasonable steps to remedy the breaches of which they were and/or should have been aware, including seeking damages caused by such breaches;

L. to prevent other fiduciaries from breaching their duties; and,

M. to take reasonable steps to remedy breaches of fiduciary duties of which they were and/or should have been aware.

81. As a result of the above, the Plan paid for administrative services that were unreasonable when compared to the charges for similar packages of administrative services and products that were and/or are available to similar sized plans.

82. As a result of the above, the Plan paid for administrative services that were unreasonable when compared to the charges for similar packages of administrative services and products that were and/or are available to similar sized plans.

83. In addition to the above, and in violation of §404 and §406, Fidelity Defendants failed to disclose to Unisys how float interest was earned on Plan contributions and distributions and how that float interest, including the reasonableness of same, attributed to Fidelity's income.

84. Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Fidelity Defendants are liable to make good to the Plan for the losses it experienced as a direct result of their breaches of fiduciary duty and are personally liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

85.     As a result of Fidelity Defendants' breaches, the Plan and Plaintiffs' class, and the Plan's participants and beneficiaries have suffered financial losses and damages, including the payment of excessive administrative fees, attorneys' fees, interest and expenses.

**COUNT VI**
**Other Remedies for Breach of Fiduciary Duty – ERISA §502(a)(3)**
**Against Fidelity Defendants**

86.     Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 85 as though fully set forth here.

87.     As an alternative and/or in addition to relief sought in Counts IV and V, Plaintiffs seek further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3), under which a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

88.     Fidelity Defendants are fiduciaries of the Plan and occupy a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

89.     Fidelity Defendants have discretion and control over the Plan's assets, plan administration, and plan management, and are strictly obligated to exercise that control for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering and operating the Plan.

90.     In the alternative, Fidelity Defendants, as non-fiduciaries, were aware of the acts and conduct of the fiduciaries to the Plan, participated and/or aided in the breaches of duties by the fiduciaries to the Plan as set forth above, and received the excessive payments for the investment management and administrative services.

91.      As set forth in detail above, the Fidelity Defendants have caused and/or allowed the Plan to pay – directly and indirectly – excessive fees and expenses to Plan service providers.

92.      Fidelity Defendants, and not the Plaintiffs, are the entities which have and/or should have in their possession specific and detailed information regarding how Plan assets and/or these excess fees and expenses have been managed, disbursed, and/or paid in this regard.

93.      An accounting is a particularly appropriate remedy in circumstances where, as here, the underlying action and accounts are so complicated that a normal action for a fixed sum may not be practical.

94.      In such an accounting, in light of their possession and control of Plan assets and information about how Plan assets have been applied and distributed, Fidelity Defendants should bear the burden of identifying/disclosing all Plan transactions and demonstrate their propriety.

95.      Accordingly, the Court should order that the Fidelity Defendants, at their cost, render an accounting of all transactions, disbursements and dispositions occurring in connection with, and/or in respect of, the Plan and its assets.

96.      Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties.

97.      Plaintiffs respectfully request that the Court charge/surcharge against the Fidelity Defendants and in favor of the Plan all amounts involved in transactions which such accounting reveals were or are improper, excessive and/or in violation of ERISA.

98.     Plaintiffs further seek injunctive and other appropriate equitable relief, including disgorgement and/or restitution, to redress the wrongs described above, and to cause them to cease so that the Plan's participants and beneficiaries receive the full benefit of their retirement savings in the future.

99.     To the extent that it finds that any of the terms of the Plan are in violation of ERISA, Plaintiffs request that the Court reform the terms of the Plan so that it is consistent with the law and order any relief that may flow to the Plan from such reformation.

WHEREFORE Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

- find and  declare that the Defendants have breached their fiduciary duties and/or allowed fiduciaries to breach their duties to the Plan as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

- award actual damages to the Plan in the amount of its monetary losses;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and cause the Defendants to disgorge such monies and return them to the Plan;

- reform the Plan documents so that they conform with the provisions of ERISA and order relief to the Plan flowing from such reformation;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- require Defendants to render an accounting as set forth above;

- surcharge against Defendants and in favor of the Plan all amounts involved in transaction which such accounting reveals were or are improper, excessive and/or in violation of ERISA;

- permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

- award to the Plaintiffs and the Class their attorneys fees and costs pursuant to ERISA § 502(g);

- order costs and attorneys fees pursuant to ERISA § 502(g) and the common fund doctrine;

- order disgorgement, equitable restitution or other available equitable relief against the Defendants;

- order the payment of interest to the extent it is allowed by law; and

- grant any other and further relief the Court deems appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS AND ISSUES SO TRIABLE.**

Respectfully submitted by:

**/s/  Troy A. Doles**
Jerome J. Schlichter
Troy A. Doles
tdoles@uselaws.com
SCHLICHTER, BOGARD & DENTON
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
Tel: 314-621-6115
Fax: 314-621-7151
**Lead Counsel**

Theodore H. Jobes
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
Tel:    215-299-2786
Fax:    215-299-2150

Local Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that on September 2, 2009, a copy of Plaintiffs' Second Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Joseph J. Costello
jcostello@morganlewis.com
Brian T. Ortelere
boretelere@morganlewis.com
Jamie M. Kohen
jkohen@morganlewis.com
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5295/5150/5472
Fax: 215.963.5001
Counsel for the Unisys Defendants

Stephen Harburg
Shannon Barrett
Stephen Brody
O'Melveny & Myers
1625 Eye Street, NW
Washington, DC 20006
Tel: 202.383.5300
Fax: 202.383.5414
Counsel for Fidelity Defendants

By: **/s/ Troy A. Doles**