UNITED STATES DISTRICT COURT DISTRICT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK RENFRO and GERALD LUSTIG, | ) | |
| as representatives of a class of | ) | Case No.:  07-2098 - BWK |
| similarly situated persons, | ) | |
| and on behalf of the Plan, | ) | |
|              Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNISYS CORPORATION, | ) | |
| UNISYS CORPORATION EMPLOYEE | ) | |
| BENEFITS ADMINISTRATIVE | ) | |
| COMMITTEE, UNISYS CORPORATION | ) | |
| SAVINGS PLAN MANAGER, PENSION | ) | |
| INVESTMENT REVIEW COMMITTEE, | ) | |
| J.P. BOLDUC, MATTHEW J. ESPE, GAIL D. | ) | |
| FOSLER, RANDALL J. HOGAN, CLAYTON | ) | |
| M. JONES, CLAY B. LIFFLANDER, | ) | |
| THEODORE E. MARTIN, CHARLES B. | ) | |
| MCQUADE, AND LAWRENCE W. | ) | |
| WEINBACH FIDELITY MANAGEMENT | ) | |
| TRUST COMPANY, FIDELITY | ) | ORAL ARGUMENT REQUESTED |
| MANAGEMENT & RESEARCH COMPANY | ) | |
| and FIDELITY INVESTMENTS | ) | |
| INSTITUTIONAL OPERATIONS COMPANY, | ) | |
| INC., | ) | |
|              Defendants. | ) | |

**MEMORANDUM IN OPPOSITION
TO FIDELITY DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT [Doc. 88]**

# CONTENTS

I.   Standard of Review..................................................................................................... 2

II.  The claims against the Fidelity Defendants. ............................................................ 3

III. The Second Amended Complaint sufficiently alleges FMTC is a fiduciary of the
     Plan. ......................................................................................................................... 5

     A.   The Trust Agreement gave FMTC unfettered veto power over changes in Plan
          investments. ...................................................................................................... 5

     B.   FMTC also exercised control over plan assets and received float interest........ 7

     C.   FMTC is liable as a co-fiduciary. ..................................................................... 8

IV.  The complaint sufficiently alleges the fiduciary status and/or liability of the other
     Fidelity Defendants.................................................................................................. 9

     A.   FIIOC ............................................................................................................. 10

     B.   The other Fidelity Defendants are liable for restitution of ill-gotten proceeds from
          the Plan. .......................................................................................................... 10

V.   The excessive fee claims are plausible. ................................................................. 14

     A.   The reasonableness of mutual fund fees is not governed by the Investment
          Company Act. ................................................................................................. 15

     B.   Plaintiffs do not contend that expense is the sole criterion for selecting
          investment options........................................................................................... 16

     C.   Participants did not get extra services for the retail mutual fund fees............. 19

VI.  The statute of limitations does not bar Plaintiffs' claims. ..................................... 21

Conclusion ...................................................................................................................... 24

# AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ............................................................. 2

*Benchmark Group Inc. v. Penn Tank Lines Inc.*, 612 F.Supp.2d 562 (E.D.Pa. 2009).................. 7

*Boeckman v. A.G.Edwards Inc.*, 461 F.Supp.2d 801 (S.D.Ill. 2006)........................................... 22

*Boggi v. Med. Review and Accrediting Council*, 2009 WL 2951022 (E.D.Pa. Sept. 15, 2009) ............................................................................................................................ 2

*Bohler-Uddeholm Am. Inc. v. Ellwood Group Inc.*, 247 F.3d 79 (3d Cir. 2001)........................... 7

*Bona v. Barasch*, No. 01-2289, 2003 WL 1395932 at (S.D.N.Y. 2003) ...................................... 22

*Braden v. Wal-Mart Stores, Inc.*, -- F.3d --, 2009 WL 4062105 (8th Cir. Nov. 25, 2009) ................................................................................................... 2, 3, 16, 17, 20

*Buccino v. Continental Assur. Co.*, 578 F.Supp. 1518 (S.D.N.Y. 1983) ...................................... 22

*Chicago Bd. Options Exch. Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254 (7th Cir. 1983) ...................................................................................................................................... 5

*Dole v. Formica*, 1991 WL 317040 (N.D.Ohio 1991).................................................................. 23

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................................................................... 2

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)........................................................... 2

*Gallus v. Ameriprise Fin. Inc.*, 561 F.3d 816 (8th Cir. 2009), *pet'n for cert. filed*, 78 WL 3083 (Aug. 6, 2009) (No. 09-163).......................................................................... 15, 16

*Gartenberg v. Merrill Lynch Asset Mgt. Inc.*, 694 F.2d 923 (2d Cir. 1982)........................... 15, 16

*Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ................................. 11, 13, 14

*Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000) .............. 11, 12

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009)......................................................... 5, 6, 18

*Hecker v. Deere & Co.*, 569 F.3d 708 (7th Cir. 2009)....................................................... 6, 17, 19

*IATSE Local 33 §401(k) Plan Bd. Trustees v. Bullock*, No. 08-3949, Doc. 57, 2008 WL 4838490 (C.D.Cal. Nov. 5, 2008) .............................................................................. 12

*In re Gurley*, 222 B.R. 124 (Bankr. W.D.Tenn. 1998) ............................................................... 11

*In re Polaroid Litig.*, 362 F.Supp.2d 461 (S.D.N.Y. 2005) ........................................................ 9

*In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 579 F.3d 220 (3d Cir. 2009)................. 5, 10

*In re Unisys Retiree Med. Ben. ERISA Litig.*, No. 03-3924, Doc. 60 (E.D.Pa. July 16, 2007), *aff'd*, 579 F.3d 220 (3d Cir. 2009) ....................................................................... 13, 14

*Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fd.*, 933 F.Supp. 1124 (D.Mass. 1996) ....................................................................................................................... 11

*Jones v. Harris Assoc. LP*, 537 F.3d 728 (7th Cir. 2008) ........................................................... 15

*Jones v. Harris Assoc.*, 527 F.3d 627 (7th Cir. 2008)................................................................. 16

*Keen v. Lockheed Martin Corp.*, 486 F.Supp.2d 481 (E.D.Pa. 2007) .......................................... 23

*Koch v. Dwyer*, 1999 WL 528181 (S.D.N.Y. 1999) ...................................................................... 23

*Mahoney v. J.J. Weiser & Co.*, 564 F.Supp.2d 248 (S.D.N.Y. 2008) ........................................ 22

*Martin v. Consultants & Adm'rs Inc.*, 966 F.2d 1078 (7th Cir. 1992) ....................................... 22

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ...................................................................... 5, 9

*Miller v. Fortis Ben. Ins. Co.*, 475 F.3d 516 (3d Cir. 2007) ......................................................... 23

*Old Security Life Ins. Co. v. Continental Ill. Nat'l Bank & Trust Co.*, 740 F.2d 1384 (7th Cir. 1984) ............................................................................................................................ 14

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994) ............................ 21

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ..................................................................................... 9

*Pension Fund-Mid Jersey Trucking Indus.-Local 701 v. Omni Funding Group*, 731 F.Supp. 161 (D.N.J. 1990) ............................................................................................................ 9

*Rankin v. Rots*, 278 F.Supp.2d 853 (E.D.Mich. 2003). .................................................................. 10

*Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581 (3d Cir. 2002) ................................................................................................................... 21

*Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488 (S.D.Iowa 2008) ............................................ 8

*Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4449024 (S.D.Ohio 2008) ....................... 12

*Silverman v. Mut. Ben. Life Ins. Co.*, 941 F.Supp. 1327 (E.D.N.Y. 1996) ..................................... 9

*Silverman v. Mutual Ben. Life Ins. Co.*, 138 F.3d 98 (2d Cir. 1998) ............................................. 9

*Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193 (3d Cir. 2004) ............................................ 11

*Taylor v. United Tech. Corp.*, 2009 WL 535779 (D.Conn. Mar. 3, 2009) .................................... 21

*Tibble v. Edison Int'l*, 639 F.Supp.2d 1074, 1100 (C.D.Cal. 2009) ............................................. 22

*Toy v. Plumbers & Pipefitters Local Union NO. 74 Pension Plan*, 439 F.Supp.3d 337 (D.Del. 2006) ................................................................................................................................ 13

*Toy v. Plumbers & Pipefitters Local Union NO. 74 Pension Plan*, Nos. 07-3489, 07-3515, 317 Fed.Appx. 169, 20099 WL 692398 (3d Cir. Mar. 18, 2009) ............................... 13

*Tussey v. ABB Inc.*, 2008 WL 379666, *6-7, (W.D.Mo. Feb. 11, 2008) ........................................ 7

*Young v. Gen. Motors Inv. Mgt. Corp.*, 550 F.Supp.2d 416 (S.D.N.Y. 2008) ............................. 21

*Young v. Gen. Motors Inv. Mgt. Corp.*, No. 08-1532-cv, Summary Order at 1, 325 Fed.Appx. 31, 2009 WL 1230350 (2d Cir. May 6, 2009) ............................................... 20, 21

**Statutes**

15 U.S.C. §80a-2(a)(20) ................................................................................................................. 3

15 U.S.C. §80a-35 ................................................................................................................... 15, 16

29 U.S.C. §1002(21)(A) ...................................................................................................... 1, 5, 6, 7

29 U.S.C. §1002(21)(B) .................................................................................. 12

29 U.S.C. §1002(34) ......................................................................................... 3

29 U.S.C. §1101(b)(1) ...................................................................................... 12

29 U.S.C. §1103(a) ............................................................................................ 3

29 U.S.C. §1103(c)(1) ................................................................................. 15, 16

29 U.S.C. §1104(a)(1)(A) ......................................................................... 1, 15, 16

29 U.S.C. §1105(a) ................................................................................... 1, 8, 9

29 U.S.C. §1106 ............................................................................................... 15

29 U.S.C. §1106(a)(1)(D) ................................................................................. 15

29 U.S.C. §1106(b)(1)(C) ......................................................................... 1, 8, 16

29 U.S.C. §1108(b)(2) .............................................................................. 1, 15, 16

29 U.S.C. §1109(a) .......................................................................................... 3, 9

29 U.S.C. §1113 .................................................................................................. 1

29 U.S.C. §1132(a)(2) [ERISA §502(a)(2)] ................................................. 1, 3, 9

29 U.S.C. §1132(a)(3) [ERISA §502(a)(3)] ................................. 1, 3, 10, 12, 14

**Rules**

2d Cir. R. 32.1 ........................................................................................... 20, 21

3d Cir. LAR, IOP 5.3, 5.7 ................................................................................ 13

**Regulations**

29 C.F.R. §2509.75-8 ........................................................................................ 8

29 C.F.R. §2510.3-101 .................................................................................... 12

**Other**

BOGERT ET AL., THE LAW OF TRUSTS & TRUSTEES §471 ................................. 11

DOL Adv. Op. 93-24a (Sep. 13, 1993), available at
    http://www.dol.gov/ebsa/programs/ori/advisory93/93-24a.htm ............................ 8

DOL Field Assistance Bulletin 2002-3 (Nov. 5, 2002), available at
    http://www.dol.gov/ebsa/regs/fab_2002-3.html ....................................... 8

H.R.Rep. No. 93-1280 (1974) .......................................................................... 12

RESTATEMENT OF RESTITUTION §§168, 174 (1937) ....................................... 11

U.S. DEPT. OF LABOR PENSION WELFARE BEN. ADMIN., STUDY OF 401(K) PLAN FEES
    & EXPENSES (Apr. 13, 1998) (PWBA Study), available at
    http://www.dol.gov/ebsa/pdf/401krept.pdf ....................................... 18

**ARGUMENT**

The Fidelity Defendants provide no basis on which the Court can dismiss the Second Amended Complaint [Doc. 74]. They contend the Second Amended Complaint fails to allege facts sufficient to show their status as fiduciaries to the Unisys 401(k) Plan or otherwise establish their liability for the relief Plaintiffs request. As discussed in Part III below, Defendant Fidelity Management Trust Company is a fiduciary to the Plan because of its authority and control over Plan investment options and Plan assets. 29 U.S.C. §1002(21)(A). It therefore is liable for its own breaches of fiduciary duty and the the the breaches of the other fiduciaries of the Plan alleged in the Second Amended Complaint. 29 U.S.C. §1132(a)(2), §1105(a). As discussed in Part IV below, the other Fidelity Defendants are liable either as delegees of Fidelity Management Trust Company's fiduciary functions or are liable for restitution to the Plan of excessive fees they received out of the Plan. 29 U.S.C. §1132(a)(3).

The Fidelity Defendants also challenge Plaintiffs' claims that the fees of Fidelity investment options are unreasonable and thus unlawful. As discussed in Part V below, their arguments are baseless and the Second Amended Complaint alleges facts that plausibly show the Plan's investment management fees and administrative fees, all paid to the Fidelity Defendants in one way or another, were unreasonable and thus unlawful and must be restored to the Plan. 29 U.S.C. §1104(a)(1)(A), §1106(b)(1)(C), §1108(b)(2), §1132(a)(2), §1132(a)(3).

Finally, the Fidelity Defendants argue that all of the claims in the Second Amended Complaint are barred by the ERISA statute of limitations because Fidelity investment options have been included in the Plan for more than six years. 29 U.S.C. §1113. As discussed in Part VI below, that argument misinterprets the statute of limitations. Even the Unisys Defendants

declined to make that argument. The arguments for dismissal of the Fidelity Defendants are baseless and their Motion should be denied.

## I.    Standard of Review

The Court has previously recognized the standards for ruling on a Rule 12(b)(6) motion and those same standards apply here. *Boggi v. Med. Review and Accrediting Council*,  2009 WL 2951022 at *4-5 (E.D.Pa. Sept. 15, 2009). A complaint need only state "'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boggi*, 2009 WL 2951022 at *4 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). The plausibility standard is not a "probability requirement." *Iqbal*, 129 S.Ct. at 1949.

At the pleading stage, "a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213. Rule 8 does not require "'specific facts' explaining precisely how the defendant's conduct was unlawful." *Braden v. Wal-Mart Stores, Inc.*, -- F.3d --, 2009 WL 4062105 at *7 (8th Cir. Nov. 25, 2009)  (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); see also *Fowler*, 578 F.3d at 213 (plaintiff need not "go into particulars" at pleading stage). Plaintiffs need only "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Braden*, slip. op. at 14 (citing *Erickson*, 551 U.S. at 93). The court must "make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief." *Boggi*, 2009 WL 2951022 at *5 (citing *Fowler*, 578 F.3d at 210-11).

