# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MARK RENFRO and GERALD LUSTIG, individually and on behalf of all of those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>UNISYS CORPORATION, UNISYS CORPORATION EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, UNISYS CORPORATION SAVINGS PLAN MANAGER, PENSION INVESTMENT REVIEW COMMITTEE, J.P. BOLDUC, MATTHEW J. ESPE, GAIL D. FOSLER, RANDALL J. HOGAN, CLAYTON M. JONES, CLAY B. LIFFLANDER, THEODORE E. MARTIN, CHARLES B. MCQUADE, LAWRENCE W. WEINBACH, FMR, LLC, FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY MANAGEMENT & RESEARCH COMPANY, and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC.<br><br>        Defendants. | Case Number: 2:07-cv-02098-BMS<br><br>Judge Berle M. Schiller |

## REPLY MEMORANDUM IN SUPPORT OF FIDELITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.  PLAINTIFFS DO NOT ALLEGE FACTS ESTABLISHING THAT THE
    FIDELITY DEFENDANTS CAN BE SUBJECT TO FIDUCIARY OR CO-
    FIDUCIARY LIABILITY FOR UNISYS'S SELECTION OF INVESTMENT
    OPTIONS ................................................................................................................. 2

    A.  Plaintiffs Do Not Allege Facts Establishing That FMTC Had Or Exercised
        Discretionary Control Over Unisys's Investment Selections ................................ 2

    B.  Plaintiffs' Theory That FMTC Can Be Liable As A Co-Fiduciary For
        Unisys's Discretionary Investment Selections Would Completely Vitiate
        ERISA's Concept Of A Limited Fiduciary ........................................................... 7

    C.  Plaintiffs' Opposition Confirms That The Remaining Fidelity Defendants
        Are Not Fiduciaries ............................................................................................ 9

II.  PLAINTIFFS' DISTINCT "FLOAT" ALLEGATIONS DO NOT STATE A
     FIDUCIARY BREACH CLAIM ............................................................................... 10

III. PLAINTIFFS' EXCESSIVE-FEE THEORIES FAIL TO STATE A CLAIM .............. 11

IV.  COUNT VI DOES NOT SEEK "APPROPRIATE EQUITABLE RELIEF" ................. 15

V.   PLAINTIFFS' CLAIMS ARE TIME-BARRED UNDER § 413'S SIX-YEAR
     LIMITATIONS PERIOD ......................................................................................... 19

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angstadt v. Midd-West Sch. Dist.*,
   377 F.3d 338 (3d Cir. 2004) ............................................................................. 11

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)................................................................................. 11, 13

*Beddall v. State Street Bank & Trust Co.*,
   137 F.3d 12 (1st Cir. 1998)................................................................................. 3

*Braden v. Wal-Mart Stores, Inc.*,
   2009 U.S. App. LEXIS 25810 (8th Cir. 2009) ...................................................... 15

*Buck Consultants, Inc. v. Glenpointe Assocs.*,
   2004 WL 5370571 (D.N.J. 2004) .......................................................................... 6

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
   474 F.3d 463 (7th Cir. 2007) ........................................................................... 2, 5

*Coleman v. Nationwide Life Ins. Co.*,
   969 F.2d 54 (4th Cir. 1992) ................................................................................. 3

*Confer v. Custom Engineering Co.*,
   952 F.2d 34 (3d Cir. 1991) .................................................................................. 3

*Custer v. Sweeney*,
   89 F.3d 1156 (4th Cir. 1996) ............................................................................... 4

*Dupont v. Sklarsky*,
   2009 U.S. Dist. LEXIS 23056 (D.N.J. 2009) ....................................................... 21

*Enercomp, Inc. v. McCorhill Publ'g, Inc.*,
   873 F.2d 536 (2d Cir. 1989) ................................................................................ 6

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)..................................................................................... 16, 17

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ...................................................................... passim

*Hecker v. Deere & Co.*,
   569 F.3d 708 (7th Cir. 2009) ............................................................................... 7

*Hozier v. Midwest Fasteners, Inc.*,
   908 F.2d 1155 (3d Cir. 1990) .............................................................................. 8

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
   2007 U.S. Dist. LEXIS 51906 (E.D. Pa. 2007) ................................................... 17

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
   579 F.3d 220 (3d Cir. 2009) .............................................................................. 17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Keen v. Lockheed Martin Corp.*,
   486 F. Supp. 2d 481 (E.D. Pa. 2007) ..................................................................... 21

*LaRue v. DeWolff, Boberg & Assocs.*,
   128 S. Ct. 1020 (2008) ........................................................................................... 21

*Loomis v. Exelon Corp.*,
   2009 WL 4667092 (N.D. Ill. 2009) ................................................................. 12, 14

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
   471 F.3d 377 (2d Cir. 2006) .................................................................................. 18

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) .............................................................................................. 2, 6

*Miller v. Fortis Benefits Ins. Co.*,
   475 F.3d 516 (3d Cir. 2007) .................................................................................. 21

*Moench v. Robertson*,
   62 F.3d 553 (3d Cir. 1995) ...................................................................................... 8

*Olivet Boys' & Girls Club of Reading v. Wachovia Bank, N.A.*,
   2009 U.S. Dist. LEXIS 56931 (E.D. Pa. 2009) ...................................................... 8

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ................................................................................................. 7

*Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding Group*,
   731 F. Supp. 161 (D.N.J. 1990) .............................................................................. 7

*Plumb v. Fluid Pump Serv., Inc.*,
   124 F.3d 849 (7th Cir. 1997) ................................................................................... 3

*Prater v. Ohio Educ. Ass'n*,
   505 F.3d 437 (6th Cir. 2007) ................................................................................... 6

*Reich v. Lancaster*,
   55 F.3d 1034 (5th Cir. 1995) ................................................................................... 4

*Schloegel v. Boswell*,
   994 F.2d 266 (5th Cir. 1993) ................................................................................... 4

*Silverman v. Mutual Benefit Life Insurance Co.*,
   138 F.3d 98 (2d Cir. 1998) ................................................................................... 8, 9

