## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK RENFRO, et al.,** | : | |
| **Plaintiffs**, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **UNISYS CORPORATION, et al.,** | : | **No. 07-2098** |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                                    **April 26, 2010**

Plaintiffs, Mark Renfro and Gerald Lustig, allege on behalf of a putative class that various defendants violated fiduciary duties imposed upon them by the federal Employee Retirement Income Security Act ("ERISA").  Plaintiffs claim that Defendants caused them to pay excessive fees for investments in their retirement savings plan.  Two motions are currently before the Court:  a motion to dismiss filed by one set of Defendants and a motion to dismiss or in the alternative for summary judgment filed by another set of Defendants.  For the reasons explained below, both motions will be granted.

## I.      BACKGROUND

Unisys Corporation ("Unisys") is engaged in the business of information technology consulting.  (Sec. Am. Compl. ¶ 5.)  Unisys sponsors the Unisys Corporation Savings Plan (the "Plan"), a defined contribution savings plan (commonly referred to as a 401(k) plan) in which employees can contribute a portion of their earnings to an individual account.  (*Id.* at ¶¶ 5, 33.)  Employees contributing to these accounts receive certain tax advantages and partial matching contributions from Unisys.  (*Id.* at ¶ 34.)  Each participant's account is credited with the participant's

contributions, the participant's share of matching contributions, and the earnings or losses on the investments the participant chose. (*Id.* at ¶ 35.)

Unisys has delegated some of its authority for administration of the Plan to several committees.  Unisys's Board of Directors selects the members of these committees.  Defendants J.P. Buldoc, Matthew J. Espe, Gail D. Fosler, Randal J. Hogan, Clayton M. Jones, Clay B. Lifflander, Theodore E. Martin, Charles B. McQuade, and Lawrence W. Weinbach (collectively the "Individual Defendants") served on the Unisys Board's Finance Committee.  (*Id.* at ¶ 7.)  Plaintiffs allege that this committee and its individual members are "responsible for issuing the investment guidelines to be used by the other Plan fiduciaries in the selection, retention and removal of investment options available in the Plan, and monitoring them to determine whether they are complying with their fiduciary obligations."  (*Id.*)  Plaintiffs allege that the Unisys Corporation Employee Benefits Administrative Committee (the "Administrative Committee") and the Unisys Corporation Savings Plan Manager (the "Plan Manager") are plan administrators under ERISA.  (*Id.* at ¶ 9.)  The Court will refer to all the defendants associated with Unisys collectively as the "Unisys Defendants."

In 1993, Unisys and Fidelity Management Trust Company ("FMTC"), a Massachusetts Corporation, entered into a trust agreement whereby Unisys designated FMTC the trustee of the "Unisys Savings Trust," which holds Plan assets.  (Sec. Am. Compl. at ¶ 14; Fidelity Defs. Mot. to Dismiss Ex. A [Trust Agreement].)  Pursuant to the trust agreement, FMTC agreed to provide a wide variety of services, such as record keeping of participant account balances and activity, participant education and communication, reviews with plan sponsors, and trustee services such as facilitating the monetary inflows and outflows of the Plan. (Sec. Am. Compl. at ¶ 16.) FMTC delegated certain of these tasks to its affiliate, Fidelity Investments Institutional Operations Company, Inc. ("FIIOC").

(*Id.* at ¶ 17.)  Fidelity Management & Research Company ("FMRCo") is the investment adviser for

the mutual fund investment options in the Plan.  (*Id.* at ¶ 19.)  FMTC, FIIOC, and FMRCo are all

subsidiaries of FMR LLC ("FMR") and will be referred to collectively as the "Fidelity Defendants."

