```
 1                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF PENNSYLVANIA
 2
     MARK RENFRO, et al,           )
 3                                 )
                  Plaintiffs,      )  2:07-cv-02098-BMS
 4                                 )
                  vs.              )  Philadelphia, PA
 5                                 )  April 1, 2010
     UNISYS CORPORATION, et al,    )
 6                                 )
                  Defendants.      )
 7
 8               TRANSCRIPT OF ORAL ARGUMENT
              BEFORE THE HONORABLE BERLE M. SCHILLER
 9                 UNITED STATES DISTRICT JUDGE
10   APPEARANCES:
11   For the Plaintiffs:      JEROME J. SCHLICHTER, ESQ.
                              HEATHER LEA, ESQ.
12                            MICHAEL A. WOLFF, ESQ.
                              TROY A. DOLES, ESQ.
13                            SCHLICHTER BOGARD & DENTON
                              100 South Fourth Street
14                            Suite 900
                              St. Louis, MO 63102
15
                              WILLIAM H. STASSEN, ESQ.
16                            AZEEZ HAYNE, ESQ.
                              FOX, ROTHSCHILD, O'BRIEN &
17                                FRANKEL, LLP
                              2000 Market Street
18                            10th Floor
                              Philadelphia, PA 19103
19
                              WILLIAM A. WHITE, ESQ.
20                            HILL FARRER & BURRILL
                              300 S. Grand Avenue
21                            37th Floor
                              Los Angeles, CA 90071
22
23
24
25
```

```
 1   APPEARANCES:  (Continued)

 2   For the Defendants:        BRIAN T. ORELERE, ESQ.
                                JOSEPH J. COSTELLO, ESQ.
 3                              MORGAN LEWIS & BOCKIUS LLP
                                1701 Market Street
 4                              Philadelphia, PA 19103

 5                              JOSEPH A. TEKLITS, ESQ.
                                UNISYS CORPORATION
 6                              P.O. Box 500
                                M.S. C2NW 14
 7                              Blue Bell, PA 19424

 8                              ROBERT N. ECCLES, ESQ.
                                O'MELVENY & MYERS LLP
 9                              1625 I Street, N.W.
                                Washington, DC 20006
10
                                JOHN S. SUMMERS, ESQ.
11                              HANGLEY ARONCHICK SEGAL & PUDLIN
                                One Logan Square
12                              27th Floor
                                Philadelphia, PA 19103
13

14   AUDIO OPERATOR:            CHRIS CAMPOLI

15

16

17   Proceedings recorded by electronic sound recording.

18

19

20

21

22

23            Veritext National Court Reporting Company
                            Mid-Atlantic Region
24            1801 Market Street - Suite 1800
                         Philadelphia, PA 19103
25                          888-777-6690
```

1          THE COURT:  This is the case of Renfro vs. Unisys

2    Corp, number 07-2098 and we're having oral argument on the

3    various motions that have been filed, motions to dismiss

4    and/or summary judgment motions, etcetera.

5          Okay.  Let's first of all have counsel introduce

6    themselves and their clients so I know where everyone is.  Go

7    ahead.

8          MR. STASSEN:  Do you want it from the podium, Your

9    Honor, or from here?

10          THE COURT:  You don't have to stand.  You can sit;

11    you can do whatever, as long as I meet everybody.

12          MR. STASSEN:  That's fine.

13          THE COURT:  And the name goes on the record.

14          MR. STASSEN:  Your Honor, Bill Stassen from Fox

15    Rothschild.  I'm here introducing Michael Wolff, from

16    Schlichter Bogard and Denton who will be doing argument for

17    the plaintiff's side.

18          THE COURT:  And where is that?  What firm is that?

19          MR. WOLFF:  Schlichter Bogard and Denton is the

20    plaintiff's firm in St. Louis, Your Honor.

21          THE COURT:  St. Louis.

22          MR. WOLFF:  Yes, sir.

23          THE COURT:  Okay.

24          MR. DOLES:  Good afternoon, Your Honor.  My name is

25    Troy Doles.  I'm also with the law firm of Schlichter Bogard &

1    Denton.

2            THE COURT:  You're flanked by Schlichter.

3            MR. STASSEN:  I am.  Yes, Your Honor.

4            THE COURT:  Okay.

5            MS. LEA:  Heather Lea, also from Schlichter Bogard &

6    Denton.

7            THE COURT:  Wow.  You know, we have some good

8    restaurants here in Philadelphia.  You ought to take advantage

9    of it while you're here.

10           MR. ORTELERE:  It's true.  Good afternoon, Your

11   Honor.  Brian Ortelere from Morgan Lewis for the Unisys

12   defendants and I'm joined by my colleague, Azeez Hayne as well

13   as the client, Joseph Teklitz, there with the red tie, and my

14   partner Joe Costello.

15           THE COURT:  With the red tie.

16           MR. ORTELERE:  The red tie, in-house counsel for

17   Unisys Corporation.  I'm sorry; in the white shirt.

18           THE COURT:  Wait a minute, you're in-house counsel?

19   Come on up here, you're a lawyer.  We have an extra chair.  I

20   like the lawyers sitting right up there, that way you can pass

21   notes and don't get upset if they don't raise a point that you

22   want them to raise.

23           MR. ORTELERE:  He thinks I've got it covered, Your

24   Honor, but we'll see.

25           THE COURT:  Well see.

1           MR. SUMMERS:  Good morning, Your Honor, from Hangley

2    Aronchick, representing the Fidelity defendants.  With me is

3    Bob Eccles from the O'Melveny & Myers Firm.  He's going to be

4    handling the argument.  He's from Washington, DC.

5           THE COURT:  All right.

6           MR. SUMMERS:  We're joined by in-house counsel Mark

7    Jenson with the maroon tie.

8           THE COURT:  Well, there's only one person -- one guy

9    left over there.  He could be wearing anything.

10           MR. SUMMERS:  And Jody Forscheimer (ph.), who is not

11    wearing a tie.

12           THE COURT:  I didn't catch her name.

13           MR. SUMMERS:  Jody Forscheimer.

14           THE COURT:  Okay.  Also from Fidelity and also

15    litigation counsel.

16           THE COURT:  Okay.  So we have two in-house counsel

17    for Fidelity and we have in-house counsel for Unisys.

18           UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

19           THE COURT:  And you represent the plaintiffs.  All

20    right.  Sit down.  Here's the way I want to go about this.

21    What I'm going to do is I'm going to ask some questions to

22    each of the parties and after you answer those questions I'm

23    going to ask questions of the other party.  And then when all

24    that's done I'm going to have you respond to each other's

25    answers.  All right.  Because that way I can keep track of

1    where we're going.

2            So let me start off by asking some questions of

3    Fidelity.  And this, again, you'll see that some of these

4    questions will be answered by any of you later on.

5            My first question, a timely question, how does the

6    Supreme Court's decision this week in Jones vs. Harris

7    Associates impact this case, if at all?

8            MR. ECCLES:  Sure, Your Honor.  Would you prefer I

9    use the podium?

10           THE COURT:  Introduce yourself so when the mic picks

11   it up it knows who's talking.

12           MR. ECCLES:  Sure.  Should I go up there?

13           THE COURT:  Whatever you feel comfortable with.

14           MR. ECCLES:  The mic isn't good for me, I think.  So

15   I'll try it.

16           THE COURT:  All right.

17           MR. ECCLES:  I'm Bob Eccles for Fidelity, Your Honor.

18   The Jones vs. Harris decision, the short answer, of course, is

19   a different statute with a different standard so it's not a

20   controlling decision in this case at all.

21           That said, we think there's at least a couple things,

22   and maybe more, that the Court said that are relevant and

23   helpful to us in the case.  One and most prominently is the

24   Court's unanimous opinion described what was cautious about

25   the role of courts and what are called price setting or rate

1    setting in determining exactly what could be a reasonable fee.

2    And specifically, directed federal courts to give deference to

3    the fiduciaries who had the statutory authority and duty to

4    determine the reasonableness of the fees.  In the mutual fund

5    context, those are the independent directors of the mutual

6    fund board.  And the concern in the mutual fund context, of

7    course, is that they might be too close to the mutual fund

8    advisor and there might be some conflict of interest.

9    Obviously in this situation, where they're complete at arms

10   length between --

11           THE COURT:  That, sort of, anticipates my next

12   question.

13           MR. ECCLES:  Good.

14           THE COURT:  Do the same concerns arise in a case like

15   this where a plan selects an administrator?

16           MR. ECCLES:  I think they're very different concerns

17   and we're a fortiori from that, that would be my argument,

18   it's a stronger point as to us.

19           The other thing the Court said that is of at least

20   interest in this case is it said courts should be wary of

21   "inapt comparisons between mutual funds and other types of

22   investment vehicles."  It didn't say you can never compare one

23   investment vehicle to the other but it said you've got to make

24   sure you're comparing apples to apples, they have different

25   attributes.  It discussed extensively the statutes and

1    regulations governing mutual funds that have a lot of

2    different protections, public disclosure requirements,

3    independent board majority approving fees and so on.  It

4    suggested that all those might lead to different results, that

5    the mutual fund statute that it was construing, the Investment

6    Company Act, didn't insist on absolute fee parody or might be

7    differences.

8              THE COURT:  All right.  Well, before you sit down,

9    you may or may not be the person to answer this from Fidelity.

10   What are the differences between the different investment

11   classes that Fidelity offers?

12             MR. ECCLES:  There are different investment vehicles

13   that Fidelity has offered that's here.  Most of the funds --

14   this plan has, as Your Honor knows from reading the paper,

15   several dozen investment options, on the order of seventy that

16   are specified in the trust agreement.  Most of those are

17   mutual funds.  There are, however, five comingled pools that

18   are managed by the trust company itself, on a collective basis

19   for multiple clients so they're not organized as mutual funds.

20   And of the other mutual funds, some of them are index funds

21   that are a passive strategy.  Most of them are an actively

22   managed strategy and two of them are institutional class with

23   slightly lower fees being charged.  So those -- I hope that's

24   responsive to the Court's question.

25             THE COURT:  It is.  Okay.  Thank you.  My next

1    question to Fidelity, and you'll decide who's going to answer

2    the question, is are you the designated hitter here?

3              MR. ECCLES:  I think I've got this one, Judge.

4              THE COURT:  All right.  If the plan wanted to offer

5    non-Fidelity mutual funds could it have done so?

6              MR. ECCLES:  Oh, absolutely.  No question about that

7    whatsoever.

8              THE COURT:  Was there anything in a trust agreement

9    or the law that would prevent the plan from having more than

10   one administrator?

11             MR. ECCLES:  No.  The plan could have more than one

12   administrator; it could have more than one trustee.  In fact,

13   this plan does -- did when the trust agreement was entered

14   into, have more than one trustee.  If you look at page 1 of

15   the trust agreement, if it's any help to the Court we have a

16   binder that has the trust agreement in it, which Mr. Summers

17   is now holding.  Also, I should say, it has the operative

18   complaint in it because I was going to refer to that and one

19   other document that I'd get to.  But the trust agreement, I

20   think, should be Tab B there.  And if you go to the actual

21   page 1 and look at the whereas clauses, so it's the third or

22   fourth page of the document but it's the one where it says

23   witnesseth and then a bunch of whereas clauses.

24             THE COURT:  All right.  I'm at the whereas clause.

25             MR. ECCLES:  Okay.  The third one says "Whereas the

1    sponsor desires to establish two trusts," and it goes on to

2    say there are two trusts.  There's on that holds certain

3    investment contracts, insurance contracts that's being

4    trusteed by Core States (ph.).

5            THE COURT:  Right.

6            MR. ECCLES:  And there's this one with the remaining

7    assets that's being trusteed by Fidelity Management Trust

8    Company.

9            THE COURT:  So there's nothing in the trust agreement

10   that would prevent --

11           MR. ECCLES:  Yeah, that --

12           THE COURT:  -- the plan from having more than one

13   administrator.

14           MR. ECCLES:  That's absolutely correct.  The plan can

15   select whatever way it wants to do it.

16           THE COURT:  All right.  And I have another question.

17   Plaintiffs are seeking recovery for the plan and not

18   themselves personally.  So what's the problem with them

19   seeking money damages on the plan's behalf?

20           MR. ECCLES:  We haven't raised an issue as to their

21   request for recovery of plan losses.  The argument presented

22   on our motion, to the extent they're seeking from non-

23   fiduciaries and at least two of our four Fidelity entities

24   that have been named are not alleged to be fiduciaries.  So

25   they can't be sued under the provision that authorizes the

1  relief the Court described.  They can only be sued, and it's

2  Count VI that makes this allegation as non-fiduciaries for

3  equitable relief.

4       THE COURT:  All right.  Let me -- that's all I have

5  for Fidelity at the moment.  Let me ask Unisys.

6       MR. ORTELERE:  Hello again, Your Honor.  Brian

7  Ortelere for the Unisys defendants.

8       THE COURT:  All right.  My question to you is,

9  dealing with Section 1104(c), the defense, your Section

10  1104(c) argument seems to pit the Department of Labor's

11  interpretation of that section against the Third Circuit's

12  interpretation in its 1996 Unisys decision.  Is there a way to

13  reconcile those interpretations or do I need to choose between

14  the two if I reach the Section 1104(c) section?

15       MR. ORTELERE:  Well Your Honor correctly points up

16  the tension between the preamble to the regulations where the

17  Department of Labor called into question whether or not a

18  threshold fiduciary breach would be excused under 1104(c).

19  Now the problem Your Honor, of course, is that Unisys, the

20  Third Circuit's ruling, says that the statutory language is

21  plain.  Indeed there's a broad grant of immunity to

22  fiduciaries upon a showing that the participants exercised

23  control over their investments.

24       Now it's important, I think, to note further Your

25  Honor, this is the widely held view of basically all of the

1    courts of appeals that have looked at this issue.  The Third

2    Circuit in Unisys, the Fifth Circuit in Langbecker vs. EDS and

3    the Seventh Circuit in Hecker (ph.).

4            Now drilling down a little bit further --

5            THE COURT:  Well Hecker they did attempt to harmonize

6    the DOL letter as well as 1104(c), didn't they?

7            MR. ORTELERE:  Interestingly, and it's important, in

8    the opinion and response to the petition for rehearing in

9    Hecker, where the secretary of labor came in and raised some

10   questions about the interpretation that the Seventh Circuit

11   gave to 404(c).  What that Court there --

12           THE COURT:  1104(c).

13           MR. ECCLES:  Yes, it's codified at 1104(c) and I'll

14   try to stick with that reference, Your Honor, because I'll

15   only confuse matters if I don't.  But in the opinion on the

16   rehearing petition what the Department of Labor or what the

17   Court of Appeals said to the Department of Labor simply was

18   this lineup, this investment lineup of retail Fidelity funds,

19   and it basically says, "You, the Department of Labor, don't

20   take issue with the fact that this fund lineup is prudent."

21           So what the Seventh Circuit said, in the opinion on

22   rehearing, was that the tension actually was dissipated by the

23   finding at the end of the day that the offering of nothing

24   basically but retail Fidelity mutual funds was there was no

25   problem, there was no threshold fiduciary breach.  And in this

1   instance, Your Honor, because we're basically dealing with the

2   same lineup, there's no need, actually, to resolve that issue

3   because just like the Seventh Circuit found in Deere (ph.)

4   this lineup is reasonable.  So the Court doesn't need to reach

5   the question of whether or not there's this tension between

6   the preamble.

7            And of course in Langbecker, the Fifth Circuit

8   pointed out that that language, the DOL's views, didn't even

9   find its way into the regulation.  They're only worried or

10  they only made this in a comment which, again, given the Third

11  Circuit's ruling in Unisys that the statutory language is

12  absolutely clear, there's really no place for the Department

13  of Labor to weigh in on this question.

14           But I'd like to make one more point, Your Honor, and

15  it's -- maybe it's obscured in our reply brief.  But putting

16  aside, for the moment, the fact that basically all of the

17  courts of appeals agree with the construction that the Third

18  Circuit gave the statute in Unisys, except there's a piece of

19  dicta in a Fourth Circuit opinion footnote.  So if you were to

20  credit that as the holding of the Fourth Circuit it's a three

21  to one split at this point.  But most importantly the Third

22  Circuit has said the language is plain.

23           But again, in footnote 10 to our reply brief we quote

24  the legislative history to 1104(c) and I think it's worth

25  sharing with the Court and here's what footnote 10 says,

1    quoting the legislative history.  "If the participant

2    instructs the plan trustee to invest the full balance of his

3    account in, for example, a single stock, the trustee is not to

4    be liable for any loss because of a failure to diversity or"

5    and the or is critical, "or because the investment does not

6    meet the prudent man standards."

7            Now, to the extent that the Department takes issue

8    with the Third Circuit's ruling, the statutory language has

9    remained constant.  It's not been amended since the Unisys

10   ruling.  And again, the language is plain but there's no need

11   to reach the issue because, again, following Deere, a lineup

12   based solely of basically, although Mr. Eccles pointed out

13   some of the wrinkles here but plaintiff's challenge really is

14   to the use of retail Fidelity mutual funds, but that lineup,

15   according to the Seventh Circuit, and it's made painfully

16   clear or quite explicit in that rehearing petition, that

17   cannot be a breach.  And the Court points out further that the

18   Department of Labor doesn't take issue with that, again in the

19   opinion on rehearing.

20           THE COURT:  Okay.  Thank you.  Let me hear from a

21   plaintiff now.  Who's the -- you are, again?

22           MR. WOLFF:  I'm Michael Wolff, Your Honor.

23           THE COURT:  Okay.  My first question to you is, the

24   core of your complaint seems to be that Unisys was allowing

25   Fidelity to be paid too much to manage the plan.  Why would

1    Unisys do such a thing?  What do they have to gain?

2           MR. WOLFF:  Well Your Honor, it's hard to know,

3    behind the scenes, what gain there might be there.  But if we

4    assume the best of everybody involved in the thing, Unisys was

5    probably neglectful of its duties of loyalty and prudence

6    looking out for the participants.  The money's not coming out

7    of their pocket so they don't care if --

8           THE COURT:  But it's the management.  Don't they have

9    money in that plan also?