"Not every potential lawful explanation for the defendant's conduct renders the plaintiff's theory implausible." *Braden*, 2009 WL 4062105 at *9.

Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject.

*Id.* (citations and quotation marks omitted).

## II.    The claims against the Fidelity Defendants.

Plaintiffs are participants in the Unisys Corporation Savings Plan #004 (Plan), a defined contribution plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). Second Amended Complaint (SAC), Doc. 73, ¶¶1, 3-4, 33; 29 U.S.C. §1002(34). All assets of the Plan are held in a trust and are governed by a written Trust Agreement. 29 U.S.C. §1103(a); SAC ¶37; Doc. 88-5 – 88-6. Plaintiffs seek damages and equitable remedies on behalf of the Plan from the breach of fiduciary duties owed to the Plan. SAC ¶22; 29 U.S.C. §1132(a)(2), §1132(a)(3), §1109(a). An outline of the substance of Plaintiffs' claims regarding the fiduciary breaches in the Plan is provided in Plaintiffs' Memorandum In Opposition to the Unisys motion to dismiss, filed this day. The following outline pertains to the Fidelity Defendants.

*The Fidelity Defendants.* Defendant Fidelity Management Trust Company (FMTC) is the trustee and recordkeeper of the Plan. SAC ¶¶14-16. FMTC's duties included recordkeeping of participant account balances, participant communications, service reviews, and processing the flow of money into and out of the the the Plan. SAC ¶16.  FMTC delegated certain of its Plan administrative duties to Defendant Fidelity Investments Institutional Operations Company Inc. (FIIOC). SAC ¶¶17-18. Defendant Fidelity Management & Research Company (FMRCo) is the investment adviser to the Fidelity investment options included in the Plan. SAC ¶¶19, 40 47; 15 U.S.C. §80a-2(a)(20). FMR LLC does business as Fidelity Investments and is the parent company of the Fidelity Defendants  SAC ¶¶ 13, 20. All of the Fidelity Defendants knowingly

3

received fees from and/or as a result of participant investments in Fidelity investment options included in the Plan. SAC ¶20.

The Trust Agreement between Unisys and FMTC provides for the inclusion of *only* Fidelity products as investment options in the Plan, all of which were advised by Fidelity. SAC ¶¶ 45, 47; Doc. 88-5 at 9-10[1] (Trust §5(b)); *id.* at ¶(j) ("'Mutual Fund' shall mean any investment company advised by Fidelity Management & Research Co. or any of its affiliates"); *id.* at 33-34 (list of initial options). For 16 years, from 1993 through the present, participants have had no choice of investment managers whatsoever; *only* Fidelity-managed products have been used in the Plan as investment options for participants. See Doc. 88-5 at 39, 88-6 at 23, 33-34, 41-42, 46-47, 49 (Trust Agreement and amendments). Moreover, FMTC has had blanket veto power over which investment options are included in the Plan. Doc. 88-5 at 10; see Part III(A), below. Total assets in the Plan exceeded $2 billion, with nearly $1.9 billion invested in Fidelity mutual funds. SAC ¶44. Both investment management and administrative services for the Plan were paid out of asset-based fees deducted from participant investments in Fidelity's options. SAC ¶¶41-42.

Counts IV-VI of the Second Amended Complaint are directed against the Fidelity Defendants. Counts IV and V assert claims for damages against the Fidelity Defendants for breaches of fiduciary duties and prohibited transactions, both as fiduciaries, co-fiduciaries, and parties in interest, with respect to the excessive investment management fees and excessive administrative fees paid by the Plan. SAC ¶¶ 73-85. Count VI asserts claims of equitable and injunctive relief against the Fidelity Defendants, as fiduciaries and/or non-fiduciaries, with respect to the aforementioned breaches of fiduciary duties and prohibited transactions. SAC ¶¶ 86-99.

---

[1] All "Doc." page references are to the ECF header page.

4

### III.  The Second Amended Complaint sufficiently alleges FMTC is a fiduciary of the Plan.

#### A.  The Trust Agreement gave FMTC unfettered veto power over changes in Plan investments.

"ERISA defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (ellipsis and quote marks omitted), quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993). ERISA's definition of a fiduciary is intentionally broad. *Chicago Bd. Options Exch. Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983). ERISA defines a fiduciary (in relevant part) as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A). An entity is a fiduciary thus to the extent it *exercises* any *discretionary* authority or control over plan management, *exercises any* authority or control over management or disposition of plan assets, or *has* any discretionary authority in the administration of a plan. Because the definition of a fiduciary is based on function, not titles, written plan documents are of limited relevance for defining who is a fiduciary with respect to a plan.

The Fidelity Defendants argue that *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) has ruled as a matter of law that it is not a fiduciary for *any* plan. MIS at 1-2, 7-10.[2] That contention is absolutely false. First, *Hecker* did not purport to make such a broad-sweeping declaration. In fact, the *Hecker* court took extraordinary measures to ensure that its decision was limited to the

---

[2] "MIS" refers to the Fidelity Defendants' Memorandum In Support [Doc. 88-3]. All MIS page references are to the Memorandum page.

5

facts of that case. *Hecker v. Deere & Co.*, 569 F.3d 708, 710 (7th Cir. 2009) ("It was limited to the complaint before the court, as supplemented by the materials the panel found were properly before the district court."); *id.* at 711 ("the opinion was tethered closely to the facts before the court ... *this* complaint, alleging that Deere chose *this* package of funds to offer for its 401(k) Plan participants, with this much variety and this much variation in associated fees, failed to state a claim upon which relief can be granted").

The facts in this case are distinct from the "facts before the court" in *Hecker*. *Id.* at 711. Unlike *Hecker*, the Trust Agreement between Unisys and FMTC gave FMTC unfettered veto power over the selection of investment options for the Plans. SAC ¶15. Section 5(b) of the Trust Agreement provides:

> The Applicable Fiduciary may add additional investment options *with the consent of the Trustee* [FMTC] and upon mutual amendment of this Trust Agreement and the Schedules thereto to reflect such additions.

Doc. 88-5 at 10 (emphasis added). There is no similar provision in the Deere trust agreement that the Unisys Defendants filed. See Doc. 88-7 at 7-8 (§ 4(b)). Under §5(b) of the Unisys Trust Agreement, any time the Plan fiduciaries tried to remove a fund from the Plan and/or add a different fund, FMTC had the unlimited right to refuse that change. FMTC thus had the "final authority" over any changes to the investment options. Cf. *Hecker*, 556 F.3d at 584 (complaint conceded "that Deere had 'final authority'"). The Deere trust agreement limited FMTC's role to "advise Deere on what investments to include in the Plans, to administer the participants' accounts, and to keep records for the Plans." *Id.* at 578. That is not true of the Unisys Trust Agreement. Those are substantial factual differences in the respective trust agreements that alone render *Hecker* inapplicable to this case. That veto power gave FMTC "discretionary authority or discretionary responsibility in the administration" of the Plan, 29 U.S.C. §1002(21)(A)(iii), rendering it an ERISA fiduciary.