*Tibble v. Edison Int'l*,
   639 F. Supp. 2d 1074 (C.D. Cal. 2009) ........................................................... 12, 19

*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
   472 F.3d 702 (10th Cir. 2006) ............................................................................... 11

*Young v. GM Inv. Mgmt. Corp.*,
   550 F. Supp. 2d 416 (S.D.N.Y. 2008) ................................................................... 20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Young v. GM Inv. Mgmt. Corp.,*
  325 F. App'x 31 (2d Cir. 2009) ............................................................................................ 20

**Statutes**

15 U.S.C. § 80a-7 .................................................................................................................. 14

15 U.S.C. § 80a-8 .................................................................................................................. 14

15 U.S.C. § 80a-9 .................................................................................................................. 14

15 U.S.C. § 80a-14 ................................................................................................................ 14

15 U.S.C. § 80a-18(f) ............................................................................................................ 12

15 U.S.C. § 80a-22 ................................................................................................................ 12

15 U.S.C. § 80a-30 ................................................................................................................ 14

29 U.S.C. § 1101(b)(1) ..................................................................................................... 16, 18

29 U.S.C. § 1103(a) ................................................................................................................. 8

29 U.S.C. § 1105(a)(3) ............................................................................................................ 9

29 U.S.C. § 1109(a) ............................................................................................................... 21

29 U.S.C. § 1113 .................................................................................................................... 19

29 U.S.C. § 1132 ............................................................................................................. passim

**Regulations**

17 C.F.R. § 270.2a-4(a)(4) ..................................................................................................... 12

17 C.F.R. § 270.18f-3 ............................................................................................................ 12

17 C.F.R. § 270.22c-1(b)(1) ................................................................................................... 14

17 C.F.R. § 270.30a-2 ............................................................................................................ 14

17 C.F.R. § 270.38a-1(a) ....................................................................................................... 14

**INTRODUCTION**

Plaintiffs' opposition to the Fidelity Defendants' motion to dismiss does nothing to rehabilitate their claims that the Fidelity Defendants breached fiduciary duties in the selection of investment options in the Unisys 401(k) plan.  As the motion to dismiss demonstrates, there are three basic flaws in the complaint:  (1) it does not allege facts establishing that the Fidelity Defendants were fiduciaries of the Unisys Plan for any relevant purpose; (2) it does not allege facts establishing that the Plan's lineup was imprudent in any event; and (3) it *does* allege facts establishing that the complaint is time-barred.

Plaintiffs' opposition does not overcome these flaws.  It confirms them.  To start, their claim that FMTC has fiduciary status with respect to the selection of Unisys plan investment options has been reduced to just a single argument, *viz.*, that the provision in the Trust Agreement allowing FMTC as directed trustee to "consent" to Unisys's additions to the investment lineup confers on FMTC the kind of discretionary control that makes it a fiduciary as to Unisys's investment option choices.  Plaintiffs point to no other facts supporting FMTC's fiduciary status.  But their reading of that provision would override more specific provisions prohibiting FMTC from exercising any responsibility over investment selections, and it would contradict settled precedents holding that a service provider—even a fiduciary—does not act in a fiduciary capacity in negotiating (and amending) the terms of the agreement under which it provides services.

Plaintiffs also fail to show how their allegations of imprudence in the Unisys Plan's investment lineup are anything other than bare cost claims, unaccompanied by any factual allegations establishing that the costs of the challenged investment options were not justified by

the services and advantages they offer.  The law does not recognize pure cost claims, because investment choices—like any other product or service—cannot be measured by cost alone.

Plaintiffs' other arguments are equally flawed.  Their "float" allegations are irrelevant to the investment-selection conduct at the heart of their complaint and are insufficiently pled in any event; there is no basis for holding other Fidelity entities liable as fiduciaries or non-fiduciaries; and they cannot escape the statute of limitations bar they have pleaded themselves into.  The motion to dismiss should be granted.

## ARGUMENT

I. **PLAINTIFFS DO NOT ALLEGE FACTS ESTABLISHING THAT THE FIDELITY DEFENDANTS CAN BE SUBJECT TO FIDUCIARY OR CO-FIDUCIARY LIABILITY FOR UNISYS'S SELECTION OF INVESTMENT OPTIONS**

A. **Plaintiffs Do Not Allege Facts Establishing That FMTC Had Or Exercised Discretionary Control Over Unisys's Investment Selections**

Plaintiffs concede that, to state a claim that FMTC functioned as a fiduciary for relevant purposes, they must allege facts establishing that FMTC exercised discretionary control over Unisys's decisions about which investment options to include.  It is settled that there can be no fiduciary liability under ERISA "on the part of persons who had no real power to control what the plan did." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471 (7th Cir. 2007).

The Trust Agreement, of course, flatly prohibits FMTC from exercising any authority over plan options:  FMTC "shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options."  (Trust Agreement § 5(a).)[1]  FMTC is thus contractually barred from

---

[1]    To the same effect, the recitals record the parties' intent that FMTC's services are to be "purely ministerial in nature" (Trust Agreement at 2); FMTC's powers are specifically enumerated and do not include investment

exercising the control necessary to make it a fiduciary with respect to the selection of plan

investment options.  As § 5(a) provides, *only* Unisys may exercise that authority.  Plaintiffs

assert without any support that because fiduciary status "is based on function, not titles, written

plan documents are of limited relevance for defining who is a fiduciary with respect to a plan."

Pls. Fid. Opp. 5.  Not so.  Plan documents are *highly relevant* to determining which party has

fiduciary status—they are the "first place" a court looks to analyze the issue, because a party

"generally will not be held to be a fiduciary with respect to an activity unless the plan documents

show that the [party] was responsible for that activity."  *Plumb v. Fluid Pump Serv., Inc.*, 124

F.3d 849, 854 (7th Cir. 1997); *see Confer v. Custom Engineering Co.*, 952 F.2d 34, 37-38, 39 (3d

Cir. 1991) (determining lack of fiduciary status with reference to plan documents); *Beddall v.