The terms of the trust agreement stipulated that the only mutual funds that could be offered to Plan

participants would be those advised by FMRCo., except that Unisys could add additional investment

options with FMTC's consent.  (Sec. Am. Compl. at ¶ 45; Trust Agreement §§ 1(j), 5(b).)[1]

As of 2006, Plan participants could direct their contributions among more than 70 investment

options, including mutual funds, index funds (Sec. Am. Compl. at ¶ 50(I)(58–60, 64–65)),

commingled pools (*Id.* at ¶ 50(I)(64, 69–71)), fixed income funds (*Id.* at ¶ 50(I)(34–35)), and a

money market fund (*Id.* at ¶50(I)(39)).  These funds came with varying degrees of risk, reward

opportunity, and fees.  The funds offered had fees ranging from as little as 0.10% to as high as 1.21%

(*see* Decl. of Michael Lapetina Ex. E [Spartan Index Fund Prospectus]; Sec. Am. Compl. ¶ 50(I)(58),

(60); Decl. of Michael Lapetina Ex. G [Targeted International Equity Funds Prospectus]; Sec. Am.

Compl. ¶ 50(I)(56)).[2]  From 2000 to 2007, the total assets in the Plan exceeded $2 billion with total

participants in the Plan exceeding 30,000, placing it in the largest 1% of all 401(k) plans in the

---

[1] Section 5(b) of the Trust Agreement states, in relevant part: "The Applicable Fiduciary may determine to offer as investment options only (i) mutual funds, (ii) sponsor stock, (iii) notes evidencing loans to Participants in accordance with the terms of the Plan, (iv) investment contracts chosen by the Trustee, (v) Existing Investment Contracts, and (vi) collective investment funds maintained by the Trustee for qualified plans . . . ."  The term "mutual funds" was defined earlier in the agreement as "any investment company advised by [FMRCo] or any of its affiliates."  (Trust Agreement § 1(j).)

[2] The Court takes judicial notice of the fees charged by the various investment options in the Plan under Federal Rule of Evidence 201(b) because prospectuses filed with the Securities and Exchange Commission (SEC) indicate such fees.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (holding that district court may take judicial notice of properly authenticated public disclosure documents filed with the SEC).

United States.  (*Id.* at ¶ 44.)  Nearly $1.9 billion of those Plan assets were held in Fidelity-branded retail mutual funds and all of the assets were held in vehicles managed or operated to some extent by a Fidelity affiliate.  (*Id.*)

Plaintiffs filed a lawsuit in the Central District of California, which was transferred to this Court pursuant to 28 U.S.C. § 1404(a).  Plaintiffs twice amended their complaint.  The operative complaint accuses Fidelity Defendants and Unisys Defendants of breaching ERISA fiduciary duties by causing Plan participants and beneficiaries to pay excessive administrative and investment management fees.  Plaintiffs in particular complain that the Defendants did not take advantage of the Plan's large size to negotiate lower fees or increased services for Plan participants and beneficiaries.

## II.   STANDARD OF REVIEW

### A.   Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.  *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001).  A court should accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted.  *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).  A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id.* (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has recently directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must then make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### B.    Summary Judgment

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  When the moving party does not bear the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable jury to find for it at trial. *Anderson*, 477 U.S. at 248.  In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III.    DISCUSSION

Pursuant to ERISA, certain individuals or entities are deemed to be fiduciaries to an ERISA-covered plan.[3]  Pursuant to 29 U.S.C. § 1002(21)(A), a person is a plan fiduciary

---

[3] The parties do not dispute that the Plan is covered by ERISA.

to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

A fiduciary is required to

discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A)–(B).  If a fiduciary breaches this duty, it can be sued to make the plan whole for the consequences of the breach and for other equitable or remedial relief as the court may deem appropriate.  29 U.S.C. § 1109.

ERISA also contains a co-fiduciary liability provision, which states:

(a) In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

## A.    Fidelity Defendants' Motion to Dismiss

Fidelity Defendants contend that they are not fiduciaries with respect to the selection of Plan

7

investment options and thus cannot be sued for breach of fiduciary duty.  As noted above, an entity is a fiduciary to the extent it exercises any discretionary authority or control over plan management, exercises any authority or control respecting management or disposition of plan assets, or has any discretionary authority or responsibility in the administration of a plan.  29 U.S.C. § 1002(21)(A).