10          MR. WOLFF:  They may or they may have a lot more

11   money in executive type plans.  These are the rank and file

12   who are in this plan for the most part.  And they don't know,

13   it's not made explicit in any documents, publicly available

14   documents, how much is being paid to Fidelity out of these

15   mutual fund fees.  And nothing discloses, like we've disclosed

16   in our brief, the fact that Fidelity's getting about six

17   million dollars a year in these fees, that looked at by the

18   objective standards we put up, are grossly excessive.  So

19   giving them the benefit of the doubt, I think the Unisys

20   fiduciaries here just didn't know what they were doing; didn't

21   dig in and it requires some digging in to get from Fidelity

22   how their revenue sharing system works.  And so it just didn't

23   know, and because it's not coming out of their pocket,

24   probably just didn't care.

25          THE COURT:  Are you arguing that every investment

1    option in the plan was overpriced?

2         MR. WOLFF:  At this point in time, Your Honor, we

3    believe that every investment option in the plan was

4    overprice.  The problem is, is that we don't know things like

5    what are the revenue sharing arrangements with each of the

6    different options.  What we do know is that Fidelity has a not

7    very well disclosed revenue sharing system with its products.

8    And what we do know is that every single product in this plan

9    is a Fidelity product.  Therefore we can conclude there is

10   revenue sharing going on in all of them and that alternative

11   investment vehicles designed for large plans, which don't have

12   Fidelity's revenue sharing system, would have been less

13   expensive yet providing the same investment performance.

14        THE COURT:  What about the cheaper index funds that

15   Fidelity says it's offering?

16        MR. WOLFF:  Right.  Now Your Honor it may turn out,

17   as we dig into this, that they are not overpriced and that

18   they are competitive with --

19        THE COURT:  You don't know that when you file the

20   complaint?

21        MR. WOLFF:  You can't tell, Your Honor, because you

22   don't know what's going on with how they're running the thing.

23   Objectively we have an expert, a financial expert, who looks

24   at investment options for plans and he provided, in our

25   Exhibit 4, a chart that showed neatly how the alternatives

1  designed for these large plans would have charged

2  substantially less in fees then all of these investments

3  considered together.

4        THE COURT:  Aren't you complaining that Unisys didn't

5  get the best deal possible?  That's what you're basically

6  saying?  They could have done better but they didn't.

7        MR. WOLFF:  No, Your Honor, and best deal possible

8  would be an impossible standard because there's so many

9  factors that are involved.

10       What we're saying is that they did not get a

11  reasonable deal and there's no question but that ERISA

12  requires that the expenses of administration be reasonable.

13  They say it three times.  And what we're saying is that --

14       THE COURT:  And what is my discretion on deciding

15  what's reasonable, especially after Jones vs. Harris, if in

16  fact it has any bearing at all on this?

17       MR. WOLFF:  I'm sorry; Your Honor.

18       THE COURT:  Go ahead.

19       MR. WOLFF:  Jones vs. Harris has a very strong

20  bearing on this.  That is an Investment Company Act case.

21  That's the statute that regulates mutual funds.

22       THE COURT:  Right.

23       MR. WOLFF:  Advisors have so-called fiduciary duties

24  under that statute.  But as Jones vs. Harris points out, that

25  standard does not include the standard of reasonableness.

1          On the other hand --

2          THE COURT:  But what is my function, as a court?

3          MR. WOLFF:  Your function as the court --

4          THE COURT:  Doesn't that case sort of indicate that I

5     should tread very lightly on trying to second guess the fee

6     structures?

7          MR. WOLFF:  It would if we were suing under the

8     Investment Company Act.  But because ERISA specifically

9     requires that these expenses of administration be reasonably,

10    you do have the duty to oversee these fiduciaries.  And the

11    evidence that's presented by both sides, including experts in

12    the financial arena, evidence of what other plans do and

13    charge, shows you that wow they should have only been charging

14    seventy dollars per participant but with this revenue sharing

15    they were in fact charging two hundred plus dollars per

16    participant, that is unreasonable by any reasonable standard

17    and you, as a judge, would be able to make that determination

18    because that evidence would be clear.

19         THE COURT:  Fidelity defendants argue that they did

20    not have to veto -- they didn't have a veto power over the

21    investment selection because Unisys, and you heard it, could

22    add any mutual funds it wanted to the plan options so long as

23    it got someone else to administer that portion of the plan.

24    What's you're response to that?

25         MR. WOLFF:  But that's just -- they would have to

1    undue -- do away with the entire trust agreement and have a

2    completely different plan.

3            THE COURT:  No, I just read the portion of the front

4    page where they had another administrator do something else.

5            MR. WOLFF:  Right Your Honor, but section 5(b) of the

6    trust agreement says that "The fiduciaries may determine to

7    offer as investment options,"7 and this is on page 5 of the

8    trust agreement.  It's, I think, their fourth red tab.

9            THE COURT:  Go ahead.

10           MR. WOLFF:  The sentence at the bottom, "The

11   applicable fiduciary," which is the Unisys fiduciaries, "may

12   determine to offer as investment options only mutual funds,

13   defined term."  That term is defined as only Fidelity mutual

14   funds, sponsored stock, which is the company stock fund and

15   then these other investments.  And at the very end of that

16   section, at the bottom of that paragraph on page 6, "The

17   applicable fiduciary, Unisys, may add additional options," not

18   Fidelity options, "with the consent of the trustee only and

19   upon mutual amendment of this trust and the schedules."

20           So that --

21           THE COURT:  Are you saying that I can't rely on the

22   argument they made?  That they can add another trustee here?

23           MR. WOLFF:  I think that a specific provision in the

24   trust prompts a recital and he's pointing to the whereas

25   clause in recitals and I think that when it's this specific in

1    the section of the trust agreement that specifically addresses

2    Fidelity and the investments in the plan, that that's going to

3    trump any other more general provisions.

4              THE COURT:  All right.  With respect to float

5    interest, does your complaint accuse Fidelity of retaining

6    float interest?

7              MR. WOLFF:  Yes.  Well, yes Your Honor, it does say

8    Fidelity was in charge of the plan assets and got float from

9    that, which is the interest earned while funds are coming in

10   or going out.

11             THE COURT:  So you're saying they kept the money?

12             MR. WOLFF:  Yes.

13             THE COURT:  Is this a separate claim or is it just an

14   attempt to impute fiduciary status to Fidelity?

15             MR. WOLFF:  It is primarily the latter but it

16   includes the former because Fidelity will make the argument

17   that float is part of our compensation and we're arguing --

18             THE COURT:  Don't worry about what their argument is.

19   I want to know what your argument is.

20             MR. WOLFF:  Right.  Well, there's argument under

21   ERISA that a fiduciary can retain float as part of its

22   compensation.  It has to be disclosed and all of that.

23             THE COURT:  Right.

24             MR. WOLFF:  And the main point of this lawsuit is

25   that Fidelity's compensation was excessive.  So whatever they

1    claim was compensation from float would have to be --

2         THE COURT:  But isn't that a separate claim?  It's

3    not part of your main claim in this case, is it?  You just,

4    kind of, glommed on to that as another item --

5         MR. WOLFF:  Glomming on or sliding in --

6         THE COURT:  -- you can have a separate cause of

7    action against them for float interest retention, can't you?

8         MR. WOLFF:  You're correct, Your Honor.  It could be

9    a separate count.  It could be a separate action and it's not

10   stated as that.  It's part of the general, excessive

11   compensation clause.

12        THE COURT:  That's what I wanted to know.

13        MR. WOLFF:  Yes.

14        THE COURT:  All right.  Now we'll go back to my

15   original point which is, I'm going to go down the line,

16   Fidelity you can respond to any of the comments that have been

17   made here.

18        MR. ECCLES:  Bob Eccles for Fidelity, Your Honor.

19   I'm going to respond to, I believe, four of the plaintiff's

20   comments.  And if I've done this right, which is always in

21   doubt, I'm going to do them in reverse order here.

22        THE COURT:  Any way you want.

23        MR. ECCLES:  The last one was float and I think Your

24   Honor put your finger on the two points I would make.  First,

25   it's not alleged anywhere in the complaint that Fidelity kept

1    float interest.  It's alleged in paragraph 83, excuse me, of

2    the second amended complaint that Fidelity failed to disclose

3    how float interest was earned on plan contributions and how

4    that float interest attributed to Fidelity's income.  But they

5    never said we kept it, they said we failed to disclose it.  Of

6    course, if you don't keep it there's no disclosure duty if

7    you're not claiming it's part of our compensation, which we

8    are not because we don't keep it.  This is not just a lawyer's

9    technical point, Your Honor.  We've done a couple of rounds

10   through cases similar like this.  Everybody knows what the

11   Fidelity float system is.  There ought to be a pleading, which

12   I don't think can be made in good faith, that Fidelity kept

13   the float interest, because it did not.

14        But Your Honor's other point, which was elegantly

15   phrased as glomming on, I agree with --

16        THE COURT:  I never heard that as elegant.

17        MR. ECCLES:  Completely.  I thought it was elegant,

18   Your Honor.  It's a sideshow claim in any event.  It doesn't

19   have anything to do with the main claim which was -- which is

20   all about did you pick -- did Unisys pick the correct

21   investment options.  Float tells you nothing about fiduciary

22   statutes as to that one way or another.

23        Now the veto power argument is -- I need to go into a

24   little more depth on that, I take it the Court will indulge me

25   slightly.

1          The argument they're making on veto power is in the

2    trust agreement, it's the last sentence of 5(b).  And what it

3    says, and if we've done it right we've marked it with one of

4    those --

5          THE COURT:  The applicable fiduciary may add

6    additional investment option --

7          MR. ECCLES:  Right.

8          THE COURT:  -- with the consent of the trustee and

9    upon mutual amendment of this trust agreement and the

10   schedules thereto to reflect such additions."

11         MR. ECCLES:  Right.  Now they say that's a veto

12   power.  There are four reasons why that's wrong, only one of

13   which I've mentioned so far.  So if I could go back over it.

14         First, it makes nonsense out of the rest of section 5

15   to read it as a veto power.  You start back on the prior page,

16   5(a), The trustee," that's FMTC, Fidelity Management Trust

17   Company, "shall have no responsibility for the selection of

18   investment options under the trust."

19         5(b), "The applicable fiduciary shall direct the

20   trustee as to what investment options the trust shall be

21   invested in."  And then the next to last sentence, "The

22   investment options initially selected by the applicable

23   fiduciary are identified on schedules A through C."  So

24   everything up to that is extraordinarily clear of who's doing

25   the selecting, Unisys, the applicable fiduciary, it's

1   appointed committee actually, and who's not, which is Fidelity

2   the trustee.

3          What they seem to be saying is, appropriate today,

4   Your Honor, is April fools.  Everything before here was

5   kidding; we didn't mean any of that.  Now we mean the trustee

6   is actually doing the selecting and that's no way to read that

7   provision as a whole.  That's reason number one.

8          Reason number two, which we briefed so I won't go

9   into great detail, is even on its own terms reading that last

10  sentence as a veto power doesn't make sense.  They say it's a

11  veto over addition or deletion but it plainly doesn't say

12  anything about deletion, just by its words.  Fidelity was

13  trying to grab a veto power here.  It would sure want to

14  prevent deletion of investment options that we're paying

15  revenues.  And there isn't any reason you would read the

16  provision that way, it doesn't make sense to read it as a veto

17  power.

18         Now the third thing -- the third argument is the one

19  I made before and counsel has responded to it well but the

20  trust agreement prohibits it, no it doesn't.  If you step back

21  what this trust agreement does is it regulates this trust.

22  The trust -- Fidelity has agreed to take it on as trustee and

23  perform the record keeping, which are basic administrative

24  services for the plan.

25         There's nothing in this trust agreement that

1   regulates what else the plan can offer as an investment

2   option, what other trustee, what other administrator.  It's

3   largely the point I made before but this document doesn't

4   control anything else other than this contractual trust

5   agreement.  You read it that way, which is obviously the way

6   it's intended given the whereas clause which says there's a

7   separate -- another additional trust.  And you see that this

8   is a just a standard contractual provision.  Fidelity's got

9   certain duties under this contract this trust agreement.  And

10  it's saying if you're going to add to those duties you may but

11  not without our consent.  It's a classic contractual

12  provision.

13          And then Your Honor, a point we haven't made as

14  strongly as I hope I will, which I think is legally

15  dispositive, I think the other argument that's dispositive is

16  how you read this agreement, but that is that even if

17  everything they say about this last sentence were absolutely

18  correct, it wouldn't mean that FMTC was a fiduciary, even if

19  it had this veto power.

20          The last document in this binder, and I won't go

21  through it, is an advisory opinion letter from the Department

22  of Labor issued in 1997 through an attorney for AETNA and it

23  involves an arrangement quite similar, not identical but quite

24  similar to this.  AETNA is a record keeper for 401K plans, it

25  offers a menu of different fund companies funds to its plan

1  clients and it has a power much greater than anything they

2  claim Fidelity has here, which was the power to actually

3  change the funds on its menu.  They can say you can't have

4  that one, now you've got this one instead.  That would

5  normally seem like a complete fiduciary power to completely

6  pick the investment options.  But they have a sixty-day notice

7  requirement and the client always has the ability to walk.  It

8  can terminate the arrangement, although the letter reflects

9  everybody assumes they'd work it out, which is the way the

10  world actually works.  But the Department --

11       THE COURT:  Except in this case.

12       MR. ECCLES:  No, it would work that way if the issue

13  ever came up.  These are very arms length relationships.

14       That said Your Honor, what the Department of Labor

15  relies on is the fact that the plans -- AETNA says there's a

16  new investment option, you can't have the old one any more.

17  The fact that the plans have the right to terminate the

18  arrangement is enough to take away the fiduciary decision

19  making power.  AETNA is not a fiduciary for these purposes.

20  The fiduciaries are the plan fiduciaries the way they normally

21  are, it's a negative consent provision.

22       Here we've got something that's a much lesser power.

23  Fidelity has no conceivable power to change the options. And

24  if what AETNA did does not make AETNA a fiduciary then even if

25  you read this veto power, this provision exactly the way they

1    say, it didn't make FMTC a fiduciary for investment selection.

2         Now moving backwards, the first two points are sort

3    of related.  There was suddenly a mention of Fidelity's

4    revenue sharing, which is a phrase that appears quite often in

5    the case law in these types of cases but unless I'm mistaken,

6    I'm always subject to correction, not in any version of the

7    complaint in this case.  There is no revenue sharing alleged

8    in this case for the obvious reason.

9         Now, there are two types of services being provided

10   here, remember.  There are investment services, who's running

11   the investment options.  Then are these administrative

12   services that include basic record keeping, basic accounting,

13   all sorts of communication, education kinds of services.

14        A plan is free, as Your Honor's earlier question

15   suggested, to run its structure or its administration any way

16   it wants and it could pick different companies to do

17   investment and administration or it could pick the same

18   company, and that's what Unisys did.  It picked a unified

19   relationship with Fidelity to do this.

20        So Fidelity gets all the money and all the money that

21   Fidelity is getting is coming in through the investment

22   options, as pled in the second amended complaint, paragraph

23   42, that the money that is generated through the investment

24   options, through the fees that are charged against the mutual

25   funds.  It covers the administrative expenses here.  So there

1    isn't any need for revenue sharing one way the other.

2    Fidelity gets it all and there isn't any mystery here as to

3    how much it is either.

4           As to all the mutual fund options, by law, by the

5    Investment Company Act, there has to be a prospectus, it has

6    to describe the fees.  Anybody can figure out, all these

7    things are publicly reported, both under ERISA and the

8    Investment Company Act and analysts write them.  Even I could

9    probably find the information on the Internet, and I'm no whiz

10   at it.

11          So the idea that there's something here that they

12   need a lot of discovery to figure out or nobody knew there's

13   some revenue sharing arrangement, that's a different case and

14   not a case that they put and certainly not a case that they

15   can prove.

16          THE COURT:  All right.

17      (Pause)

18          MR. ORTELERE:  Your Honor, further to Mr. Eccles

19   point, I think that plaintiff's counsel variously suggests --

20          THE COURT:  You didn't introduce yourself.

21          MR. ORTELERE:  Oh, I'm sorry.  It's Brian Ortelere,

22   again, for the Unisys defendants.

23          THE COURT:  See, we're being recorded and the

24   recorder can't tell who you are.

25          MR. ORTELERE:  Understood, Your Honor.  Mr. Eccles

1  correctly noted that plaintiff's counsel, I think, variously

2  suggests that discovery is necessary for the Court to make

3  some determination on the reasonableness of the fees

4  associated with these investment options.  And I submit, Your

5  Honor, counsel's argument is an attempt at an end around the

6  Seventh Circuit's opinion in Deere.  And once the Court

7  properly focuses on what was going on in Deere as compared to

8  what's happening here with the Unisys plan, the conclusion is

9  certain and that is Unisys' motion to dismiss should be

10  granted.

11      And what I mean, Your Honor, simply stated and as the

12  Court is no doubt aware, what you look at and as Deere makes

13  plain, is the range of these expense ratios associated with

14  the variety of investment options made available to the

15  participants.  And it's important to note, at the threshold, I

16  think, that the Deere plan had twenty-three of these options

17  and Unisys had seventy-one.  And basically what we're talking

18  about, again for the most part, are these retail Fidelity

19  mutual funds.

20      Now, the expense ratios from which all of the money

21  is ultimately paid to Fidelity, ranged in the Deere case from

22  seven one-hundredths of a percent to just over one percent.

23  And from that premise the Court of Appeals in Deere concluded

24  that the participants were always free to move their money, if

25  they were so inclined, towards the cheaper funds and avoid the

1    supposed claimed harm.