In analyzing nearly identical "consent" language contained in a similar FMTC trust agreement and similar claims of fiduciary breaches against FMTC, another court found that the granting of such veto power to FMTC was sufficient to show FMTC acted as a fiduciary. *Tussey v. ABB Inc.*, 2008 WL 379666, *6-7, (W.D.Mo. Feb. 11, 2008); Exhibit 1 (§4(b) of ABB-FMTC trust agreement, Doc. 103-3 in *Tussey v. ABB Inc.*, No. 06-4305 (W.D.Mo)).

The Fidelity Defendants contend the consent provision in §5(b) is merely a "differently worded," but otherwise indistinct version of its trust agreement with Deere. MIS at 9, Doc. 88-3 at 14. They contend that the requirement of any change in Plan investment options get "the consent of the Trustee" is meaningless because any amendment of the Trust Agreement had to be "mutual" and Unisys could terminate the agreement at any time. *Id.*; see Trust Agreement §5(b), Doc. 88-5 at 9-10. Those contentions, however, "would violate the well-established principle of contract construction that a contract should be read so as to give meaning to all of its terms when read as an entirety." *Bohler-Uddeholm Am. Inc. v. Ellwood Group Inc.*, 247 F.3d 79, 97 (3d Cir. 2001). They improperly render "with the consent of the Trustee" mere surplusage. E.g., *Benchmark Group Inc. v. Penn Tank Lines Inc.*, 612 F.Supp.2d 562, 578 n.8 (E.D.Pa. 2009). Those contentions are invalid.

**B.      FMTC also exercised control over Plan assets and received float interest on those assets.**

FMTC is a fiduciary also because it exercised "authority and control respecting the management or disposition of" Plan assets in processing participant contributions and distributions. SAC ¶15; 29 U.S.C. §1002(21)(A). In fact, FMTC unlawfully earned float interest on these plan assets. SAC ¶¶15, 55(K), 83. Float is the interest earned on Plan contributions during from time they are received by FMTC until they are credited to participant accounts and interest earned on distributions to participants from the time they are removed from participant

7

Plan accounts until they are received in the participant's personal account. *See, e.g.*, *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488, 490 (S.D.Iowa 2008); U.S. Dept. of Labor (DOL) Advisory Opinion 93-24a (Sep. 13, 1993), available at http://www.dol.gov/ebsa/programs/ori/advisory93/93-24a.htm.

"A fiduciary with respect to a plan shall not – (1) deal with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. §1106(b)(1); 29 C.F.R. §2509.75-8; DOL Adv. Op. 93-24A (Sept. 13, 1993); DOL Field Assistance Bulletin 2002-3 (Nov. 5, 2002).[3] FMTC exercised "authority and control respecting the management or disposition" of Plan assets and "deal[t] with the assets of the plan in [its] own interest" by handling Plan asset transfers in a manner that earned it float interest.[4]

On this claim alone FMTC cannot be dismissed, because it is clearly a fiduciary and benefitted directly from its breach of fiduciary duties in making float interest on Plan assets.

### C. FMTC is liable as a co-fiduciary.

Even apart from the preceding arguments, the Fidelity Defendants admit FMTC is a Plan fiduciary because it states, "FMTC does exercise certain fiduciary responsibilities under the Plan." MIS at 10-11. In addition to their allegations of FMTC's direct liability for its own fiduciary breaches, Plaintiffs allege that FMTC is liable also as a co-fiduciary for the breaches of the Unisys defendants. Doc. 73 ¶¶75. A fiduciary is liable for the breaches of duty of other fiduciaries if it "has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. §1105(a)(3). Liability under §1105(a) is "extraordinarily broad . . . because it requires only that the defendant be a fiduciary

---

[3] Available at http://www.dol.gov/ebsa/regs/fab_2002-3.html.
[4] The Fidelity Defendants cannot claim this float was part of FMTC's compensation as Plan service provider without proving that is informed the Unisys Defendants of the details of the float arrangement and that the Unisys Defendants "approve[d] the arrangement based on an understanding of the service provider's compensation." DOL Field Assistance Bulletin 2002-3

of the same *plan* as the breaching fiduciary." *Silverman v. Mutual Ben. Life Ins. Co.*, 138 F.3d 98, 106 (2d Cir. 1998). This is in part because any fiduciary of a plan is authorized to bring a civil action against the breaching fiduciary to recover the plan's damages or obtain appropriate equitable or remedial relief. 29 U.S.C. §1132(a)(2), §1109(a).

Defendants' suggestion that, in addition to the elements required by §1105(a), there must be some "meaningful connection between a defendant's fiduciary role and the alleged breach of a co-fiduciary" is not only novel, but incorrect. Cf. MIS at 13 n.14. The cases Defendants rely on for that suggestion are inapposite. *Pegram v. Herdrich*, 530 U.S. 211 (2000), did not even concern §1105(a). Cf. MIS at 13. *Pension Fund*, was decided before *Silverman*, leading that district court to find "[l]egal authority on this point sparse." *Pension Fund-Mid Jersey Trucking Indus.-Local 701 v. Omni Funding Group*, 731 F.Supp. 161, 175 (D.N.J. 1990); cf. MIS at 13.[5] *Silverman* provides the legal authority that there is no "causal relationship" element in §1105(a). In fact, the district court in *Silverman* specifically rejected *Pension Fund* as unpersuasive. *Silverman v. Mut. Ben. Life Ins. Co.*, 941 F.Supp. 1327, 1338 (E.D.N.Y. 1996). A court should not insert into ERISA's "comprehensive and reticulated statute" provisions not expressly included by Congress. *Mertens*, 508 U.S. at 252, 254. The Fidelity Defendants' attempt to write into §1105(a) a "meaningful connection" requirement is improper and provides no basis for dismissing FMTC.

## IV.   The Second Amended Complaint sufficiently alleges the fiduciary status and/or liability of the other Fidelity Defendants.

Plaintiffs' allegations against other Fidelity Defendants also are sufficient.

---

[5] It is disingenuous for Defendants to claim "courts have refused to impose §405 liability absent a meaningful connection ... and then cite as its only authority a case that pre-dates *Silverman* and cites no other case that addressed the issue directly. MIS at 13 n.14. For one post-*Silverman* court that *has* recognized a claim for co-fiduciary liability without a "meaningful connection" requirement, see *In re Polaroid Litig.*, 362 F.Supp.2d 461, 479-80 (S.D.N.Y. 2005).

### A.   FIIOC

For the reasons stated above, including Defendants' own admission, FMTC is a fiduciary to the Plan. The Fidelity Defendants admit FMTC delegated certain of its responsibilities to FIIOC. MIS at 14; Doc. 73 ¶¶16-17, 38. The Trust Agreement allows any of FMTC's services to be provided by "its agents or affiliates, including Fidelity Investments Institutional Operations Company[.]" Doc. 88-5 at 29 §15(a). To the extent that FMTC delegated any of its fiduciary functions to FIIOC, then FIIOC necessarily became a fiduciary through those acts and is liable directly and as co-fiduciary. Plaintiffs cannot at this stage determine precisely which functions were delegated to FIIOC, because the inner workings of the Fidelity entities are hidden from participants. Since the operations among the Fidelity Defendants was a black box to the participants, it is unreasonable to "expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority" at the pleading stage of this case. *Rankin v. Rots*, 278 F.Supp.2d 853, 879 (E.D.Mich. 2003).