State Street Bank & Trust Co.*, 137 F.3d 12, 19 (1st Cir. 1998) (plan document or trust agreement

is "starting point for reasoned analysis of [a party's] fiduciary status"); *Coleman v. Nationwide

Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) ("The discretionary authority or responsibility

which is pivotal to the statutory definition of 'fiduciary' is allocated by the plan documents

themselves.").  Indeed, plaintiffs' *own theory* of FMTC's fiduciary status rests entirely on the

interpretation of a term in the Trust Agreement, *see infra* at 4, confirming the significance of that

document.

Read as a whole and in the context of the entire agreement, § 5 makes clear that FMTC

was *not* responsible for selecting the Plan's investment options.  The provision is not about the

"title" of fiduciary—it is about the actual substantive authority to perform the function that

would render a party a fiduciary with respect to the conduct challenged in this case.  And the

provision prohibits FMTC from engaging in that conduct in any way.  Such a designation of

---

selection (*id.* § 5(j)); and the service schedule provides that FMTC "will provide only the recordkeeping and
administrative services set forth on this Schedule 'A' and no others" (*id.* Sched. A).

substantive authority in the plan documents is controlling under ERISA's "functional" fiduciary standard, unless the service provider somehow "usurp[s]" discretionary authority delegated to another party and "effectively exercise[s] authority and control over management and administration of the plan." *Reich v. Lancaster*, 55 F.3d 1034, 1048 (5th Cir. 1995); *see Schloegel v. Boswell,* 994 F.2d 266, 271-72 (5th Cir. 1993) (plaintiff must show that defendant caused named fiduciary "to relinquish his independent discretion in investing the plan's funds and follow the course prescribed by [the defendant]"); *Custer v. Sweeney*, 89 F.3d 1156, 1162 (4th Cir. 1996) (same).  Plaintiffs here allege no facts suggesting that FMTC usurped Unisys's exclusive authority over its plan's investment lineup and effectively made investment selections for FMTC's own benefit.

Plaintiffs instead rest their theory of FMTC's fiduciary status entirely on § 5(b) of the Trust Agreement, which specifies (and limits) the range of investment options that Unisys may offer to plan participants.  That provision concludes: "[Unisys] may add additional investment options with the consent of [FMTC] and upon mutual amendment of this Trust Agreement and the Schedules thereto."  According to plaintiffs, § 5(b) gives "FMTC unfettered veto power over changes in Plan investments."  Pls. Fid. Opp. 5.

Plaintiffs both misstate and misunderstand § 5(b).  First, they assert that § 5(b) gives FMTC discretionary control over Unisys's choices because it gives FMTC "the unlimited right to refuse" *both* to "remove a fund from the Plan" *and* to "add a different fund."  Pls. Fid. Opp. 6.  But it does not—the provision by its terms only requires FMTC's consent to the *addition* of funds in the lineup set forth in the Trust Agreement.  Unisys thus at all times had complete,

exclusive discretion to delete funds from its lineup,[2] including the very funds plaintiffs say led to excessive compensation for Unisys.  And Unisys was likewise free at all times to add any funds as options for plan participants—the Trust Agreement governs only those options for which FMTC agreed to service as directed trustee and recordkeeper.  FMTC, in short, had no discretion whatsoever over Unisys's selection of investment options, including even those directly affecting its compensation under the Trust Agreement—it could neither require Unisys to add funds that would increase FMTC's compensation nor prevent Unisys from reducing its compensation by deleting higher-revenue funds.

Plaintiffs also misunderstand the operation of § 5(b).  The purpose of the section is to specify the investment lineup Unisys will offer and for which FMTC will provide trustee and recordkeeping services.  An entity that provides services to an ERISA plan, including the limited fiduciary services of a directed trustee, does not perform a fiduciary function when engaging in arm's-length bargaining over the terms under which it will provide its services, so long as "it does not control the named fiduciary's negotiation and approval of those terms."  *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009); *see* Fid. Br. 9 (citing cases).  Section 5(b) simply reflects the parties' non-fiduciary negotiation over which investment options FMTC agrees to service.  It is thus functionally indistinguishable from the provisions in cases like *Hecker*, 556 F.3d at 583, and *Caremark*, 474 F.3d at 477.

Plaintiffs, however, say the provision differs materially from the Deere-FMTC Trust Agreement provision in *Hecker* solely because the final sentence in § 5(b) of the Unisys-FMTC agreement allows FMTC to consent to changes in the Trust Agreement's stated investment lineup.  Plaintiffs argue that the provision must do something more than confirm the basic rule

---

[2]      Unisys may "delete" investment options by either prohibiting new participant purchases or by redeeming all the assets in them and "mapping" them into another fund, after notifying participants and providing an opportunity to choose a different fund.

that all parties to a contract must consent to its amendment because otherwise the provision is "surplusage." Pls. Fid. Opp. 7. But it is hardly unusual for contracts to include provisions restating basic mutual amendment principles; such provisions are not considered meaningless or unenforceable. *See*, *e.g.*, *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 444-45 (6th Cir. 2007); *Enercomp, Inc. v. McCorhill Publ'g, Inc.,* 873 F.2d 536, 548-49 (2d Cir. 1989); *see also Buck Consultants, Inc. v. Glenpointe Assocs.*, 2004 WL 5370571, at *9 (D.N.J. 2004) (enforcing parties' express incorporation of implied covenant of good faith and fair dealing). Further, reading FMTC's consent power under § 5(b) to be an "unfettered veto" (Pls. Fid. Opp. 7) would override the express language of § 5(a) prohibiting FMTC from exercising *any* responsibility over investment selections, as well as other provisions limiting FMTC to performing "purely ministerial" functions, *see supra* at 2 n.1. To give full effect to all relevant provisions, FMTC's consent to new investment options cannot be exercised in such a way as to frustrate Unisys's expectations, as stated in the agreement, that it would have exclusive responsibility for investment selections—that is, it cannot be withheld for reasons unrelated to its own rights and obligations.[3] The consent provision thus comes nowhere close to conferring on FMTC "real power to control what the plan did" with respect to the investment options, *Mertens*, 508 U.S. at 262: it does not give FMTC any power over the elimination of options (the action most likely to affect FMTC's compensation), and it does not provide anything like the "unfettered veto" over new options that plaintiffs allege.