Plaintiffs argue that FMTC has discretionary authority/responsibility in the administration of the Plan because, under section 5(b) of the trust agreement, the only mutual funds the Plan could offer were those advised by FMRCo or those that FMTC approved.  Plaintiffs characterize this as a "veto power" over the selection of Plan investment options that gives FMTC discretionary authority or responsibility in the administration of the plan per 29 U.S.C. § 1002(21)(A)(iii), thereby rendering it an ERISA fiduciary.  (Mem. in Opp'n to Fidelity Mot. at 6 (citing *Tussey v. ABB Inc.*, Civ. A. No. 06-04305, 2008 WL 379666, *6–7 (W.D. Mo. Feb. 11, 2008).[4])

The Court need not reach the question of whether a "veto power" over changes to the investment options is a sufficient grant of discretionary authority or discretionary responsibility in the administration of the Plan to render the veto holder a plan fiduciary under section 1002(21)(A) because there is no such veto power in this case.  The trust agreement set out the rules governing this particular trust, including the rules governing if and how new investment options could be added to the trust.  The agreement did not limit Unisys's ability to establish another trust that would offer Plan participants the opportunity to invest in non-Fidelity mutual funds.  In fact, the language of this trust agreement makes clear that the trust would not be the only one holding plan assets.  The agreement between Unisys and FMTC explicitly notes that Unisys was planning to place some the Plan's assets

---

[4] FMTC was also a defendant in *Tussey*.  In that case, the trust agreement also limited the plan to Fidelity mutual funds unless FMTC approved of the addition of non-Fidelity mutual funds.

in a different trust, for which Cores States was to serve as trustee.  (Trust Agreement at 1.)  Unisys

could have opted to add non-Fidelity mutual funds to the roster of investment options available to

Plan participants without FMTC's consent; it just needed to find an administrator for those options

other than FMTC.  Therefore, it is clear from the face of the trust agreement (a document that forms

the basis of Plaintiffs' claims) that FMTC did not have a "veto power" over the Plan's investment

selection.

Plaintiffs also allege that FMTC is a fiduciary because it exercised discretion over so-called

"float interest" on Plan contributions.  Float interest is the interest earned on Plan contributions from

the time that they are received by FMTC until the time they are credited to participant accounts.

(Mem. in Opp'n to Fidelity Defs.' Mot. to Dismiss at 7.)  Plaintiffs' Second Amended Complaint

alleges that FMTC exercised discretion over the disposition of float interest, which they claim

amounts to an exercise of "authority or control respecting management or disposition of [Plan]

assets" under 29 U.S.C. § 1002(21)(A)(i).[5]

Even if FMTC is a fiduciary with respect to float interest, that does not render it a fiduciary

with respect to investment selections, the gravamen of Plaintiffs' Second Amended Complaint.  A

party is only liable under section 1109 for breach of fiduciary duty for conduct taken in its role as

a fiduciary.  *See Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000).  Since the decision about how

---

[5] The Department of Labor (DOL), in interpreting a different section of ERISA, has stated
that float interest is a Plan asset.  *See* DOL Adv. Op. 93-24A (Sept. 13, 1993); DOL Field
Assistance Bulletin 2002-3 (Nov. 5, 2002).  In these opinions, the DOL was addressing a
different section of ERISA, 29 U.S.C. § 1106(b)(1), which states that, "[a] fiduciary with respect
to a plan shall not – (1) deal with the assets of the plan in his own interest or for his own
account[.]"  The DOL did, however, express its opinion that a service provider could negotiate to
retain float interest as part of its compensation if certain disclosures were made.  *See* DOL Adv.
Op. 93-24A (Sept. 13, 1993); DOL Field Assistance Bulletin 2002-3 (Nov. 5, 2002).

float interest should be dealt with is unrelated to the selection of investment options for the Plan, fiduciary status with respect to the former cannot be the predicate of liability for the latter. Furthermore, despite Plaintiffs' contentions in their briefs and at oral argument, the operative complaint (Plaintiffs' third such attempt in this case) does not even accuse FMTC of *retaining* float interest, but merely alleges that it *exercised authority* over float interest, a claim which Fidelity Defendants deny.  (Sec. Am. Compl. ¶¶ 15, 83.)

Because the Plaintiffs have pointed the Court to no sound basis on which to conclude that FMTC was a functional fiduciary with respect to investment selection, the Court finds that Plaintiffs' Second Amended Complaint fails to state a claim against FMTC.  Since Plaintiffs' theory of liability against the other Fidelity Defendants is premised on their exercise of authority delegated to them by FMTC, the Court concludes that the fiduciary duty claims against all Fidelity Defendants must be dismissed.