2          Now as I said a moment ago, Your Honor, and no

3    measure of discovery is going to change this, the Unisys

4    investment offerings, the cheapest one was one-tenth of one

5    percent at the low end.  And as I said, there's seventy-one of

6    them.  We're talking about a three one-hundredths of a percent

7    difference between the lowest price Unisys fund and the lowest

8    price Deere fund.

9          Now at the high end of these expense ratio continuum

10   or spectrum, both plans were at just over one percent.  So

11   again, the point of Deere, and it applies directly here, is

12   that the participants were free to choose how to allocate

13   their investments across the seventy-one options.  If they

14   want to go cheap, they can go cheap reducing the compensation

15   to Fidelity and again avoiding the harm, the basis of which

16   they brought this lawsuit.

17         Now as I think the Court alluded to earlier, the

18   Deere opinion says further, there's no need for the

19   fiduciaries.  Nothing in the statute or the regulations that

20   requires them to go out and find the cheapest fund offerings.

21   And the Court of Appeals says it twice and it's quite

22   explicit, it's perfectly reasonable to offer only retail

23   Fidelity mutual funds.

24         And I'm quoting here from the Seventh Circuit's

25   opinion, and again the point was further made on rehearing,

1    the language that I suggested or pointed the Court to earlier,

2    but here in the first Deere opinion the Court of Appeals said

3    the following:  "We find no statute or regulation prohibiting

4    a fiduciary from selecting funds from one management company."

5    And that's precisely and basically what happened here.

6           And in another part of that first Deere opinion,

7    again in support of our 12(b)(6) motion, the Court of Appeals,

8    the Seventh Circuit, said the following:  "Many prudent

9    investors limit themselves to funds offered by one company."

10          Now again, the point was reiterated or emphasized

11   later on rehearing where the Court of Appeals took issue with

12   some of the comments of the Secretary of Labor in support of

13   the rehearing petition.  But again -- so there's a couple of

14   important points.

15          The expense ratios, the continuum, the high to the

16   low between the Unisys plan and the Deere plan, they are

17   indistinguishable.  And again, at the lowest end, one-tenth of

18   one percent, these services that we're discussing that the

19   plaintiffs say were overpriced, if a participant were so

20   inclined they could avoid that.  It's almost free at one-tenth

21   of one percent, Your Honor.

22          And again, the Court of Appeals in Deere made

23   absolutely certain that going with retail Fidelity mutual

24   funds is not a breach of fiduciary duty.  And again the Court

25   points out that the Department of Labor actually agreed with

1    that.

2           Now it should be noted, in fairness Your Honor, there

3    is this question between the Deere plan and the Unisys plan,

4    this brokerage window concept.  Now the plaintiffs would say

5    Deere is distinguishable and the Court should deny our

6    12(b)(6) motion because on top of the twenty-three funds

7    offered to the Deere participants they could also set up,

8    basically through the plan, a brokerage account and then

9    direct their money to an additional 2,500 funds.

10          But I think it's important to note, Your Honor, and

11   the holding of the Seventh Circuit was this, so long as there

12   was a sufficient mix of investments at reasonable prices,

13   there could never really be, and it's a causation analysis,

14   there couldn't be a finding that the acts or omissions of the

15   Unisys defendants caused these participants any harm.  But the

16   Court of Appeals didn't spell out a test but it can't be

17   simply tallying up the number of fund offerings and the

18   inquiry really has to be, did the investment options give the

19   participants a sufficient range from which they could direct

20   their money.  And again, if fees are their primary concern

21   they can avoid them.  And again, at one-tenth of one percent

22   at the low end, it has to be such that there was a sufficient

23   mix of investment options made available to the Unisys

24   participants.

25          I think it's also important, Your Honor, there's some

1   irony or irony abounds here.  To the extent that the

2   plaintiffs say that somehow Deere is distinguishable because

3   Unisys didn't offer this brokerage window or brokerage

4   opportunity, when they say, and again I heard counsel speak to

5   what we ought to be offering here are different or exclusively

6   institutional-type investment alternatives, nothing but these

7   separate accounts and collective trusts.

8           Well one thing is certain; the 2,500 funds available

9   to the Deere participants through the brokerage window are

10  nothing of the sort.  These are retail funds upon which not

11  only the participants pay the expense ratio but they're also

12  going to pay a brokerage commission.  They're very high-end

13  costly investment options so I don't think the plaintiffs can

14  point to the lack of a brokerage window in this, a challenge

15  to the fees and expenses to the plan, in these circumstances.

16  So again, Deere, at the end of the day, controls here.

17          Now I should point out, Your Honor, further.  The

18  focus on the brokerage window, if in fact the Court were

19  concerned about that, it's worth noting over on our --

20          THE COURT:  You don't mean the controls, do you?

21          MR. ORTELERE:  What's that?

22          THE COURT:  The Seventh Circuit doesn't control.

23          MR. ORTELERE:  Well, what I mean is persuasive

24  authority that I encourage and exhort the Court to follow

25  here.  I'm sorry, Your Honor.  In my enthusiasm I thought I

Page 34

1    was in Chicago.

2              No, Your Honor.  But it's important to note, I think,

3    that if the Court indeed has some concerns about the brokerage

4    window, well then focusing on our motion for summary judgment,

5    under 1104(c), the Department of Labor regulations, and now

6    we're talking about our motion for summary judgment, only

7    require three funds, that three funds be made available so

8    long as they have varying risk and return characteristics such

9    that the participants can diversify their money.

10             Your Honor, on the summary judgment side the facts

11   are essentially undisputed.  We set out, in Exhibit 3 to our

12   motion, the particular provisions of the reg that apply.

13   Plaintiffs don't take serious issue with that.  But again,

14   most important, for a moment and I'll return to my seat

15   promptly, the Court should know we only have to offer three

16   investments on the 1104(c) side, the basis for our motion for

17   summary judgment.

18             THE COURT:  Okay.  Plaintiff?

19             MR. WOLFF:  Thank you, Your Honor.  Michael Wolff,

20   again.

21             Turning to the question as to Fidelity, I've already

22   pointed out that Jones notes that the Investment Company Act

23   doesn't have a reasonableness standard but ERISA does and

24   we're in ERISA here.

25             Another thing that Jones -- Jones vs. Harris says

1    which is very important, because part of the Unisys argument

2    for why they should have this case dismissed is they submitted

3    an expert report with a motion to dismiss, which is improper,

4    but this expert says somebody says that all of these other

5    large plans have mutual funds in them and therefore they must

6    be reasonable and so we're reasonable.

7          In Jones vs. Harris the tax vary, kind of, on

8    argument.  And it says that in looking at whether an advisor's

9    fee for that mutual fund is reasonable, comparing what other

10   advisors charge in other mutual funds, so in other words

11   looking at the market is "problematic" the Court said because

12   those fees may not be the product of an arms length bargaining

13   and that's an important distinction.

14         What other mutual funds charge for fees is not

15   dispositive of what's a reasonable fee because there's not a

16   determination that those other fees comply with the Investment

17   Company Act.  That applies equally in an ERISA case.  Just

18   because other plans may have mutual funds does not mean that

19   it is per se prudent to have mutual funds in a 401K plan.

20         And another thing that bolsters that point is that

21   there are ways for plans to have mutual funds that then result

22   in only reasonable expenses.  And we pointed out examples

23   where other plans have their Fidelity or Fidelity-like trustee

24   put back in the plan the revenue sharing they receive from the

25   mutual funds that's beyond reasonable compensation.

1          THE COURT:  Let me ask you, if you have an expert

2     that's going to say that these were overpriced fees, the funds

3     were -- the fees were overpriced; is that the point of this?

4          MR. WOLFF:  Yes.  We will have an expert that'll say

5     here are alternatives you could have gone to that provided the

6     same investment performance for less.

7          THE COURT:  And what is the standard I use on that?

8     Let's assume it gets that far, don't I have to ultimately make

9     a decision whether they acted unreasonably by not, maybe,

10    going through the methodology of your expert?

11         MR. WOLFF:  Yes.  Yes, Your Honor, you do and ERISA

12    requires you to do that.

13         Now the question is going to be, and this is what

14    discovery is needed for, why did you decide to go with this

15    package?  How was it in the best interest of the participants?

16    How did it defray only reasonable expenses of administration?

17    And it's not really -- you're not in the position of second

18    guessing them, Your Honor.  The question -- the inquiry is

19    going to be what was the process they went through to reach

20    their conclusion?  If that process was prudent and reasonable

21    and they did consider all of the factors, they did consider

22    these alternatives, they did consider non-fidelity investments

23    but they went with Fidelity because of these reasons, which on

24    their face are reasonable, then they satisfied their duty of

25    prudence.

1        So Your Honor does not have to put himself in the

2   place of them at that point in time and say well I would have

3   chosen different.

4        THE COURT:  What happens to your case if I find that

5   Fidelity is not a fiduciary?

6        MR. WOLFF:  As to Fidelity, they'll be out of the

7   case but as to Unisys it doesn't affect the case.

8        THE COURT:  All right.  Anyone else?  Are you done?

9        MR. WOLFF:  If I could --

10       THE COURT:  You're going to have a chance to say

11   something else but over on this --

12       MR. WOLFF:  Thank you, Your Honor.

13       THE COURT:  Go ahead.

14       MR. WOLFF:  I just wanted to address a couple of

15   other points, if it's okay?

16       THE COURT:  Go ahead.

17       MR. WOLFF:  All right.  They're Section 5(b)

18   distinction of that clause that's in the contract, the retort

19   that is, why is the clause in the contract.

20       The -- Mr. Eccles stated that this is just a regular

21   trust agreement, like every other trust agreement out there,

22   that's not what the court in Tussey vs. ABB said, which looked

23   at a trust agreement that had this language in it, and that

24   court said, on a dismissal basis, that those that they're a

25   fiduciary or at least states a sufficient claim that they're a

 1   fiduciary, enough to get into it.

 2            Your Honor asked Unisys whether the regulations under

 3   1104(c) can be reconciled with Unisys.  They very definitely

 4   can, even though the court did not have the regulations under

 5   consideration at the time, although they saw the regulations

 6   they just weren't applicable to the acts that occurred before

 7   the regulations.

 8            Unisys makes this very important distinction.  It

 9   says that Section 11 -- it says, first of all, fiduciaries

10   must disclose all material information to participants.  It's

11   not just a matter of you can't intentionally mislead them but

12   you can't fail to give them the information that's necessary

13   for them to make an informed decision and the regulations are

14   very focused upon what is an informed decision; when is it the

15   participant whose exercising the control in the plan that

16   causes the fiduciary breach and loss to the plan.

17            The Unisys court said that you have to show that they

18   knew all of the facts and in that case it was about the

19   pending failure of executive life and they made the decision,

20   nonetheless, to invest in that.

21            The Department of Labor similarly requires that kind

22   of open disclosure, so it's in fact the participants who are

23   exercising the control and you do not have that in this case.

24   It was not disclosed to these participants what was the amount

25   of the fees that went to pay Fidelity's administrative

1    expenses.  We don't know if each of these Fidelity investment

2    options charges the same revenue sharing amount or differing

3    amounts or if there was a way to structure this plan to avoid

4    paying administrative expenses altogether, because that's not

5    disclosed.

6              Another thing that the Unisys court said is that

7    compliance with Section 404(c) isn't what you called a

8    situational compliance.  So the evidence would have to be that

9    plan documents require delivery of prospectuses, providing of

10   information, tracking of accounts and things like that and not

11   just somebody saying oh, we did that.  Somebody saying oh we

12   did that is a situational compliance and the Unisys court says

13   that's not enough.

14             Their Exhibit 3, which is a lot of additional

15   argument on 404(c) contains declarations from Unisys employees

16   saying we sent this information or we provided that

17   information.  One thing it doesn't do is say that there was a

18   system where prospectuses were actually delivered.

19             But the one thing the Unisys court shows that's also

20   important and comports with the regulation from the DOL is the

21   court said that if the participants didn't have a choice, then

22   they did not control what happened and 404(c) doesn't come

23   into place unless the participants controlled it.  That's what

24   you have in this case.

25             These participants had no control over whether they

1   could invest in Fidelity investments or not.  They had no

2   control over whether Fidelity was going to get additional

3   compensation for its record keeping services from mutual fund

4   investments or any of the other Fidelity fund investments.

5   These participants did not have control over how much that was

6   going to be because they had no idea what the differing

7   revenue share amounts were and so they didn't have the choice.

8   They didn't have the choice to get out of Fidelity.  No

9   choice, no control.  That's what Unisys says, that's what the

10  Department of Labor says.

11          This case is not about some funds were expenses and

12  some funds were not expensive.  And that's what Mr. Ortelere

13  keeps focusing on with the 0.7 percent and there were some

14  that were expensive and some that were less expensive.

15          The question in the first instance is, Your Honor, if

16  the evidence showed that these fiduciaries could have provided

17  the exact same type of investment options at a cost of half of

18  what Fidelity was offering and that information was available

19  to them, it was right there, everybody knew it and they

20  instead chose Fidelity and they had no good reason for doing

21  that, had they breached their duty of loyalty to the

22  participants?  Had they acted imprudently?

23          It is our contention and we're just at the pleading

24  stage, that that states a claim for breach of fiduciary duties

25  on their part.

1          And I would just like to wrap up with the brokerage

2     link in the Hecker case.  I don't think the Hecker case

3     controls or applies.  The Eighth Circuit in Braden

4     distinguished Hecker and didn't rely on it whatsoever.  The

5     Western District judge in Tussey vs. ABB felt that Hecker was

6     of no weight or authority in that case.  But that Court, first

7     of all, in denying rehearing on bond over and over again said

8     this decision is limited to the facts of this case, to what

9     was alleged in this complaint, intending to not have it have

10    the broad wiping out of all cases of facts that the Fidelity's

11    attorneys and the fiduciary attorneys want it to have.

12         Second of all, over and over and over again the Court

13    emphasizes that brokerage link and the fact that when you've

14    got 2,500 options, assuming that this case is only about you

15    had some expensive options and some inexpensive ones and you

16    shouldn't have had expensive ones having the 2,500 menu to

17    choose from, you could have gotten options that were less

18    expensive and gotten out of what you claim is at issue.

19         This case, as well as other cases, has been pled

20    after the Hecker decision and in light of that decision it

21    points out that it's not just about how much these funds cost

22    but what else was available to the fiduciaries at the time and

23    what those fees are going for and whether the administrative

24    expenses paid by those fees is excessive because of the way

25    that they structured this thing.

1              Thank you, Your Honor.

2              THE COURT:  Okay.  Response.

3         (Pause)

4              MR. ORTELERE:  I'll get another shot at this, right

5    Your Honor?

6              THE COURT:  Yes.

7              MR. ORTELERE:  So I don't have to tackle Mr. Eccles.

8              MR. ECCLES:  I moved quickly, Your Honor.

9              MR. ORTELERE:  He did.

10             MR. ECCLES:  Bob Eccles for Fidelity.  I've got one

11   small point since I was asked a question I'll answer it and

12   then one slightly larger point.

13             The question was, so what's that last sentence in

14   section 5(b) doing there and I think all you have to do is

15   look at it and you get a pretty good idea.

16             The prior sentence before it says, "The investment

17   options initially selected by the applicable fiduciary

18   identified in schedule A and schedule C attached hereto."

19   Then the sentence that plaintiffs are relying on says, they

20   can add some more but they only can do it with FMTC's consent.

21   So they're just saying the fact that we've got a schedule that

22   shows what investment options means you're not stuck for all

23   times with just that group.  It gives -- makes clear that the

24   Unisys fiduciary can add options to that but that it's got to

25   do it within the bounds of the contract, it can't put some new

1   duty on Fidelity.  So it's a very -- just expression of the

2   contractual intent that the contract can change over time.

3         Now in the issue of excessive fees, since I haven't

4   talked about that directly, Your Honor, and pick up on

5   something Mr. Wolff said a minute ago, that this was plot

6   after Hecker.  Actually, this is the third pleading in this

7   case.  It's been pled after a bunch of things and this is the

8   third one of the cases that counsel have brought that has

9   included Fidelity as a defendant.  So they've had a lot of

10   time and a lot of discovery to understand what they can and

11   cannot plead and it's not too early to suggest that they have

12   to plead, as the rules require, a plausible claim for relief

13   here.  They have to state some claim -- some facts that have

14   suggested their claim moves from conceivable to plausible, to

15   paraphrase what the Supreme Court said.

16         And Your Honor asked about the standard.  We know

17   what the standard is not.  Every appellate court that's looked

18   at this has said it's not -- there's no duty to go find the

19   cheapest alternative.  The closest to a standard for

20   reasonableness in the case law, I think Your Honor, is the

21   decision from the District Court in Connecticut in Taylor vs.

22   United Technologies, which was affirmed by the Second Circuit

23   on the basis of the District Court's reasoning and set the

24   standard for deciding the fee as excessive is if it is

25   "Materially unreasonable and beyond the market rate."

1          ERISA also overlays a prudent standard of fiduciary

2    as compared a similarly situated prudent person.  What

3    decision, and the decision's imprudent if it's outside the

4    range of decisions that would have been made by a similarly

5    situated prudent fiduciary and that's what plaintiffs have

6    failed to allege anything, any facts at all much less

7    plausible facts for a claim here.  The closest they've come,

8    Your Honor, is interesting.  It's in paragraph 81 of the

9    second amended complaint where after a litany of things that

10   Fidelity was supposed to have done in its alleged fiduciary

11   capacity it says, "As a result of the above the plan paid for

12   administrative services that were unreasonable when compared

13   to the charges for similar packages of administrative services

14   and products that 'were and/or are available' to similar sized

15   plans."

16          So they're saying, if you'd looked you could have

17   found something different.  They aren't saying anybody

18   actually similarly situated fiduciaries would have chosen

19   those other.  They're saying there's an available group of

20   other options that you might have looked for.  And all that is

21   is a purely conclusory repackaging of the theory that's

22   consistently been rejected that you always have to go find the

23   cheapest option.