### B.   The other Fidelity Defendants are liable for restitution of ill-gotten proceeds from the Plan.

Plaintiffs allege that the other Fidelity Defendants are liable for restitution to the Plan of ERISA-prohibited, unreasonable fees they wrongfully received. Doc. 73 at 6 ¶¶19-20, 92-98. Such relief is available under 29 U.S.C. §1132(a)(3)(B) so long as the plaintiff identifies the "money or property" of the Plan that was wrongfully withheld. *Unisys*, 579 F.3d at 238. Plaintiffs have done that. They identified the specific Fidelity investment vehicles in which participant retirement money was invested and from which the Fidelity Defendants unlawfully drew excessive investment management and administrative fees. SAC at 17-18, 28-30. FMRCo was the adviser to the Fidelity investments that were included as Plan investment options. MIS at 15. Each of the Fidelity mutual funds paid FMRCo asset-based investment management fees,

which it shared with other Fidelity entities. See, e.g., Doc. 12-6 at 31-3 (Fidelity prospectus).

How these unreasonable fees were divided among Fidelity entities and in what specific amounts

cannot currently be determined. This division of such fees among Fidelity entities will be

determined in discovery. All of those fees, however, came from the expense ratios deducted from

Plan investments. Where a "plaintiff is entitled to a constructive trust on particular property held

by the defendant, he may also recover profits produced by the defendant's use of that

property[.]" *Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 211 n.24 (3d Cir. 2004).

   Where a non-fiduciary transferee of wrongfully obtained property has "actual or constructive

knowledge of the circumstances that render the transaction unlawful", a plaintiff has the right

also to restitution or disgorgement from that transferee. *Harris Trust & Savings Bank v. Salomon*

*Smith Barney Inc.*, 530 U.S. 238, 250-51 (2000); *Skretvedt*, 372 F.3d at 214. Plan participants

may obtain restitution not only of Plan assets, but also of profits produced from the unlawful use

of Plan assets. *Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 214 n.2 (2002). Any

subsequent transferee of the ill-gotten assets is subject to restitution unless it is a bona fide

purchaser. E.g., *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fd.*, 933 F.Supp.

1124, 1137-38 (D.Mass. 1996) (quoting RESTATEMENT OF RESTITUTION §§168, 174 (1937));

BOGERT ET AL., THE LAW OF TRUSTS & TRUSTEES §471 ("if the trust property or its product can

be traced into the hands of a third party, a constructive trust may be imposed upon the property

in the hands of the third party unless he is a bona fide purchaser for value and without notice");

*In re Gurley*, 222 B.R. 124, 134 (Bankr. W.D.Tenn. 1998). Such common law trust principles

apply to ERISA, since they do not conflict with any part of ERISA. *Harris Trust*, 530 U.S. at

250.

The excessive fees generated by the the Plan's investment options were received by the Fidelity Defendants. If Plaintiffs are successful on the merits of their complaint, they are entitled to recover those fees from the Fidelity Defendants as restitution under §1132(a)(3).

In opposition to this, the Fidelity Defendants contend that Plaintiffs cannot obtain restitution of the excessive fees because mutual fund assets are not plan assets. MIS at 21-23. For that, the Fidelity Defendants rely on 29 U.S.C. §1101(b)(1).[6] But Defendants cite no authority (and Plaintiffs are unaware of such authority) for construing §1101(b)(1) to preclude a claim for restitution of fees gained on participant investments in mutual funds. Instead, one district court has held, relying upon ERISA's legislative history, that the purpose of §1101(b)(1), in conjunction with 29 U.S.C. §1002(21)(B), is only to prevent a mutual fund adviser from becoming a fiduciary merely by dint of plan participants investing in the mutual fund. *IATSE Local 33 §401(k) Plan Bd. Trustees v. Bullock*, No. 08-3949, Doc. 57 at 9, 2008 WL 4838490 at *6 (C.D.Cal. Nov. 5, 2008), quoting H.R.Rep. No. 93-1280 at 296 (1974) (Conf.Rep.). Another district court has held that §1101(b)(1) is not dispositive as to the definition of a plan asset and that "the term 'plan asset' should be construed broadly in order to effectuate Congress's overriding concern with the protection of plan participants and beneficiaries." *Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4449024 at 16-17 (S.D.Ohio 2008) ("whether such assets were used to benefit the fiduciary at the expense of the Plan participants or beneficiaries, are questions of fact that cannot be determined" at pleading stage). Moreover, as stated above, plan participants are entitled to restitution of the profits gained from the use of plan assets (in this case, Fidelity's fees), even if those fees themselves are not plan assets. *Great-West*, 534 U.S. at 214 n.2.

---

[6] See also 29 C.F.R. §2510.3-101(a)(2) ("[g]enerally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity[.]").

The Fidelity Defendants also argue vaguely that once their profits become "commingled," they somehow are free from restitution. MIS at 22. That is incorrect.

> If a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered.

*Great-West*, 534 U.S. at 214 n.2. The fees (profits) the Fidelity Defendants generated from the use of participant investments in Fidelity mutual funds thus are recoverable in restitution no matter into what Fidelity account they may have been mingled.

The Fidelity Defendants also cite *Toy v. Plumbers & Pipefitters Local Union NO. 74 Pension Plan*, Nos. 07-3489, 07-3515, 317 Fed.Appx. 169, 20099 WL 692398 (3d Cir. Mar. 18, 2009), but that is an unpublished decision that is of "value only to the trial court or the parties" in that case and is "not regarded as precedent that bind[s] the court[.]" 3d Cir. LAR, IOP 5.3, 5.7. *Toy* concerned a complaint of denial of pension benefits that only vaguely sought "to obtain funds to which she claims she is entitled pursuant to certain contractual obligations." *Toy*, 439 F.Supp.3d 337, 342 (D.Del. 2006) (the appellate decision contains no statement of facts). In clear contrast, the Plaintiffs here are not seeking personal benefits, but instead recovery of fees on participant investments that the Fidelity Defendants wrongfully gained from breaches of fiduciary duties in this Plan. Neither the circuit not district decisions in *Toy* have any bearing in this case.

The claims in this case are similarly distinct from those in *In re Unisys Retiree Med. Ben. ERISA Litig.*, No. 03-3924, Doc. 60 (E.D.Pa. July 16, 2007), *aff'd*, 579 F.3d 220 (3d Cir. 2009); *cf.* MIS at 23. In that case the plaintiffs sought personal damages from the fiduciaries' wrongful inducement of their retirement, specifically "losses they allegedly incurred," such as "back wages and pension benefits, medical premiums paid to the Unisys Plan, medical premiums paid for other medical insurance[.]" *Unisys*, Doc. 60 at 22. Those claims focused on the plaintiffs' losses, not on the fiduciaries' gains, and thus were not subject to equitable restitution. In contrast,

13

Plaintiffs seek the gains the Fidelity Defendants made from the fees paid as a result of participant investments in Fidelity investment options. Those fees are can be calculated and traced through Fidelity's network of accounts and the Fidelity Defendants can be ordered to provide that accounting as "appropriate equitable relief." 29 U.S.C. §1132(a)(3)(B); *Great-West*, 534 U.S. at 214 n.2; *Old Security Life Ins. Co. v. Continental Ill. Nat'l Bank & Trust Co.*, 740 F.2d 1384, 1397 (7th Cir. 1984); SAC ¶¶ 93-97. At this point, Plaintiffs have sufficiently stated a claim to that equitable remedy and the Second Amended Complaint cannot be dismissed.