Misreading the actual Trust Agreement language and ignoring almost all the relevant authority, plaintiffs suggest the foregoing analysis relies entirely on *Hecker*, and they describe Fidelity as arguing that *Hecker* "ruled as a matter of law that [FMTC] is not a fiduciary for *any*

---

[3] FMTC might reasonably withhold consent, for example, when a new fund is not operationally compatible with FMTC's platform, or where the fund declines to agree to join a relationship with FMTC.

plan." Pls. Fid. Opp. 5.  Fidelity argues no such thing.  *Hecker* ruled, quite correctly and in accordance with settled and uncontroversial principles of ERISA fiduciary law, that a service provider does not act as a fiduciary for plan selections *where the trust agreement prohibits the service provider from exercising discretionary authority over the plan's investment selections.* 556 F.3d at 583.  That may or may not be true for any given plan.  But because *this* Trust Agreement, like the agreement in *Hecker*, precludes FMTC from controlling the named fiduciary's choices, and because plaintiffs do not allege usurpation of Unisys's fiduciary role, FMTC is no more an investment-selection fiduciary here than it was in *Hecker*.  And while *Hecker* did say its holding was "limited" to the facts of that case (Pls. Fid. Opp. 6), the court emphatically did *not* make that point in reference to its *fiduciary status holding*, but only with respect to its ERISA § 404(c) holding.  *Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009) (order denying reh'g).  *Hecker*'s analysis applies fully to the Unisys-FMTC Trust Agreement.

> **B.      Plaintiffs' Theory That FMTC Can Be Liable As A Co-Fiduciary For Unisys's Discretionary Investment Selections Would Completely Vitiate ERISA's Concept Of A Limited Fiduciary**

Plaintiffs also contend that even if FMTC is not a fiduciary with respect to investment selections, and despite its limited role as directed trustee, FMTC may still be held liable as a co-fiduciary for any imprudent selections made by Unisys.  Pls. Fid. Opp. 8.

Plaintiffs' co-fiduciary argument proves far too much.  "ERISA does not contemplate that every plan fiduciary becomes an insurer of the entire plan."  *Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding Group*, 731 F. Supp. 161, 176 (D.N.J. 1990). Rather, a person can be liable for breach of fiduciary duty under ERISA only to the extent he performs fiduciary functions *with respect to the challenged conduct.  See Pegram v. Herdrich*,

530 U.S. 211, 226 (2000); *Hecker*, 556 F.3d at 583; *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990).

The limited fiduciary role of directed trustee is expressly contemplated in ERISA. *See* 29 U.S.C. § 1103(a). An entity serving in that role holds plan assets in trust, but it must follow proper directions from the plan sponsor, administrator, or participants as to the disposition of those assets. Fid. Br. 11-12. So long as the directed trustee follows those directions, it is "essentially immune from judicial inquiry." *Olivet Boys' & Girls Club of Reading v. Wachovia Bank, N.A.*, 2009 U.S. Dist. LEXIS 56931, at *6 (E.D. Pa. 2009) (quotation omitted); *see Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995) (same).

Plaintiffs' sweeping theory of co-fiduciary liability would override that principle and eviscerate the limited directed trustee function Congress expressly authorized in ERISA. Plaintiffs' theory would require all directed trustees to actively oversee and second-guess the named fiduciary's plan management decisions, lest the directed trustee itself become liable as co-fiduciary for any imprudent selections of the named fiduciary. To avoid potential co-fiduciary liability for investment selections, for instance, a directed trustee would be compelled to join the fiduciary's investment committee and evaluate all the information and investment strategies considered by the committee, approving only those decisions the directed trustee decided for itself were sufficiently prudent. That kind of role, of course, is fundamentally contrary to the limited role expressly carved out for directed trustees by Congress.

Plaintiffs ignore the controlling decisions of this Court and the Third Circuit establishing effective immunity for directed trustees who follow directions. They instead rely entirely on dicta in *Silverman v. Mutual Benefit Life Insurance Co.*, 138 F.3d 98 (2d Cir. 1998), that co-fiduciary liability under ERISA is "extraordinarily broad." *Id.* at 106. That statement was

unnecessary to the Second Circuit's holding, which *denied* co-fiduciary liability for lack of a causal connection between the defendant's conduct and the plan's loss, *id.* at 106-07.  And the *Silverman* court described § 405(a)(3) as "extraordinarily broad" only in the sense that the provision can make an entity liable for losses to assets over which it does not have responsibility. *Id.* at 106.  The court did not purport to identify all the elements required to establish that broad liability.  Moreover, *Silverman* did not involve a directed trustee at all, so the court did not even consider, much less address, whether co-fiduciary liability would attach to a directed trustee who followed facially proper directions from the plan sponsor as to investment of plan assets.  In short, holding directed trustees liable for the plan's investment decisions, absent a genuine showing of actual knowledge of imprudence, would simply make them insurers for the plan, which in turn would require them to make their own full evaluations of prudence for every direction they receive, radically expanding the limited role Congress expected them to perform.

### C.    Plaintiffs' Opposition Confirms That The Remaining Fidelity Defendants Are Not Fiduciaries

Plaintiffs' opposition concedes that defendants FMR Co. and FMR LLC did not function as fiduciaries with respect to Unisys's investment selections.  Pls. Fid. Opp. 10-11.  Accordingly, plaintiffs' claims against FMR Co. and FMR LLC for breach of duty by a fiduciary under § 502(a)(2) must be dismissed.[4]

Plaintiffs do contend, however, that FIIOC qualifies as a plan fiduciary, merely because "FMTC delegated certain of its responsibilities to FIIOC."  Pls. Fid. Opp. 10.  But their complaint alleges only that FMTC delegated *administrative* duties to FIIOC.  (Compl. ¶¶ 17, 18.) Those duties are purely ministerial and thus are not fiduciary in nature, as courts and the

---

[4]    Plaintiffs' separate argument that FMR Co. and FMR LLC can be held liable for monetary relief as *non-*fiduciaries is addressed in Part IV below.