**B.**     **Unisys Defendants' Motion to Dismiss, or in the alternative for Summary Judgment**

The Unisys Defendants ask the Court to either to dismiss the claims against them or to grant summary judgment in their favor on the ground that any losses Plaintiffs suffered were a result of their own investment choices, for which Unisys Defendants are not responsible.

*1.     Motion to Dismiss*

This Court finds that the Plan "offered a sufficient mix of investments for their participants" and that no rational trier of fact could find, on the basis of the facts alleged in the operative complaint, that the Unisys Defendants breached an ERISA fiduciary duty by offering this particular array of investment vehicles.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).  This

10

Court finds the Seventh Circuit's analysis in *Hecker* helpful.  In that case, the plan offered 23 mutual funds with fees ranging from .07% to just over 1%.[6]  *Id.*  Plaintiffs' Second Amended Complaint lists the more than 70 funds offered by the Plan.  The fees associated with these investment options were disclosed to plan participants via prospectuses and ranged from 0.1% for the Spartan Index Fund to 1.21% for the Southeast Asia Fund.  As the Seventh Circuit noted in *Hecker*, a plan fiduciary need not select the cheapest fund available.  *Hecker*, 556 F.3d at 586.  Rather, a plan fiduciary need only act solely in the interest of plan participants and beneficiaries, and select funds "with the care, skill, prudence, and diligence" of a prudent person acting in a similar role.  29 U.S.C. § 1104(a)(1).  There is nothing about the slate of investment options the Plan offered that suggests the Unisys Defendants did not meet the requisite standard of care.  The Plan offered participants a number of investment options with varying fees, risks, and potential rewards.  These options included commingled pools, index funds, bond funds, funds representing various parts of the global economy, and a money market fund.  The fees charged by these funds were disclosed to investors who could choose from among the investment options to create a portfolio tailored to meet their investment objectives.  Like the investment options offered in *Hecker*, the Fidelity funds offered in the Unisys Plan "were also offered to investors in the general public, and so the expense ratios necessarily were set against the backdrop of market competition."  *Hecker*, 556 F.3d at 586.

As the *Hecker* court noted, "nothing in ERISA requires every fiduciary to scour the market

---

[6] The plan in *Hecker* also offered participants access to some 2500 other funds via BrokerageLink, a "look-through investment vehicle."  *See Hecker*, 556 F.3d at 590; 29 C.F.R. § 2550.404c-1(b)(3)(ii).  This Court finds it immaterial that the Unisys Plan at issue in this case did not offer such a look-through investment vehicle.  The *Hecker* court in no way indicated that fiduciaries to an ERISA plan breach their duty when they offer less than a few thousand investment options to plan participants.  In fact, the DOL regulations only require that a plan offer *three* investment alternatives.  *Id.* § 2550.404c-1(b)(3)(i)(B).

11

to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Id.* ERISA does not require fiduciaries to get the best deal imaginable for the Plan; it requires them to act carefully, skillfully, prudently, diligently, and solely in the interest of participants and beneficiaries. While this is not a light duty, it does not support a lawsuit that simply claims the fiduciaries could have done better had they worked harder to leverage their market power.

ERISA does not require that Unisys establish a retirement savings plan. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits."). Yet offering such a plan and making contributions to participants' accounts is one way to recruit and retain quality employees. Having made the decision to offer such a plan, Unisys had no incentive to waste the money that it is contributing to the plan by directing a large portion of it to a plan service provider rather than to the workers for whose benefit the plan was established. Sophisticated workers, seeing their compensation unnecessarily siphoned off to a plan administrator, would demand changes and possibly gravitate to other employers whose savvier behavior would ensure that workers took home a greater compensation package. Thus, it would seem that plan sponsors, when negotiating with potential trustees, would seek out the best deal possible for plan participants and would negotiate lower investment fees or administrative fees based on their market power if possible. Labor market forces are better positioned than courts to determine if plan sponsors can use the size of their plan as a bargaining chip to elicit lower prices or better services for plan participants.