24          Now the contention and I think they've said it today,

25   they certainly made it clear in their brief, on page 18 of the

1   brief in opposition to our motion, is that retail mutual funds

2   as a group are just too expensive, you can't buy them.  And I

3   think Mr. Wolff just said, but it's accurate whether he said

4   it or not, they aren't saying Unisys could have gotten a

5   better fee deal from any particular fund, because it couldn't.

6   They aren't saying that you picked fund A and you should have

7   picked fund B that was similar.  There's none of that detail

8   pled in the complaint.  They're just making the argument that

9   Judge Wood rejected in the Deere case and Hecker that a

10  prudent fiduciary wouldn't choose retail mutual funds.  But

11  all they plead on that is that they have "excessive fees" and

12  that's just a label.  That's just a conclusion.  It's

13  absolutely, before any of us ever heard the names Twombley and

14  Iqbal it was always the law that court wasn't bound by

15  conclusory assertions of law masquerading as factual

16  allegations, and that's what these are.

17          What those cases add is, of course as the Court

18  knows, the idea that you've got to plead a claim that's

19  plausible, plead facts that suggest the claim is plausible.

20  In looking at this second amended complaint, which is their

21  third shot at doing this, the claim they're trying to plead is

22  implausible for a couple of reasons, leaving aside the fact

23  that Fidelity funds are actually well regarded and cheaper

24  than average.  Leaving those facts aside, the point that comes

25  out of the Jones vs. Harris decision is mutual funds are not

1    fungible with all other investment vehicles, they're a

2    different structure.  They have their own governance

3    structure, their own regulatory protections, prospectus

4    requirements, various public disclosure things.  So when you

5    say we want -- you should be in comingled pools or separate

6    accounts you're not comparing apples to apples and those were

7    the inept comparisons that the Court warned about making.

8           Second, as the Court's questioning brought out early,

9    if they wanted really low cost options they have them in the

10   plan.  I'm not going back through that, we've listed the ten

11   relevant options in footnotes 5 and 6 of our opening brief.

12   And it's just not plausible to say when you're offering that

13   range of options it's imprudent to also offer retail mutual

14   funds.  These are all things that can be chosen by

15   participants, they aren't imposed on them.  They're available

16   to be selected.  It's not plausible and every court that has

17   reached a final adjudication in one of these cases involving a

18   retail mutual fund, a final adjudication Your Honor, has

19   dismissed claims of imprudence.  That includes the Seventh

20   Circuit in Deere.  That includes the Second Circuit in the

21   case I just mentioned, Taylor vs. UTC and also Young vs.

22   General Motors which is a percurion (ph.) opinion with then

23   Judge Sotomayor on the panel.  And it includes the Southern

24   District of Ohio in the Honda case.  And those are all ones

25   that are no longer subject to appeal, there are other District

Page 47

1    Court decisions that still have an appellate possible, Blumas

2    vs. Exelon in the Northern District of Illinois, Kibble vs.

3    Edison in the Central District of California.  They've all

4    dismissed claims that rest on the central claim here, which is

5    that it's imprudent to be in retail mutual funds.  And we're

6    asking that the Court do the same.

7            Thanks.

8            THE COURT:  All right.

9            MR. ORTELERE:  Hello again, Your Honor.  Brian

10   Ortelere for the Unisys defendants.

11           Your Honor, I'd like to talk a little bit about some

12   of the points plaintiff's counsel raised on 1104(c) and

13   address his citation to the Eighth Circuit's opinion in Braden

14   (ph.) vs. Wal-Mart.

15           Your Honor, very briefly, counsel suggests, again,

16   that somehow the DOL's view in the preamble to the regulation

17   can be reconciled with the Third Circuit's ruling in Unisys.

18   I submit, Your Honor, that ship has sailed.  The issue was

19   squarely reached and decided in Unisys.  And perhaps it goes

20   without saying, but I'm going to say it anyway, the Unisys

21   savings plan decision of the Third Circuit applies to this

22   Unisys savings plan.  It's the same plan, Your Honor.  We're

23   back but again we should have benefit of that ruling.

24           Mr. Teklits and I tried this case many years ago and

25   thought we heard the last of this.

 1            THE COURT:  Who was it in front of?

 2            MR. ORTELERE:  What's that?  The late Judge Hutton,

 3    Your Honor.

 4            THE COURT:  Shifty.

 5            MR. ORTELERE:  Anyway, Your Honor, counsel suggests,

 6    I think --

 7            THE COURT:  The wolf's at the door again, that's what

 8    it is.

 9            MR. ORTELERE:  Counsel suggests, I think if I was

10    understanding the argument, that the Unisys opinion speaks to

11    the materiality requirements related to the disclosures and if

12    certain disclosures are withheld, I take it the participants

13    don't exercise control over the investments.

14            Your Honor, what we did in that Exhibit 3 is we took

15    the particular regulatory requirements which speak directly to

16    the issues here and what we're talking about are the fees.

17    And again, we then explained further the distribution of the

18    documents.  At the end of the day, so long as we satisfy the

19    specific regulatory guidance on 404(c) or 1104(c) we have

20    discharged the duty.  The argument, I think, is best captured

21    by the -- if you were to read the Deere opinions, both the

22    District Court opinion and the Seventh Circuit's ruling, what

23    those courts concluded, essentially, is that rather than

24    concern themselves with how these monies are allocated, what

25    the participants want, the investors, is they want to know

1  their bottom line returns and what they need for that, to make

2  that determination, are these expense ratios, these

3  percentages that are netted out of the investments so that any

4  individual can calculate their individual discrete returns in

5  each of the different funds.

6      So the point is, and again it's covered in detail in

7  our filing, the regulations establish, among other things,

8  that these prospectuses, which include these expense ratios,

9  be provided to the participants.  And yes we've said, and we

10 have moved for summary judgment on these grounds, that we gave

11 the participants these materials.

12     Now counsel says, well we've got to prove; I gather

13 at this point in time, a mechanism for wide distribution.

14 Your Honor, this case has not yet been certified as a class

15 action.  If the plaintiffs wanted to meet squarely under

16 Celotex our motion, they should have come back, I suppose,

17 from the plaintiffs and filed a declaration saying I didn't

18 get the prospectus or the prospectus was not available to me.

19     Our motion on 404(c), Your Honor, basically stands

20 unopposed on the material and critical points that are set out

21 in the regulation.  We discharged our duty under Celotex or we

22 made the motion.  It's up to them to come back and frankly

23 they didn't quibble with our factual recitation, they made

24 some legal arguments, again invoking the DOL preamble saying

25 we didn't disclose enough.  Those are all legal challenges.

1  But as a factual matter our 404(c) motion stands essentially

2  unopposed, putting to one side those legal questions.  And

3  again, before I move away from 404(c) and again the DOL regs

4  and they are explained in all of their glorious detail in the

5  briefs, only require three fund offerings.

6          I'd like to just comment on the Eighth Circuit's

7  opinion in Braden vs. Wal-Mart to which plaintiff's counsel

8  points and says further that our motion to dismiss should be

9  denied.

10          It's important, Your Honor, to note we think that the

11  factual allegations in this case come much, much closer to

12  Deere than the Braden vs. Wal-Mart.  But looking at footnote

13  6, which I think is important, and again there's a couple of

14  pieces of this, the brokerage window Braden talks about, and

15  what Braden says, in a footnote there, is that it's more

16  plausible given that the Braden -- the Wal-Mart plan only had

17  ten funds instead of the funds available in Deere.  It's more

18  plausible that there was a problem, perhaps a breach of

19  fiduciary duty.  Again, the Unisys plan had seventy-one funds,

20  not just ten like were made available to the Wal-Mart

21  participants.

22          But I think that it's important to note that the

23  Braden complaint and taking step back, is indeed factually or

24  readily distinguishable from what's going on here.  The

25  gravamen or the essence of the lawsuit over there on the Wal-

1    Mart side is a kickback scheme.  And basically what was

2    alleged over there is that these mutual fund companies were

3    paying kickbacks to the record keeper to gain space on this

4    investment lineup or platform.  And basically what was said

5    there, that higher fees were being paid and the participants

6    were not receiving, sort of, a commensurate high level of

7    services and what the Court said specifically there over in

8    Braden was payments were not made in exchange for services

9    rendered.  Again, the essence of the lawsuit is this kickback

10   scheme, these bribes.  There are no such allegations of the

11   sort here.

12           Looking further at the Braden complaint, and I think

13   this is important, there's really four aspects to it.  They

14   said first these are excessive fees; this is the Braden

15   plaintiffs in Wal-Mart.  They said also that the funds

16   themselves under performed, there was this kickback scheme

17   described in the complaint and they also complained that there

18   were only ten options in the plan.

19           Very quickly, we only have one of those four

20   categories of allegations here in the Unisys case and that is,

21   of course, the allegedly excessive fees.  I think it's

22   absolutely critical to take a look, again, at these expense

23   ratios as the Seventh Circuit did in Deere.

24           Now over here on the Wal-Mart side, and again we only

25   have ten not seventy-one, the lowest priced Wal-Mart fund was

1    three times higher than the lowest price Unisys fund.  And the

2    highest priced Wal-Mart fund was thirty-nine basis points,

3    which is one-third of one percent, I think, higher than the

4    highest priced Unisys fund.  So again, Your Honor, I submit

5    that our case fits squarely.  We're talking about basically,

6    for the most part with the qualification that Mr. Eccles

7    suggested on some of the cheaper options.  But again what

8    we're talking about is the offering of retail mutual funds

9    from Fidelity over in Deere in circumstances entirely

10   indistinguishable from the Unisys lineup and that Deere

11   compels the granting of our 12(b)(6) motion.

12           Thank you.

13           THE COURT:  Final word, Mr. Wolff?

14           MR. WOLFF:  Thank you, Your Honor.  I appreciate the

15   offer, again, Michael Wolff.

16           I guess the question o their side is are we going to

17   reduce ERISA's exacting fiduciary duties to a simple calculus

18   of if you've got seventy funds that's enough or if you have

19   2,500 funds that's enough, your fiduciary duties are satisfied

20   and what's the number.  It's not ten but it's not 2,500.  Is

21   it seventy-five?  Is it sixty?  That sort of simplistic

22   calculus is too hard to apply and it's too unfair to apply

23   because the fiduciaries owed exacting duties, the highest

24   duties known to law, to these participants to act in their

25   best interest, to make sure it didn't cost any more than was

1  reasonable and to do what the prudent person acting under

2  these circumstances would have done at the time.

3          In other words, if the participants knowing as much

4  about investments as the fiduciaries did were in their shoes,

5  is this what they would have done to themselves?  That

6  determination is not as simplistic as you've got ten funds

7  that's not enough but you've got seventy funds and that is

8  enough.

9          Similarly, just saying that so long as you have a

10  range of fees of .03 or .01 up to 1.0 or something like that

11  is too simplistic for these exacting fiduciary standards

12  because the fiduciary then doesn't have to do anything for

13  this plan.  All I have to do is find some fund out there that

14  charges only ten basis points or one-tenth or one-hundredth of

15  one percent and then the rest I could just throw darts at a

16  dartboard and get a whole bunch of funds in there.  I haven't

17  looked at any of them; I don't care because I've got that one

18  basis point fund in there.

19          And Hecker says that's enough, I've satisfied my

20  fiduciary duties.  I don't have to spend all this time and

21  effort actually screening each investment option to insure

22  that it's imprudent in the best interest of the participants

23  because I've got that one one-basis point fund in there and

24  I've got that magical threshold of fifty, seventy, eighty

25  funds, whatever the Court's going to end up --

1         THE COURT:  You're not saying that they only have one

2    that's real low and every one of the others are at the high

3    end, are you?

4         MR. WOLFF:  They maybe have three but now are we

5    going to say how many of those do we need?  And here's an

6    important distinction --

7         THE COURT:  You're falling into your own trap, aren't

8    you?

9         MR. WOLFF:  No, Your Honor, because the point is not

10   the range of the fees because it isn't just about the fees.

11   If they could have gotten the same kind of investments, large

12   cap fund, international fund, fixed income fund for investing

13   the same products in separate accounts that would have charged

14   half the fees and the DOL says he could get up to the quarter

15   of the fees and they knew that and didn't do it, why?  And if

16   they don't have a good reason they're in breach regardless of

17   if they have a low-cost fund in there.

18        And here's the thing, they have a class of

19   investments, large cap funds, is there a low-cost option in

20   there?  We don't know.  I don't believe there is, Your Honor.

21   They've got a money-market fund that costs very little, great.

22   But I want a certain noncorporate or nongovernmental bond

23   fund, where's my low cost option there?  So it's not as if the

24   participants had the different types of options.

25        THE COURT:  Are you alleging that they should have a

1   representative of every possible investment vehicle?

2          MR. WOLFF:  No.  No, Your Honor.  And they may well

3   have a good reason particularly types of retail mutual funds

4   but we need to find out what that is because on its face there

5   does not appear to be a reason.

6          If the reason was, well that's going to pay for the

7   administrative expenses of the plan, why is that not in the

8   trust agreement?  There's nothing in the trust agreement that

9   says we're going to pay you five dollars per participant and

10  the rest of your compensation's coming from the mutual fund

11  fees that you collect.  Why is that not in the trust agreement

12  if that's the reason why they chose these mutual funds?

13         Now we don't know why they did that because that's

14  all a black box, Your Honor.  That's all hidden from the

15  participants, it's not public knowledge.  We need discovery to

16  find out.

17         THE COURT:  Is that any different then any of the

18  other cases?

19         MR. WOLFF:  It is different because of the more

20  specific allegations.  Now are you saying is different from

21  the Lumos vs. Excelon case in the Northern District of

22  Illinois?  It's not very significantly different, Your Honor.

23  What the judge in the Northern District of Illinois did was

24  just say Hecker, case over.  And that's the unfortunate burden

25  we are suffering under in the Seventh Circuit until Hecker

1    gets fixed, which hopefully it will on the appeal we have

2    filed in that case.

3              In the Seventh Circuit --

4              THE COURT:  Are you asking for cert on that?

5              MR. WOLFF:  We have appealed the Excelon decision but

6    just ask Hecker means this is all gone, so that's pending

7    right now.  We did petition for cert in Hecker, we were joined

8    by the AARP, independent fiduciaries, numerous entities to try

9    to get the Supreme Court to take that, but they chose not to

10   for reasons that they did not specify.

11             THE COURT:  They never do.

12             MR. WOLFF:  They never do.  But it allows us, then,

13   to speculate on all sorts of reasons why.

14             THE COURT:  The only time I remember them not

15   granting cert and stating reasons was in a descent to not

16   granting cert on the pay raise for judges.

17             MR. WOLFF:  That's great.  I want to point something

18   else out on the Unisys case.  It doesn't completely say that

19   1104(c) trumps the fiduciary duties in 1104(a).  In fact, it

20   says after pointing out fiduciaries have a duty of full and

21   accurate disclosure, we believe these principles may apply in

22   the instant case even if the plans fall within the purview of

23   Section 1104(c).  By its terms Section 1004(c) relieves

24   fiduciaries of the liability for breaches of fiduciary duty

25   which result from participants or beneficiaries exercise of

1  control.  It does not define, nor does it relieve fiduciaries

2  of Section 1104(a)'s duties in the first instance.

3         Now the approach the Unisys court took was, looking

4  at the common law of trust and when a fiduciary can be

5  absolved of a breach -- a trustee, when a trustee can be

6  absolved of a breach.  And it said that according to the

7  second restatement, and this is in note 24, I believe it said

8  that if the trustee has provided full and accurate disclosure

9  to the beneficiaries of what he did and the beneficiaries

10 approve of what the trustee did, then the trustee is not

11 liable.

12        Your Honor, I believe, just on the pleadings alone,

13 if you apply that standard in this case they do not satisfy

14 Section 404(c) because they did not provide that complete and

15 accurate information.

16             THE COURT:  All right.  Thank you.

17             MR. WOLFF:  Thank you.

18             THE COURT:  Any final words?

19             MR. ORTELERE:  Very briefly, Your Honor.  First of

20 all, I'm not certain of the reference --

21             THE COURT:  Who are you?

22             MR. ORTELERE:  Oh.  Sometimes I'm not sure, Your

23 Honor.

24             THE COURT:  Who are you and why are you here?

25             MR. ORTELERE:  Why am I here?  Brian Ortelere from

1    Morgan Lewis for the Unisys defendants.  Thank you, Your

2    Honor, keep me focused.

3            I hear reference to examining the claim on the

4    pleadings, again on the 1104(c) issue we have moved for

5    summary judgment and again the motion stands largely

6    uncontested.

7            I heard counsel read a portion of the Third Circuit's

8    opinion and I think it's important to read the balance of the

9    ruling when we speak to this question of whether or not

10   1104(c) will excuse a fiduciary breach upon a showing of

11   control.

12           The first question we must answer regarding Section

13   1104(c) is whether the statute allows a fiduciary who is shown

14   to have committed a breach of duty in making an investment

15   decision, does it allow the fiduciary to argue that despite

16   the breach it may not be held liable because the alleged loss

17   resulted from a participant's exercise of control.

18           In light of Section 1104(c)'s plain language we

19   believe that it does.  There's nothing in Section 1104(c)

20   which suggests that a breach on the part of the fiduciary bars

21   it from asserting Section 1104(c)'s application.

22           Thank you, Your Honor.

23           THE COURT:  Okay.

24           MR. ECCLES:  Mr. Summers suggests I say nothing, Your

25   Honor and I think it's excellent advise.  Thank you, Your

Page 59

1    Honor.

2         THE COURT:  Thank you.  All right.  Thank you,

3    gentlemen.  You'll be getting a ruling from me shortly.

4    Shortly could mean in a week or so.  All right.  Thank you.

5         IN UNISON:  Thank you, Your Honor.

6    (Case is adjourned)

7                         * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3              I, Pnina Eilberg, the court approved transcriber, do

4    hereby certify the foregoing is a true and correct transcript

5    from the official electronic sound recording of the

6    proceedings in the above-entitled matter.