The Fidelity Defendants' argument that none of them are subject to the equitable relief sought in Count VI also is incorrect. They claim that that since no Fidelity Defendant was "responsible for setting the terms of the Unisys Plan," no Fidelity Defendant is subject to that Count. MIS at 23-24. First, as to the reformation aspect of Count VI, which is only part of the equitable relief requested, they are wrong. See SAC ¶99. One of the Plan documents that Plaintiffs seek to reform is the Trust Agreement to which FMTC is a party, which requires inclusion only of excessive-fee Fidelity investments as the Plan's investment options. FMTC clearly is a necessary party to Plaintiffs' efforts to change that Agreement. Second, Plaintiffs seek more equitable relief than merely reforming Plan documents. They seek bar the Plan fiduciaries from continuing the breaches of their duties at issue in the Complaint and specifically seek to compel the Fidelity Defendants to account for the fees they generated from Plan investments. SAC ¶¶93-98.

## V.     The excessive fee claims are plausible.

Although the Fidelity Defendants claim they should not even be parties to this action, they proceed to argue the merits of Plaintiffs' claims. Those arguments are without merit.

14

### A.  The reasonableness of mutual fund fees is not governed by the Investment Company Act.

The Fidelity Defendants claim that the reasonableness of mutual fund fees is regulated (implying exclusively regulated) by §36(b) of the Investment Company Act of 1940 (ICA), 15 U.S.C. §80a-35. MIS at 16 n.15.[7] Defendants, however, cite no case that has reduced ERISA's separate fiduciary duties to a mere reliance on the ICA standard. In fact, the U.S. Solicitor General has argued precisely the opposite, noting that the statutory language, history, and purposes of the ICA are different from ERISA, and the standards for excessiveness of fees under the ICA "should not establish the legal standard that should apply to excessive-fee claims against plan fiduciaries under ERISA." Br. for the U. S. as *Amicus Curiae* Supporting Pet. in *Jones*, S.Ct. No. 08-586, at 27 n.8.[8] The fiduciary duties in ERISA are much more detailed and exacting than the duty imposed by the ICA. ERISA specifically obligates a plan fiduciary to act "solely in the interest of the participants," for the "exclusive purpose of providing benefits to participants ... and defraying reasonable expenses of administering the plan," and with "care, skill, diligence, and prudence." 29 U.S.C. §1104(a)(1); 29 U.S.C. §1103(c)(1). ERISA specifically prohibits self-dealing and conflicts of interest. 29 U.S.C. §1106. ERISA specifically requires that plan service providers receive only reasonable compensation. 29 U.S.C. §1106(a)(1)(D), §1108(b)(2). In contrast, the ICA merely provides that "the investment adviser … shall be deemed to have a

---

[7] One reason Defendants argue for this standard may be that in the 25 years since ICA §36(b) was construed by the Second Circuit in *Gartenberg v. Merrill Lynch Asset Mgt. Inc.*, 694 F.2d 923 (2d Cir. 1982), no plaintiff has succeeded in challenging the investment management fees of a mutual fund. *Gallus v. Ameriprise Fin. Inc.*, 561 F.3d 816, 823 n.4 (8th Cir. 2009), *pet'n for cert. filed*, 78 WL 3083 (Aug. 6, 2009) (No. 09-163); *Jones v. Harris Assoc. LP*, 537 F.3d 728, 730 (7th Cir. 2008) (Posner, J., dissenting from denial of rehearing en banc).

[8] Available at http://www.abanet.org/publiced/preview/briefs/pdfs/07-08/08-86_PetitionerAmCuUSA.pdf.

fiduciary duty with respect to the receipt of compensation for services[.]" 15 U.S.C. §80a-35(b).

The ICA does not even expressly require that the adviser receive only reasonable compensation.[9]

The mere fact that an investment adviser (such as FMRCo) might have satisfied its more limited fiduciary duties to its mutual fund in setting its fee does not dispose of the more exacting requirements under ERISA that plan fiduciaries owe in ensuring that mutual fund fees actually and exclusively provide benefits to participants or defray only reasonable expenses of administration and provide FMRCo and FMTC (and any other providers of services to the Plan) only reasonable compensation. 29 U.S.C. §1104(a)(1), §1103(c)(1) §1106(b)(1)(C), §1108(b)(2). As Plaintiffs allege in the Second Amended Complaint, the fiduciaries of their Plan failed in these duties by selecting excessive-fee investment options despite the ready availability of better options priced for institutional investors, which paid excessive fees to FMRCo, FMTC, and the other Fidelity Defendants. For the reasons stated in Plaintiffs' Memorandum In Opposition to the Unisys motion to dismiss, filed this day, these allegations are sufficient to state a claim for breach of fiduciary duties. See also, e.g., *Braden*, 2009 WL 4062105 at *8.

**B.      Plaintiffs do not contend that expense is the sole criterion for selecting investment options.**

Contrary to  Defendants' argument (MIS at 17-18), Plaintiffs here do not contend that the expense of a Plan investment option is the sole criterion on which to judge the fiduciary's choice of options. Instead, Plaintiffs contend that their fiduciaries failed to consider  investment options that "provided the same or similar services," but at far lower expense to participants, and failed to use the  size of the Plan to obtain appropriate and reasonable rates for an institutional investor. SAC at 16 (¶¶ C, E, H, I, K), 28-31 (¶¶ C, E, G, H, J). In addition, Plaintiffs allege that the

---

[9] This is one reason why the Second, Seventh, and Eighth Circuits conflict in judging the adviser's performance of its deemed fiduciary duty as to compensation. *Gallus*, 561 F.3d 816 (8th Cir. 2009); *Jones v. Harris Assoc.*, 527 F.3d 627 (7th Cir. 2008); *Gartenberg*, 694 F.2d 923 (2d Cir. 1982).

fiduciaries failed to monitor asset-based fees to ensure they did not increase with asset values without a commensurate increase in the services provided to participants. *Id.* at 16 ¶G, 28 ¶F. These allegations are far more detailed that the allegations addressed by the Seventh Circuit in *Hecker*, which was "limited to the complaint" before that court. *Hecker*, 569 F.3d at 710. Indeed, after taking the unusual step of publishing an opinion stating the reasons for denial of rehearing of the appeal, the *Hecker* court, in addition to severely limiting the scope of its decision, noted that the high fees of retail mutual funds could approach wholesale levels (and thus, implicitly be prudent for large plans) if they purchased additional services for plan participants. *Id.* at 711 ("It would be one thing if they were treated exactly like all other retail market purchasers . . .; it would be quite another if, for example, they received . . . other extra services"). Unlike *Hecker*, Plaintiffs here specifically allege their fiduciaries failed to obtain commensurate additional services for the high fees of Fidelity's investments. Doc. 73 at 16 (¶D), 22 (¶E).[10] See Part C, below.