Department of Labor have recognized.  Fid. Br. 11.  Plaintiffs nowhere allege that FMTC delegated *authority over investment selections* to FIIOC—authority FMTC did not have in any event.  Absent allegation of facts establishing that FIIOC exercised discretionary control over Unisys's selection of investment options, there is no legal basis for holding FIIOC liable as a fiduciary as to any imprudent selections.

For all these reasons, Counts IV and V, alleging breach of fiduciary duty against the Fidelity Defendants, must be dismissed.

## II.     PLAINTIFFS' DISTINCT "FLOAT" ALLEGATIONS DO NOT STATE A FIDUCIARY BREACH CLAIM

Wholly separate and apart from their theory that FMTC (and FIIOC) are liable as fiduciaries for Unisys's selection of investment options, plaintiffs also argue that FMTC, in its limited fiduciary capacity as directed trustee of plan assets, "unlawfully earned float interest" on those assets.  Pls. Fid. Opp. 7.  Plaintiffs seem to suggest that FMTC's fiduciary status with respect to float affects its status as a fiduciary with respect to investment selections, but the two issues have nothing to do with each other.  FMTC *is* a fiduciary with respect to float, but that function does not give it any measure of control over investment selections.  Plaintiffs' float allegations involve an exceedingly narrow scope of conduct, which is entirely distinct from their core complaints about allegedly imprudent investment selections.

Plaintiffs' float allegations also fail on their own terms.  The complaint asserts only that Fidelity "exercised authority" over float interest (Compl. ¶ 15) but does not allege that FMTC "unlawfully earned" interest (*cf.* Compl. ¶ 83).  That allegation is plainly insufficient to establish a claim for breach of fiduciary duty, because—despite multiple opportunities (the current complaint is plaintiffs' third effort)—it omits any assertion that Fidelity actually *retained* float interest as compensation.  Plaintiffs do not now defend the sufficiency of their actual complaint,

but instead essentially *supplement* the complaint's allegations with the assertion in their brief that

FMTC unlawfully earned float interest.  Pls. Fid. Opp. 7.  But a flawed complaint is not subject

to informal, on-the-fly revision during briefing—it either alleges facts sufficient to state a claim

for relief, or it does not, and if the complaint itself is insufficient, it must be amended (and it is

far too late for that) or dismissed.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (complaint

that makes "naked assertion[s] devoid of further factual enhancement" must be dismissed); *U.S.*

*ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 731 n.37 (10th Cir.

2006) (district court properly refused "to allow [plaintiff] to overcome deficiencies in stating a

claim by 'making arguments that extend beyond the allegations in the complaint'"); *see also*

*Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338 (3d Cir. 2004).

## III.    PLAINTIFFS' EXCESSIVE-FEE THEORIES FAIL TO STATE A CLAIM

Plaintiffs allege that ERISA's fiduciary standard prohibits plans from offering retail

mutual funds as an investment option to plan participants, because such funds are unlawfully

expensive compared to other options available to large plans.  Pls. Fid. Opp. 16 (the defendants

"failed in [their fiduciary] duties by selecting excessive-fee investment options despite the ready

availability of better options priced for institutional investors").  Unisys thus violated its

fiduciary duty, plaintiffs urge, simply by including retail mutual funds among the many options

made available to plan participants.  Plaintiffs' theory is wrong as a matter of law, for the reasons

explained by the Seventh Circuit in *Hecker* and elaborated in Fidelity's opening memorandum,

Fid. Br. 17-21.  Most fundamentally, plaintiffs' theory fails because the Unisys Plan includes

*exactly* the low-cost options plaintiffs say must be offered to participants, and no precedent holds

that the inclusion of retail mutual funds *in addition to* lower-cost options is legally prohibited.

Fid. Br. 18.  Plaintiffs offer essentially three responses; none has merit.

*First*, plaintiff contend that the reasonableness of mutual fund fees is not governed only by the Investment Company Act, and that ERISA fiduciaries have an independent duty under ERISA to ensure that fees are reasonable.  Pls. Fid. Br. 15.  Plaintiffs miss the point.  The Investment Company Act is, in fact, the only source of authority for establishing the reasonableness of fees of a *given fund*—because the Act affirmatively prohibits funds from allowing different investors in the same fund and share class to pay different fees, it is legally impossible for a fund to offer better fees in the same share class to certain favored or "hard-bargaining" investors.  *See* 15 U.S.C. §§ 80a-18(f), 80a-22; 17 C.F.R. §§ 270.2a-4(a)(4), 270.18f-3.  Accordingly, if a given fund's fees are reasonable under the ICA, it is not possible to argue under ERISA that a plan should have negotiated a "better deal" for a particular share class in that fund.

What plaintiffs instead argue is that *all retail mutual funds* constitute unreasonable options *compared to other investment options*, which are cheaper than retail mutual funds.  It is true that the ICA does not itself answer that argument—Fidelity has never argued otherwise.  But the ICA does answer any suggestion that retail fund fees can somehow be "improved" by negotiating special lower fees for plan participants.  It thus highlights the categorical nature of plaintiffs' claims:  retail mutual funds are *per se illegal*, plaintiffs necessarily contend, because there will always be cheaper options available in the market.  That categorical argument is wrong, in turn, because "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586; *see also Loomis v. Exelon Corp.*, 2009 WL 4667092 (N.D. Ill. 2009) (applying *Hecker*); *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1115 (C.D. Cal. 2009) (rejecting

claim that retail mutual funds are "nearly per se imprudent" merely because "other low-cost alternatives" exist).

*Second*, plaintiffs insist they are not arguing that expense must be "the sole criterion" for selecting investment options.  Pls. Fid. Br. 16.  They point to the allegation in their complaint that Unisys failed to consider and offer investment options that "provided the same or similar services" at lower prices, *id.*, and they contend that Fidelity cannot show that its retail mutual fund fees pay for services that are not also provided for by other investment options, *id.* at 19-20.