This is not to say that a plan sponsor cannot commit a fiduciary breach in selecting a plan administrator. Incentives are not substitutes for laws. However, the fact that Unisys's incentive was in conflict with FMTC's suggests that their agreement was an arm's length bargain and therefore

12

needs less judicial oversight to ensure fairness to plan participants and beneficiaries.  Thus, a court is justified in being skeptical about the plausibility of a claim that the plan sponsor breached its fiduciary duty when it negotiated a trust agreement providing plan participants and fiduciaries with investment options that are not unreasonable on their face.  In this case, the Court finds that the operative complaint fails to state a plausible claim that Unisys Defendants breached their ERISA fiduciary duties.

Plaintiffs argue that looking only at investment fees when deciding a motion to dismiss creates a perverse incentive, allowing Plan fiduciaries to offer excessively expensive funds but escape liability by offering a single low-cost fund.  Whatever the merits of this concern, the Court is not faced with such a scenario here.  The Unisys Plan did not offer a mere token low-cost fund. Plan participants were offered three "Spartan Index Funds" with fees below 0.2%.  (Spartan Index Fund Prospectus.)  The Plan also allowed participants to invest in Fidelity's U.S. Bond Index Fund, which charged a fee of 0.32%.  (Decl. of Michael Lapetina Ex. C [Bond Index Prospectus].)  The Plan's investment menu thus had a fair distribution of fees, and not a mere token low-cost investment.

Plaintiffs also take issue with Unisys Defendants' failure to disclose to them what they described at oral argument as "revenue sharing"—the distribution among various Fidelity entities of fees drawn from the Plan's investment options.  This Court fails to see the import of any such alleged system of revenue sharing.  Plan participants were made aware of the fees they would pay for allocating their Plan contributions to particular funds.  To whom that money ultimately flowed would seem irrelevant to a participant once it left his wallet. *See Hecker*, 556 F.3d at 586 ("The total fee, not the internal, post-collection distribution of the fee, is the critical figure for someone

13

interested in the cost of including a certain investment in her portfolio and the net value of that investment.")  Therefore, Unisys Defendants failure to disclose information about revenue sharing among the Fidelity Defendants cannot form the basis of an ERISA breach of fiduciary duty claim.

Plaintiffs' Second Amended Complaint fails to state a plausible claim for relief and therefore will be dismissed.[7]

### 2.    *Motion for Summary Judgment*

In the alternative, Unisys Defendants seek summary judgment, contending that indisputable facts demonstrate that any losses allegedly suffered by Plaintiffs were the result of their individual investment decisions.  ERISA provides that, where a plan participant controls the assets in his account, "no person who is otherwise a fiduciary shall be liable . . . for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control . . . ."  29 U.S.C. § 1104(c)(1)(A)(ii).  This Court will follow the *Hecker* court's example and examine Unisys Defendants' section 1104(c) claims in addition to their section 1104(a) claims.  *See Hecker*, 556 F.3d at 587.

Section 1104(c) provides an affirmative defense upon which Defendants have the burden of proof.  *In re Unisys Sav. Plan*, 74 F.3d 420, 446 (3d Cir. 1996).  In order to invoke this defense, the Plan must provide a participant or beneficiary (1) an opportunity to exercise control over assets in his individual account, and (2) an opportunity to choose from a broad range of investment alternatives.  29 C.F.R. § 2550.404c-1(b)(1).  The DOL has broken these rules down further,

---

[7] Plaintiffs argue that without regard to their prior allegations, FMTC and FIIOC are liable as co-fiduciaries under 29 U.S.C. § 1105(a)(3).  Because the Court finds that Unisys did not breach its fiduciary duty in offering Plan participants the investment options it did, there is no need to address the issue of co-fiduciary liability.

requiring, *inter alia*, that the plan afford participants an opportunity to give investment instructions to an identified plan fiduciary, give participants sufficient information to make informed decisions, and offer participants a choice of at least three diversified investment alternatives with materially different risk and return characteristics. *Id.* § 2550.404c-1(b)(2)–(3).  The DOL regulations set forth nine criteria that must be met before the participant may be considered to have sufficient investment information. *Id.* § 2550.404c-1(b)(2)(i)(B)(1)(i)–(ix).  As in *Hecker*, this Court "see[s] no plausible allegation that the Plan[] do[es] not comply with § 1104(c)."  *Hecker*, 556 F.3d at 589.  The Court is satisfied that Unisys Defendants have met their burden to demonstrate compliance with the regulations.  *See* Unisys Mot. Ex. 3.