7

8

9

10   _____        May 11, 2010

11   PNINA EILBERG (CET**D-488)                  DATE

12   AAERT Certified Electronic Transcriber

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**AAERT** 60:12
**AARP** 56:8
**ABB** 37:22 41:5
**ability** 26:7
**able** 18:17
**abounds** 33:1
**above-entitled** 60:6
**absolute** 8:6
**absolutely** 9:6
  10:14 13:12 25:17
  31:23 45:13 51:22
**absolved** 57:5,6
**account** 14:3 32:8
**accounting** 27:12
**accounts** 33:7
  39:10 46:6 54:13
**accurate** 45:3
  56:21 57:8,15
**accuse** 20:5
**act** 8:6 17:20 18:8
  28:5,8 34:22
  35:17 52:24
**acted** 36:9 40:22
**acting** 53:1
**action** 21:7,9 49:15
**actively** 8:21
**acts** 32:14 38:6
**actual** 9:20
**add** 18:22 19:17,22
  23:5 25:10 42:20
  42:24 45:17
**addition** 24:11
**additional** 19:17
  23:6 25:7 32:9
  39:14 40:2
**additions** 23:10
**address** 37:14
  47:13
**addresses** 20:1
**adjourned** 59:6
**adjudication** 46:17
  46:18
**administer** 18:23
**administration**
  17:12 18:9 27:15
  27:17 36:16

**administrative**
  24:23 27:11,25
  38:25 39:4 41:23
  44:12,13 55:7
**administrator** 7:15
  9:10,12 10:13
  19:4 25:2
**advantage** 4:8
**advise** 58:25
**advisor** 7:8
**advisors** 17:23
  35:10
**advisory** 25:21
**advisor's** 35:8
**AETNA** 25:22,24
  26:15,19,24,24
**affect** 37:7
**affirmed** 43:22
**afternoon** 3:24
  4:10
**ago** 30:2 43:5 47:24
**agree** 13:17 22:15
**agreed** 24:22 31:25
**agreement** 8:16 9:8
  9:13,15,16,19
  10:9 19:1,6,8 20:1
  23:2,9 24:20,21
  24:25 25:5,9,16
  37:21,21,23 55:8
  55:8,11
**ahead** 3:7 17:18
  19:9 37:13,16
**al** 1:2,5
**allegation** 11:2
**allegations** 45:16
  50:11 51:10,20
  55:20
**allege** 44:6
**alleged** 10:24 21:25
  22:1 27:7 41:9
  44:10 51:2 58:16
**allegedly** 51:21
**alleging** 54:25
**allocate** 30:12
**allocated** 48:24
**allow** 58:15
**allowing** 14:24

**allows** 56:12 58:13
**alluded** 30:17
**alternative** 16:10
  43:19
**alternatives** 16:25
  33:6 36:5,22
**altogether** 39:4
**amended** 14:9 22:2
  27:22 44:9 45:20
**amendment** 19:19
  23:9
**amount** 38:24 39:2
**amounts** 39:3 40:7
**analysis** 32:13
**analysts** 28:8
**and/or** 3:4 44:14
**Angeles** 1:21
**answer** 5:22 6:18
  8:9 9:1 42:11
  58:12
**answered** 6:4
**answers** 5:25
**anticipates** 7:11
**anybody** 28:6
  44:17
**anyway** 47:20 48:5
**appeal** 46:25 56:1
**appealed** 56:5
**appeals** 12:1,17
  13:17 29:23 30:21
  31:2,7,11,22
  32:16
**appear** 55:5
**APPEARANCES**
  1:10 2:1
**appears** 27:4
**appellate** 43:17
  47:1
**apples** 7:24,24 46:6
  46:6
**applicable** 19:11
  19:17 23:5,19,22
  23:25 38:6 42:17
**application** 58:21
**applies** 30:11 35:17
  41:3 47:21
**apply** 34:12 52:22

  52:22 56:21 57:13
**appointed** 24:1
**appreciate** 52:14
**approach** 57:3
**appropriate** 24:3
**approve** 57:10
**approved** 60:3
**approving** 8:3
**April** 1:5 24:4
**arena** 18:12
**argue** 18:19 58:15
**arguing** 15:25
  20:17
**argument** 1:8 3:2
  3:16 5:4 7:17
  10:21 11:10 19:22
  20:16,18,19,20
  22:23 23:1 24:18
  25:15 29:5 35:1,8
  39:15 45:8 48:10
  48:20
**arguments** 49:24
**arms** 7:9 26:13
  35:12
**Aronchick** 2:11 5:2
**arrangement** 25:23
  26:8,18 28:13
**arrangements** 16:5
**aside** 13:16 45:22
  45:24
**asked** 38:2 42:11
  43:16
**asking** 6:2 47:6
  56:4
**aspects** 51:13
**asserting** 58:21
**assertions** 45:15
**assets** 10:7 20:8
**associated** 29:4,13
**Associates** 6:7
**assume** 15:4 36:8
**assumes** 26:9
**assuming** 41:14
**attached** 42:18
**attempt** 12:5 20:14
  29:5
**attorney** 5:18

  25:22
**attorneys** 41:11,11
**attributed** 22:4
**attributes** 7:25
**AUDIO** 2:14
**authority** 7:3 33:24
  41:6
**authorizes** 10:25
**available** 15:13
  29:14 32:23 33:8
  34:7 40:18 41:22
  44:14,19 46:15
  49:18 50:17,20
**Avenue** 1:20
**average** 45:24
**avoid** 29:25 31:20
  32:21 39:3
**avoiding** 30:15
**aware** 29:12
**Azeez** 1:16 4:12

**B**

**B** 9:20 45:7
**back** 21:14 23:13
  23:15 24:20 35:24
  46:10 47:23 49:16
  49:22 50:23
**backwards** 27:2
**balance** 14:2 58:8
**bargaining** 35:12
**bars** 58:20
**based** 14:12
**basic** 24:23 27:12
  27:12
**basically** 11:25
  12:19,24 13:1,16
  14:12 17:5 29:17
  31:5 32:8 49:19
  51:1,4 52:5
**basis** 8:18 30:15
  34:16 37:24 43:23
  52:2 53:14,18
**bearing** 17:16,20
**behalf** 10:19
**believe** 16:3 21:19
  54:20 56:21 57:7
  57:12 58:19

**Bell** 2:7
**beneficiaries** 56:25
  57:9,9
**benefit** 15:19 47:23
**BERLE** 1:8
**best** 15:4 17:5,7
  36:15 48:20 52:25
  53:22
**better** 17:6 45:5
**beyond** 35:25
  43:25
**Bill** 3:14
**binder** 9:16 25:20
**bit** 12:4 47:11
**black** 55:14
**Blue** 2:7
**Blumas** 47:1
**board** 7:6 8:3
**Bob** 5:3 6:17 21:18
  42:10
**BOCKIUS** 2:3
**Bogard** 1:13 3:16
  3:19,25 4:5
**bolsters** 35:20
**bond** 41:7 54:22
**bottom** 19:10,16
  49:1
**bound** 45:14
**bounds** 42:25
**box** 2:6 55:14
**Braden** 41:3 47:13
  50:7,12,14,15,16
  50:23 51:8,12,14
**breach** 11:18 12:25
  14:17 31:24 38:16
  40:24 50:18 54:16
  57:5,6 58:10,14
  58:16,20
**breached** 40:21
**breaches** 56:24
**Brian** 2:2 4:11 11:6
  28:21 47:9 57:25
**bribes** 51:10
**brief** 13:15,23
  15:16 44:25 45:1
  46:11
**briefed** 24:8

**briefly** 47:15 57:19
**briefs** 50:5
**broad** 11:21 41:10
**brokerage** 32:4,8
  33:3,3,9,12,14,18
  34:3 41:1,13
  50:14
**brought** 30:16 43:8
  46:8
**bunch** 9:23 43:7
  53:16
**burden** 55:24
**BURRILL** 1:20
**buy** 45:2

---

## C

**C** 23:23 42:18 60:1
  60:1
**CA** 1:21
**calculate** 49:4
**calculus** 52:17,22
**California** 47:3
**called** 6:25 11:17
  39:7
**CAMPOLI** 2:14
**cap** 54:12,19
**capacity** 44:11
**captured** 48:20
**care** 15:7,24 53:17
**case** 3:1 6:7,20,23
  7:14,20 17:20
  18:4 21:3 26:11
  27:5,7,8 28:13,14
  28:14 29:21 35:2
  35:17 37:4,7,7
  38:18,23 39:24
  40:11 41:2,2,6,8
  41:14,19 43:7,20
  45:9 46:21,24
  47:24 49:14 50:11
  51:20 52:5 55:21
  55:24 56:2,18,22
  57:13 59:6
**cases** 22:10 27:5
  41:10,19 43:8
  45:17 46:17 55:18
**catch** 5:12

**categories** 51:20
**causation** 32:13
**cause** 21:6
**caused** 32:15
**causes** 38:16
**cautious** 6:24
**Celotex** 49:16,21
**central** 47:3,4
**cert** 56:4,7,15,16
**certain** 10:2 25:9
  29:9 31:23 33:8
  48:12 54:22 57:20
**certainly** 28:14
  44:25
**certified** 49:14
  60:12
**certify** 60:4
**CET** 60:11
**chair** 4:19
**challenge** 14:13
  33:14
**challenges** 49:25
**chance** 37:10
**change** 26:3,23
  30:3 43:2
**characteristics**
  34:8
**charge** 18:13 20:8
  35:10,14
**charged** 8:23 17:1
  27:24 54:13
**charges** 39:2 44:13
  53:14
**charging** 18:13,15
**chart** 16:25
**cheap** 30:14,14
**cheaper** 16:14
  29:25 45:23 52:7
**cheapest** 30:4,20
  43:19 44:23
**Chicago** 34:1
**choice** 39:21 40:7,8
  40:9
**choose** 11:13 30:12
  41:17 45:10
**chose** 40:20 55:12
  56:9

**chosen** 37:3 44:18
  46:14
**CHRIS** 2:14
**Circuit** 12:2,2,3,10
  12:21 13:3,7,18
  13:19,20,22 14:15
  31:8 32:11 33:22
  41:3 43:22 46:20
  46:20 47:21 51:23
  55:25 56:3
**Circuit's** 11:11,20
  11:25 14:8 29:6
  30:24 47:13,17
  48:22 50:6 58:7
**circumstances**
  33:15 52:9 53:2
**citation** 47:13
**claim** 20:13 21:1,2
  21:3 22:18,19
  26:2 37:25 40:24
  41:18 43:12,13,14
  44:7 45:18,19,21
  47:4 58:3
**claimed** 30:1
**claiming** 22:7
**claims** 46:19 47:4
**class** 8:22 49:14
  54:18
**classes** 8:11
**classic** 25:11
**clause** 9:24 19:25
  21:11 25:6 37:18
  37:19
**clauses** 9:21,23
**clear** 13:12 14:16
  18:18 23:24 42:23
  44:25
**client** 4:13 26:7
**clients** 3:6 8:19
  26:1
**close** 7:7
**closer** 50:11
**closest** 43:19 44:7
**codified** 12:13
**colleague** 4:12
**collect** 55:11
**collective** 8:18 33:7

**come** 4:19 39:22
  44:7 49:16,22
  50:11
**comes** 45:24
**comfortable** 6:13
**coming** 15:6,23
  20:9 27:21 55:10
**comingled** 8:17
  46:5
**commensurate**
  51:6
**comment** 13:10
  50:6
**comments** 21:16,20
  31:12
**commission** 33:12
**committed** 58:14
**committee** 24:1
**common** 57:4
**communication**
  27:13
**companies** 25:25
  27:16 51:2
**company** 2:23 8:6
  8:18 10:8 17:20
  18:8 19:14 23:17
  27:18 28:5,8 31:4
  31:9 34:22 35:17
**compare** 7:22
**compared** 29:7
  44:2,12
**comparing** 7:24
  35:9 46:6
**comparisons** 7:21
  46:7
**compels** 52:11
**compensation**
  20:17,22,25 21:1
  21:11 22:7 30:14
  35:25 40:3
**compensation's**
  55:10
**competitive** 16:18
**complained** 51:17
**complaining** 17:4
**complaint** 9:18
  14:24 16:20 20:5

21:25 22:2 27:7
27:22 41:9 44:9
45:8,20 50:23
51:12,17
**complete** 7:9 26:5
57:14
**completely** 19:2
22:17 26:5 56:18
**compliance** 39:7,8
39:12
**comply** 35:16
**comports** 39:20
**conceivable** 26:23
43:14
**concept** 32:4
**concern** 7:6 32:20
48:24
**concerned** 33:19
**concerns** 7:14,16
34:3
**conclude** 16:9
**concluded** 29:23
48:23
**conclusion** 29:8
36:20 45:12
**conclusory** 44:21
45:15
**conflict** 7:8
**confuse** 12:15
**Connecticut** 43:21
**consent** 19:18 23:8
25:11 26:21 42:20
**consider** 36:21,21
36:22
**consideration** 38:5
**considered** 17:3
**consistently** 44:22
**constant** 14:9
**construction** 13:17
**construing** 8:5
**contains** 39:15
**contention** 40:23
44:24
**context** 7:5,6
**Continued** 2:1
**continuum** 30:9
31:15

**contract** 25:9 37:18
37:19 42:25 43:2
**contracts** 10:3,3
**contractual** 25:4,8
25:11 43:2
**contributions** 22:3
**control** 11:23 25:4
33:22 38:15,23
39:22,25 40:2,5,9
48:13 57:1 58:11
58:17
**controlled** 39:23
**controlling** 6:20
**controls** 33:16,20
41:3
**core** 10:4 14:24
**Corp** 3:2
**Corporation** 1:5
2:5 4:17
**correct** 10:14 21:8
22:20 25:18 60:4
**correction** 27:6
**correctly** 11:15
29:1
**cost** 40:17 41:21
46:9 52:25 54:23
**Costello** 2:2 4:14
**costly** 33:13
**costs** 54:21
**counsel** 3:5 4:16,18
5:6,15,16,17
24:19 28:19 29:1
33:4 43:8 47:12
47:15 48:5,9
49:12 50:7 58:7
**counsel's** 29:5
**count** 11:2 21:9
**couple** 6:21 22:9
31:13 37:14 45:22
50:13
**course** 6:18 7:7
11:19 13:7 22:6
45:17 51:21
**court** 1:1 2:23 3:1
3:10,13,18,21,23
4:2,4,7,15,18,25
5:5,8,12,14,16,19

6:10,13,16,22
7:11,14,19 8:8,25
9:4,8,15,24 10:5,9
10:12,16 11:1,4,8
12:5,11,12,17
13:4,25 14:17,20
14:23 15:8,25
16:14,19 17:4,14
17:18,22 18:2,2,3
18:4,19 19:3,9,21
20:4,11,13,18,23
21:2,6,12,14,22
22:16,24 23:5,8
26:11 28:16,20,23
29:2,6,12,23
30:17,21 31:1,2,7
31:11,22,24 32:5
32:16 33:18,20,22
33:24 34:3,15,18
35:11 36:1,7 37:4
37:8,10,13,16,22
37:24 38:4,17
39:6,12,19,21
41:6,12 42:2,6
43:15,17,21 45:14
45:17 46:7,16
47:1,6,8 48:1,4,7
48:22 51:7 52:13
54:1,7,25 55:17
56:4,9,11,14 57:3
57:16,18,21,24
58:23 59:2 60:3
**courts** 6:25 7:2,20
12:1 13:17 48:23
**Court's** 6:6,24 8:24
43:23 46:8 53:25
**covered** 4:23 49:6
**covers** 27:25
**credit** 13:20
**critical** 14:5 49:20
51:22
**C2NW** 2:6

---
**D**

**damages** 10:19
**dartboard** 53:16
**darts** 53:15

**DATE** 60:11
**day** 12:23 33:16
48:18
**DC** 2:9 5:4
**deal** 17:5,7,11 45:5
**dealing** 11:9 13:1
**decide** 9:1 36:14
**decided** 47:19
**deciding** 17:14
43:24
**decision** 6:6,18,20
11:12 26:18 36:9
38:13,14,19 41:8
41:20,20 43:21
44:3 45:25 47:21
56:5 58:15
**decisions** 44:4 47:1
**decision's** 44:3
**declaration** 49:17
**declarations** 39:15
**Deere** 13:3 14:11
29:6,7,12,16,21
29:23 30:8,11,18
31:2,6,16,22 32:3
32:5,7 33:2,9,16
45:9 46:20 48:21
50:12,17 51:23
52:9,10
**defendant** 43:9
**defendants** 1:6 2:2
4:12 5:2 11:7
18:19 28:22 32:15
47:10 58:1
**defense** 11:9
**deference** 7:2
**define** 57:1
**defined** 19:13,13
**definitely** 38:3
**defray** 36:16
**deletion** 24:11,12
24:14
**delivered** 39:18
**delivery** 39:9
**denied** 50:9
**Denton** 1:13 3:16
3:19 4:1,6
**deny** 32:5

**denying** 41:7
**Department** 11:10
11:17 12:16,17,19
13:12 14:7,18
25:21 26:10,14
31:25 34:5 38:21
40:10
**depth** 22:24
**descent** 56:15
**describe** 28:6
**described** 6:24
11:1 51:17
**designated** 9:2
**designed** 16:11
17:1
**desires** 10:1
**despite** 58:15
**detail** 24:9 45:7
49:6 50:4
**determination**
18:17 29:3 35:16
49:2 53:6
**determine** 7:4 19:6
19:12
**determining** 7:1
**dicta** 13:19
**difference** 30:7
**differences** 8:7,10
**different** 6:19,19
7:16,24 8:2,4,10
8:12 16:6 19:2
25:25 27:16 28:13
33:5 37:3 44:17
46:2 49:5 54:24
55:17,19,20,22
**differing** 39:2 40:6
**dig** 15:21 16:17
**digging** 15:21
**direct** 23:19 32:9
32:19
**directed** 7:2
**directly** 30:11 43:4
48:15
**directors** 7:5
**discharged** 48:20
49:21
**disclose** 22:2,5