The Fidelity Defendants' selective quotation from one document in the DOL's 401(k) Fiduciary Education Campaign website is particularly misleading. MIS at 18.[11] The document they cite is a "401(k) Plan Fee Disclosure Tool", which the 401(k) Fiduciary Education Campaign website describes is "[a] form that provides employers with a handy way to make cost-effective decisions and compare the investment fees and administrative costs of competing providers of plan services." Defendants do not even claim that they or the other Plan fiduciaries ever completed this form (or a similar form) to determine whether the fiduciaries made "cost-effective decisions" for the participants.

Another of the documents on the DOL's website, Meeting Your Fiduciary Responsibilities,[12]

---

[10] Defendants reliance on *Braden v. Wal-Mart Inc*, 590 F.Supp.2d 1159 (W.D.Mo. 2008) is misplaced because that decision was reversed. *Braden*, 2009 WL 4062105; cf. MIS at 1, 17, 19.

[11] See http://www.dol.gov/ebsa/fiduciaryeducation.html.

[12] Available at http://www.dol.gov/ebsa/pdf/fiduciaryresponsibility.pdf.

specifically notes that "[s]ome service providers may receive additional fees from investment vehicles, such as mutual funds" and that *the fiduciary must get a detailed explanation of those fees to ensure they are and "continue to be" reasonable*. *Id.* at 5. Plaintiffs contend their fiduciaries did not do this and the Fidelity Defendants offer nothing to contradict that. Perhaps more significantly, DOL publishes its Study of 401(k) Plan Fees and Expenses, which notes:

> Separate accounts require substantial minimum investments of $15 million to $25 million per account. However, large plans typically, with total assets of over $500 million, can realize substantial savings through such instruments. Total investment management expenses can commonly be reduced to one-fourth of the expenses incurred through retail mutual funds[.]

> In general, direct use of retail mutual funds or the provider's institutional funds is the most common investment arrangement among smaller plans, those with assets of $50 million or under. Mid-sized plans, those with assets of $50 million to $500 million frequently add commingled accounts. Finally, separate accounts are found among very large 401(k) plans, those with assets over $500 million[.]

U.S. DEPT. OF LABOR PENSION WELFARE BEN. ADMIN., STUDY OF 401(K) PLAN FEES & EXPENSES (Apr. 13, 1998) §2.4.1 (PWBA Study).[13] This is discussed in further detail in Plaintiffs' Memorandum In Opposition to the Unisys motion, filed this day.

The Unisys 401(k) Plan, with over a billion dollars in assets, is more than just a "very large 401(k) plan" as described by DOL. *Id.* It was a jumbo plan. It had available to it separate account investments that could have reduced the Plan's, and hence participants', investment management expenses to one-fourth of the expenses of the retail mutual funds that were imprudently included in the Plan.

Finally, the Fidelity Defendants claim that merely because *some* of the Plan's investment options were commingled accounts or low-fee index funds, the other excessive-fee mutual funds were prudent. MIS at 18. As authority, they rely on *Hecker*'s holding that the Deere plan provided a "sufficient mix of investments." *Hecker*, 556 F.3d at 586. The Deere plan, however,

---

[13] Available at http://www.dol.gov/ebsa/pdf/401krept.pdf.

offered  over 2,500 mutual fund options from many managers through Fidelity's BrokerageLink

program. *Id.* at 578. There is no such BrokerageLink in the Unisys Plan.

### C.      Participants did not get extra services for the retail mutual fund fees.

As the Fidelity Defendants acknowledge, the Second Amended Complaint alleges that Plan

fees were excessive for the services provided to Plan participants. MIS at 19. As noted above,

that allegation aligns with *Hecker*'s suggestion that retail fees might approach more reasonable

wholesale levels if plan participants received additional services that retail investors did not

receive. 569 F.3d at 711. The Fidelity Defendants claim participants receive "many customized

services for their fees that retail investors do not receive for the same fees," MIS at 20, but they

identify none of the additional services beyond what retail investors receive. (Even if they did,

that would not be the basis for dismissing a complaint.) Mutual funds provide recordkeeping

services for their shareholders and a retirement plan provides recordkeeping services for its

participants. The Fidelity Defendants provide no evidence of any difference between those

services. Furthermore, they provide no information, if there were additional services, what was

the reasonable expense for the non-existent services. The Fidelity Defendants cannot reasonably

contend that providing $1 worth of additional services for an extra $1,000 in fees is either loyal

to participants or prudent.

In its prospectus, Fidelity describes the services its revenue sharing pays for in this manner:

> FMR may use its management fee revenues, as well as past profits or its resources from
> any other source, to pay FDC for expenses incurred in connection with providing
> services intended to result in the sale of fund shares and/or shareholder support services.
> FMR, directly or through FDC, may pay significant amounts to intermediaries,
> including retirement plan sponsors, service providers, and administrators, that provide
> those services.

Doc. 12-6 at 33 ("Fund Distribution"). Paying for services that "result in the sale" of mutual fund

shares provides no benefit to participants in a 401(k) plan whose choices are limited to what their

fiduciaries select. "Shareholder support services" are no more than the services (answering calls,

delivering prospectuses and statements, receiving and disbursing funds) mutual funds provided,

but are provided by the plan's recordkeeper instead. This is indicated in another document,

incorporated into the prospectus:

> Many fund shares are owned by intermediaries for the benefit of their customers. Since
> a fund often does not maintain an account for shareholders in those instances, some or
> all of the recordkeeping services for these accounts may be performed by third parties.
> FIIOC or an affiliate may make payments to intermediaries (including affiliates of
> FIIOC) for recordkeeping and other services.

Fidelity Fund Statement of Additional Information at 40 (Aug. 29, 2008).[14]

This indicates there are *no* additional services that justify the higher fees of retail mutual

funds. Furthermore, one would expect that if the higher-fee mutual funds were selected for the

purpose of providing participants additional plan services, that would be described in the Trust

Agreement. Yet, the Trust Agreement says no such thing, indicating there is no relation between

the services provided to participants and the excessive fees of Fidelity's mutual funds. Of course,

these are all factual disputes that must be resolved at trial, not on a Rule 12(b)(6) motion. This

suffices, however, to demonstrate that the allegations of the complaint are not speculative.

The authorities on which the Fidelity Defendants rely are of little weight. *Braden v. Wal-*

*Mart Inc.* was reversed by the Eighth Circuit. *Braden*, 2009 WL 4062105. Cf. MIS at 19. *Young*

*v. Gen. Motors Inv. Mgt. Corp.* was of such little significance that the panel in that decision did

not even intend for it to be precedent. See No. 08-1532-cv, Summary Order at 1, 325 Fed.Appx.