There are two problems with plaintiffs' argument.  The first is their own complaint, which affirmatively alleges that Unisys plan participants who invest in mutual funds *do* receive services, in exchange for their asset-based fees, that retail investors do not receive.  Fid. Br. 20.  Those services include not only "recordkeeping" that retail investors also pay for and receive, Pls. Fid. Opp. 19, but also "participant education and communication, services reviews, and trustee services."  (Compl. ¶ 39.)  Participants' asset-based fees cover the costs of doing everything a 401(k) trustee must do to service the Plan and its participants, which includes—as plaintiffs recognize—numerous functions not implicated by a one-on-one retail investment relationship.  To establish that such fees are "excessive," plaintiffs must allege facts establishing that the fee is not justified by the services provided.  Here plaintiffs allege *no* such facts—they assert only the *conclusion* that other investment options provide the same or similar services at lower prices.  (Compl. ¶¶ 75(G), (H); 80(G), 81.)  That kind of "naked assertion devoid of further factual enhancement" (*Iqbal*, 129 S. Ct. at 1949) does not suffice to state a claim that fees are actually excessive relative to the services provided.  As the district court in *Loomis* recently held in dismissing a materially identical complaint, the fact that a directed trustee and plan

recordkeeper provides "additional services" to plan participants that "were not available to the general public" requires dismissal of excessive fee claims.  2009 WL 4667092, at *4.

The second problem with plaintiffs' theory concerns the legal standards governing mutual funds as compared to other investment options.  Mutual funds are subject to multiple legal requirements, all of which add both enormous value to participants compared to other investments, as well as substantial management costs for fund managers.  Such requirements include oversight by the SEC, *see* 15 U.S.C. §§ 80a-7, 80a-8; disclosure and public transparency of financial information concerning the fund, *see id.* § 80a-30; restrictions on internal management such as minimum capital requirements and daily pricing, *see id.* § 80a-14; 17 C.F.R. § 270.22c-1(b)(1); and restrictions on corporate governance such as specified qualifications for persons seeking to affiliate with a mutual fund, mandatory compliance policies and procedures, and compliance with the Sarbanes-Oxley Act of 2002, *see* 15 U.S.C. § 80a-9; 17 C.F.R. § 270.38a-1(a); *id.* § 270.30a-2.  Few if any of these important (and costly) regulatory protections are provided to investors in non-mutual-fund options such as commingled pools and separate accounts.  It is thus unambiguously false to say, as plaintiffs do, that these lower-cost options provide the same or similar services as mutual funds.  Pls. Fid. Opp. 16, 19.  They do not.

*Third*, and finally, plaintiffs contend that their excessive-fee claims are viable even though the Unisys Plan included every low-cost option they seek, and thus *no* participant was required to bear *any* of the supposedly excessive costs plaintiffs identify.  *See id.* at 18.  As the Seventh Circuit held in *Hecker*, excessive-fee claims fail when participants have access to such a "sufficient mix of investments" that they can choose low-cost options.  556 F.3d at 586. Plaintiffs' only response is that *Hecker*'s holding does not apply here because the "sufficient mix

on investments" in that case included a "BrokerageLink" window that provided access to more than 2500 funds.  *Id.* at 578.

Plaintiffs simply misunderstand *Hecker*'s holding.  The point was *not* that there were 2500 funds and thus the lineup was lawful per se; that point was that given the lineup of 2500 funds, the court could be certain that participants would have access to low-cost non-mutual-fund investment options, should they favor such options over more expensive mutual fund options subject to much stronger regulatory protections.  Here, the Court does not need a BrokerageLink window of 2500 funds to have that same certainty—plaintiffs *own complaint* makes clear that participants have access to every low-cost, unregulated, non-mutual-fund option that plaintiffs demand.  Fid. Br. 3-4 & nn.5-6, 18.  Plaintiffs themselves concede as much.  Pls. Fid. Opp. 18. Accordingly, plaintiffs' excessive-fee claim fails for the same reason it failed in *Hecker*.

For the foregoing reasons, all counts of the Complaint must be dismissed.[5]

## IV.    COUNT VI DOES NOT SEEK "APPROPRIATE EQUITABLE RELIEF"

Under Count VI, plaintiffs allege that they are entitled to recover any "excessive fees generated by the … Plan's investment options … from the Fidelity Defendants as restitution" pursuant to § 502(a)(3).  Pls. Fid. Opp. 12.  As the Fidelity Defendants explained in their opening brief, however, any such excessive fees are neither a specifically identifiable res nor traceable to

---

[5]     Plaintiffs again try to limit *Hecker* to its particular facts, Pls. Unisys Opp. 18-19, but as explained above, the Seventh Circuit tied only its § 404(c) holding to the facts of the case, and conspicuously did *not* so qualify its other holdings.

Plaintiffs also rely on the Eighth Circuit's recent decision in *Braden v. Wal-Mart Stores, Inc.*, 2009 U.S. App. LEXIS 25810 (8th Cir. 2009),  to distinguish *Hecker*.  Pls. Unisys Opp. 15-16.  Fidelity respectfully submits that *Braden* misconstrued *Hecker*, but in any event *Braden* distinguished *Hecker* on the grounds that the plan in *Braden* offered only "ten mutual funds, a common/collective trust, Wal-Mart common stock, and a stable value fund."  2009 U.S. App. LEXIS 25810, at *3, *22 n.6.  The Unisys Plan offers more than 70 options, including both mutual funds and the other investment options favored by plaintiffs.  The *Braden* court also specifically denied "that a claim is stated by a bare allegation that cheaper alternative investments exist in the marketplace."  *Id.* at *23 n.7. In contrast to *Braden*, where the plaintiffs also alleged that the investment options "were chosen to benefit the trustee at the expense of the participants," *id.* at *23, plaintiffs here proffer no more than the "bare allegation" that cheaper alternatives exist.  *See supra* at 13.

plan assets, as they must be for restitution to be appropriate under § 502(a)(3).  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002).