Plaintiffs contend that even if the Unisys Plan meets the definition of section 1104(c), Unisys Defendants cannot invoke the section 1104(c) defense.  They point in particular to the preamble to the DOL's regulations, which states that "the act of designating investment alternatives . . . in an ERISA section [1104(c)] plan is a fiduciary function to which the limitation on liability provided by section [1104(c)] is not applicable."  57 Fed. Reg. 46906-01, 46922, 1992 WL 277875, at *34 (Oct. 13, 1992).  *See also DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007) ("[A] fiduciary must initially determine, and continue to monitor, the prudence of *each* investment option available to plan participants. . . . [A] fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may *or may not* elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio."); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 321–22 (5th Cir. 2007) (Reavley, J., dissenting) ("All commentators" and "majority of courts" agree that § 1104(c) does not excuse fiduciary from duty to "prudently select and monitor investment options").

15

Contrary to Plaintiffs' authority, the law in the Third Circuit is that section 1104(c) applies even when a fiduciary breaches its duty by selecting an inappropriate fund for the Plan. *See In re Unisys Sav. Plan*, 74 F.3d at 445 (holding that a fiduciary who is shown to have breached its duty in making an investment decision can argue that it is absolved from liability because the alleged loss resulted from the plan participant's exercise of control).

Plaintiffs counter that *In re Unisys Savings Plan* is no longer good law, since that case dealt with conduct that predated the DOL's published interpretation. *See In re Unisys Sav. Plan*, 74 F.3d at 444 n.21 ("As the regulation was not in effect when the transactions at issue occurred, it does not apply or guide our analysis in this case."). According to Plaintiffs, though the Third Circuit could interpret conduct that predated the regulations without looking to the DOL's interpretation for guidance, courts examining conduct that followed the effective date for the regulations[8] should defer to the agency's interpretation of the statute pursuant to *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

The DOL's regulations are not entitled to *Chevron* deference because the *In re Unisys Savings Plan* court's decision was based on the "plain language" of the statute. *In re Unisys Sav. Plan*, 74 F.3d at 445. Where Congress has issued a clear directive and the statutory language is not ambiguous, full blown *Chevron*-deference is not applicable. *Chevron*, 467 U.S. at 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). The *In re Unisys Savings Plan* court noted that ERISA's "unqualified instruction that a fiduciary is excused from liability for 'any

---

[8] Generally, the regulation "is effective with respect to transactions occurring on or after the first day of the second plan year beginning on or after October 13, 1992." 29 C.F.R. § 2250.404c-1(g)(1).

16

loss' which 'results from [a] participant's or [a] beneficiary's exercise of control' *clearly indicates* that a fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated." 74 F.3d at 445 (alteration in original; emphasis added). This Court therefore need not defer to the agency's interpretation of the statute and therefore will apply the holding of *In re Unisys Savings Plan* that a fiduciary may invoke section 1104(c) even where it has allegedly selected an inappropriate investment for the plan.[9]

In summary, even assuming for argument's sake that Unisys Defendants breached a fiduciary duty by selecting overly expensive funds, Unisys is entitled to summary judgment. As noted above, the Plan offered participants a "broad range of investment alternatives." 29 C.F.R. §2550.404c-1(b)(3). "If particular participants lost money or did not earn as much as they would have liked, that disappointing outcome was attributable to their individual choices." *Hecker*, 556 F.3d at 590.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendants' motions and dismiss Plaintiffs' Second Amended Complaint. An appropriate order will be docketed separately.

---

[9] This interpretation of the statute is also supported by legislative history. *See* H. R. Rep. No. 93-1280 (1978) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 5038, 5085–86 ("If the participant instructs the plan trustee to invest the balance of his account in, e.g., a single stock, the trustee is not to be liable for any loss because of a failure to diversify *or because the investment does not meet the prudent man standards*.") (emphasis added).

17