38:10 49:25
**disclosed** 15:15
  16:7 20:22 38:24
  39:5
**discloses** 15:15
**disclosure** 8:2 22:6
  38:22 46:4 56:21
  57:8
**disclosures** 48:11
  48:12
**discovery** 28:12
  29:2 30:3 36:14
  43:10 55:15
**discrete** 49:4
**discretion** 17:14
**discussed** 7:25
**discussing** 31:18
**dismiss** 3:3 29:9
  35:3 50:8
**dismissal** 37:24
**dismissed** 35:2
  46:19 47:4
**dispositive** 25:15
  25:15 35:15
**dissipated** 12:22
**distinction** 35:13
  37:18 38:8 54:6
**distinguishable**
  32:5 33:2 50:24
**distinguished** 41:4
**distribution** 48:17
  49:13
**District** 1:1,1,9
  41:5 43:21,23
  46:24,25 47:2,3
  48:22 55:21,23
**diversify** 34:9
**diversity** 14:4
**document** 9:19,22
  25:3,20
**documents** 15:13
  15:14 39:9 48:18
**doing** 3:16 15:20
  23:24 24:6 40:20
  42:14 45:21
**DOL** 12:6 39:20
  49:24 50:3 54:14

**Doles** 1:12 3:24,25
**dollars** 15:17 18:14
  18:15 55:9
**DOL's** 13:8 47:16
**door** 48:7
**doubt** 15:19 21:21
  29:12
**dozen** 8:15
**drilling** 12:4
**duties** 15:5 17:23
  25:9,10 40:24
  52:17,19,23,24
  53:20 56:19 57:2
**duty** 7:3 18:10 22:6
  31:24 36:24 40:21
  43:1,18 48:20
  49:21 50:19 56:20
  56:24 58:14
**D-488** 60:11

——————
**E**
**E** 60:1
**earlier** 27:14 30:17
  31:1
**early** 43:11 46:8
**earned** 20:9 22:3
**EASTERN** 1:1
**Eccles** 2:8 5:3 6:8
  6:12,14,17,17
  7:13,16 8:12 9:3,6
  9:11,25 10:6,11
  10:14,20 12:13
  14:12 21:18,18,23
  22:17 23:7,11
  26:12 28:18,25
  37:20 42:7,8,10
  42:10 52:6 58:24
**Edison** 47:3
**EDS** 12:2
**education** 27:13
**effort** 53:21
**Eighth** 41:3 47:13
  50:6
**eighty** 53:24
**Eilberg** 60:3,11
**either** 28:3
**electronic** 2:17

60:5,12
**elegant** 22:16,17
**elegantly** 22:14
**emphasized** 31:10
**emphasizes** 41:13
**employees** 39:15
**encourage** 33:24
**entered** 9:13
**enthusiasm** 33:25
**entire** 19:1
**entirely** 52:9
**entities** 10:23 56:8
**equally** 35:17
**equitable** 11:3
**ERISA** 17:11 18:8
  20:21 28:7 34:23
  34:24 35:17 36:1
  44:1
**ERISA's** 52:17
**especially** 17:15
**ESQ** 1:11,11,12,12
  1:15,16,19 2:2,2,5
  2:8,10
**essence** 50:25 51:9
**essentially** 34:11
  48:23 50:1
**establish** 10:1 49:7
**et** 1:2,5
**etcetera** 3:4
**event** 22:18
**everybody** 3:11
  15:4 22:10 26:9
  40:19
**evidence** 18:11,12
  18:18 39:8 40:16
**exact** 40:17
**exacting** 52:17,23
  53:11
**exactly** 7:1 26:25
**examining** 58:3
**example** 14:3
**examples** 35:22
**excellent** 58:25
**Excelon** 55:21 56:5
**excessive** 15:18
  20:25 21:10 41:24
  43:3,24 45:11

51:14,21
**exchange** 51:8
**exclusively** 33:5
**excuse** 22:1 58:10
**excused** 11:18
**executive** 15:11
  38:19
**Exelon** 47:2
**exercise** 48:13
  56:25 58:17
**exercised** 11:22
**exercising** 38:15,23
**Exhibit** 16:25
  34:11 39:14 48:14
**exhort** 33:24
**expense** 29:13,20
  30:9 31:15 33:11
  49:2,8 51:22
**expenses** 17:12
  18:9 27:25 33:15
  35:22 36:16 39:1
  39:4 40:11 41:24
  55:7
**expensive** 16:13
  40:12,14,14 41:15
  41:16,18 45:2
**expert** 16:23,23
  35:3,4 36:1,4,10
**experts** 18:11
**explained** 48:17
  50:4
**explicit** 14:16
  15:13 30:22
**expression** 43:1
**extensively** 7:25
**extent** 10:22 14:7
  33:1
**extra** 4:19
**extraordinarily**
  23:24

——————
**F**
**F** 60:1
**face** 36:24 55:4
**fact** 9:12 12:20
  13:16 15:16 17:16
  18:15 26:15,17

33:18 38:22 41:13
  42:21 45:22 56:19
**factors** 17:9 36:21
**facts** 34:10 38:18
  41:8,10 43:13
  44:6,7 45:19,24
**factual** 45:15 49:23
  50:1,11
**factually** 50:23
**fail** 38:12
**failed** 22:2,5 44:6
**failure** 14:4 38:19
**fairness** 32:2
**faith** 22:12
**fall** 56:22
**falling** 54:7
**far** 23:13 36:8
**FARRER** 1:20
**federal** 7:2
**fee** 7:1 8:6 18:5
  35:9,15 43:24
  45:5
**feel** 6:13
**fees** 7:4 8:3,23
  15:15,17 17:2
  27:24 28:6 29:3
  32:20 33:15 35:12
  35:14,16 36:2,3
  38:25 41:23,24
  43:3 45:11 48:16
  51:5,14,21 53:10
  54:10,10,14,15
  55:11
**felt** 41:5
**Fidelity** 5:2,14,17
  6:3,17 8:9,11,13
  9:1 10:7,23 11:5
  12:18,24 14:14,25
  15:14,21 16:6,9
  16:15 18:19 19:13
  19:18 20:2,5,8,14
  20:16 21:16,18,25
  22:2,11,12 23:16
  24:1,12,22 26:2
  26:23 27:19,20,21
  28:2 29:18,21
  30:15,23 31:23

34:21 35:23 36:23
37:5,6 39:1 40:1,2
40:4,8,18,20
42:10 43:1,9
44:10 45:23 52:9
**Fidelity's** 15:16
16:12 20:25 22:4
25:8 27:3 38:25
41:10
**Fidelity-like** 35:23
**fiduciaries** 7:3
10:23,24 11:22
15:20 18:10 19:6
19:11 26:20,20
30:19 38:9 40:16
41:22 44:18 52:23
53:4 56:8,20,24
57:1
**fiduciary** 11:18
12:25 17:23 19:11
19:17 20:14,21
22:21 23:5,19,23
23:25 25:18 26:5
26:18,19,24 27:1
31:4,24 37:5,25
38:1,16 40:24
41:11 42:17,24
44:1,5,10 45:10
50:19 52:17,19
53:11,12,20 56:19
56:24 57:4 58:10
58:13,15,20
**Fifth** 12:2 13:7
**fifty** 53:24
**figure** 28:6,12
**file** 15:11 16:19
**filed** 3:3 49:17 56:2
**filing** 49:7
**final** 46:17,18
52:13 57:18
**financial** 16:23
18:12
**find** 13:9 28:9
30:20 31:3 37:4
43:18 44:22 53:13
55:4,16
**finding** 12:23 32:14

**fine** 3:12
**finger** 21:24
**firm** 3:18,20,25 5:3
**first** 3:5 6:5 14:23
21:24 23:14 27:2
31:2,6 38:9 40:15
41:6 51:14 57:2
57:19 58:12
**fits** 52:5
**five** 8:17 55:9
**fixed** 54:12 56:1
**flanked** 4:2
**float** 20:4,6,8,17,21
21:1,7,23 22:1,3,4
22:11,13,21
**Floor** 1:18,21 2:12
**FMTC** 23:16 25:18
27:1
**FMTC's** 42:20
**focus** 33:18
**focused** 38:14 58:2
**focuses** 29:7
**focusing** 34:4 40:13
**follow** 33:24
**following** 14:11
31:3,8
**fools** 24:4
**footnote** 13:19,23
13:25 50:12,15
**footnotes** 46:11
**foregoing** 60:4
**former** 20:16
**Forscheimer** 5:10
5:13
**fortiori** 7:17
**found** 13:3 44:17
**four** 10:23 21:19
23:12 51:13,19
**fourth** 1:13 9:22
13:19,20 19:8
**Fox** 1:16 3:14
**FRANKEL** 1:17
**frankly** 49:22
**free** 27:14 29:24
30:12 31:20
**front** 19:3 48:1
**full** 14:2 56:20 57:8

**function** 18:2,3
**fund** 7:4,6,6,7 8:5
12:20 15:15 19:14
25:25 28:4 30:7,8
30:20 32:17 35:9
40:3,4 45:5,6,7
46:18 50:5 51:2
51:25 52:1,2,4
53:13,18,23 54:12
54:12,12,17,21,23
55:10
**funds** 7:21 8:1,13
8:17,19,20,20 9:5
12:18,24 14:14
16:14 17:21 18:22
19:12,14 20:19
25:25 26:3 27:25
29:19,25 30:23
31:4,9,24 32:6,9
33:8,10 34:7,7
35:5,10,14,18,19
35:21,25 36:2
40:11,12 41:21
45:1,10,23,25
46:14 47:5 49:5
50:17,17,19 51:15
52:8,18,19 53:6,7
53:16,25 54:19
55:3,12
**fungible** 46:1
**further** 11:24 12:4
14:17 28:18 30:18
30:25 33:17 48:17
50:8 51:12

---

**G**

**gain** 15:1,3 51:3
**gather** 49:12
**general** 20:3 21:10
46:22
**generated** 27:23
**gentlemen** 59:3
**getting** 15:16 27:21
59:3
**give** 7:2 32:18
38:12
**given** 13:10 25:6

50:16
**gives** 42:23
**giving** 15:19
**glommed** 21:4
**glomming** 21:5
22:15
**glorious** 50:4
**go** 3:6 5:20 6:12
9:20 17:18 19:9
21:14,15 22:23
23:13 24:8 25:20
30:14,14,20 36:14
37:13,16 43:18
44:22
**goes** 3:13 10:1
47:19
**going** 5:3,21,21,23
5:24 6:1 9:1,18
16:10,22 20:2,10
21:15,19,21 25:10
29:7 30:3 31:23
33:12 36:2,10,13
36:19 37:10 40:2
40:6 41:23 46:10
47:20 50:24 52:16
53:25 54:5 55:6,9
**good** 3:24 4:7,10
5:1 6:14 7:13
22:12 40:20 42:15
54:16 55:3
**gotten** 41:17,18
45:4 54:11
**governance** 46:2
**governing** 8:1
**grab** 24:13
**Grand** 1:20
**grant** 11:21
**granted** 29:10
**granting** 52:11
56:15,16
**gravamen** 50:25
**great** 24:9 54:21
56:17
**greater** 26:1
**grossly** 15:18
**grounds** 49:10
**group** 42:23 44:19

45:2
**guess** 18:5 52:16
**guessing** 36:18
**guidance** 48:19
**guy** 5:8

---

**H**

**H** 1:15
**half** 40:17 54:14
**hand** 18:1
**handling** 5:4
**Hangley** 2:11 5:1
**happened** 31:5
39:22
**happening** 29:8
**happens** 37:4
**hard** 15:2 52:22
**harm** 30:1,15 32:15
**harmonize** 12:5
**Harris** 6:6,18 17:15
17:19,24 34:25
35:7 45:25
**Hayne** 1:16 4:12
**hear** 14:20 58:3
**heard** 18:21 22:16
33:4 45:13 47:25
58:7
**Heather** 1:11 4:5
**Hecker** 12:3,5,9
41:2,2,4,5,20 43:6
45:9 53:19 55:24
55:25 56:6,7
**held** 11:25 58:16
**Hello** 11:6 47:9
**help** 9:15
**helpful** 6:23
**hereto** 42:18
**hidden** 55:14
**high** 30:9 31:15
51:6 54:2
**higher** 51:5 52:1,3
**highest** 52:2,4,23
**high-end** 33:12
**HILL** 1:20
**history** 13:24 14:1
**hitter** 9:2
**holding** 9:17 13:20

32:11
**holds** 10:2
**Honda** 46:24
**Honor** 3:9,14,20,24
    4:3,11,24 5:1,18
    6:8,17 8:14 11:6
    11:15,19,25 12:14
    13:1,14 14:22
    15:2 16:2,16,21
    17:7,17 19:5 20:7
    21:8,18,24 22:9
    22:18 24:4 25:13
    26:14 28:18,25
    29:5,11 30:2
    31:21 32:2,10,25
    33:17,25 34:2,10
    34:19 36:11,18
    37:1,12 38:2
    40:15 42:1,5,8
    43:4,16,20 44:8
    46:18 47:9,11,15
    47:18,22 48:3,5
    48:14 49:14,19
    50:10 52:4,14
    54:9,20 55:2,14
    55:22 57:12,19,23
    58:2,22,25 59:1,5
**HONORABLE** 1:8
**Honor's** 22:14
    27:14
**hope** 8:23 25:14
**hopefully** 56:1
**hundred** 18:15
**Hutton** 48:2

---
**I**
---
**idea** 28:11 40:6
    42:15 45:18
**identical** 25:23
**identified** 23:23
    42:18
**Illinois** 47:2 55:22
    55:23
**immunity** 11:21
**impact** 6:7
**implausible** 45:22
**important** 11:24

12:7 29:15 31:14
    32:10,25 34:2,14
    35:1,13 38:8
    39:20 50:10,13,22
    51:13 54:6 58:8
**importantly** 13:21
**imposed** 46:15
**impossible** 17:8
**improper** 35:3
**imprudence** 46:19
**imprudent** 44:3
    46:13 47:5 53:22
**imprudently** 40:22
**impute** 20:14
**inapt** 7:21
**inclined** 29:25
    31:20
**include** 17:25
    27:12 49:8
**included** 43:9
**includes** 20:16
    46:19,20,23
**including** 18:11
**income** 22:4 54:12
**independent** 7:5
    8:3 56:8
**index** 8:20 16:14
**indicate** 18:4
**indistinguishable**
    31:17 52:10
**individual** 49:4,4
**indulge** 22:24
**inept** 46:7
**inexpensive** 41:15
**information** 28:9
    38:10,12 39:10,16
    39:17 40:18 57:15
**informed** 38:13,14
**initially** 23:22
    42:17
**inquiry** 32:18
    36:18
**insist** 8:6
**instance** 13:1 40:15
    57:2
**instant** 56:22
**institutional** 8:22

**institutional-type**
    33:6
**instructs** 14:2
**insurance** 10:3
**insure** 53:21
**intended** 25:6
**intending** 41:9
**intent** 43:2
**intentionally** 38:11
**interest** 7:8,20 20:5
    20:6,9 21:7 22:1,3
    22:4,13 36:15
    52:25 53:22
**interesting** 44:8
**Interestingly** 12:7
**international** 54:12
**Internet** 28:9
**interpretation**
    11:11,12 12:10
**interpretations**
    11:13
**introduce** 3:5 6:10
    28:20
**introducing** 3:15
**invest** 14:2 38:20
    40:1
**invested** 23:21
**investing** 54:12
**investment** 7:22,23
    8:5,10,12,15 10:3
    12:18 14:5 15:25
    16:3,11,13,24
    17:20 18:8,21
    19:7,12 22:21
    23:6,18,20,22
    24:14 25:1 26:6
    26:16 27:1,10,11
    27:17,21,23 28:5
    28:8 29:4,14 30:4
    32:18,23 33:6,13
    34:22 35:16 36:6
    39:1 40:17 42:16
    42:22 46:1 51:4
    53:21 55:1 58:14
**investments** 11:23
    17:2 19:15 20:2
    30:13 32:12 34:16

36:22 40:1,4,4
    48:13 49:3 53:4
    54:11,19
**investors** 31:9
    48:25
**invoking** 49:24
**involved** 15:4 17:9
**involves** 25:23
**involving** 46:17
**in-house** 4:16,18
    5:6,16,17
**Iqbal** 45:14
**irony** 33:1,1
**issue** 10:20 12:1,20
    13:2 14:7,11,18
    26:12 31:11 34:13
    41:18 43:3 47:18
    58:4
**issued** 25:22
**issues** 48:16
**item** 21:4
**It's** 21:2
**I'm** 30:24

---
**J**
---
**J** 1:11 2:2
**Jenson** 5:7
**JEROME** 1:11
**Jody** 5:10,13
**Joe** 4:14
**JOHN** 2:10
**joined** 4:12 5:6
    56:7
**Jones** 6:6,18 17:15
    17:19,24 34:22,25
    34:25 35:7 45:25
**Joseph** 2:2,5 4:13
**judge** 1:9 9:3 18:17
    41:5 45:9 46:23
    48:2 55:23
**judges** 56:16
**judgment** 3:4 34:4
    34:6,10,17 49:10
    58:5

---
**K**
---
**keep** 5:25 22:6,8
    58:2

**keeper** 25:24 51:3
**keeping** 24:23
    27:12 40:3
**keeps** 40:13
**kept** 20:11 21:25
    22:5,12
**Kibble** 47:2
**kickback** 51:1,9,16
**kickbacks** 51:3
**kidding** 24:5
**kind** 21:4 35:7
    38:21 54:11
**kinds** 27:13
**knew** 28:12 38:18
    40:19 54:15
**know** 3:6 4:7 15:2
    15:12,20,23 16:4
    16:6,8,19,22
    20:19 21:12 34:15
    39:1 43:16 48:25
    54:20 55:13
**knowing** 53:3
**knowledge** 55:15
**known** 52:24
**knows** 6:11 8:14
    22:10 45:18