31, 2009 WL 1230350 (2d Cir. May 6, 2009) ("Rulings by Summary Order do not have

precedential effect"); 2d Cir. R. 32.1(b). By designating the decision a summary order, the *Young*

panel indicated its belief "that no jurisprudential purpose would be served by an opinion (i.e., a

---

[14] Available at www.fidelity.com. This document specifically available at:
http://content.members.fidelity.com/epropdfframe/0,,SAI%7C31617F205%7CFRAMESET%7CRETAIL
%7C%7C%7C,00.html.

ruling having a precedential effect)." 2d Cir. R. 32.1(a). Moreover, Defendants neglect to

mention that the district court did not dismiss the Young complaint for the reasons mentioned by

the Second Circuit, but instead on the grounds of the statute of limitations. See 550 F.Supp.2d

416 (S.D.N.Y. 2008). Beyond that, Plaintiffs here have alleged that the Fidelity mutual fund fees

"were excessive relative 'to the services rendered.'" *Young*, No. 08-1532 slip op. at 3-4, 2009

WL 1230350 at *2. *Taylor v. United Tech. Corp.*, was a very different plan because only four of

the ten mutual funds were from Fidelity, there were options other than mutual funds, and the

fiduciaries did not give FMTC veto power of changes to the Plan's investment options. 2009 WL

535779 at *1-3 (D.Conn. Mar. 3, 2009).

**VI.      The statute of limitations does not bar Plaintiffs' claims.**

The statute of limitations is an affirmative defense on which Defendants have the burden of

proof. *Richard B. Roush Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d

581, 585 (3d Cir. 2002). Such a defense is inappropriate to be decided at this stage. *Oshiver v.

Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("statute of limitations

defense cannot be used in the context of a Rule 12(b)(6) motion" unless "the complaint facially

shows noncompliance with the limitations period and the affirmative defense clearly appears on

the face of the pleading").

The Fidelity Defendants contend that merely because the Plan included mutual funds more

than six years before this lawsuit commenced, all participant claims regarding mutual funds are

barred. MIS at 24-25. Even Unisys does not agree with this absurd argument. Unisys contends

only that damages more than six years before commencement are barred. Doc. 89-3 at 27.

Defendants also cite only two district court cases. One of those is *Young*, discussed above. The

Second Circuit evidently did not agree with the *Young* district court, since it affirmed dismissal

of the *Young* complaint on entirely different grounds in a non-precedential summary order.

21

*Tibble v. Edison Int'l* is inapposite as the court in that case specifically found that the union in that plan specifically requested the imprudent options in dispute. *Tibble v. Edison Int'l*, 639 F.Supp.2d 1074, 1100 (C.D.Cal. 2009).

The Fidelity Defendants' interpretation also contradicts the on-going nature of a fiduciary's duty to a plan, as has been recognized by numerous courts. It should go without saying that a fiduciary's duty to ensure the reasonableness of plan expenses and service-provider compensation is an on-going duty. Nonetheless, DOL makes that explicit on its website:

> Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

"Understanding Retirement Plan Fees and Expenses," http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html. "[G]iven ERISA's imposition of a continuing fiduciary duty, past knowledge of a past violation generally should not be held to preclude a suit for a repeated or continued violation." *Martin v. Consultants & Adm'rs Inc.*, 966 F.2d 1078, 1089 (7th Cir. 1992). "In light of the continuing duty of prudence imposed on plan fiduciaries by ERISA, each failure to exercise prudence constitutes a new breach of duty, that is to say, a new claim." *Boeckman v. A.G.Edwards Inc.*, 461 F.Supp.2d 801, 814 (S.D.Ill. 2006).

> The flaw in defendants' argument is that as Fund fiduciaries they were under a continuing obligation to advise the Fund to divest itself of unlawful or imprudent investments. Their failure to do so gave rise to a new cause of action each time the Fund was injured by its continued possession of individual policies, that is, each time it made a premium payment.

*Buccino v. Continental Assur. Co.*, 578 F.Supp. 1518, 1521 (S.D.N.Y. 1983) ; see also, e.g., *Mahoney v. J.J. Weiser & Co.*, 564 F.Supp.2d 248, 259 (S.D.N.Y. 2008); *Bona v. Barasch*, No. 01-2289, 2003 WL 1395932 at *18 (S.D.N.Y. 2003); *Koch v. Dwyer*, No. 98 Civ. 5519, 1999

WL 528181 at *5-6 (S.D.N.Y. 1999); *Dole v. Formica*, 1991 WL 317040 at *7-8 (N.D.Ohio 1991).

Defendants' cases on the "continuing violation doctrine" are inapposite. *Keen v. Lockheed Martin Corp.* concerned a denial of benefits because of the work status of the plaintiffs and failure to inform plaintiffs of their right to participate in a plan. 486 F.Supp.2d 481, 490 (E.D.Pa. 2007); cf. MIS at 25 n.18. *Keen* concerned a discrete, single act – a determination that contingent workers were ineligible for benefits. *Id.* at 493. The plaintiffs contended the failure to reassess that determination was a "continuing violation." *Id.* 493-94. Here, there were a series of repeated breaches of loyalty and prudence for each day the fiduciaries maintained imprudent mutual funds in the Plan and allowed FMTC to receive unreasonable compensation for its services. Similarly, *Miller v. Fortis Ben. Ins. Co.* concerned a single determination of benefits that the plaintiff contended was erroneous. 475 F.3d 516, 522 (3d Cir. 2007). *Miller* held that the limitations period commenced upon the determination of benefits, and not upon each underpayment of benefits. *Id.* at 522.

The fiduciaries' duties of loyalty and prudence were not limited to the initial selection of funds for the Plan. The fiduciaries owed continuing duties to monitor those options to ensure they were in the best interests of participants and charged only reasonable expenses.[15] Under Defendants' theory, any participant who joined the Plan more than six years after imprudent mutual funds were included as investment options would be barred from challenging the fiduciaries' loyalty and prudence during his or her participation in the Plan. That would give free rein for miscreant fiduciaries to keep mutual funds in a Plan that did not solely benefit participants or provided excessive compensation to Plan service providers after no participant

---

[15] In addition, the Trust Agreement was amended 18 times from 1993-2009 and additional mutual funds have been added to the Plan. SAC ¶45; Doc. 88-6 at 54.

took action within six years of the first inclusion of mutual funds in the Plan. Such a draconian

interpretation of ERISA is simply unwarranted and unsupported.

## CONCLUSION

None of the Fidelity Defendants' arguments provide any basis for dismissing Counts IV-VI

of the Second Amended Complaint. Their motion to dismiss should be denied.


Dated: December 7, 2009                         Respectfully Submitted,

SCHLICHTER, BOGARD & DENTON

/s/ Troy A. Doles_____
Jerome J. Schlichter
Troy A. Doles
100 South Fourth Street
Suite 900
St. Louis, MO 63102
Tel: 314-621-6115
Fax: 314-621-7151

Lead Counsel for Plaintiffs

Theodore H. Jobes
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103
Tel: 215-299-2786
Fax: 215-299-2150

## CERTIFICATE OF SERVICE

This is to certify that on December 7, 2009, a copy of the above was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Joseph J. Costello
Brian T. Ortelere
Azeez Hayne
Jamie M. Kohen
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5295/5150/5472
Fax: 215.963.5001
Counsel for the Unisys Defendants

Stephen Harburg
Brian Boyle
Shannon Barrett
Stephen Brody
O'Melveny & Myers
1625 Eye Street, NW
Washington, DC 20006
Tel: 202.383.5300
Fax: 202.383.5414
Counsel for FMTC, FMRCo and FIIOC

John S. Summers (PA ID No. 41854)
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square
27th Floor
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
Fax: (215) 568-0300
Counsel for FMTC, FMRCo and FIIOC

_____s/Troy A. Doles_____
Counsel of Record

25