To start, as noted above, plaintiffs concede that FMR Co.—the recipient of fund management fees (the source of the allegedly excessive fees allegedly paid to FMR Co.'s affiliates)—was not a fiduciary.  Plaintiffs contend only that FMR Co. and other alleged recipients are liable for restitution of "ill-gotten gains."  But the fees charged by FMR Co. to mutual funds for the management services it provides them—the only "gains" FMR Co. received—were anything but "ill-gotten."  FMR Co.'s management fees were approved by the funds' boards and explicitly disclosed to all fund shareholders through the prospectus pursuant to exacting SEC requirements.  And the management fees were paid from the assets of the funds, which are by statute not plan assets.  29 U.S.C. § 1101(b)(1); *see infra* at 18.  Finally, to the extent plaintiffs contend that a portion of FMR Co.'s management fees was improperly paid over to other Fidelity entities as compensation for providing services to the Plan, such so-called "revenue sharing" was not only widely accepted by regulators—and thus was not "ill-gotten"— but was explicitly disclosed in the Fidelity prospectuses since at least 2000.  *See*, *e.g.*, Statement of Additional Information, Fidelity Puritan Fund Form N-1A (Sept. 28, 2000), *available at* http://www.sec.gov/Archives/edgar/data/81205/000031570000500004/main.htm#refii.

Plaintiffs also have no direct answer to Fidelity's contention that their non-fiduciary monetary claims fail because they cannot identify a particular corpus of funds still in Fidelity's possession, against which an equitable lien or constructive trust could be imposed.  Instead they simply restate their own problem:  "The excessive fees generated by the Plan's investments were received by the Fidelity Defendants.  If Plaintiffs are successful on the merits of their complaint, they are entitled to recover those fees from the Fidelity Defendants as restitution under

§ 1132(a)(3)."  Pls. Fid. Opp. 12.  No, they are not.  Under ERISA, a plaintiff can recover

restitution from a non-fiduciary only if, and only to the extent, the plaintiff can trace his loss to

"particular property held by the defendant."  *Great West*, 534 U.S. at 214 n.2.  As the foregoing

quotation shows, plaintiffs here do not purport to be able to identify any particular fund or

property in Fidelity's possession; instead they simply assert that if Fidelity received any money

from plaintiffs, they can recover it if they prove their claims.  In other words, plaintiffs are

simply "seeking the same relief as every claimant who seeks monetary damages:  money that

they believe belongs to them."  *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 2007 U.S.

Dist. LEXIS 51906, at *36 (E.D. Pa. 2007).[6]  As this Court has recognized, that is classic

restitution *at law*, *not* the much more limited form of equitable restitution—involving what

amounts to a particular res of funds—addressed in *Great West* and other cases.  *See id.*

Plaintiffs again prove the point in arguing that any "commingling" of fees within Fidelity

does not preclude their recovery.  They quote *Great West* as follows:

> If … a plaintiff is entitled to a constructive trust on particular property held by the
> defendant, he may also recover profits produced on the defendant's use of that
> property, even if he cannot identify a particular res containing the profits sought
> to be recovered.

534 U.S. at 214 n.2; *see* Pls. Fid. Opp. 13.  But the Court's point could hardly be clearer:  *if* the

plaintiff establishes the threshold requirement of tracing its loss to a particular res of funds still in

the defendant's possession, then the plaintiff can *also* recover profits the defendant has made

from use of those particular funds, even if *the profits themselves* do not constitute a particular

---

[6]     Plaintiffs attempt to distinguish *In re Unisys* on the theory that plaintiffs' claims are focused on the
"fiduciaries' gains," not "the plaintiffs' losses."  Pls. Fid. Opp. 13-14.  But because plaintiffs are challenging
allegedly excessive fees paid by the plan to Fidelity, Fidelity's gain is simply the flipside of the plan participants'
alleged loss.  *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 238 (3d Cir. 2009) ("a
review of the 'significant financial advantages' that the plaintiffs claim [the fiduciary] reaped at their expense, and
for which the plaintiffs seek to recover money, makes it all the more apparent that the plaintiffs are trying to recoup
compensation for their own expenditures as opposed to profits held by [the fiduciary] to which they are entitled").

res.  The threshold requirement that plaintiff identify particular funds in the defendant's possession is unaffected by this principle.  And it is that threshold requirement that plaintiffs cannot meet here, as their brief all but concedes in trying to deny that the requirement exists.

Plaintiffs also have no persuasive answer to Fidelity's point that they cannot trace fees received by any Fidelity entity back to plan assets, because the fees are received directly from mutual fund assets, which are *not* plan assets.  The "fees were drawn from the assets of the mutual funds in question, which, as the statute provides, are not assets of the Plans …. Once the fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become Fidelity's assets—again, not the assets of the Plans."  *Hecker*, 556 F.3d at 584 (citing 29 U.S.C. § 1101(b)(1)).  The DOL squarely agrees.  *See* Brief Of The Secretary of Labor, Elaine L. Chao, As Amicus Curiae In Support Of Plaintiffs-Appellants, *Hecker v. Deere & Co.*, No. 07-3605 (7th Cir. April 2, 2008), at 22 (stating that "the sums paid," i.e., the Fidelity fees, "do not constitute plan assets").  Whether the term "plan asset" is construed "broadly" or not, *see* Pls. Fid. Opp. 12, it cannot be construed to be something it legally is not, i.e., the assets of a mutual fund in which plan assets are invested.  Because the fees Fidelity received from mutual funds thus cannot be traced back to assets of the Plan, plaintiffs cannot obtain restitution of those fees under § 502(a)(3).

Finally, plaintiffs cannot establish their entitlement to the other equitable relief they seek.  They allege that FMTC is a proper party to an attempt to reform the Trust Agreement, Pls. Fid. Opp. 14, but they still do not identify which terms of the Agreement allegedly violate ERISA.  Nor is FMTC "clearly" a necessary party to reformation of the Agreement, which can be unilaterally terminated by Unisys in any event.  *Cf. MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 387 (2d Cir. 2006) ("necessary parties under Rule 19(a)(2)(i) are only those

parties whose ability to protect their interests would be impaired *because of* that party's absence

from the litigation" (emphasis in original)).  Plaintiffs also do not explain why an accounting is

appropriate when its only object—a restitutionary surcharge—is disallowed.  And plaintiffs'

effort "to bar the Plan fiduciaries from continuing the breaches of their duties" is foreclosed to

the extent the Fidelity Defendants are not Plan fiduciaries.

Count VI must be dismissed.