---
**L**
---
**label** 45:12
**labor** 11:17 12:9,16
    12:17,19 13:13
    14:18 15:22 26:14
    31:12,25 34:5
    38:21 40:10
**Labor's** 11:10
**lack** 33:14
**Langbecker** 12:2
    13:7
**language** 11:20
    13:8,11,22 14:8
    14:10 31:1 37:23
    58:18
**large** 16:11 17:1
    35:5 54:11,19
**largely** 25:3 58:5
**larger** 42:12
**late** 48:2

**law** 3:25 9:9 27:5
    28:4 43:20 45:14
    45:15 52:24 57:4
**lawsuit** 20:24 30:16
    50:25 51:9
**lawyer** 4:19
**lawyers** 4:20
**lawyer's** 22:8
**Lea** 1:11 4:5,5
**lead** 8:4
**leaving** 45:22,24
**left** 5:9
**legal** 49:24,25 50:2
**legally** 25:14
**legislative** 13:24
    14:1
**length** 7:10 26:13
    35:12
**lesser** 26:22
**letter** 12:6 25:21
    26:8
**Let's** 3:5 36:8
**level** 51:6
**Lewis** 2:3 4:11 58:1
**liability** 56:24
**liable** 14:4 57:11
    58:16
**life** 38:19
**light** 41:20 58:18
**lightly** 18:5
**limit** 31:9
**limited** 41:8
**line** 21:15 49:1
**lineup** 12:18,18,20
    13:2,4 14:11,14
    51:4 52:10
**link** 41:2,13
**listed** 46:10
**litany** 44:9
**litigation** 5:15
**little** 12:4 22:24
    47:11 54:21
**LLP** 1:17 2:3,8
**Logan** 2:11
**long** 3:11 18:22
    32:11 34:8 48:18
    53:9

**longer** 46:25
**look** 9:14,21 29:12
    42:15 51:22
**looked** 12:1 15:17
    37:22 43:17 44:16
    44:20 53:17
**looking** 15:6 35:8
    35:11 45:20 50:12
    51:12 57:3
**looks** 16:23
**Los** 1:21
**loss** 14:4 38:16
    58:16
**losses** 10:21
**lot** 8:1 15:10 28:12
    39:14 43:9,10
**Louis** 1:14 3:20,21
**low** 30:5 31:16
    32:22 46:9 54:2
    54:23
**lower** 8:23
**lowest** 30:7,7 31:17
    51:25 52:1
**low-cost** 54:17,19
**loyalty** 15:5 40:21
**Lumos** 55:21

**M**

**M** 1:8
**magical** 53:24
**main** 20:24 21:3
    22:19
**majority** 8:3
**making** 23:1 26:19
    45:8 46:7 58:14
**man** 14:6
**manage** 14:25
**managed** 8:18,22
**management** 10:7
    15:8 23:16 31:4
**Mark** 1:2 5:6
**marked** 23:3
**market** 1:17 2:3,24
    35:11 43:25
**maroon** 5:7
**Mart** 51:1
**masquerading**

    45:15
**material** 38:10
    49:20
**materiality** 48:11
**Materially** 43:25
**materials** 49:11
**matter** 38:11 50:1
    60:6
**matters** 12:15
**mean** 24:5,5 25:18
    29:11 33:20,23
    35:18 59:4
**means** 42:22 56:6
**measure** 30:3
**mechanism** 49:13
**meet** 3:11 14:6
    49:15
**mention** 27:3
**mentioned** 23:13
    46:21
**menu** 25:25 26:3
    41:16
**methodology** 36:10
**mic** 6:10,14
**Michael** 1:12 3:15
    14:22 34:19 52:15
**Mid-Atlantic** 2:23
**million** 15:17
**minute** 4:18 43:5
**mislead** 38:11
**mistaken** 27:5
**mix** 32:12,23
**MO** 1:14
**moment** 11:5 13:16
    30:2 34:14
**money** 10:19 15:9
    15:11 20:11 27:20
    27:20,23 29:20,24
    32:9,20 34:9
**money's** 15:6
**money-market**
    54:21
**monies** 48:24
**Morgan** 2:3 4:11
    58:1
**morning** 5:1
**motion** 10:22 29:9

    31:7 32:6 34:4,6
    34:12,16 35:3
    45:1 49:16,19,22
    50:1,8 52:11 58:5
**motions** 3:3,3,4
**Motors** 46:22
**move** 29:24 50:3
**moved** 42:8 49:10
    58:4
**moves** 43:14
**moving** 27:2
**multiple** 8:19
**mutual** 7:4,5,6,7,21
    8:1,5,17,19,20 9:5
    12:24 14:14 15:15
    17:21 18:22 19:12
    19:13,19 23:9
    27:24 28:4 29:19
    30:23 31:23 35:5
    35:9,10,14,18,19
    35:21,25 40:3
    45:1,10,25 46:13
    46:18 47:5 51:2
    52:8 55:3,10,12
**Myers** 2:8 5:3
**mystery** 28:2
**M.S** 2:6

**N**

**N** 2:8 60:1
**name** 3:13,24 5:12
**named** 10:24
**names** 45:13
**National** 2:23
**neatly** 16:25
**necessary** 29:2
    38:12
**need** 11:13 13:2,4
    14:10 22:23 28:1
    28:12 30:18 49:1
    54:5 55:4,15
**needed** 36:14
**negative** 26:21
**neglectful** 15:5
**netted** 49:3
**never** 7:22 22:5,16
    32:13 56:11,12

**new** 26:16 42:25
**non** 10:22
**noncorporate**
    54:22
**nongovernmental**
    54:22
**nonsense** 23:14
**non-fidelity** 9:5
    36:22
**non-fiduciaries**
    11:2
**normally** 26:5,20
**Northern** 47:2
    55:21,23
**note** 11:24 29:15
    32:10 34:2 50:10
    50:22 57:7
**noted** 29:1 32:2
**notes** 4:21 34:22
**notice** 26:6
**noting** 33:19
**number** 3:2 24:7,8
    32:17 52:20
**numerous** 56:8
**N.W** 2:9

**O**

**o** 52:16 60:1
**objective** 15:18
**Objectively** 16:23
**obscured** 13:15
**obvious** 27:8
**obviously** 7:9 25:5
**occurred** 38:6
**offer** 9:4 19:7,12
    25:1 30:22 33:3
    34:15 46:13 52:15
**offered** 8:13 31:9
    32:7
**offering** 12:23
    16:15 33:5 40:18
    46:12 52:8
**offerings** 30:4,20
    32:17 50:5
**offers** 8:11 25:25
**official** 60:5
**oh** 9:6 28:21 39:11

39:11 57:22
**Ohio** 46:24
**okay** 3:5,23 4:4
5:14,16 8:25 9:25
14:20,23 34:18
37:15 42:2 58:23
**old** 26:16
**omissions** 32:14
**once** 29:6
**ones** 41:15,16
46:24
**one-basis** 53:23
**one-hundredth**
53:14
**one-hundredths**
29:22 30:6
**one-tenth** 30:4
31:17,20 32:21
53:14
**one-third** 52:3
**open** 38:22
**opening** 46:11
**operative** 9:17
**OPERATOR** 2:14
**opinion** 6:24 12:8
12:15,21 13:19
14:19 25:21 29:6
30:18,25 31:2,6
46:22 47:13 48:10
48:22 50:7 58:8
**opinions** 48:21
**opportunity** 33:4
**opposition** 45:1
**option** 16:1,3 23:6
25:2 26:16 44:23
53:21 54:19,23
**options** 8:15 16:6
16:24 18:22 19:7
19:12,17,18 22:21
23:18,20,22 24:14
26:6,23 27:11,22
27:24 28:4 29:4
29:14,16 30:13
32:18,23 33:13
39:2 40:17 41:14
41:15,17 42:17,22
42:24 44:20 46:9

46:11,13 51:18
52:7 54:24
**oral** 1:8 3:2
**order** 8:15 21:21
**ORELERE** 2:2
**organized** 8:19
**original** 21:15
**Ortelere** 4:10,11,16
4:23 11:6,7,15
12:7 28:18,21,21
28:25 33:21,23
40:12 42:4,7,9
47:9,10 48:2,5,9
57:19,22,25,25
**other's** 5:24
**ought** 4:8 22:11
33:5
**outside** 44:3
**overlays** 44:1
**overprice** 16:4
**overpriced** 16:1,17
31:19 36:2,3
**oversee** 18:10
**owed** 52:23
**O'BRIEN** 1:16
**O'Melveny** 2:8 5:3

___

**P**

**PA** 1:4,18 2:4,7,12
2:24
**package** 36:15
**packages** 44:13
**page** 9:14,21,22
19:4,7,16 23:15
44:25
**paid** 14:25 15:14
29:21 41:24 44:11
51:5
**painfully** 14:15
**panel** 46:23
**paper** 8:14
**paragraph** 19:16
22:1 27:22 44:8
**paraphrase** 43:15
**parody** 8:6
**part** 15:12 20:17,21
21:3,10 22:7

29:18 31:6 35:1
40:25 52:6 58:20
**participant** 14:1
18:14,16 31:19
38:15 55:9
**participants** 11:22
15:6 29:15,24
30:12 32:7,15,19
32:24 33:9,11
34:9 36:15 38:10
38:22,24 39:21,23
39:25 40:5,22
46:15 48:12,25
49:9,11 50:21
51:5 52:24 53:3
53:22 54:24 55:15
56:25
**participant's** 58:17
**particular** 34:12
45:5 48:15
**particularly** 55:3
**parties** 5:22
**partner** 4:14
**party** 5:23
**pass** 4:20
**passive** 8:21
**Pause** 28:17 42:3
**pay** 33:11,12 38:25
55:6,9 56:16
**paying** 24:14 39:4
51:3
**payments** 51:8
**pending** 38:19 56:6
**PENNSYLVANIA**
1:1
**percent** 29:22,22
30:5,6,10 31:18
31:21 32:21 40:13
52:3 53:15
**percentages** 49:3
**percurion** 46:22
**perfectly** 30:22
**perform** 24:23
**performance** 16:13
36:6
**performed** 51:16
**person** 5:8 8:9 44:2

53:1
**personally** 10:18
**persuasive** 33:23
**petition** 12:8,16
14:16 31:13 56:7
**ph** 5:10 10:4 12:3
13:3 46:22 47:14
**Philadelphia** 1:4
1:18 2:4,12,24 4:8
**phrase** 27:4
**phrased** 22:15
**pick** 22:20,20 26:6
27:16,17 43:4
**picked** 27:18 45:6,7
**picks** 6:10
**piece** 13:18
**pieces** 50:14
**pit** 11:10
**place** 13:12 37:2
39:23
**plain** 11:21 13:22
14:10 29:13 58:18
**plainly** 24:11
**plaintiff** 14:21
34:18
**plaintiffs** 1:3,11
5:19 10:17 31:19
32:4 33:2,13
34:13 42:19 44:5
49:15,17 51:15
**plaintiff's** 3:17,20
14:13 21:19 28:19
29:1 47:12 50:7
**plan** 7:15 8:14 9:4
9:9,11,13 10:12
10:14,17,21 14:2
14:25 15:9,12
16:1,3,8 18:22,23
19:2 20:2,8 22:3
24:24 25:1,25
26:20 27:14 29:8
29:16 31:16,16
32:3,3,8 33:15
35:19,24 38:15,16
39:3,9 44:11
46:10 47:21,22,22
50:16,19 51:18

53:13 55:7
**plans** 15:11 16:11
16:24 17:1 18:12
25:24 26:15,17
30:10 35:5,18,21
35:23 44:15 56:22
**plan's** 10:19
**platform** 51:4
**plausible** 43:12,14
44:7 45:19,19
46:12,16 50:16,18
**plead** 43:11,12
45:11,18,19,21
**pleading** 22:11
40:23 43:6
**pleadings** 57:12
58:4
**pled** 27:22 41:19
43:7 45:8
**plot** 43:5
**plus** 18:15
**Pnina** 60:3,11
**pocket** 15:7,23
**podium** 3:8 6:9
**point** 4:21 7:18
13:14,21 16:2
20:24 21:15 22:9
22:14 25:3,13
28:19 30:11,25
31:10 33:14,17
35:20 36:3 37:2
42:11,12 45:24
49:6,13 53:18,23
54:9 56:17
**pointed** 13:8 14:12
31:1 34:22 35:22
**pointing** 19:24
56:20
**points** 11:15 14:17
17:24 21:24 27:2
31:14,25 37:15
41:21 47:12 49:20
50:8 52:2 53:14
**pools** 8:17 46:5
**portion** 18:23 19:3
58:7
**position** 36:17

**possible** 17:5,7
  47:1 55:1
**power** 18:20 22:23
  23:1,12,15 24:10
  24:13,17 25:19
  26:1,2,5,19,22,23
  26:25
**preamble** 11:16
  13:6 47:16 49:24
**precisely** 31:5
**prefer** 6:8
**premise** 29:23
**presented** 10:21
  18:11
**pretty** 42:15
**prevent** 9:9 10:10
  24:14
**price** 6:25 30:7,8
  52:1
**priced** 51:25 52:2,4
**prices** 32:12
**primarily** 20:15
**primary** 32:20
**principles** 56:21
**prior** 23:15 42:16
**probably** 15:5,24
  28:9
**problem** 10:18
  11:19 12:25 16:4
  50:18
**problematic** 35:11
**proceedings** 2:17
  60:6
**process** 36:19,20
**product** 16:8,9
  35:12
**products** 16:7
  44:14 54:13
**prohibiting** 31:3
**prohibits** 24:20
**prominently** 6:23
**promptly** 34:15
**prompts** 19:24
**properly** 29:7
**prospectus** 28:5
  46:3 49:18,18
**prospectuses** 39:9

39:18 49:8
**protections** 8:2
  46:3
**prove** 28:15 49:12
**provide** 57:14
**provided** 16:24
  27:9 36:5 39:16
  40:16 49:9 57:8
**providing** 16:13
  39:9
**provision** 10:25
  19:23 24:7,16
  25:8,12 26:21,25
**provisions** 20:3
  34:12
**prudence** 15:5
  36:25
**prudent** 12:20 14:6
  31:8 35:19 36:20
  44:1,2,5 45:10
  53:1
**public** 8:2 46:4
  55:15
**publicly** 15:13 28:7
**PUDLIN** 2:11
**purely** 44:21
**purposes** 26:19
**purview** 56:22
**put** 15:18 21:24
  28:14 35:24 37:1
  42:25
**putting** 13:15 50:2
**P.O** 2:6

**Q**

**qualification** 52:6
**quarter** 54:14
**question** 6:5,5 7:12
  8:24 9:1,2,6 10:16
  11:8,17 13:5,13
  14:23 17:11 27:14
  32:3 34:21 36:13
  36:18 40:15 42:11
  42:13 52:16 58:9
  58:12
**questioning** 46:8
**questions** 5:21,22

5:23 6:2,4 12:10
  50:2
**quibble** 49:23
**quickly** 42:8 51:19
**quite** 14:16 25:23
  25:23 27:4 30:21
**quote** 13:23
**quoting** 14:1 30:24

**R**

**R** 60:1
**raise** 4:21,22 56:16
**raised** 10:20 12:9
  47:12
**range** 29:13 32:19
  44:4 46:13 53:10
  54:10
**ranged** 29:21
**rank** 15:11
**rate** 6:25 43:25
**ratio** 30:9 33:11
**ratios** 29:13,20
  31:15 49:2,8
  51:23
**reach** 11:14 13:4
  14:11 36:19
**reached** 46:17
  47:19
**read** 19:3 23:15
  24:6,15,16 25:5
  25:16 26:25 48:21
  58:7,8
**readily** 50:24
**reading** 8:14 24:9
**real** 54:2
**really** 13:12 14:13
  32:13,18 36:17
  46:9 51:13
**reason** 24:7,8,15
  27:8 40:20 54:16
  55:3,5,6,12
**reasonable** 7:1
  13:4 17:11,12,15
  18:16 30:22 32:12
  35:6,6,9,15,22,25
  36:16,20,24 53:1
**reasonableness** 7:4

17:25 29:3 34:23
  43:20
**reasonably** 18:9
**reasoning** 43:23
**reasons** 23:12
  36:23 45:22 56:10
  56:13,15
**receive** 35:24
**receiving** 51:6
**recital** 19:24
**recitals** 19:25
**recitation** 49:23
**reconcile** 11:13
**reconciled** 38:3
  47:17
**record** 3:13 24:23
  25:24 27:12 40:3
  51:3
**recorded** 2:17
  28:23
**recorder** 28:24
**recording** 2:17
  60:5
**recovery** 10:17,21
**red** 4:13,15,16 19:8
**reduce** 52:17
**reducing** 30:14
**refer** 9:18
**reference** 12:14
  57:20 58:3
**reflect** 23:10
**reflects** 26:8
**reg** 34:12
**regarded** 45:23
**regarding** 58:12
**regardless** 54:16
**Region** 2:23
**regs** 50:3
**regular** 37:20
**regulates** 17:21
  24:21 25:1
**regulation** 13:9
  31:3 39:20 47:16
  49:21
**regulations** 8:1
  11:16 30:19 34:5
  38:2,4,5,7,13 49:7