## V.   PLAINTIFFS' CLAIMS ARE TIME-BARRED UNDER § 413'S SIX-YEAR LIMITATIONS PERIOD

Plaintiffs' claims are entirely predicated on the execution of the Trust Agreement in

1993—the moment when defendants agreed to include retail mutual funds in the Plan's

investment lineup and to finance Plan services through asset-based fees drawn from that lineup.

Those selections and fees were disclosed and known to the plaintiffs at the time—in fact,

plaintiffs have *withdrawn* earlier allegations that the defendants concealed or misrepresented the

relevant facts.  *Cf.* Dkt-6 ¶¶ 63-67 (First Am. Compl.).  Accordingly, plaintiffs' claims expired in

1999.  29 U.S.C. § 1113 (suit must be filed within six years after "the date of the last action

which constituted a part of the breach or violation").

Plaintiffs call this argument "absurd," Pls. Fid. Opp. 21, but two courts have rejected

claims on exactly this basis, and plaintiffs offer no meaningful basis for distinguishing those

decisions.  In *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074 (C.D. Cal. 2009), the plaintiffs

brought § 502(a)(2) claims alleging, *inter alia*, that the defendants should not have included

retail mutual funds among a 401(k) plan's investment options because they are "nearly per se

imprudent" investments.  *Id.* at 1114-15.  The court held that because the decision to offer those

investments was made more than six years before the plaintiffs filed their complaint, "the

prudence claims arising out of these decisions are barred by the statute of limitations."  *Id.* at

1120.  *Tibble*'s holding and analysis apply fully here.  Plaintiffs' only response is that *Tibble* is

"inapposite" because the union in the plan allegedly "specifically requested" those options, Pls.

Fid. Opp. 22, but that had nothing to do with when the claims accrued for limitations purposes,

and in fact the *Tibble* court made clear that its limitations analysis was an "independent basis"

for rejecting the imprudence claims.  639 F. Supp. 2d at 1119.

In *Young v. GM Investment Management Corp.*, 550 F. Supp. 2d 416, 418 (S.D.N.Y.

2008), the plaintiffs likewise brought § 502(a)(2) claims alleging that their 401(k) plan should

not have offered mutual funds that "carried fees in excess of similar investment products

available to large, institutional investors."  *Id.* at 418.  The claims were barred by ERISA's three-

year statute of limitations, the court held, because the plaintiffs "had actual knowledge" that the

funds were offered as investment options, and were notified of the fees associated with the funds.

*Id.* at 420.  Here, not only did the relevant investment decisions come more than six years before

plaintiffs filed their complaint, but the excessive-fee claims also—as in *Young*—accrued in full

view of plan participants, who were notified of all investment options and their associated fees

and expenses through prospectus disclosures.  Plaintiffs' only basis for distinguishing *Young* is

that the Second Circuit affirmed the district court on different grounds.  Pls. Fid. Opp. 21.  But

the Second Circuit expressly "d[id] not reach the question" of timeliness, *Young v. GM Inv.*

*Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009), and its conclusion that the case could be easily

resolved on different grounds hardly disapproves the district court's analysis.

Apart from their failed efforts to distinguish *Tibble* and *Young*, plaintiffs' only timeliness

defense is that defendants "owed continuing duties to monitor" the options offered by the Plan.

Pls. Fid. Opp. 23.  On plaintiffs' theory, each day defendants failed to remove retail mutual funds

from the investment lineup or to change the asset-based fee system amounted to a new fiduciary

breach.  *Id.*  The Third Circuit has expressly rejected that "continuing violation" theory under ERISA.  *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir. 2007) ("we decline to adopt a 'continuing violation theory' whereby a new cause of action would accrue upon each underpayment of benefits owed under the plan"); *see Keen v. Lockheed Martin Corp.*, 486 F. Supp. 2d 481, 494 (E.D. Pa. 2007) ("To protect the purposes of the statute of limitations, the Third Circuit has rejected the 'continuing violation theory' in ERISA cases."); *Dupont v. Sklarsky*, 2009 U.S. Dist. LEXIS 23056, at *24 n.3 (D.N.J. 2009) (same).  The alleged fiduciary decisions predicating plaintiffs' claims plainly predated the limitations period, and defendants did not newly breach any fiduciary duty each day they adhered to those decisions.

Plaintiffs' claims are time-barred, and all counts of the Complaint should therefore be dismissed.[7]

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.

---

[7]     Plaintiffs argue that it would be unfair to deprive later-arriving plan participants of fiduciary-breach claims, Pls. Fid. Opp. 23, but those claims belong *to the plan*, *see* 29 U.S.C. § 1109(a), even though individual participants may bring them on the plan's behalf, *see LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1026 (2008) (ERISA's fiduciary breach cause of action "does not provide a remedy for individual injuries distinct from plan injuries").  Because the plan had notice (through its participants) of the claims in 1993, its claims expired in 1999, so participants can no longer sue on them.

Dated:  December 22, 2009

Respectfully submitted,

HANGLEY ARONCHICK SEGAL & PUDLIN

By: /s/_____

John S. Summers (PA ID No. 41854)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
Fax:  (215) 568-0300

*Counsel for Defendants FMR, LLC, Fidelity
Management Trust Company, Fidelity Management
& Research Company, and Fidelity Investments
Institutional Operations Company, Inc.*

*Of Counsel*:
Robert N. Eccles
Brian D. Boyle
Shannon M. Barrett
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Fax:  (202) 383-5414

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December 2009, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to the following attorneys of record:

Jerome J. Schlichter
Troy A. Doles
Schlicter, Bogard & Denton
100 South 4th Street, Suite 900
St. Louis, MO  63102

*Counsel for Plaintiffs*

Joseph J. Costello
Brian T. Ortelere
Azeez Hayne
Emily Bieber
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19101-2921

*Counsel for the Unisys Defendants*

Theodore H. Jobes
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103

*Counsel for Plaintiffs*

Robert Eccles
Shannon Barrett
Stephen Brody
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

*Counsel for Defendants Fidelity Management Trust Company, Fidelity Management & Research Company, and Fidelity Investments Institutional Operations Company, Inc.*

/s/ _____

John S. Summers