**regulatory** 46:3
  48:15,19
**rehearing** 12:8,16
  12:22 14:16,19
  30:25 31:11,13
  41:7
**reiterated** 31:10
**rejected** 44:22 45:9
**related** 27:3 48:11
**relationship** 27:19
**relationships** 26:13
**relevant** 6:22 46:11
**relief** 11:1,3 43:12
**relies** 26:15
**relieve** 57:1
**relieves** 56:23
**rely** 19:21 41:4
**relying** 42:19
**remained** 14:9
**remaining** 10:6
**remember** 27:10
  56:14
**rendered** 51:9
**Renfro** 1:2 3:1
**repackaging** 44:21
**reply** 13:15,23
**report** 35:3
**reported** 28:7
**Reporting** 2:23
**represent** 5:19
**representative** 55:1
**representing** 5:2
**request** 10:21
**require** 34:7 39:9
  43:12 50:5
**requirement** 26:7
**requirements** 8:2
  46:4 48:11,15
**requires** 15:21
  17:12 18:9 30:20
  36:12 38:21
**resolve** 13:2
**respect** 20:4
**respond** 5:24 21:16
  21:19
**responded** 24:19
**response** 12:8

18:24 42:2
**responsibility**
23:17
**responsive** 8:24
**rest** 23:14 47:4
53:15 55:10
**restatement** 57:7
**restaurants** 4:8
**result** 35:21 44:11
56:25
**resulted** 58:17
**results** 8:4
**retail** 12:18,24
14:14 29:18 30:22
31:23 33:10 45:1
45:10 46:13,18
47:5 52:8 55:3
**retain** 20:21
**retaining** 20:5
**retention** 21:7
**retort** 37:18
**return** 34:8,14
**returns** 49:1,4
**revenue** 15:22 16:5
16:7,10,12 18:14
27:4,7 28:1,13
35:24 39:2 40:7
**revenues** 24:15
**reverse** 21:21
**right** 4:20 5:5,20
5:25 6:16 8:8 9:4
9:24 10:5,16 11:4
11:8 16:16 17:22
19:5 20:4,20,23
21:14,20 23:3,7
23:11 26:17 28:16
37:8,17 40:19
42:4 47:8 56:7
57:16 59:2,4
**risk** 34:8
**ROBERT** 2:8
**role** 6:25
**Rothschild** 1:16
3:15
**rounds** 22:9
**rules** 43:12
**ruling** 11:20 13:11

14:8,10 47:17,23
48:22 58:9 59:3
**run** 27:15
**running** 16:22
27:10

_____

**S**

**S** 1:20 2:10
**sailed** 47:18
**satisfied** 36:24
52:19 53:19
**satisfy** 48:18 57:13
**savings** 47:21,22
**saw** 38:5
**saying** 17:6,10,13
19:21 20:11 24:3
25:10 39:11,11,16
42:21 44:16,17,19
45:4,6 47:20
49:17,24 53:9
54:1 55:20
**says** 9:22,25 11:20
12:19 13:25 16:15
19:6 23:3 25:6
26:15 30:18,21
34:25 35:4,4,8
38:9,9 39:12 40:9
40:10 42:16,19
44:11 49:12 50:8
50:15 53:19 54:14
55:9 56:20
**scenes** 15:3
**schedule** 42:18,18
42:21
**schedules** 19:19
23:10,23
**scheme** 51:1,10,16
**SCHILLER** 1:8
**Schlichter** 1:11,13
3:16,19,25 4:2,5
**screening** 53:21
**se** 35:19
**seat** 34:14
**second** 18:5 22:2
27:22 36:17 41:12
43:22 44:9 45:20
46:8,20 57:7

**secretary** 12:9
31:12
**section** 11:9,9,11
11:14,14 19:5,16
20:1 23:14 37:17
38:9 39:7 42:14
56:23,23 57:2,14
58:12,18,19,21
**see** 4:24,25 6:3 25:7
28:23
**seeking** 10:17,19
10:22
**SEGAL** 2:11
**select** 10:15
**selected** 23:22
42:17 46:16
**selecting** 23:25
24:6 31:4
**selection** 18:21
23:17 27:1
**selects** 7:15
**sense** 24:10,16
**sent** 39:16
**sentence** 19:10
23:2,21 24:10
25:17 42:13,16,19
**separate** 20:13
21:2,6,9,9 25:7
33:7 46:5 54:13
**serious** 34:13
**services** 24:24 27:9
27:10,12,13 31:18
40:3 44:12,13
51:7,8
**set** 32:7 34:11
43:23 49:20
**setting** 6:25 7:1
**seven** 29:22
**Seventh** 12:3,10,21
13:3 14:15 29:6
30:24 31:8 32:11
33:22 46:19 48:22
51:23 55:25 56:3
**seventy** 8:15 18:14
52:18 53:7,24
**seventy-five** 52:21
**seventy-one** 29:17

30:5,13 50:19
51:25
**share** 40:7
**sharing** 13:25
15:22 16:5,7,10
16:12 18:14 27:4
27:7 28:1,13
35:24 39:2
**Shifty** 48:4
**ship** 47:18
**shirt** 4:17
**shoes** 53:4
**short** 6:18
**shortly** 59:3,4
**shot** 42:4 45:21
**show** 38:17
**showed** 16:25
40:16
**showing** 11:22
58:10
**shown** 58:13
**shows** 18:13 39:19
42:22
**side** 3:17 34:10,16
50:2 51:1,24
52:16
**sides** 18:11
**sideshow** 22:18
**significantly** 55:22
**similar** 22:10 25:23
25:24 44:13,14
45:7
**similarly** 38:21
44:2,4,18 53:9
**simple** 52:17
**simplistic** 52:21
53:6,11
**simply** 12:17 29:11
32:17
**single** 14:3 16:8
**sir** 3:22
**sit** 3:10 5:20 8:8
**sitting** 4:20
**situated** 44:2,5,18
**situation** 7:9
**situational** 39:8,12
**six** 15:16

**sixty** 52:21
**sixty-day** 26:6
**sized** 44:14
**sliding** 21:5
**slightly** 8:23 22:25
42:12
**small** 42:11
**solely** 14:12
**somebody** 35:4
39:11,11
**sorry** 4:17 17:17
28:21 33:25
**sort** 7:11 18:4 27:2
33:10 51:6,11
52:21
**sorts** 27:13 56:13
**Sotomayor** 46:23
**sound** 2:17 60:5
**South** 1:13
**Southern** 46:23
**so-called** 17:23
**space** 51:3
**speak** 33:4 48:15
58:9
**speaks** 48:10
**specific** 19:23,25
48:19 55:20
**specifically** 7:2
18:8 20:1 51:7
**specified** 8:16
**specify** 56:10
**spectrum** 30:10
**speculate** 56:13
**spell** 32:16
**spend** 53:20
**split** 13:21
**sponsor** 10:1
**sponsored** 19:14
**Square** 2:11
**squarely** 47:19
49:15 52:5
**St** 1:14 3:20,21
**stage** 40:24
**stand** 3:10
**standard** 6:19 17:8
17:25,25 18:16
25:8 34:23 36:7

43:16,17,19,24
44:1 57:13
**standards** 14:6
15:18 53:11
**stands** 49:19 50:1
58:5
**start** 6:2 23:15
**Stassen** 1:15 3:8,12
3:14,14 4:3
**state** 43:13
**stated** 21:10 29:11
37:20
**states** 1:1,9 10:4
37:25 40:24
**stating** 56:15
**status** 20:14
**statute** 6:19 8:5
13:18 17:21,24
30:19 31:3 58:13
**statutes** 7:25 22:22
**statutory** 7:3 11:20
13:11 14:8
**step** 24:20 50:23
**stick** 12:14
**stock** 14:3 19:14,14
**strategy** 8:21,22
**Street** 1:13,17 2:3,9
2:24
**strong** 17:19
**stronger** 7:18
**strongly** 25:14
**structure** 27:15
39:3 46:2,3
**structured** 41:25
**structures** 18:6
**stuck** 42:22
**subject** 27:6 46:25
**submit** 29:4 47:18
52:4
**submitted** 35:2
**substantially** 17:2
**suddenly** 27:3
**sued** 10:25 11:1
**suffering** 55:25
**sufficient** 32:12,19
32:22 37:25
**suggest** 43:11

45:19
**suggested** 8:4
27:15 31:1 43:14
52:7
**suggests** 28:19 29:2
47:15 48:5,9
58:20,24
**suing** 18:7
**Suite** 1:14 2:24
**summary** 3:4 34:4
34:6,10,17 49:10
58:5
**Summers** 2:10 5:1
5:6,10,13 9:16
58:24
**support** 31:7,12
**suppose** 49:16
**supposed** 30:1
44:10
**Supreme** 6:6 43:15
56:9
**sure** 6:8,12 7:24
24:13 52:25 57:22
**system** 15:22 16:7
16:12 22:11 39:18

---

**T**

**T** 2:2 60:1,1
**tab** 9:20 19:8
**tackle** 42:7
**take** 4:8 12:20
14:18 22:24 24:22
26:18 34:13 48:12
51:22 56:9
**takes** 14:7
**talk** 47:11
**talked** 43:4
**talking** 6:11 29:17
30:6 34:6 48:16
52:5,8
**talks** 50:14
**tallying** 32:17
**tax** 35:7
**Taylor** 43:21 46:21
**technical** 22:9
**Technologies** 43:22
**Teklits** 2:5 47:24

**Teklitz** 4:13
**tell** 16:21 28:24
**tells** 22:21
**ten** 46:10 50:17,20
51:18,25 52:20
53:6,14
**tension** 11:16 12:22
13:5
**term** 19:13,13
**terminate** 26:8,17
**terms** 24:9 56:23
**test** 32:16
**Thank** 8:25 14:20
34:19 37:12 42:1
52:12,14 57:16,17
58:1,22,25 59:2,2
59:4,5
**Thanks** 47:7
**theory** 44:21
**thereto** 23:10
**they'd** 26:9
**thing** 7:19 15:1,4
16:22 24:18 33:8
34:25 35:20 39:6
39:17,19 41:25
54:18
**things** 6:21 16:4
28:7 39:10 43:7
44:9 46:4,14 49:7
**think** 6:14,21 7:16
9:3,20 11:24
13:24 15:19 19:8
19:23,25 21:23
22:12 25:14,15
28:19 29:1,16
30:17 32:10,25
33:13 34:2 41:2
42:14 43:20 44:24
45:3 48:6,9,20
50:10,13,22 51:12
51:21 52:3 58:8
58:25
**thinks** 4:23
**third** 9:21,25 11:11
11:20 12:1 13:10
13:17,21 14:8
24:18,18 43:6,8

45:21 47:17,21
58:7
**thirty-nine** 52:2
**thought** 22:17
33:25 47:25
**three** 13:20 17:13
30:6 34:7,7,15
50:5 52:1 54:4
**threshold** 11:18
12:25 29:15 53:24
**throw** 53:15
**tie** 4:13,15,16 5:7
5:11
**time** 16:2 37:2 38:5
41:22 43:2,10
49:13 53:2,20
56:14
**timely** 6:5
**times** 17:13 42:23
52:1
**today** 24:3 44:24
**top** 32:6
**track** 5:25
**tracking** 39:10
**transcriber** 60:3,12
**transcript** 1:8 60:4
**trap** 54:7
**tread** 18:5
**tried** 47:24
**Troy** 1:12 3:25
**true** 4:10 60:4
**trump** 20:3
**trumps** 56:19
**trust** 8:16,18 9:8,13
9:15,16,19 10:7,9
19:1,6,8,19,24
20:1 23:2,9,16,18
23:20 24:20,21,21
24:22,25 25:4,7,9
37:21,21,23 55:8
55:8,11 57:4
**trustee** 9:12,14
14:2,3 19:18,22
23:8,16,20 24:2,5
24:22 25:2 35:23
57:5,5,8,10,10
**trusteed** 10:4,7

**trusts** 10:1,2 33:7
**try** 6:15 12:14 56:8
**trying** 18:5 24:13
45:21
**turn** 16:16
**Turning** 34:21
**Tussey** 37:22 41:5
**twenty-three** 29:16
32:6
**twice** 30:21
**two** 5:16 8:22 10:1
10:2,23 11:14
18:15 21:24 24:8
27:2,9
**Twombley** 45:13
**type** 15:11 40:17
**types** 7:21 27:5,9
54:24 55:3

---

**U**

**ultimately** 29:21
36:8
**unanimous** 6:24
**uncontested** 58:6
**understand** 43:10
**understanding**
48:10
**Understood** 28:25
**undisputed** 34:11
**undue** 19:1
**unfair** 52:22
**unfortunate** 55:24
**UNIDENTIFIED**
5:18
**unified** 27:18
**UNISON** 59:5
**Unisys** 1:5 2:5 3:1
4:11,17 5:17 11:5
11:7,12,19 12:2
13:11,18 14:9,24
15:1,4,19 17:4
18:21 19:11,17
22:20 23:25 27:18
28:22 29:8,9,17
30:3,7 31:16 32:3
32:15,23 33:3
35:1 37:7 38:2,3,8

38:17 39:6,12,15
39:19 40:9 42:24
45:4 47:10,17,19
47:20,22 48:10
50:19 51:20 52:1
52:4,10 56:18
57:3 58:1
**United** 1:1,9 43:22
**unopposed** 49:20
50:2
**unreasonable**
18:16 43:25 44:12
**unreasonably** 36:9
**upset** 4:21
**use** 6:9 14:14 36:7
**UTC** 46:21

**V**

**variety** 29:14
**various** 3:3 46:4
**variously** 28:19
29:1
**vary** 35:7
**varying** 34:8
**vehicle** 7:23 55:1
**vehicles** 7:22 8:12
16:11 46:1
**Veritext** 2:23
**version** 27:6
**veto** 18:20,20 22:23
23:1,11,15 24:10
24:11,13,16 25:19
26:25
**VI** 11:2
**view** 11:25 47:16
**views** 13:8
**vs** 1:4 3:1 6:6,18
12:2 17:15,19,24
34:25 35:7 37:22
41:5 43:21 45:25
46:21,21 47:2,2
47:14 50:7,12
55:21

**W**

**Wait** 4:18
**Wal** 50:25
**walk** 26:7

**Wal-Mart** 47:14
50:7,12,16,20
51:15,24,25 52:2
**want** 3:8 4:22 5:20
20:19 21:22 24:13
30:14 41:11 46:5
48:25,25 54:22
56:17
**wanted** 9:4 18:22
21:12 37:14 46:9
49:15
**wants** 10:15 27:16
**warned** 46:7
**wary** 7:20
**Washington** 2:9
5:4
**wasn't** 45:14
**way** 4:20 5:20,25
10:15 11:12 13:9
21:22 22:22 24:6
24:16 25:5,5 26:9
26:12,20,25 27:15
28:1 39:3 41:24
**ways** 35:21
**wearing** 5:9,11
**week** 6:6 59:4
**weigh** 13:13
**weight** 41:6
**went** 36:19,23
38:25
**weren't** 38:6
**Western** 41:5
**we'll** 4:24 21:14
**we're** 3:2 5:6 6:1
7:17 13:1 17:10
17:13 20:17 24:14
28:23 29:17 30:6
31:18 34:6,24
35:6 40:23 47:5
47:22 48:16 52:5
52:8 55:9
**we've** 15:15 22:9
23:3,3 26:22
42:21 46:10 49:9
49:12
**whatsoever** 9:7
41:4

**white** 1:19 4:17
**whiz** 28:9
**wide** 49:13
**widely** 11:25
**WILLIAM** 1:15,19
**window** 32:4 33:3,9
33:14,18 34:4
50:14
**wiping** 41:10
**withheld** 48:12
**witnesseth** 9:23
**Wolff** 1:12 3:15,19
3:22 14:22,22
15:2,10 16:2,16
16:21 17:7,17,19
17:23 18:3,7,25
19:5,10,23 20:7
20:12,15,20,24
21:5,8,13 34:19
34:19 36:4,11
37:6,9,12,14,17
43:5 45:3 52:13
52:14,15 54:4,9
55:2,19 56:5,12
56:17 57:17
**wolf's** 48:7
**Wood** 45:9
**word** 52:13
**words** 24:12 35:10
53:3 57:18
**work** 26:9,12
**works** 15:22 26:10
**world** 26:10
**worried** 13:9
**worry** 20:18
**worth** 13:24 33:19
**wouldn't** 25:18
45:10
**wow** 4:7 18:13
**wrap** 41:1
**wrinkles** 14:13
**write** 28:8
**wrong** 23:12

**Y**

**Yeah** 10:11
**year** 15:17

**years** 47:24
**Young** 46:21

**0**

**0.7** 40:13
**01** 53:10
**03** 53:10
**07-2098** 3:2

**1**

**1** 1:5 9:14,21
**1.0** 53:10
**10** 13:23,25
**10th** 1:18
**100** 1:13
**1004(c)** 56:23
**11** 38:9 60:10
**1104(a)** 56:19
**1104(a)'s** 57:2
**1104(c)** 11:9,10,14
11:18 12:6,12,13
13:24 34:5,16
38:3 47:12 48:19
56:19,23 58:4,10
58:13,19
**1104(c)'s** 58:18,21
**12(b)(6)** 31:7 32:6
52:11
**14** 2:6
**1625** 2:9
**1701** 2:3
**18** 44:25
**1800** 2:24
**1801** 2:24
**19103** 1:18 2:4,12
2:24
**19424** 2:7
**1996** 11:12
**1997** 25:22

**2**

**2,500** 32:9 33:8
41:14,16 52:19,20
**2:07-cv-02098-B...**
1:3
**2000** 1:17
**20006** 2:9
**2010** 1:5 60:10

**24** 57:7
**27th** 2:12

**3**

**3** 34:11 39:14 48:14
**300** 1:20
**37th** 1:21

**4**

**4** 16:25
**401K** 25:24 35:19
**404(c)** 12:11 39:7
39:15,22 48:19
49:19 50:1,3
57:14
**42** 27:23

**5**

**5** 19:7 23:14 46:11
**5(a)** 23:16
**5(b)** 19:5 23:2,19
37:17 42:14
**500** 2:6

**6**

**6** 19:16 46:11 50:13
**63102** 1:14

**7**

**7** 19:7

**8**

**81** 44:8
**83** 22:1
**888-777-6690** 2:25

**9**

**900** 1:14
**90071** 1:21